**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| KOSS CORPORATION,<br><br>            Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>            Defendant. | Case No.      6:20-cv-00665-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S OPPOSED MOTION TO TRANSFER VENUE**
**TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................................1

II.    BACKGROUND .................................................................................................2

III.   LEGAL STANDARD .........................................................................................5

IV.   THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY A MORE
       CONVENIENT VENUE TO LITIGATE THIS CASE THAN THIS DISTRICT............6

      A.     This Case Could Have Been Brought In The Northern District. ..........................6

      B.     The Private Interest Factors Favor Transfer.........................................................6

            1.     Relevant Sources Of Proof Are In The Northern District Of
                  California.................................................................................................6

            2.     The Compulsory-Process Factor Favors Transfer....................................9

            3.     Convenience Of Both Party And Non-Party Witnesses Favors
                  Transfer....................................................................................................9

            4.     Other Practical Problems Associated With Trying This Case Are
                  Neutral...................................................................................................12

      C.     The Public Interest Factors Favor Transfer........................................................14

            1.     California, Where This Case Arises, Has A Strong Local Interest..........14

            2.     Administrative Difficulties Flowing From Court Congestion Are
                  Neutral And Should Be Given Little Weight.........................................16

             3.     The Remaining Public-Interest Factors Are Neutral..............................17

V.    CONCLUSION..................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. 2013)...................................................................................... 9

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
   2014 WL 10748106 (W.D. Tex. June 11, 2014).................................................................... 7

*Am. GNC Corp. v. GoPro, Inc.*,
   2018 WL 6074395 (S.D. Cal. Nov. 6, 2018) ...................................................................... 15

*City of New Orleans Emps.' Ret. Sys. ex rel. BP P.L.C. v. Hayward*,
   508 F. App'x 293 (5th Cir. 2013) ........................................................................................ 8

*CloudofChange, LLC v. NCR Corp.*,
   2020 WL 6439178 (W.D. Tex. Mar. 17, 2020)................................................................... 6

*DataQuill, Ltd. v. Apple Inc.*,
   2014 WL 2722201 (W.D. Tex. June 13, 2014).................................................................. 17

*GeoTag, Inc. v. Starbucks Corp.*,
   2013 WL 890484 (E.D. Tex. Jan. 14, 2013)..................................................................... 15

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ..............................................................................14, 15, 16

*In re Adobe Inc.*,
   823 F. App'x 929 (Fed. Cir. 2020)..................................................................................... 16

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ...............................................................................6, 15, 16

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .................................................................................. passim

*In re Google Inc.*,
   2017 WL 977038 (Fed. Cir. Feb. 23, 2017)..................................................................... 13

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) .................................................................................... 9, 15

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009) ........................................................................................ 17

*In re Toyota Motor Corp.*,
   747 F.3d 1338 (Fed. Cir. 2014) ..................................................................................... 5, 7

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) .................................................................5, 10, 12, 17

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ..................................................................... passim

*In re Zimmer Holdings, Inc.,*
    609 F.3d 1378 (Fed. Cir. 2010) ........................................................................ 13

*ORD Structure Innovations, LLC v. Oracle Corp.,*
    2011 WL 4435667 (N.D. Ill. Sept. 22, 2011) .................................................... 15

*Parity Networks, LLC v. Juniper Networks, Inc.,*
    2018 WL 9539505 (E.D. Tex. Aug. 10, 2018) ..................................................... 7

*Parus Holdings Inc. v. LG Elecs. Inc.,*
    2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) .................................................. 14

*Tex. Data Co. v. Target Brands, Inc.,*
    771 F. Supp. 2d 630 (E.D. Tex. 2011) .............................................................. 12

*Two-Way Media LLC v. AT & T Inc.,*
    636 F. Supp. 2d 527 (S.D. Tex. 2009) .............................................................. 10

*Uniloc USA Inc. v. Box, Inc.,*
    2018 WL 2729202 (W.D. Tex. June 6, 2018) .................................................... 16

*VLSI Tech. LLC v. Intel Corp.,*
    2019 WL 8013949 (W.D. Tex. Oct. 7, 2019) ..................................................... 11

*XY, LLC v. Trans Ova Genetics, LC,*
    2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ...................................................... 7

**Statutes**

28 U.S.C. § 1400(b) ................................................................................................. 6

28 U.S.C. § 1404(a) ................................................................................................. 5

## I.   INTRODUCTION

In this case, a plaintiff incorporated in Delaware, based in Wisconsin, and owning patents prosecuted by attorneys in Pittsburgh has (in breach of a contract negotiated and signed in California) sued a California-based corporation for selling allegedly-infringing products that were engineered, developed, designed, and marketed in California. The Western District of Texas is not a convenient forum for this dispute. The Northern District of California, however, is.

The vast bulk of the relevant evidence and proof in this matter is located in California. Apple engineers who designed and developed the accused products and features are based in California. The relevant technical documents describing these features, and the source code embodying them, are likewise in California. And one of the asserted patents' inventors even lives in California.

In contrast, no witness, document, or evidence relevant to this dispute is located in this District, or anywhere in Texas. Koss is not a Texas corporation. It has no Texas employees, plants, or offices. It stores no documents in Texas. It did not conceive, reduce to practice, prosecute, or commercialize the asserted patents in Texas. And no witness with any relevant information is within the subpoena power of this Court. Although Koss has suggested that Apple's presence in Austin—however untethered to the dispute here—favors this venue, that argument is foreclosed by Federal Circuit precedent and factually incorrect as confirmed by sworn testimony.

As no evidence in this case can be expected to come from Texas, this District is an inconvenient venue in which to try it. The Northern District of California is clearly more convenient, and pursuant to 28 U.S.C. § 1404(a), Apple requests the Court transfer this case there.

## II.   BACKGROUND

Apple is a California corporation, employing more than 35,000 people who work in or around its headquarters in Cupertino. (Ex. A, Declaration of Mark Rollins ("Rollins Decl.") ¶ 3; Compl., Dkt. No. 1, ¶ 5.) Apple's primary management, research and development, marketing, finance, and sales personnel are in or near Cupertino. (Rollins Decl. ¶ 3.)

Koss appears to accuse at least the following Apple products and features of infringement (*see* Compl. ¶¶ 79–82, 107–10, 121–24, 135–38; Ex. B, 11/6/20 Koss Preliminary Infringement Contentions):

| Accused Product | Accused Feature | Asserted Patent(s) |
|---|---|---|
| **Apple HomePod** | Configuration to access a home Wi-Fi network | '451 Patent |
| **Apple AirPods and AirPods Pro Powerbeats and Powerbeats Pro Beats Solo Pro, Solo3, and Studio3**[1] | Receive audio from another Apple device | '025, '934, '982, '325 Patents |
| | Siri functionality | '025, '934, '982, '325 Patents |
| | Firmware upgrades | '025, '934, '982, '325 Patents |
| | Physical structure and design | '025, '934, '982, '325 Patents (selected products) |
| | Switch between audio sources | '025, '934, '982 Patents |
| **AirPods Pro** | Switch between noise-control modes | '025, '934, '982 Patents |

Nearly all the U.S.-based engineers who worked on these features did so in California— and none did so in Texas. (Rollins Decl. ¶¶ 8–18.) The relevant marketing, licensing, and finance personnel are also in California. (*Id.* ¶¶ 19–22.) Indeed, each of the thirteen Apple employees listed below works in California and has information relevant to this case. Not one works in Texas, works with anyone in Texas in connection with the accused products or features, or has even traveled to Texas as part of that work (*Id.* ¶¶ 9–22):

---

[1] Unless noted, references to "AirPods" include both AirPods and AirPods Pro, and references to "Beats products" include Powerbeats, Powerbeats Pro, Solo Pro, Solo3, and Studio3.

| Name | Title | Relevance |
|---|---|---|
| **Bob Bradley** | Software Development Engineer, Sensing and Connectivity Group | Knowledgeable about the research, design, and development of the HomePod set-up process. Mr. Bradley and all of the individuals who worked on this feature are located in the Northern District. |
| **Dave Shaw** | Bluetooth Systems Engineer, Core Bluetooth Group | Knowledgeable about the operation of the AirPods, including how Apple AirPods receive audio content from another Apple device. Mr. Shaw and all other U.S.-based individuals who worked on this feature are located in California.[2] |
| **Baptiste Paquier** | Software Development Engineer Manager, IMG Audio | Knowledgeable about the research, design, and development of Siri on Apple's AirPods, and how AirPods switch between noise-control modes. Mr. Paquier and all of the individuals who worked on this feature are located in the Northern District. |
| **Ariane Cotte** | Software Development Manager, System Firmware & Diagnostics Group | Knowledgeable about the research, design, and development of the process for how Apple AirPods receive firmware upgrades. Ms. Cotte and all of the individuals who worked on this feature are located in the Northern District. |
| **Arun Chawan Ethan Huwe** | Product Design Engineers, Apple Audio PD Group or Technology Development Group | Knowledgeable about the research, design, and development of the physical structure and design of the Apple AirPods and AirPods Pro, respectively. Messrs. Chawan and Huwe and all of the individuals who worked on this feature are located in the Northern District. |
| **Aarti Kumar** | Software Engineering Manager, Sensing and Connectivity Group | Knowledgeable about the research, design, and development of the process by which Apple AirPods and Beats products switch between paired audio sources. Ms. Kumar and all individuals who worked on this feature are located in the Northern District, except one individual who is located in Seattle. |
| **Robert Boyd** | Product Design Engineering Manager, Beats HW Mechanical Engineering | Knowledgeable about the research, design, and development of the physical structure and design of the PowerBeats Pro. Mr. Boyd and all of the individuals who worked on this feature are located in the Northern District or in Los Angeles. |
| **Marco Pontil** | Senior Manager, Beats Software Division | Knowledgeable about the research, design, and development of the process by which Beats products receive audio content and firmware upgrades, switch between audio sources, and use Siri. Mr. Pontil and all individuals who worked on these features work in the Northern District or in Culver City, California, except one individual located in Boston. |

---

[2] Although Mr. Shaw has moved to San Diego, California, he worked primarily in the Northern District while working on the accused AirPods, and when Koss filed this suit. (Rollins Decl. ¶ 10.)

| Name | Title | Relevance |
|---|---|---|
| **Linda Frager** | Product Marketing Manager, Home & Audio Product Marketing | Knowledgeable about the marketing of the Apple HomePod and AirPods. Ms. Frager and her team are located in the Northern District. |
| **Jeff Bruksch** | Product Portfolio Manager, Beats NPI Product Management | Knowledgeable about the marketing of the Beats products. Mr. Bruksch is located in Culver City, California. |
| **Jeff Lasker** | Principal Counsel, IP Transactions | Knowledgeable about Apple's patent licensing and pre-suit communications between the parties, including the parties' Confidentiality Agreement. Mr. Lasker is located in the Northern District. |
| **Mark Rollins** | Finance Manager | Knowledgeable about Apple's financial records and about financial data relating to the sales of Apple's AirPods, Beats Products, and HomePods. Mr. Rollins is located in the Northern District. |

Moreover, Apple's source code and its relevant technical, marketing, and financial documents are also in California. (*Id.* ¶¶ 8–22.)

Beyond Koss' infringement claims, this case also involves Koss' breach, by including certain allegations in its Complaint, of a contract signed in California. In 2017 Koss approached Apple, purportedly to negotiate a potential license of one of Koss' patents. (Compl. ¶¶ 70–73.) According to Koss, "[o]ver the following two and a half years, Koss and its representatives met with Apple a total of four times in Apple's California offices." (*Id.* ¶ 71.) These discussions involved emails and presentations from Koss to Apple, in California, and Apple's responses refuting Koss' allegations. (8/7/20 Mot. to Strike, Dkt. No. 12 at 2.) These communications all took place under a confidentiality agreement that Koss insisted Apple sign. (*Id.*; *see* Confidentiality Agreement, Dkt. No. 12-1.) Koss' Complaint depended on—indeed, rested certain claims solely on—protected communications, thus breaching the Confidentiality Agreement. (Dkt. No. 12 at 2–5.) The Apple employees knowledgeable about the parties' negotiations and the Confidentiality Agreement are in California. (Rollins Decl. ¶ 19.)

Koss itself has no discernable connection to this District. Koss is an audio-products company incorporated in Delaware, with its only known office in Milwaukee, Wisconsin. (Compl. ¶ 2.) Although Koss alleges certain tenuous connections to Texas through unnamed companies it allegedly does business with (*id.* ¶¶ 3–4), Koss itself has no known or identifiable Texas offices or employees, nor has it appointed a Texas business agent or a representative for service. (Ex. C, Franchise Tax Account Status for Koss Corp.)

## III.   LEGAL STANDARD

A court may grant a motion to transfer "[f]or the convenience of parties and witnesses" and "in the interest of justice . . . ." 28 U.S.C. § 1404(a). The "preliminary question" is whether a civil action "might have been brought" in the judicial district to which a transfer is requested. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*").

A series of private and public interest factors govern the remainder of the transfer analysis. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* The transferee venue need only be "*clearly* more convenient," not "*far* more convenient," for transfer to be appropriate. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

## IV.   THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY A MORE CONVENIENT VENUE TO LITIGATE THIS CASE THAN THIS DISTRICT

### A.   This Case Could Have Been Brought In The Northern District.

As any patent suit may be brought in "the judicial district where the defendant resides," 28 U.S.C. § 1400(b), and Apple is headquartered in Cupertino, California, within the Northern District of California (*see* Rollins Decl. ¶ 3), venue would be proper in the Northern District.

### B.   The Private Interest Factors Favor Transfer.

Apple's relevant witnesses and documents are in the Northern District. An important third-party witness, one of the inventors of the patents-in-suit, lives in California. Meanwhile, no known relevant Apple, Koss, or third-party witnesses or documents are in this District, and Koss has no presence of any kind here. The private interest factors thus heavily favor transfer.

#### 1.   Relevant Sources Of Proof Are In The Northern District Of California

The location of Apple's sources of proof strongly favors transfer. "This factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence . . . ." *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks omitted). Despite advances in technology that simplify transfer of some electronic files, "precedent dictates the Court consider where sources of proof are physically located." *CloudofChange, LLC v. NCR Corp.*, 2020 WL 6439178, at *3 n.2 (W.D. Tex. Mar. 17, 2020); *see Volkswagen II*, 545 F.3d at 316.

Apple's relevant U.S. sources of proof are located in the Northern District of California. Apple's highly confidential source code for the accused features of Apple's HomePod, AirPods, and Beats products is stored in, or on servers accessible to Apple employees in, California. (Rollins

Decl. ¶¶ 8–16); *Parity Networks, LLC v. Juniper Networks, Inc.*, 2018 WL 9539505, at *2 (E.D. Tex. Aug. 10, 2018) (concluding the sources-of-proof factor favors transfer where "specific sources of proof," including source code, were located at defendant's California headquarters). Likewise, Apple's relevant non-source code documents are in California. Here, Koss has accused specific features of Apple's AirPods, HomePod, and certain Beats products. (*See* Compl. ¶¶ 79–82, 107–10, 121–24, 135–38; Ex. B at 2–3.) Technical documents pertaining to the design and engineering of these features are on servers and computers in California. (Rollins Decl. ¶¶ 8–18.) Apple's financial, marketing, and licensing documents relevant to the accused products are also located in California. (*Id.* ¶¶ 19–22.) Although some source code, documents, or witnesses regarding some accused features are in Israel or certain non-Texas states (*see id.* ¶ 8), "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums" where, as here, the vast majority of relevant evidence resides in the transferee forum, and none reside in the transferor forum. *In re Toyota Motor*, 747 F.3d at 1340.

In addition to the current location of relevant documents, "the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested" to evaluate the ease of access factor. *XY, LLC v. Trans Ova Genetics, LC*, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017); *see also Affinity Labs of Texas, LLC v. Blackberry Ltd.*, 2014 WL 10748106, at *6 (W.D. Tex. June 11, 2014) (noting that "a court should also be mindful of the location of the activities surrounding the research, development, and production of the accused products"). Here, the accused products and features were researched, developed, and tested almost exclusively in California; no part of the research and design took place in or near Texas. (Rollins Decl. ¶¶ 8–16.) This confirms that the access-to-proof factor favors transfer.

In contrast to the many sources of proof in California, none are located within this District. Koss has no presence in Texas and has not even claimed to have documents here. And because the patents-in-suit were allegedly conceived by inventors from California, Wisconsin, and Illinois, and prosecuted by attorneys in Pennsylvania, there is no reason to believe that documents relating to the patents or the inventors' work are in Texas. (*See* Ex. D, Inventor LinkedIn and Whitepages; Ex. E, Excerpted File Histories of Asserted Patents.)

Similarly, Apple has no known relevant documents in Texas. While Apple maintains offices in Austin, the legally-mandated inquiry is where documents *relevant to this case* are located—and none of *those* are in Texas. (Rollins Decl. ¶¶ 8–22); *City of New Orleans Emps.' Ret. Sys. ex rel. BP P.L.C. v. Hayward*, 508 F. App'x 293, 297 (5th Cir. 2013) (affirming transfer to where "the relevant documents . . . could be found," despite presence of documents "of questionable relevance" in the transferor forum (quotations omitted)); *Volkswagen II*, 545 F.3d at 316 (analyzing only location of documents "relating to the accident" at issue). To confirm the location of its relevant documents, Apple interviewed many knowledgeable witnesses: software engineers, hardware engineers, product managers, marketing, licensing, and finance personnel, and a Texas-based human resources supervisor. (Rollins Decl. ¶¶ 8–23.) All confirmed the same thing: Apple's relevant documents and witnesses are in California; whatever Apple documents or employees are located in Austin are not relevant to the claims or defenses in this case. (*Id.*)

It also does not follow that Apple's documents must be accessible in Austin simply because they are electronic. Access to Apple's source code, for instance, is tightly controlled on a need-to-know basis. (Rollins Decl. ¶¶ 8–16.) No Apple employees who work on the accused functionalities, or the code for them, live in Texas. (*Id.*) And based on Apple's extensive investigation to date, there is no evidence that the relevant code ever could or should be—or ever

has been—accessed from Texas. Given the many relevant sources of proof in California, and the lack of any in this District, the access-to-proof factor weighs heavily in favor of transfer.

### 2.    The Compulsory-Process Factor Favors Transfer

Transfer is favored where the transferee court has subpoena power over a greater number of third-party witnesses. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337–38 (Fed. Cir. 2009); *Volkswagen II*, 545 F.3d at 316–17. A subpoena may compel an individual to testify at trial or in a deposition only "within the state" or "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1).

Here, the Northern District has subpoena power over at least one highly relevant witness. Michael Sagan, an inventor of all but one of the patents-in-suit, lives near Sacramento, California. (Ex. D at 1–3.) This is within the statewide subpoena power of a court sitting in the Northern District. Fed. R. Civ. P. 45(c)(1). Conversely, there are no known relevant third-party witnesses within the subpoena power of this Court. Therefore, the compulsory-process factor favors transfer.

### 3.    Convenience Of Both Party And Non-Party Witnesses Favors Transfer

The convenience and cost of attendance to the relevant witnesses is the most important factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1343. "[C]ourts consider the convenience of both party and non-party witnesses." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 875 (E.D. Tex. 2013) (citation omitted).

Of the party witnesses, the Apple employees who work on relevant aspects of the accused products and features are located in California. (Rollins Decl. ¶¶ 8–22.) Apple's investigation has revealed at least thirteen separate employees in California who are knowledgeable about the engineering, design, development, or marketing of the accused products, the licensing of relevant patents, and relevant financial records and practices. (*Id.*; *see infra* at 2–4.) None of these employees work in Texas, work with anyone in Texas, or travels to Texas in connection with their

work on the accused products. (Rollins Decl. ¶¶ 8–22.) It would be significantly more convenient for each of these witnesses to attend trial in California than in Texas. Where the distance between two districts exceeds 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Here, Waco is at least 1,700 miles from the Northern District. (Ex. F, Apple Witness Travel Times at 1.) It would take witnesses leaving Apple's Cupertino headquarters less than an hour to reach the courthouses in Oakland or San Francisco, and a mere fifteen minutes by car to reach the courthouse in San Jose. (*Id.* at 12–14.)[3] A trip to Waco, on the other hand, would be five times as long: a 5.5-hour flight to Waco or a 3.5-hour flight to either Dallas or Austin plus a one hour, forty-minute trip by car to Waco. (*Id.* at 2–11.) Further, a trial in the Northern District would not require Apple's witnesses to incur meal or lodging costs, or to be away from home, family, and work overnight. Conversely, the inconvenience of a trial in Waco is, as the Fifth Circuit put it, "obvious": "'Additional distance means additional travel time; and additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.'" *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 205). And the convenience of Apple's witnesses cannot be discounted simply because they are employed by a party. "[N]either the Fifth Circuit nor the Federal Circuit has adopted or commented on [a] distinction" between party and non-party witnesses. *Two-Way Media LLC v. AT & T Inc.*, 636 F. Supp. 2d 527, 538 (S.D. Tex. 2009).

The Northern District is also clearly more convenient for at least one key non-party witness: Michael Sagan, an inventor of four of the five patents-in-suit. (Ex. D at 1–3.) "Because

---

[3] For Mr. Shaw, a trip from San Diego to these courts would take under two hours. (Ex. F at 15.)

inventors' testimony is extremely important, inventors are key witnesses and the Court gives greater weight to their convenience." *VLSI Tech. LLC v. Intel Corp.*, 2019 WL 8013949, at *4 (W.D. Tex. Oct. 7, 2019). Mr. Sagan could drive from his home near Sacramento to the Northern District courthouses in two hours or less—about the length of his daily commute—whereas it would take him five or more hours to reach this District. (Ex. D at 1–3; Ex. G, Koss Witness Travel Times at 1–13.)

By contrast, there are no relevant witnesses for whom trial in this District would be more convenient. The remaining inventors of the patents-in-suit hail from Illinois or Wisconsin. (Ex. D at 4–25.) Their travel times to this Court and the Northern District are roughly equal. (Ex. G at 14–30.) And even if Koss claims that it would take a few more minutes (in a five- or six-hour trip) for these witnesses to reach the Northern District, these marginal differences do not impact the transfer analysis. *In re Genentech, Inc.*, 566 F.3d at 1344. Inventors living in Wisconsin or Illinois "will be required to travel a significant distance no matter where they testify," and "there are a substantial number of [other] witnesses residing within the transferee venue who would be unnecessarily inconvenienced by having to travel away from home to testify in the [Western] District of Texas." *Id.*

Nor does Koss have any witnesses in this District who could tip the balance. Koss is a Delaware corporation whose sole known office is in Milwaukee. (Compl. ¶ 2.) It has no known offices or employees anywhere in Texas. Koss' Wisconsin witnesses would, like the Midwest-based inventors, find travel to this District no more convenient than travel to the Northern District. While Koss allegedly manufactures products for an unnamed Texas company (*id.* ¶ 4), it has not alleged that this production occurs in Texas, that whatever is produced relates to the technologies at issue, or that any personnel in Texas are involved in the production. Nor do allegations that Koss products "are sold at various retail chains throughout the United States and the world," including

in Texas, bear any relevance. (*Id.* ¶ 3.) "Interests that 'could apply virtually to any judicial district or division in the United States,' such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests" in the transfer analysis. *Tex. Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 646 (E.D. Tex. 2011) (quoting *Volkswagen II,* 545 F.3d at 318).

Similarly, no Apple employee in Texas is responsible for the design, engineering, development, or marketing of the accused features. (*See* Rollins Decl. ¶ 23–24.) Koss alleges that unnamed Apple employees in Austin have unspecified "responsibility for Apple's wearable products," or have purportedly worked as managers for the accused products. (Compl. ¶¶ 8–13.) But Apple's signed, sworn declaration directly refutes these vague, generic allegations: no one who has "responsibility for" the accused features, or who "managed" the accused products, is in Texas. (Rollins Decl. ¶¶ 8–22.) Moreover, Bodie Nash, a human resources manager at Apple's Austin offices who has supported all of Apple's teams there, confirmed that the job descriptions in Koss' complaint either did not exist in Austin, or did not relate to the design, development, or engineering of any accused features. (*Id.* ¶ 23.) Nor can the mere existence of Apple's Austin office somehow balance out Apple's specific list of relevant California witnesses. The question is not whether Apple has employees in Texas—it is whether any of those employees have information that is "relevant and material" to this case. *In re Genentech*, 566 F.3d at 1343. Because the evidence here shows that the answer is "no" (*see* Rollins Decl. ¶¶ 8–24), Apple's Austin presence should be given no weight. The Northern District is, thus, significantly more convenient for Apple's witnesses and at least one key third-party witness, whereas this District is not more convenient for any witnesses. The witness-convenience factor thus strongly favors transfer.

### 4.   Other Practical Problems Associated With Trying This Case Are Neutral

No "other practical problems" exist in this case that would make trial more "easy, expeditious and inexpensive" in either California or this District. *Volkswagen I*, 371 F.3d at 203.

As an initial matter, the Court has no prior familiarity with the patents-in-suit, with any related patents, or with Koss in general. Nor has the Court yet invested resources in this case: no substantive proceedings have taken place. Indeed, should the Court grant Apple's pending motion to strike Koss' complaint for breaching its Confidentiality Agreement with Apple, this case may need to start afresh, if it continues at all. (*See* Dkt. No. 12.) On the other hand, the Northern District is already supervising an arbitration between the parties concerning breach of the very same Confidentiality Agreement. (*See* Ex. H, 12/15/20 Admin. Mot. for Leave, *Apple Inc. v. Koss Corp.*, No. 4:20-cv-05504-JST (N.D. Cal.).) If anything, transferring this case to the Northern District would better serve judicial economy by consolidating disputes over the same contract before the same court.

Although Koss has sued other defendants over the patents-in-suit here, the mere fact of co-pending litigation, alone, does not weigh against transfer. "To hold otherwise, [the Court] would be effectively inoculating a plaintiff against convenience transfer under § 1404(a) simply because it filed related suits against multiple defendants in the transferor district. This is not the law under the Fifth Circuit." *In re Google Inc.*, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017). This is especially true where, as here, these cases share a "limited relationship" with one another, and the proposed transferee district is "where most of the identified witnesses reside and where the other convenience factors clearly favor." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010). Here, not only are the accused products in each of Koss' cases different, but of the five patents at issue, only the '025 Patent is asserted against all of Apple's co-defendants. Another—the '451 Patent—is not asserted against any other defendant. (*Compare* Compl. ¶ 1, *with* Exs. I–L, at ¶ 1 (complaints in co-pending cases).) On the other hand, Koss asserts one patent against all other co-defendants—U.S. Patent No. 10,368,155—that it does not assert against Apple. (*Id.*)

Further, it is uncertain whether any co-pending litigation will even continue in this District, as all but one other defendant is already challenging venue here. "In considering the presence of co-pending litigation, the Court must also consider the presence of co-pending motions to transfer." *Parus Holdings Inc. v. LG Elecs. Inc.*, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020). Skullcandy, Inc.—a Delaware corporation based in Utah with no offices, employees, or property in Texas—has moved to dismiss or transfer for improper venue. (Ex. M, 9/8/20 Mot. to Dismiss, *Koss Corp. v. Skullcandy, Inc.*, No. 6:20-cv-00664-ADA (W.D. Tex.) at 2.) Another defendant, Bose, is doing likewise because it too has no presence in Texas. (Ex. N, 12/17/20 Mot. to Dismiss or Transfer, *Koss Corp. v. Bose Corp.*, No. 6:20-cv-00661-ADA (W.D. Tex.).) Apple understands that yet another defendant, Plantronics, is planning to move to transfer to the Northern District of California. Koss' remaining case here is so undeveloped that the defendant's answer has not yet come due, "meaning any increase in judicial economy from the Court's experience in these early stages of litigation is likely to be limited." *Parus Holdings*, 2020 WL 4905809 at *7. (Ex. O, Docket Report, *Koss Corp. v. PEAG LLC*, No. 6:20-cv-00662-ADA (W.D. Tex.) at 12/11/20 Text Order.) For all these reasons, the other-practical-problems factor is neutral.

## C.     The Public Interest Factors Favor Transfer.

California has a strong local interest in this case because the events and products that gave rise to this suit are centered there. As the remaining public interest factors are neutral or should be given little weight, the public interest factors favor transfer.

### 1.     California, Where This Case Arises, Has A Strong Local Interest

In evaluating the local-interest factor, "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). Here, as set forth above, the Apple employees who designed and engineered the accused products, coded and developed the

accused features, and marketed the finished results, work in California, not Texas. (*See supra* at 9–10; Rollins Decl. ¶¶ 8–22.) Koss' infringement claims thus "call into question the reputation of individuals that work in the [California] community." *GeoTag, Inc. v. Starbucks Corp.*, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) (citing *In re Hoffmann-La Roche*, 587 F.3d at 1338); *see also Am. GNC Corp. v. GoPro, Inc.*, 2018 WL 6074395, at *21 (S.D. Cal. Nov. 6, 2018) (the Northern District, where allegedly infringing products were designed, "clearly has the stronger interest as to GoPro" despite GoPro offices in transferor district); *ORD Structure Innovations, LLC v. Oracle Corp.*, 2011 WL 4435667, at *4 (N.D. Ill. Sept. 22, 2011) (California's local interest favored transfer because "the majority of the accused products were developed in Northern California, and Oracle is headquartered there," despite Oracle having "offices within this district").

Crucially, Koss' generic allegations about Apple's presence in this District do not impact the local-interest factor. "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple Inc.*, 979 F.3d at 1345 (quoting *In re Acer*, 626 F.3d at 1256). Here, as set forth above, those connections are to California, not Texas.

Moreover, California has a uniquely strong local interest here, because this suit implicates not only products developed and designed in California, but also negotiations and breach of a confidentiality agreement in California. As Koss has alleged, before this case, Koss and Apple met "in Apple's California offices" to discuss potential licenses for the patents Koss now asserts. (Compl. ¶ 71.) The parties' discussions in California were subject to a Confidentiality Agreement that barred Koss from ever using them against Apple in litigation. As set forth in Apple's Motion To Strike (Dkt. No. 12), Koss repeatedly breached this agreement by using protected communications to plead, for instance, that Apple induced infringement of Koss' patents, a claim that required Koss to allege Apple's pre-suit knowledge of the patents. Koss fulfilled that

requirement *solely* by referring to the parties' protected communications. (Compl. ¶¶ 81, 95, 109, 123, 137; *see* Confidentiality Agreement § 5, Dkt. No. 12-1.) Unquestionably, this case shares a strong nexus with California. *See In re Acer*, 626 F.3d at 1256.

Conversely, Texas has no local interest in this suit. Nothing that occurred here—beyond product sales that occur daily in stores nationwide—is even allegedly connected to Koss' claims. No witnesses or documents relevant to the accused products or features are in Texas. (*Supra* at 2–12.) Apple personnel in Texas even confirmed that no relevant Apple employees are located here, despite Koss' red-herring allegations to the contrary. (Rollins Decl. ¶ 23.) Nor does Koss—which employs no one in Texas, owns no land in Texas, and has no Texas office—have any connection to this District. There is, thus, no local interest in having this case decided in Texas.

### 2. Administrative Difficulties Flowing From Court Congestion Are Neutral And Should Be Given Little Weight

The Fifth Circuit has found that the court-congestion "factor appears to be the most speculative," and when "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347 (citation omitted). Further, where a court does consider court congestion in deciding a transfer motion, it must do so based on past data rather than anticipated schedules. *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020).

Here, the Northern District of California and this District dispose of cases on a roughly equal timeline, both before court action (4.3 months in WDTX versus 6 months in NDCA) and during or after pretrial (14.5 months in WDTX versus 14.3 months in NDCA). (Ex. P, U.S. Courts, Statistics & Reports, Table C-5 (Sept. 30, 2020).) While this District has recently disposed of some cases faster than the Northern District, *id.*, that has not historically been the case. *See In re Apple*, 979 F.3d at 1350; *Uniloc USA Inc. v. Box, Inc.*, 2018 WL 2729202, at *4 (W.D. Tex. June 6, 2018)

(as of 2018, "the average time to trial in Northern California is marginally faster than in Western Texas"). More recently, the patent docket here has ballooned far past that in the Northern District of California: over the last year, just 445 intellectual property cases were commenced in the Northern District, compared to 849 in this District. (Ex. Q, U.S. Courts, Statistics & Reports, Table C-3 (Sept. 30, 2020).) Thus, there is no evidence in the record that the Northern District of California and this District meaningfully differ in their abilities to expeditiously process cases. The court-congestion factor is thus neutral. *See In re Genentech*, 566 F.3d at 1347.

### 3.   The Remaining Public-Interest Factors Are Neutral

The other two public-interest factors—familiarity with the governing law and avoiding conflict-of-law problems—are neutral. *See Volkswagen I*, 371 F.3d at 203. As between California and Texas, "neither district has a demonstrated advantage in applying federal patent law." *DataQuill, Ltd. v. Apple Inc.*, 2014 WL 2722201, at *5 (W.D. Tex. June 13, 2014). Nor would this case implicate a conflict of law. These remaining factors are, therefore, neutral.

## V.   CONCLUSION

The Northern District of California is clearly more convenient than this District to litigate this case. Most relevant witnesses and sources of proof are in the Northern District. This suit arises out of products designed in California, licensing negotiations in California, and breach of a contract signed in California. This District, meanwhile, has none of these connections to the case. As this case "feature[es] most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff," *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009), Apple requests the Court grant its motion to transfer.

Date: December 18, 2020                    Respectfully submitted,


By:   _/s/ Michael T. Pieja_

Michael T. Pieja (*pro hac vice*)
Alan E. Littmann (*pro hac vice*)
Lauren Abendshien (*pro hac vice*)
Samuel E. Schoenburg (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
labendshien@goldmanismail.com
sschoenburg@goldmanismail.com

Stephen E. McConnico
State Bar No. 13450300
Steven J. Wingard
State Bar No. 00788694
Kim Bueno
State Bar No. 24065345
Stephen L. Burbank
State Bar No. 24109672
SCOTT DOUGLASS & MCCONNICO
Colorado Tower
303 Colorado St., Ste. 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 495-6399
smcconnico@scottdoug.com
swingard@scottdoug.com
kbueno@scottdoug.com
sburbank@scottdoug.com

*Counsel for Defendant Apple Inc.*

## **CERTIFICATE OF CONFERENCE**

I certify that on December 17, 2020, counsel for Defendant Apple Inc. conferred with counsel for Plaintiff Koss Corporation regarding the foregoing Motion to Transfer. Plaintiff's counsel stated that Koss opposes Apple's motion to transfer this case from this District to the Northern District of California. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

Date: December 18, 2020                                  _/s/ Michael T. Pieja_
                                                                    Michael T. Pieja (*pro hac vice*)

## **PROOF OF SERVICE**

I hereby certify that, on December 18, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Darlene F. Ghavimi
Texas State Bar No. 24072114
K&L GATES LLP
2801 Via Fortuna, Suite #350
Austin, TX 78746
Tel.: (512) 482-6919
Fax: (512) 482-6859
darlene.ghavimi@klgates.com

Benjamin E. Weed
Philip A. Kunz
Erik J. Halverson
Gina E. Johnson
K&L GATES LLP
Suite 3300
70 W. Madison Street
Chicago, IL 60602
Tel.: (312) 372-1121
Fax: (312) 827-8000

benjamin.weed@klgates.com
philip.kunz@klgates.com
erik.halverson@klgates.com
gina.johnson@klgates.com
Peter E. Soskin
K&L GATES LLP
Suite 1200
4 Embarcadero Center
San Francisco, CA 94111
Tel.: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

_/s/ *Michael T. Pieja*_____
Michael T. Pieja (*pro hac vice*)