## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| KOSS CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>PLANTRONICS, INC. and<br>POLYCOM, INC.,<br><br>  Defendants. | Case No. 6:20-cv-00663-ADA<br><br>**DEMAND FOR JURY TRIAL** |
| KOSS CORPORATION,<br><br>  Plaintiff,<br><br>v.<br><br>Skullcandy, Inc.,<br><br>  Defendant. | Case No. 6:20-cv-00664<br><br>**DEMAND FOR JURY TRIAL** |
| KOSS CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>APPLE INC.,<br><br>  Defendant. | Case No. 6:20-cv-00665<br><br><br>**DEMAND FOR JURY TRIAL** |

## PLAINTIFF KOSS CORPORATION'S OPENING CLAIM CONSTRUCTION BRIEF

**Table of Contents**

I.     Introduction ...................................................................................................... 1

II.    Legal Overview ............................................................................................... 2

III.   Argument ......................................................................................................... 3

      1.     "a remote, network-connected server that is in wireless communication with the mobile, digital audio player" ...................................................................... 4

      2.     "the processor is for, upon activation of a user-control of the headphone assembly, initiating transmission of a request to the remote, network-connected server" ............................................................................................ 5

      3.     "in a second audio play mode, the earphones play audio content streamed from the remote, network-connected server" ..................................................... 6

      4.     "a signal strength level for the second wireless communication link" ................... 7

      5.     "upon activation of the microphone by the user, data are transmitted about the headphone assembly to a remote device" ......................................................... 8

      6.     "the processor circuits of the headphones are configured to receive firmware upgrades transmitted from a remote network server" ............................... 9

      7.     "data are transmitted about the headphone assembly to a remote device"/"remote device" ..................................................................................... 10

      8.     "host servers" ............................................................................................ 11

      9.     "wherein the headphone assembly is configured, with the processor, to transition automatically from playing digital audio content received wirelessly by the headphone assembly via a first wireless network to playing digital audio content received wirelessly by the headphone assembly via a second wireless network" ............................................................. 12

      10.   "wherein the docking station comprises a power cable for connecting to an external device" ....................................................................................... 12

      11.   "a passive, wireless rechargeable power source" ................................................. 13

IV.   Conclusion ..................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*,
    725 F.3d 1315 (Fed. Cir. 2013)......................................................................................2

*Comark Commc'ns, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998)....................................................................................3

*Cont'l Circuits LLC v. Intel Corp.*,
    915 F.3d 788 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 648 (2019) ................................3, 5, 10

*CTX Systems, Inc. v. Academy, LTD et al.*,
    Case No. 2:18-cv-00171 RWS-RSP (E.D. Tex. Sept. 5, 2019)..............................................11

*Koss Corp. v. Apple Inc.*,
    Case No. 6:20-cv-00665 ..............................................................................................1

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014)................................................................................................6, 8

*One-E-Way, Inc. v. Int'l Trade Comm'n*,
    859 F.3d 1059 (Fed. Cir. 2017)....................................................................................8

*Phillips v. AWH Corp.*,
    415 F.3d 1303, 1317 (Fed. Cir. 2005)............................................................................3

*Summit 6 LLC, v. HTC Corp. et al.*,
    Case No. 7:14-cv-00106-O (N.D. Tex. March 21, 2015)......................................................11

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002)....................................................................................3

*Thorner v. Sony Comput. Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)..............................................................................2, 3, 5

## I.     Introduction

Plaintiff Koss Corporation ("Koss") brought this lawsuit to rectify infringement of a series of patents Koss developed as an early adopter of technology that modern consumers take for granted: headphone technology.  Koss has been a pioneer in this space for more than 50 years, and the instant series of lawsuits demonstrate that the giants of the modern wireless headphone industry have only succeeded on the shoulders of Koss' pioneering work.

In this regard, Koss has asserted six patents against the defendants: U.S. Patent Nos. 10,206,025 ("the '025 Patent") (attached hereto as Exhibit A); 10,298,451 ("the '451 Patent") (attached hereto as Exhibit B); 10,368,155 ("the '155 Patent") (attached hereto as Exhibit C); 10,469,934 ("the '934 Patent") (attached hereto as Exhibit D); 10,491,982 ("the '982 Patent") (attached hereto as Exhibit E); and 10,506,325 ("the '325 Patent") (attached hereto as Exhibit F) (collectively, the "Patents-in-Suit").[1]  The Patents-in-Suit are generally directed to wireless headphone technology, but also reflect successes certain defendants have had in home speaker technology using pioneering device configuration techniques.  (Dkt. No. 1[2], Compl. for Patent Infringement, ¶¶ 23-59 (July 23, 2020)).   Apple, Inc., Plantronics, Inc., Polycom, Inc., and Skullcandy Inc., (collectively "Defendants") through their proposed constructions, seek to add unclaimed limitations without any need, let alone support.

Pursuant to an email request granted on February 16, 2021, Koss provides this "omnibus" brief addressing all eleven terms across the six patents asserted against the three captioned

---

[1]    The '025 Patent, the '155 Patent, the '025 Patent, the '982 Patent, and the '325 Patent are continuations and share a specification; they may be referred to collectively herein as the "Headphone Asserted Patents."   The '451 Patent is unrelated (by patent family) to the Headphone Asserted Patents.

[2]    Docket citations are to the documents filed in *Koss Corp. v. Apple Inc.*, Case No. 6:20-cv-00665.

Defendants. This brief is being filed in all three matters, but is identical across all three, consistent with the proposal presented by the parties and adopted by the Court in its February 16 email.

## II.    Legal Overview

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" (Fed. Cir. 2005). The general rule is that claim terms are given their plain-and-ordinary meaning, which is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312-13.

"There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). For the first exception, if the patentee is acting as his own lexicographer, the patentee must "'clearly set forth a definition of the disputed claim term,'" and "'clearly express an intent' to redefine the term" in either the specification or during prosecution. *Id.* Absent a clear articulation in the specification or prosecution history, this exception cannot apply.

For the second exception, the patentee's statements disavowing the full scope of a claim must represent "'a clear disavowal of claim scope.'" *Id.* at 1366. A statement is not "a clear disavowal of claim scope," when "an applicant's statements are amenable to multiple reasonable interpretations . . ." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

In addition to the claims themselves, the patent's specification and prosecution history may help in determining the meaning of claim terms; however, improper use of the specification and the prosecution history may lead to misconstruing the meaning of claim terms. "Although the specification may aid the court in interpreting the meaning of disputed claim language, particular

504155544 v7

embodiments and examples appearing in the specification will not generally be read in the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998).  Thus, "the claims must be read in view of the specification, but limitations from the specification are not to be read into the claims."  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002). Additionally, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). Finally, while extrinsic evidence "'can shed useful light on the relevant art,'" it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'"  *Id.*

*Thorner* has been guiding Federal Circuit precedent since its adoption. *See Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 648 (2019). Moreover, the mere fact that a dispute exists between the parties does not require the adoption of Defendants' limiting constructions, or any explicit construction for that matter.  *Id.*  Even where a dispute exists, the proper construction can, and often is, "plain and ordinary meaning." Accordingly, Koss proposes that the proper construction for all the terms identified is the plain and ordinary meaning.

## III.    Argument

The parties have agreed that no construction is necessary for the following terms:

- "a second digital audio source"/ "a second digital audio player"

- "transmit[ting] a communication based on the audible utterances"

- "receive and store credential data for an infrastructure wireless network provided by the [a] wireless access point"

Koss asserts that all terms in the asserted patents should be afforded their plain and ordinary meaning and no construction is necessary. Therefore, the Defendants' identified claim terms and proposed constructions,[3] as set forth below, are improper and should not be adopted.

1.    **"a remote, network-connected server that is in wireless communication with the mobile, digital audio player"**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "a remote, network-connected server that is in wireless communication with the mobile, digital audio player"<br><br>('025 Patent – claim 1)<br>('934 Patent – claims 1 and 58) | plain and ordinary meaning | "Wireless communication: communication without wires" |

Defendants allege the term "wireless communications" should be construed by adding one word to a two-word phrase:  as "communication without wires."  Defendants are apparently attempting to require no wires anywhere between the mobile, digital audio player and the remote server.  Defendants have not articulated any basis to deviate from the plain and ordinary meaning of this term, nor have they identified any support in the specification or in the prosecution history for their unduly limiting proposal. Thus, this claim term should be given its plain and ordinary meaning.

---

[3]   There are some terms identified by Defendants that use slightly different verbiage across the Patents-in-Suit, yet Defendants argue that "many of [the claims] include terms and phrases that vary only in minor aspects of wording; by identifying a term or phrase below, Defendants intend to encompass all additional such variants, even if not explicitly enumerated below." Without acquiescing to the propriety of this assessment, legally or under the Court's local rules identifying limits on the number of terms to address, Koss addresses the terms identified in Defendants "Preliminary Identification of Proposed Claim Constructions" and the proposals therein.  Respectfully, any grammatical issues that arise out of Defendants proposals only serve to further support Koss's position that Defendants' Proposals are incorrect and cannot be adopted.

2.      **"the processor is for, upon activation of a user-control of the headphone assembly, initiating transmission of a request to the remote, network-connected server"**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "the processor is for, upon activation of a user-control of the headphone assembly, initiating transmission of a request to the remote, network-connected server"<br><br>('025 Patent – claim 1)<br>('934 Patent – claims 3, 5, 11, 16, 19, 28, 37, 39, and 60) | plain and ordinary meaning | "Causing the earphone to address a request to the remote, network-connected server instead of the digital audio player" |

This claim element does not require "address[ing]" in any form or fashion, and Defendants' attempt to add this concept to a plainly understandable term without justification is improper. By apparently seeking construction of the disputed claim term beginning with "initiating," Defendants proposal suggest that the preceding language should be eliminated in its entirety.  This would render the claim term nonsensical, as it obviates the noun, "the processor," from the term.

Further, Defendants' proposal seeks to limit the language of the claims to a particular embodiment of the specification without any basis to do so. Defendants likely will point to the patent's disclosure of IP addresses of various data sources; however, these embodiments are not to be imported into the meaning of this claim element. *Cont'l Circuits*, 915 F.3d at 797 (declining to import limitations from the specification to the claims in view of *Thorner* and holding that, even contested constructions, can be properly found to be "plain and ordinary meaning.").  The mere fact that a dispute regarding constructions exists does not require the Court to adopt an overly-limiting, and legally improper, construction. Defendants have not articulated any basis to deviate from the plain and ordinary meaning of this term, nor have they identified any support in the

specification or in the prosecution history for their unduly limiting proposal. Thus, this claim term should be given its plain and ordinary meaning.

### 3.    "in a second audio play mode, the earphones play audio content streamed from the remote, network-connected server"

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "second audio play mode"<br><br>('025 Patent – claims 2, 12, 21, 30, and 42)<br>('934 Patent – claims 2, 15, 24, 36, and 59) | plain and ordinary meaning | "Second audio play mode: a mode in which the earphones communicate with the server over an infrastructure wireless network; otherwise indefinite" |

Defendants allege that "second audio play mode" should be construed as "a mode in which the earphones communicate with the server over an infrastructure wireless network," and therefore, "second audio play mode" is indefinite. Defendants actually seek to construe the isolated term "mode" and fail to acknowledge the plain and ordinary meaning of "second audio play mode." In doing so, they ignore the word "second" and ignore the remaining language in the claim element that specifies what occurs in the second audio play mode, namely that the "earphones play audio content streamed from the remote network-connected server." The language of the claim is clear on its face, and Defendants' attempt to rewrite a four-word phrase with 15 words demonstrates the impropriety of their position.

Defendants proposal of indefiniteness is also disingenuous; the claim was properly understood by the examiner during prosecution, and the metes and bounds of the claim are not, as Defendants would allege, unclear. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Tellingly, Defendants do not seek construction of "first audio play mode," or suggest this renders the patent indefinite. Defendants would have this court ignore the language of the rest of the claim in an effort to support their theory of indefiniteness (which itself rings hollow, as they

are fully able to articulate a proposed construction and have failed to identify any ambiguity with either their own construction, or the claim language itself).

Defendants' proposal adds unnecessary limitations (in the form of specifying a communications path) that are not rooted in the specification. Defendants' proposal also ignores the language of the claim in an effort to establish indefiniteness. The language of the claim element itself is clear and there is no need to deviate from that clear language.

### 4.    "a signal strength level for the second wireless communication link"

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "a signal strength level for the second wireless communication link"<br><br>('025 Patent – claims 4, 5, 7, 9, 14, 15, 17, 19, 23, 24, 26, 28, 32, 33, 35, 37, 44, 45, 47, 49, and 50)<br>('155 Patent – claims 11 and 12)<br>('934 Patent – claims 4, 6, 8, 12, 13, 17, 18, 20, 22, 26, 27, 29, 31, 38, 40, 41, 44, and 58)<br>('982 Patent – claims 6 and 11)<br>('325 Patent – claims 5 and 11) | plain and ordinary meaning | "A measurement of the strength of a signal received by the [headphone assembly / headphones]" |

Defendants' proposal adds limitations into the claim without any support for the limitation. The claim does not require "a measurement" or "a signal received by the [headphone assembly/headphones]" as Defendants propose. Instead, the claim language is clear and does not need to be construed. Defendants' proposal takes clear language and makes it confusing because it excludes the link for which a signal strength is required: the second wireless communication link. Defendants have not articulated any basis to deviate from the plain and ordinary meaning of this term, nor have they identified any support in the specification or in the prosecution history for

7

their unduly limiting proposal. Thus, this claim term should be given its plain and ordinary meaning.

### 5. "upon activation of the microphone by the user, data are transmitted about the headphone assembly to a remote device"

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "upon activation of the microphone by the user, data are transmitted about the headphone assembly to a remote device"<br><br>('025 Patent – claims 8, 18, 27, 36, and 48)<br>('934 Patent – claims 7, 21, 30, 45, and 61) | plain and ordinary meaning | "Remote: The term "remote," as used here and throughout the asserted claims, is indefinite; alternatively, "remote device" means a device external to the headphone assembly; data are transmitted is indefinite" |

Defendants allege that both "remote" and "data are transmitted" are indefinite; and further that "remote device" is a device external to the headphone assembly.

Defendants' proposal of indefiniteness is disingenuous; the claim was properly understood by the examiner during prosecution, and the metes and bounds of the claim are not unclear. *See Nautilus*, 572 U.S. at 901. There is nothing unclear about the metes and bounds of "remote" or "data are transmitted." To the extent that Defendants propose there is a question regarding how "remote" is "remote," the use of relative terms and words of degree do not, in and of themselves, render patent claims invalid. *One-E-Way, Inc. v. Int'l Trade Comm'n*, 859 F.3d 1059, 1063 (Fed. Cir. 2017). "[R]elative terms—[such as] "substantial" and "high"—[are] sufficiently definite because 'readers . . . skilled in the art of paper making and versed in the use of the . . . machine' would have 'no difficulty . . . in determining . . . the substantial [elevation] needed' for the machine to operate as specified." *Id*. In fact, Apple has a total of 934 Patents that use the term "Remote" in its claims, Poly has 22, and Skullcandy has two.  (Exhibit G, USPTO Search Results). The term

clearly has an understanding in the industry such that those in the industry are apprised of the scope of this element.  Further, there is simply nothing indefinite about "data are transmitted."

Regarding Defendants' construction for "remote device;" this term is clear and needs no construction. Defendants' proposal adds unnecessary limitations (in the form of re-writing clear language) not rooted in the specification and without any basis for doing so. Defendants' proposal also ignores clear Federal Circuit precedent, likely under the guise of unnecessary expert testimony, in an effort to establish indefiniteness. The language of the claim element itself is clear and this term needs no construction.

> **6.** **"the processor circuits of the headphones are configured to receive firmware upgrades transmitted from a remote network server"**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "the processor circuits of the headphones are configured to receive firmware upgrades transmitted from a remote network server"<br><br>('025 Patent – claims 10, 38, 51)<br>('155 Patent – claim 13)<br>('934 Patent – claims 1, 46, 62)<br>('325 Patent – claim 9) | plain and ordinary meaning | The remote, network connected server transmits firmware upgrades to the headphone assembly: the remote, network-controlled server pushes firmware upgrades to the earphones from the server |

Defendants' proposal improperly adds limitations not present in the claim. The claim does not require the server "push" and upgrade as Defendants propose.  Instead, the language of the claim itself (which is written from the perspective of the "processor circuits *of the headphones*") is sufficiently clear and does not need to be construed. Although the specification states that "[t]he host server 40 (or some other server) ***may*** also push firmware upgrades," ('025 Patent, 9:41-42), this language does not support limiting this term to the Defendants' proposed construction. Additionally, the very next sentence in the specification cuts against the Defendants' proposed

construction by stating that "a user could download the firmware upgrades . . . from the host server
. . . ." (*Id.* at 9:44-45).  Thus while the remote network server could push firmware upgrades, the
claims are not so limited.  Moreover, Defendants have no basis for importing this limitation, and
certainly have not shown that exclusion of preferred embodiments from the claim scope is
mandated here.  *Cont'l Circuits*, 915 F.3d at 797.

The language of the claim element itself is clear and this term needs no construction.

       7.      **"data are transmitted about the headphone assembly to a remote device"/"remote device"**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "data are transmitted about the headphone assembly to a remote device"<br><br>('025 Patent - claims 8, 18, 27, 36, and 48)<br>('934 Patent - claims 7, 21, 30, 45, and 61) | plain and ordinary meaning | The term "remote" as used here and throughout the asserted claims is indefinite;<br><br>alternatively, "remote device" means a device external to the headphone assembly<br><br>data are transmitted about the headphone assembly: indefinite |

Defendants Poly and Apple identify "data are transmitted about the headphone assembly
to a remote device" separately from the already discussed "upon activation of the microphone by
the user, data are transmitted about the headphone assembly to a remote device." Skullcandy does
not.  As noted above and herein, there is no separate construction for the "upon activation of the
microphone by the use" portion of the already discussed term. Therefore, Koss incorporates its
arguments above regarding why "upon activation of the microphone by the user, data are
transmitted about the headphone assembly to a remote device" is neither indefinite nor requires
any construction, and instead should be interpreted only as its plain and ordinary meaning.  Koss

also contends that Skullcandy's failure to identify this term confirms that the term needs no construction.

### 8. "host servers"

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "host servers"<br><br>('451 Patent - Claims 1 and 18) | plain and ordinary meaning | A server that hosts a website through which a user inputs credential data for at least one infrastructure wireless network;<br><br>Alternatively, indefinite |

Defendants' proposal for "host servers" takes what is a straightforward two-word term and transforms it into a convoluted 20-word mouthful of a construction; on top of this, Defendants allege this term is somehow indefinite. There is no basis for taking a clear term such as "host servers" and adding the volume of limitations in Defendants' proposal, nor is there any cognizable theory that the term is indefinite.

The term "host servers" has been held to not only be definite, but to be sufficiently clear on its face that it needs no construction. (Exhibit H, *Markman* Order in *CTX Systems, Inc. v. Academy, LTD et al.*, Case No. 2:18-cv-00171 RWS-RSP (E.D. Tex. Sept. 5, 2019) at 55; Exhibit I, *Markman* Order in *Summit 6 LLC, v. HTC Corp. et al.*, Case No. 7:14-cv-00106-O (N.D. Tex. March 21, 2015) at 20). While those cases involve different patents and different facts, the orders are at least indicative of the definiteness of the term "host servers."

Defendants' proposal to import a limitation from the specification into this claim is a thinly veiled attempt to adjudicate infringement at claim construction. Because this claim term is clear and definite, it should be afforded its plain and ordinary meaning.

9.   **"wherein the headphone assembly is configured, with the processor, to transition automatically from playing digital audio content received wirelessly by the headphone assembly via a first wireless network to playing digital audio content received wirelessly by the headphone assembly via a second wireless network"**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "wherein the headphone assembly is configured, with the processor, to transition automatically from playing digital audio content received wirelessly by the headphone assembly via a first wireless network to playing digital audio content received wirelessly by the headphone assembly via a second wireless network"<br><br>('155 Patent – claim 1) | plain and ordinary meaning | wherein the headphone assembly is configured, with the processor, to transition automatically from playing digital audio content received wirelessly **from a source** by the headphone assembly via a first wireless network to playing digital audio content received wirelessly from the source by the headphone assembly via a second wireless network |

Although Defendants purport to construe the entire "wherein" clause, the only difference between the language of the claim and Defendants' proposal is the introduction of the phrase "from a source." No basis exists, and Defendants cannot identify any, to add this language to the claim element, therefore this term should be given its plain and ordinary meaning.

10.   **"wherein the docking station comprises a power cable for connecting to an external device"**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "wherein the docking station comprises a power cable for connecting to an external device"<br><br>('982 Patent – claim 2)<br>('325 Patent – claim 1) | plain and ordinary meaning | External device: A computing device |

12

Here, in claim 2 of '982 patent, the term, "wherein the docking station comprises a power cable for connecting to an external device," should be given its plain and ordinary meaning. Defendants' proposal adds unnecessary limitations not rooted in the specification. Although the specification states that "[t]he docking station may be connected to or part of a computer device" ('982 Patent, 7:2-3), this language hardly supports limiting this term to the proposed construction. While an example of an external device may be a computing device, the claims are not so limited. Because the language of the claim element is clear, no construction is necessary.

**11.    "a passive, wireless rechargeable power source"**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "a passive, wireless rechargeable power source"<br><br>('982 Patent - Claim 17)<br>('325 Patent - Claims 8 and 17) | plain and ordinary meaning | A capacitor; otherwise, indefinite |

Defendants' proposal seeks to limit the language of the claims to an embodiment of the specification as well as import unclaimed limitations from the specification. No basis exists to do either. Defendants may argue that the patents' disclosure of capacitors (*e.g.*, '982 Patent at 6:60-7:12) supports their proposal, but Koss has not disavowed any scope to this claim and no construction is necessary.

**IV.    Conclusion**

Koss respectfully asks this Court to reject Defendants' insupportably narrow constructions for the terms addressed above and instead adopt Koss's proposal that the terms need not be construed and that the plain and ordinary meaning of the terms, as evidenced by the words of the claims themselves, be adopted.

Dated: February 19, 2021

Respectfully submitted,

 /s/ *Darlene F. Ghavimi*
Darlene F. Ghavimi (TX Bar No. 24072114)
**K&L GATES LLP**
2801 Via Fortuna, Suite #350
Austin, TX 78746
Tel.: (512) 482-6919
Fax: (512) 482-6859
darlene.ghavimi@klgates.com

Benjamin E. Weed (admitted *pro hac vice*)
Philip A. Kunz (admitted *pro hac vice*)
Erik J. Halverson (admitted *pro hac vice*)
Gina A. Johnson (admitted *pro hac vice*)
**K&L GATES LLP**
Suite 3300
70 W. Madison Street
Chicago, IL 60602
Tel.: (312) 372-1121
Fax: (312) 827-8000
benjamin.weed@klgates.com
philip.kunz@klgates.com
erik.halverson@klgates.com
gina.johnson@klgates.com

Peter E. Soskin (admitted *pro hac vice*)
**K&L GATES LLP**
Suite 1200
4 Embarcadero Center
San Francisco, CA 94111
Tel.: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

**ATTORNEYS FOR PLAINTIFF**
**KOSS CORPORATION**

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on February 19, 2021, I electronically filed the foregoing with the Clerk

of Court using CM/ECF system which will send notifications of such filing to the following:

**<u>Counsel for Apple, Inc.:</u>**
Stephen E. McConnico (State Bar No. 13450300)
Steven J. Wingard (State Bar No. 00788694)
Stephen L. Burbank (State Bar No. 24109672)
**SCOTT DOUGLASS & MCCONNICO**
Colorado Tower
303 Colorado St., Ste. 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 495-6399
smcconnico@scottdoug.com
swingard@scottdoug.com
sburbank@scottdoug.com

Michael T. Pieja
Alan E. Littmann
Samuel E. Schoenburg
**GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP**
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
sschoenburg@goldmanismail.com

**<u>Counsel for Skullcandy Inc.:</u>**
Barry K. Shelton
Bradley D. Coburn
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX 78734-4775
bshelton@sheltoncoburn.com
coburn@sheltoncoburn.com
(512) 263-2165 (Telephone)
(512) 263-2166 (Facsimile)

504155544 v7

**Counsel for Poly:**

Katherine Vidal
Eimeric Reig-Plessis
**WINSTON & STRAWN LLP**
275 Middlefield Road
Menlo Park, CA 94025
Tel. (650) 858-6500
Fax (650) 858-6550
kvidal@winston.com
ereigplessis@winston.com

Samantha M. Lerner
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel. (312) 558-5600
Fax (312) 558-5700
slerner@winston.com

Katrina G. Eash
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Tel. (214) 453-6500
Fax (214) 453-6400
keash@winston.com

*/s/ Darlene F. Ghavimi*
Darlene F. Ghavimi

504155544 v7