**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| KOSS CORPORATION, | |
| Plaintiff, | |
| v. | Case No. 6:20-cv-00663-ADA |
| | **DEMAND FOR JURY TRIAL** |
| PLANTRONICS, INC. and POLYCOM, INC., | |
| Defendants. | |
| KOSS CORPORATION, | |
| Plaintiff, | |
| v. | Case No. 6:20-cv-00664 |
| | **DEMAND FOR JURY TRIAL** |
| Skullcandy, Inc., | |
| Defendant. | |
| KOSS CORPORATION, | |
| Plaintiff, | |
| v. | Case No. 6:20-cv-00665 |
| APPLE INC., | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

**PLAINTIFF KOSS CORPORATION'S REPLY CLAIM CONSTRUCTION BRIEF**

## Table of Contents

I.     Introduction .................................................................................................................. 1

II.    Argument ..................................................................................................................... 2

    1.     "a remote, network-connected server that is in wireless communication
        with the mobile, digital audio player" .................................................................. 2

    2.     "the processor is for, upon activation of a user-control of the headphone
        assembly, initiating transmission of a request to the remote, network-
        connected server" .............................................................................................. 4

    3.     "in a second audio play mode, the earphones play audio content streamed
        from the remote, network-connected server" ...................................................... 5

    4.     "a signal strength level for the second wireless communication link" ................... 7

    5.     "upon activation of the microphone by the user, data are transmitted about
        the headphone assembly to a remote device" ...................................................... 8

    6.     "the processor circuits of the headphones are configured to receive
        firmware upgrades transmitted from a remote network server" ......................... 10

    7.     "data are transmitted about the headphone assembly to a remote
        device"/"remote device" .................................................................................... 11

    8.     "host servers" ................................................................................................... 11

    9.     "wherein the headphone assembly is configured, with the processor, to
        transition automatically from playing digital audio content received
        wirelessly by the headphone assembly via a first wireless network to
        playing digital audio content received wirelessly by the headphone
        assembly via a second wireless network" ........................................................... 14

    10.    "wherein the docking station comprises a power cable for connecting to an
        external device" ................................................................................................ 15

    11.    "a passive, wireless rechargeable power source" ................................................ 15

III.   Conclusion ................................................................................................................. 17

Plaintiff Koss Corporation ("Koss") respectfully submits this reply claim construction brief regarding the proper constructions for the six patents-in-suit:  U.S. Patent Nos. 10,206,025 ("'025 Patent"); 10,298,451 ("'451 Patent), 10,368,155 ("'155 Patent"), 10,469,934 ("'934 Patent"), 10,491,982 ("'982 Patent) and 10,506,325 ("'325 Patent) (collectively the "Patents-in-Suit").[1]

## I.    Introduction

Federal Circuit precedent is clear that a Court should not construe a claim term beyond its plain and ordinary meaning if the term is "a 'straightforward term' that require[s] no construction." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015).  Defendants Apple Inc., Plantronics, Inc., Polycom, Inc., and Skullcandy, Inc. ("Defendants") advance the erroneous position that "[t]he law requires the claims to be construed" to justify construction of the claims at issue in this case.  (Dkt. No. 57 (Defendant's Opening Claim Construction Brief) at 9).

Claim construction is "not an obligatory exercise in redundancy."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  If a disputed term is "comprised of commonly used terms," each one "used in common parlance" without any "special meaning in the art," the Court need not construe it.  *Summit 6*, 802 F.3d at 1291.  In such situations, "the plain and ordinary meaning of the disputed claim language is clear."  *Id.*; *see also Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797–98 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 648 (2019).

Defendants' proposed constructions should be rejected because they seek to replace the plain language of the claims in an effort to improperly limit the scope of the claims and turn claim

---

[1]    The '025 Patent, the '155 Patent, the '025 Patent, the '982 Patent, and the '325 Patent are continuations and share a specification; they may be referred to collectively herein as the "Headphone Asserted Patents."  The '451 Patent is unrelated (by patent family) to the Headphone Asserted Patents.  All six Patents-in-Suit were attached as exhibits to Koss's opening brief (Dkt. No. 48 in Case No. 6:20-cv-00665

1

construction into summary judgment of non-infringement or invalidity.  (*See* Dkt. No. 57 at 36 and 22).  Defendants' arguments in support of their proposed constructions are simply disguised factual disputes about infringement and invalidity which have no place in claim construction.

Defendants' brief does not identify any purported disavowal or disclaimer of claim scope and instead improperly construe the claims in light of Koss' infringement contentions. This runs afoul of Federal Circuit precedent.  *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("claims may not be construed with reference to the accused device.").

In addition, Defendants' heavy reliance on extrinsic evidence in the form of testimony from Dr. Christopher Hansen further underscores the impropriety of Defendants' proposed constructions; of the eleven terms Defendants seek to construe, Dr. Hansen plays a prominent role in all but two.  As is the case here, where "the technology involved is uncomplicated, and the claims are unambiguous, expert testimony is not needed." *Lighthouse Consulting Grp., LLC v. BB&T Corp.*, 476 F. Supp. 3d 532, 540 (W.D. Tex. 2020).

## II.    Argument

The claims of the asserted patents are clear and unambiguous and no construction of the terms proposed by Defendants is necessary.  Defendants do not identify any basis to deviate from the long-accepted understanding that claim terms are to be afforded their plain and ordinary meaning.  Because the plain language of the claims provides sufficient clarity as to the metes and bounds of the invention, Defendants' proposed constructions, as set forth below, are improper and should not be adopted.

### 1.    "a remote, network-connected server that is in wireless communication with the mobile, digital audio player"

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "a remote, network-connected server that is in wireless | plain and ordinary | "Wireless communication: communication without wires" |

| communication with the mobile, digital audio player" ('025 Patent – claim 1) ('934 Patent – claims 1 and 58) | meaning | |
| --- | --- | --- |

Defendants allege the term "wireless communications" should be construed by adding one word to a two-word phrase:  as "communication without wires".  Contrary to this proposal, Defendants' expert, Dr. Hansen (and therefore Defendants) effectively believe that the term "wireless communication" means "the transmission of information from a source to a destination over a wireless channel [where a] wireless channel has no wired connection from the source to the destination."  (Dkt. No. 57-4, Ex. C, Declaration of Dr. Hansen).  When asked at deposition to clarify this statement, Dr. Hansen refused to provide any explanation other than repeating these two sentences of his declaration.  (Exhibit A, Deposition of Dr. Christopher Hansen, 43:4-56:8).

Setting aside Dr. Hansen's testimony as inconsistent with Defendants' proposal, his testimony, and reliance on Defendant-selected dictionaries, is an example of exactly what this court must discount under *Phillips v. AWH Corp.*  415 F.3d 1303, 1318 (Fed. Cir. 2005) ("extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence"); *see also id.* at 1321 (Dictionaries shift the focus to the abstract meaning of a word "rather than on the meaning of claim terms within the context of the patent").

As Koss predicted in its Opening Brief, Defendants are attempting to require that no wire exists anywhere in the data stream between the claimed server and the claimed media player, an interpretation that is at odds with the plain meaning of the claims as well as the specification and the figures itself.  In support of this theory, Defendants need to point to extrinsic evidence—as the intrinsic record does not support this extreme view of this term—exactly the type of evidence and reliance *Phillips* belies as improper.  *Id.*

3

For example, the '025 Patent states, when describing Figure 2D, "the earphone 10 may connect via the wireless network 30 a to a network-enabled host server 40. The host server 40 may be connected to the wireless network 30 a via an electronic data communication network 42, such as the Internet." ('025 Patent, 5:54-58).  The '025 Patent certainly contemplates an embodiment where a network-connected server transmits data that, in reaching the destination, traverses a wireless network.  It is improper to read in the limitation that the entire path needs to be without wires.  Affording this term the plain and ordinary meaning of the claim language, based on the language of the actual claim, does not redraft any limitation nor is it inconsistent with any intrinsic record.

The claimed communication does occur without wires and is therefore facially within the plain language of the claims.  It is only when looking at what Defendants' implicit proposal is – a total lack of wires from server to device – that the unnatural limitations included in the Defendants' proposal come to light.  For this, Defendants' proposal should be rejected as unduly limiting and this Court should decline to construe this facially clear claim term.

   2.    "the processor is for, upon activation of a user-control of the headphone assembly, initiating transmission of a request to the remote, network-connected server"

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "the processor is for, upon activation of a user-control of the headphone assembly, initiating transmission of a request to the remote, network-connected server"<br><br>('025 Patent – claim 1)<br>('934 Patent – claims 3, 5, 11, 16, 19, 28, 37, 39, and 60) | plain and ordinary meaning | "Causing the earphone to address a request to the remote, network-connected server instead of the digital audio player" |

This claim element does not require "address[ing]" in any form or fashion, and Defendants' attempt to add this concept to a plainly understandable term without justification is improper. Defendants' opening brief does not explain why the limitations it seeks to add are appropriate, other than as a clear attempt to adjudicate non-infringement.  Defendants identify no definitional language.  *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Instead, the proposed construction improperly imports limitations from the specification into the claim. Importantly, Dr. Hansen's testimony (and Defendants' reliance thereon) that "a request must be directed to a specific logical or physical entity or group of entities (Dkt No. 57-4, Ex. C at ¶25) should be disregarded as overly limiting.  Dr. Hansen ignores other, non-specifically addressed communication such as a cellular telephone first connecting to a new network by transmitting information that is not addressed, as it has not yet received an address of any local tower, pass through communication, or re-encapsulation or aggregation of transmissions, for example. (*See* Exhibit A at 65:7-67:23).

*Thorner* necessitates the adoption of Koss's proposals.  Defendants identify an embodiment being described in the specification and from that embodiment, Defendants attempt to redefine words of the claims.  But the Federal Circuit has already rejected this approach because it "do[es] not redefine words."  *See Thorner*, 669 F.3d at 1366.  Defendants have not articulated any basis to deviate from the plain and ordinary meaning of this term, nor have they identified any support in the specification or in the prosecution history for their unduly limiting proposal.  This term should be given its plain and ordinary meaning.

> 3.     **"in a second audio play mode, the earphones play audio content streamed from the remote, network-connected server"**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "second audio play mode" | plain and ordinary | "Second audio play mode: a mode in which the earphones communicate |

| | | |
|---|---|---|
| ('025 Patent – claims 2, 12, 21, 30, and 42)<br>('934 Patent – claims 2, 15, 24, 36, and 59) | meaning | with the server over an infrastructure wireless network; otherwise indefinite" |

Defendants seemingly ignore the remaining portion of this claim term by focusing on "second audio play mode," and alleging that "the term was counted for use in the patents, and no 'ordinary' meaning exists." (Dkt. No. 57 at 16). This is incorrect because it is common claim drafting practice for a patent applicant to introduce a first of a group and explain what happens in that first portion, then introduce a second of the group and explain what happens in that second portion, which exactly how this term is used in the context of the claim as a whole.

In the first audio play mode, claim 2 of the '025 Patent states "the first and second earphones play audio content stored on the mobile, digital audio player and transmitted to the headphone assembly from the mobile, digital audio player via the one or more ad hoc wireless communication links" and "in a second audio play mode, the earphones play audio content streamed from the remote, network-connected server." ('025 Patent at Cl. 2). It is unclear why Defendants contend the plain language of the claims "impermissibly causes the 'first' audio play mode to swallow the 'second.'" (Dkt. No. 57 at 16). Defendants and Dr. Hansen dissect the term "second audio play mode" from the remainder of the term and then contend that one cannot ascertain the scope of what occurs in such a mode; ignoring the plain language of the claim that explains exactly what happens in the second audio play mode: the earphones play audio content streamed from the remote, network-connected server.

Again, Defendants seek to adjudicate infringement and validity at this stage; however this is not the proper avenue for such an inquiry. Instead, the face of the claims confirm exactly what must be present in the first audio play mode as well as the Defendants' identified term, "second audio play mode."

6

Defendants argue that if their proposed construction is not adopted than the term be indefinite. They present no argument to establish the claim is indefinite and as such cannot carry their clear and convincing burden to establish invalidity. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). As no argument has been presented in Defendants' Opening Brief, Defendants have waived any argument that this term is indefinite.

### 4. "a signal strength level for the second wireless communication link"

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "a signal strength level for the second wireless communication link"<br><br>('025 Patent – claims 4, 5, 7, 9, 14, 15, 17, 19, 23, 24, 26, 28, 32, 33, 35, 37, 44, 45, 47, 49, and 50)<br>('155 Patent – claims 11 and 12)<br>('934 Patent – claims 4, 6, 8, 12, 13, 17, 18, 20, 22, 26, 27, 29, 31, 38, 40, 41, 44, and 58)<br>('982 Patent – claims 6 and 11)<br>('325 Patent – claims 5 and 11) | plain and ordinary meaning | "A measurement of the strength of a signal received by the [headphone assembly / headphones]" |

Defendants again seek to add unclaimed limitation based on a reference to RSSI in the specification. (Dkt. No. 57 at 21). This proposal improperly seeks to limit the claims to a single embodiment. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."). Defendants go on to rely on unnecessary extrinsic evidence in the form of dictionaries and expert testimony. *Phillips*, 415 F.3d at 1318. There is nothing in Defendants' brief or elsewhere in the intrinsic record that supports limiting the construction to the RSSI value as Defendants argue.

The plain language of this claim term is clear and Defendants' attempt to rewrite the language of the claim should be disregarded.  Instead, the Court should decline to construe this term and afford it its plain and ordinary meaning.

> **5.** **"upon activation of the microphone by the user, data are transmitted about the headphone assembly to a remote device"**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "upon activation of the microphone by the user, data are transmitted about the headphone assembly to a remote device"<br><br>('025 Patent – claims 8, 18, 27, 36, and 48)<br>('934 Patent – claims 7, 21, 30, 45, and 61) | plain and ordinary meaning | "Remote: The term "remote," as used here and throughout the asserted claims, is indefinite;<br>alternatively, "remote device" means a device external to the headphone assembly;<br>data are transmitted is indefinite" |

Defendants argue that "remote" means "separated by a distance greater than usual" (Dkt. No. 57 at 22) yet also argue "remote" means "a device external to the headphone assembly" (Defendants' Proposed Construction) and it also means "far apart; far distant in space" (Dkt. No. 57 at 22), "not local" (Dkt. No 57 at 23), and "separate from" (*Id.*).  Defendants go on to explain that in the patent, "remote" also means close enough to be connected via a wire and point to Figure 11.  (*Id.*).  Throughout Defendants' brief, they never contend why the term "remote" needs to have its plain and ordinary meaning disturbed.

While the various dictionaries, other cases (which involve different technologies), and expert testimony may support Defendants' argument that there may be different ways of understanding, Defendants' brief confirms that the term is a broad term, covering the gamut from "not co-located" to "separated by great distance."  This does not establish the term is indefinite, merely that the term "remote" is broad.  *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367

(Fed. Cir. 2017) ("breadth is not indefiniteness"). This is consistent with Defendants' own brief. (Dkt. No. 57 at 24 ("it is broader")).

Second, there is no basis for importing or rewriting the claim language with "external to" when "remote" is sufficiently clear. Defendants' single paragraph (Dkt. No. 57 at 19-20) fails to explain sufficient basis to re-write this term. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("Courts cannot rewrite claim language.")

Defendants go on to allege that by claiming "upon activation of the microphone by the user, data are transmitted about the headphone assembly to a remote device" the claim is indefinite because it recites a method within an apparatus claim. (Dkt. No. 57 at 26). This claim does not require any action be performed. It explains what functionality the claimed microphone and corresponding headphones are capable of performing. This is akin to a "configured to" claim that requires certain functionality be present, not actually performed. *See e.g.*, U.S. Patent No. 10,469,939 to Apple (claiming headphones with a "plurality of acoustic dampeners being configured to dampen standing wave resonances"). This type of claiming is not indefinite. *See Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 41–42 (Fed. Cir. 2020). Further, Defendants' brief fails to meet the clear and convincing burden necessary to establish invalidity of a claim at this juncture.

Again, Defendants' dissection of the claim language is disingenuous as, when taken in the context of the entire claim, this term is clearly not indefinite nor is it a method step. When taken out of context, "data are transmitted" appears to be an affirmative verb requiring a step, however this is not the case and Defendants' attempts to ignore the remaining limitations in the claim should not color this Court's judgment. This term is facially clear and needs no construction such that

Defendants' constructions should be ignored and the term merely be afforded its plain and ordinary meaning.

### 6.     "the processor circuits of the headphones are configured to receive firmware upgrades transmitted from a remote network server"

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "the processor circuits of the headphones are configured to receive firmware upgrades transmitted from a remote network server"<br><br>('025 Patent – claims 10, 38, 51)<br>('155 Patent – claim 13)<br>('934 Patent – claims 1, 46, 62)<br>('325 Patent – claim 9) | plain and ordinary meaning | The remote, network connected server transmits firmware upgrades to the headphone assembly: the remote, network-controlled server pushes firmware upgrades to the earphones from the server |

Defendants' proposal improperly adds limitations not present in the claim. The claim does not require the server "push" and upgrade as Defendants propose.  Defendants' argument unduly limits a number of sentences as discrete embodiments, and in doing so ignores the conjunction and/or that appears in both sentences.  (Dkt. No. 57 at 28-29).  Each of the sentences Defendants identify includes an "and/or" suggesting that these are not discrete embodiments, but merely exemplary disclosures that are not intended to be limiting.   Indeed, at the first and second "embodiments" that Defendants allege are discrete, the specification actually states "[t]he host server 40 (or some other server) **may** also push firmware upgrades and/or data updates to the earphone 10 using the IP addresses of the earphone 10 via the networks 30, 42. **In addition, a user could** download the firmware upgrades and/or data updates from the host server 40 to the client computing device 202."  ('025 Patent at 9:41-49 (emphasis added)).  These are not discrete embodiments and Defendants' willingness to remove language from the quotations and insert brackets only underscores the impropriety of the Defendants' position.

The entirety of Defendants' argument for this term is premised on an improper understanding that this single sentence should be understood to be two discrete embodiments, which is both unsupported and contrary to the language that the Defendants omitted from the sentence in their opening brief. The scope of this claim term is clear on its face and need not be re-written as argued by Defendants. This Court should decline to construe this term and instead leave the term to its plain and ordinary meaning.

### 7. "data are transmitted about the headphone assembly to a remote device"/"remote device"

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "data are transmitted about the headphone assembly to a remote device"<br><br>('025 Patent - claims 8, 18, 27, 36, and 48)<br>('934 Patent - claims 7, 21, 30, 45, and 61) | plain and ordinary meaning | The term "remote" as used here and throughout the asserted claims is indefinite;<br><br>alternatively, "remote device" means a device external to the headphone assembly<br><br>data are transmitted about the headphone assembly: indefinite |

This term has been addressed by all parties in the "upon activation…" term. *See* II.5.

### 8. "host servers"

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "host servers"<br><br>('451 Patent - Claims 1 and 18) | plain and ordinary meaning | A server that hosts a website through which a user inputs credential data for at least one infrastructure wireless network;<br><br>Alternatively, indefinite |

Defendants' proposal for "host servers" takes a straightforward two-word term and transforms it into a convoluted 20-word construction; on top of this, Defendants allege this term is somehow indefinite. There is no basis for taking a clear term such as "host servers" and adding

the volume of limitations in Defendants' proposal, nor is there any cognizable theory that the term is indefinite.

Again, Defendants' proposal improperly attempts to limit a claim term to a preferred embodiment. *Cont'l Cirs*, 915 F.3d at 797; *Liebel-Flarsheim*, 358 F.3d at 906 ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" (cleaned up).[2] Defendants are correct in the sense that the quoted portions of the specification describe a "host" in that manner, but they are incorrect that the term should be limited when a single embodiment of the term is used in the specification. *Id.*

Defendants argue that there is an implicit definition due to consistent use of the term host throughout the patent. Claims are not construed apart from the plain and ordinary meaning based on "implicit" definitions. *Thorner*, 669 F.3d at 1365 (to constitute definitional language, the patentee must "'clearly set forth a definition of the disputed claim term,'" and "'clearly express an intent' to redefine the term" in either the specification or during prosecution.).

Defendants' argument fails to note that the '451 Patent explicitly states that "[a] 'computer,' 'computer system,' '**host**,' '**server**,' or 'processor' **may be**, for example and without limitation, a processor, microcomputer, minicomputer, server, mainframe, laptop, personal data assistant (PDA), wireless e-mail device, cellular phone, pager, processor, fax machine, scanner, or any other programmable device configured to transmit and/or receive data over a network." ('451 Patent at 7:39-45 (emphasis added)). Defendants also ignore that the '451 Patent states "[a]ny

---

[2] https://www.abajournal.com/news/article/justice-thomas-goes-rogue-on-the-bluebook-with-cleaned-up-citation-to-the-delight-of-appellate-lawyers?

servers described herein, for example, may be replaced by a "server farm" or other grouping of networked servers (such as server blades) that are located and configured for cooperative functions" and "[w]hile various embodiments have been described herein, it should be apparent that various modifications, alterations, and adaptations to those embodiments may occur to persons skilled in the art with attainment of at least some of the advantages. The disclosed embodiments are therefore intended to include all such modifications, alterations, and adaptations without departing from the scope of the embodiments as set forth herein." (*Id.* at 7:65-8:28). The intent of the specification of the '451 Patent is not to be as limiting as Defendants allege and the plain language of the '451 Patent confirms that Defendants' arguments regarding importing of embodiments and implicit definitions are improper.

Accordingly, this Court should decline to construe this term as Defendants' propose and instead ascribe its plain and ordinary meaning as there has been no basis to deviate from such an understanding.

Defendants allege that "the term 'host server' is indefinite because it does not 'inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" (Dkt. No. 57 at 34-35). The remainder of the claim informs about the scope of the invention. For example, in claim 1, the "host server" must "receive and store credential data for an infrastructure wireless network provided by the wireless access point." Defendants provide no explanation as to why this language fails to inform the scope of the invention. Once again Defendants' construction ignores the remaining language of a claim and only considers discrete portions of the claimed invention in the abstract, without the context of the remaining claim language. However, it is facially clear from the claim language as a whole what the host server is and what it does, such that Defendants' arguments regarding indefiniteness should be disregarded.

13

9.    **"wherein the headphone assembly is configured, with the processor, to transition automatically from playing digital audio content received wirelessly by the headphone assembly via a first wireless network to playing digital audio content received wirelessly by the headphone assembly via a second wireless network"**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "wherein the headphone assembly is configured, with the processor, to transition automatically from playing digital audio content <u>received wirelessly by the headphone assembly</u> via a first wireless network to playing digital audio content received wirelessly by the headphone assembly via a second wireless network"<br><br>('155 Patent – claim 1) | plain and ordinary meaning | wherein the headphone assembly is configured, with the processor, to transition automatically from playing digital audio content <u>received wirelessly **from a source** by the headphone assembly</u> via a first wireless network to playing digital audio content received wirelessly from the source by the headphone assembly via a second wireless network |

Once again, Defendants attempt to limit the scope of clear claim language and import unclaimed limitations by rewriting the allowed claim language to include unclaimed language, specifically adding in three words "from a source" without any basis to do so. Contrary to Defendants' brief, Koss's construction does not re-write any limitation, it is instead Defendants' construction that rewrites the claim language by adding addition language. (Dkt. No. 57 at 36).

Defendants provide no legal support that it is proper to add unclaimed limitations, even if those unclaimed limitations are used to describe an embodiment in the specification. In fact, Defendants' own brief confirms that there are embodiments disclosed in the specification where the source of audio information after the transition as compared to before the transition. (Dkt. No. 57 at 38 (citing '155 Patent at 11:57-64 (switching from data source 20 to host server 40))). Defendants argue that in this discrete section, the earphone is not playing digital audio content before and after the transition. (Dkt. No. 57 at 38-39). However, a patent specification is not

required to disclose all possible permutations of the invention.  *United States v. Telectronics, Inc.*, 857 F.2d 778, 786 (Fed. Cir. 1988); *SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (the law does not require an applicant to describe in his specification every conceivable embodiment of the invention).  By disclosing both the transition from one network to another, and disclosing that the transitioning can occur while playing, the does not need to disclose all possible iterations of such actions, and Defendants' attempts to add unclaimed limitations to this claim are improper.

Accordingly, this Court should decline to construe this term as Defendants propose and instead ascribe its plain and ordinary meaning as there has been no basis to deviate from such an understanding.

> **10.**  **"wherein the docking station comprises a power cable for connecting to an external device"**

As conceded by Defendants, the language of the claim element is clear and no construction is necessary.  (Dkt. No. 57 at 39).

> **11.**  **"a passive, wireless rechargeable power source"**

| Claim Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "a passive, wireless rechargeable power source"<br><br>('982 Patent - Claim 17)<br>('325 Patent - Claims 8 and 17) | plain and ordinary meaning | A capacitor; otherwise, indefinite |

Defendants' proposal improperly relies on extrinsic expert testimony that does not support their construction. Dr. Hansen was unable to articulate any technological understanding of batteries, capacitors, or circuits, beyond what was present in his declaration.  (Dkt. No. 57 at 39-41).  For example, Dr. Hansen could not explain how a battery releases energy (Exhibit A at 76:7-77:6) but was able to parrot back what the declaration said.  (*Id.* at 77:5-6 ("A rechargeable battery,

**as I describe there**, I believe **that's what it says**, yes.") (emphasis added)).   Nevertheless, Dr. Hansen was forced to admit that both a battery and a capacitor store and release energy, contrary to Defendants' position that a rechargeable battery is "active" because it undergoes a reversible chemical reaction during charge and discharge.   (Dkt. No. 57 at 40).   Dr. Hansen admitted that the primary purpose of a battery is to store energy, and release that stored energy into a circuit to power the circuit.   (*Id.* at 80:10-13).   He similarly admitted that a capacitor stores energy and releases that stored energy to power a circuit.   (*Id.* at 82:12-83:14).   Thus, contrary to Defendants' argument, each of a battery and a capacitor are a passive, wireless rechargeable power source.

Defendants also performed a Google search for the exact claim term "passive wireless rechargeable power source," and allege that because the character string searched does not appear anywhere else, it must have no accepted meaning.   This is nothing more than a red-herring and ignores the plain meaning of these adjectives.   For example, if a search is performed for "orange Apple iPhone charging device," no results are returned for that exact text string (assuming the search puts those words in quotations into a search bar, as in Defendants' search, *see* Dkt. No. 57-5 Ex. D).   However, the plain language of that phrase is clear: a charging device for an Apple iPhone that is orange.   Similarly, a "passive, wireless rechargeable power source" is simply a power source that is wirelessly rechargeable and is passive (e.g., the battery or the capacitor disclosed in the '982 Patent at 6:60-7:12).   It is improper to exclude a preferred embodiment as Defendants seek to do.   *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1373 (Fed. Cir. 2020).

There is no need to articulate what this term means beyond what it says it means:  a passive, wireless rechargeable power source.   There is no ambiguity with regard to this term and the Court

should decline to adopt Defendants' unduly limiting construction and instead afford this term its plain and ordinary meaning.

## III.    Conclusion

Koss respectfully asks this Court to reject Defendants' insupportably narrow constructions for the terms addressed above and instead adopt Koss's proposal that the terms need not be construed and that the plain and ordinary meaning of the terms, as evidenced by the words of the claims themselves, be adopted.

Dated: March 26, 2021                                      Respectfully submitted,

                                                           /s/ *Darlene F. Ghavimi*
                                                           Darlene F. Ghavimi (TX Bar No. 24072114)
                                                           **K&L GATES LLP**
                                                           2801 Via Fortuna, Suite #350
                                                           Austin, TX 78746
                                                           Tel.: (512) 482-6919
                                                           Fax: (512) 482-6859
                                                           darlene.ghavimi@klgates.com

                                                           Benjamin E. Weed (admitted *pro hac vice*)
                                                           Philip A. Kunz (admitted *pro hac vice*)
                                                           Erik J. Halverson (admitted *pro hac vice*)
                                                           Gina A. Johnson (admitted *pro hac vice*)
                                                           **K&L GATES LLP**
                                                           Suite 3300
                                                           70 W. Madison Street
                                                           Chicago, IL 60602
                                                           Tel.: (312) 372-1121
                                                           Fax: (312) 827-8000
                                                           benjamin.weed@klgates.com
                                                           philip.kunz@klgates.com
                                                           erik.halverson@klgates.com
                                                           gina.johnson@klgates.com

                                                           Peter E. Soskin (admitted *pro hac vice*)
                                                           **K&L GATES LLP**

Suite 1200
4 Embarcadero Center
San Francisco, CA 94111
Tel.: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

**ATTORNEYS FOR PLAINTIFF**
**KOSS CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on March 26, 2021, I electronically filed the foregoing with the Clerk of

Court using CM/ECF system which will send notifications of such filing to the following:

**<u>Counsel for Apple, Inc.:</u>**
Stephen E. McConnico (State Bar No. 13450300)
Steven J. Wingard (State Bar No. 00788694)
Stephen L. Burbank (State Bar No. 24109672)
**SCOTT DOUGLASS & MCCONNICO**
Colorado Tower
303 Colorado St., Ste. 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 495-6399
smcconnico@scottdoug.com
swingard@scottdoug.com
sburbank@scottdoug.com

Michael T. Pieja
Alan E. Littmann
Samuel E. Schoenburg
**GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP**
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
sschoenburg@goldmanismail.com

**<u>Counsel for Skullcandy Inc.:</u>**
Barry K. Shelton
Bradley D. Coburn
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX 78734-4775
bshelton@sheltoncoburn.com
coburn@sheltoncoburn.com
(512) 263-2165 (Telephone)
(512) 263-2166 (Facsimile)

**Counsel for Poly:**

Katherine Vidal
Eimeric Reig-Plessis
**WINSTON & STRAWN LLP**
275 Middlefield Road
Menlo Park, CA 94025
Tel. (650) 858-6500
Fax (650) 858-6550
kvidal@winston.com
ereigplessis@winston.com

Samantha M. Lerner
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel. (312) 558-5600
Fax (312) 558-5700
slerner@winston.com

Katrina G. Eash
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Tel. (214) 453-6500
Fax (214) 453-6400
keash@winston.com

*/s/ Darlene F. Ghavimi*
Darlene F. Ghavimi