**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION**

KOSS CORPORATION,

    Plaintiff,

v.

APPLE, INC.,

    Defendant.

Case No. 6:20-cv-00665-ADA

**PUBLIC VERSION**

**PLAINTIFF KOSS CORPORATION'S OPPOSITION TO APPLE'S MOTION TO
TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

III. LEGAL STANDARD ..................................................................................................... 4

IV. ARGUMENT ................................................................................................................... 5

    A. The Private Factors Weigh Against Transfer .......................................................... 5

        1. The relative ease of access to sources of proof .......................................... 5

        2. The availability of compulsory process to secure the attendance of witnesses ................................................................................................ 7

        3. The cost of attendance for willing witnesses ............................................. 8

        4. All other practical problems that make trial of a case easy, expeditious and inexpensive ..................................................................... 11

    B. The Public Factors Weigh Against Transfer ......................................................... 12

        1. The administrative difficulties flowing from court congestion ................ 12

        2. The local interest in having localized interests decided at home ............. 13

        3. The familiarity of the forum with the law that will govern the case; the avoidance of unnecessary problems of conflict of laws of the application of foreign law ............................................................. 14

V. CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
 358 F.3d 337 (5th Cir. 2004) ...................................................................................................4

*ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*,
 No. A-09-CA-773-LY, 2010 WL 1170976 (W.D. Tex. Mar. 23, 2010) ...................................8

*In re Apple Inc.*,
 979 F.3d at 1345 .....................................................................................................................12

*Cloud of Change, LLC v. NCR Corp.*,
 No. 6:19-cv-00513, 2020 WL 6439178 (W.D. Tex. Mar. 17, 2020).........................................8

*Continental Grain Co. v. The FBL-585*,
 364 U.S. 19 (1960)..................................................................................................................11

*Fintiv, Inc. v. Apple Inc.*,
 No. 6:18-cv-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sep. 13, 2019) .......................5, 8, 9

*MV3 Partners LLC v. Roku Inc.*,
 No. 6:18-CV-00308-ADA, 2019 WL 10981851 (W.D. Tex. Jun. 25, 2019) ...........................6

*ParkerVision, Inc. v. Intel Corp.*,
 No. 6:20-cv-00108-ADA, 2021 WL 401989 (W.D. Tex. Jan. 26, 2001) ................................13

*Parus Holdings Inc. v. LG Electronics Inc.*,
 No. 6:19-CV-00432, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020).......................4, 8, 10, 11

*Solas OLED Ltd. v. Apple Inc.*,
 No. 6:19-cv-00537-ADA, 2020 WL 3440956 (W.D. Tex. Jun. 23, 2020).........................3, 12

*STC.UNM v. Apple Inc.*,
 No. 6:19-cv-00428-ADA, 2020 WL 4559706 (W.D. Tex. Apr. 1, 2020) ....................9, 10, 11

*In re Volkswagen AG*,
 371 F.3d 201 (5th Cir. 2004) ...................................................................................................4

*In re Volkswagen of Am., Inc.*,
 545 F.3d 304 (5th Cir. 2008) ..............................................................................................4, 14

*In re Volkswagen of Am., Inc.*,
 566 F.3d 1349 (Fed. Cir. 2009)...............................................................................................11

-iii-

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................................1, 11

Plaintiff Koss Corporation ("Koss") opposes Apple, Inc.'s ("Apple's") Motion to Transfer to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I.     INTRODUCTION

Apple contends that it would be more convenient to litigate this case in the Northern District of California, but its motion to transfer fails to satisfy Apple's high burden to establish that the Northern District of California is *clearly more convenient* than the Western District of Texas. Apple asserts that transfer is proper because it claims that some of the employees most knowledgeable about the accused products live and work in the Bay Area, and because one of the eight inventors of the patents-in-suit lives in Sacramento.

Apple's arguments fail to meet the high burden required for transfer under the public and private interest factors. In fact, analyzing all relevant facts reveals (1) Apple's substantial, intentional, and ongoing presence in this district; (2) that Apple employees in this district have relevant knowledge about development of the accused products; (3) that Koss filed five separate cases in this district with overlapping patents, and that all five cases are presently pending before this Court; (4) Koss has substantial ties to this district; (5) Koss documents are located in Texas; (6) this district is more convenient for Koss witnesses than the Northern District of California; and (7) two third party witnesses reside in this district. The evidence thus falls far short of a demonstration that litigation in the Northern District of California is clearly more convenient than litigating here, in Koss' venue of choice.

## II.    BACKGROUND

Koss sued five companies in the Western District of Texas for patent infringement: Apple, Bose Corporation, JLAB Audio, Plantronics, Inc., and Skullcandy, Inc. (Dkt. 34-10, 34-11, 34-12, and 34-13). These complaints assert overlapping patents; claim construction briefing has

commenced for the Apple, Plantronics, and JLAB defendants; and a *Markman* hearing is set for April 22, 2021. (Dkt. 30). Each defendant has moved to dismiss for lack of venue or to transfer its case to another forum, and only Plantronics and Apple request transfer to the Northern District of California.

Koss is a Delaware corporation with offices in Wisconsin. (Dkt. 1, ¶ 2). Koss' connections to Texas, however, go back decades. Since the late 1960's, Texas-based RadioShack has been one of the most important, if not the most important, customer of Koss headphone products. (Ex. A, Koss' Verified Interrogatory Responses, p. 6). Koss continues to have significant sales to Texas to customers such as HEB, AAFES (Army and Air Force Exchange Service), Securus Technologies, Academy Ltd., Simba Industries, First Texas Products, Aves Audiovisual Systems, Nolans Office & Promotional Products, Woot, Inc., Duckwall-Alco Stores, and others. (*Id*. at 6-7). Since 2017, Koss has sold ███████████████████████████████ to customers located in Texas, including several such customers headquartered in Austin. As a result of Koss' sales to customers in Texas, Koss pays Texas state income tax and files Texas state tax returns. (*Id*. at 7).

For the past 25 years, Koss has used a Texas-based third party entity, Synectics International, Inc. ("Synectics"), to manage its IT needs. (Ex. B, Declaration of Thomas Petrone, ¶¶ 5-13). Synectics developed and maintains Koss' website, maintains the servers that backup all of Koss' electronic files and communications, and store Koss' archival records, including product development and support files for Koss' Striva line of wireless headphones. (*Id*.) Synectics has offices in this district, Austin and Georgetown, headquarters in Farmers Branch, Texas, and servers located in Dallas. (*Id*.) Synectics' co-owner, Thomas Petrone is a relevant third-party witness who lives and works in Austin and is unwilling to travel to California for trial. (*Id.*)

-3-

Apple acknowledges that there are eight named inventors on the patents-in-suit. (Dkt. 34-1, § 6 and Dkt. 34-5). One of those inventors, Michael Sagan, lives near Sacramento, California, and the remaining seven in Wisconsin and in Illinois. (Dkt. 34, p. 10). However, Koss' counsel represents Mr. Sagan and Mr. Sagan will travel to Texas willingly for trial at Koss' expense. Further, the firmware for one relevant line of Koss wireless headphones, the Striva line, was initially developed by a company called Red Fusion. A former employee of Red Fusion who has relevant information, Mr. Hytham Alihassan, works and lives in Austin. (Ex. C, Alihassan LinkedIn profile). None of these factors support Apple's allegation that California is clearly more convenient, and in fact cut against such a finding.

Apple is headquartered in the Northern District of California, but has a large and growing presence in Austin. *See Solas OLED Ltd. v. Apple Inc.*, No. 6:19-cv-00537-ADA, 2020 WL 3440956, at *7 (W.D. Tex. Jun. 23, 2020). Apple employees in Austin work on various aspects of the accused products. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ And finally, Apple's job postings make clear that its Austin campus will continue to work on both technical and financial aspects of the Accused Products. On its website, Apple advertises such job openings and the postings are searchable by both location and relevant products and services. Selecting "Austin" as the location and three of the accused products (AirPods, Beats, and HomePods) as "Products and Services" yields 17 job postings. These postings, collected as Ex. E,

include numerous hardware engineering positions and a business development position, confirming the propriety of Apple defending its patent infringement in this district.

### III.     LEGAL STANDARD

The party moving to transfer a case for convenience has a high burden to show "good cause," meaning it must demonstrate that the transferee venue is clearly more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) ("*Volkswagen II*"). "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. To determine whether another venue is clearly more convenient, the court must first determine whether the action "might have been brought" in the judicial district to which transfer is requested. *Volkswagen II, of Am., Inc.*, 545 F.3d at 312. If so, then the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Although courts may "consider undisputed facts outside the pleadings, they must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Parus Holdings Inc. v. LG Electronics Inc.*, No. 6:19-

CV-00432, 2020 WL 4905809, at *2 (W.D. Tex. Aug. 20, 2020) (citing *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 16, 2019).

## IV.   ARGUMENT

This case clearly belongs in the Western District of Texas and Apple has not met its heavy burden to show otherwise. On consideration of the private and public convenience factors, Apple's motion should be denied.

### A.   The Private Factors Weigh Against Transfer

The private interest factors collectively weigh against transfer—one factor is neutral and the other three weigh against transfer.

#### 1.   The relative ease of access to sources of proof

The location of documents and other physical evidence, as considered by this factor, is neutral but also not entitled to much weight. As this Court has noted, in the modern electronic world, the "location" of documents no longer has a meaningful impact on convenience. *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *4 (W.D. Tex. Sep. 13, 2019) ("this factor is at odds with the realities of modern patent litigation" where "all (or nearly all) produced documents exist as electronic documents on a party's server"). Contrary precedent fails to account for the prevalence of remote access to documents relied upon during the pandemic.

Apple contends that most of the Apple documents relevant to this case are stored on servers in the Northern District of California. Apple submitted a declaration from an Apple employee, Mark Rollins, who stated that Apple "does not have any *unique* working files or documents relevant to this case located in the WDTX." (Dkt. 34-2, ¶ 8, emphasis added.) The word "unique" is notable. ▮

-5-

[redacted]

Moreover, Apple employees in Austin would certainly have access to documents stored on its California servers. Documents relevant to this case, therefore, could readily be downloaded or printed at Apple facilities in Austin as readily as Apple facilities in Northern California. *See MV3 Partners LLC v. Roku Inc.*, No. 6:18-CV-00308-ADA, 2019 WL 10981851, at *2 (W.D. Tex. Jun. 25, 2019) ("Other than stating that its documents are accessible from California, Roku does not provide any additional arguments regarding why it would be difficult or burdensome to make such documents available in Texas. Further, Roku does not explain why its Austin office would have difficulty gaining access to such documents."). Similarly, while Koss' offices are primarily located in the Midwest, its IT needs are handled by a Texas company, Synectics, and Koss documents are stored on its servers. Thus, while Koss documents are of course accessible from multiple locations, they are "located" in Texas, just as Apple asserts that certain of its documents are "located" in California.

Apple states that its source code is located in California (Dkt. 34, p. 8), but Mr. Rollins admitted in his declaration that the "source code can be accessed by Apple employees working on the Accused Features in California and, for certain Accused Features, Seattle, Boston, and Israel." (Dkt. 34-2, ¶ 8). Conspicuously, Mr. Rollins does not claim that Apple's source code cannot be accessed from Apple facilities in Austin. In any event, the location of source code is irrelevant to a convenience analysis because no matter where it is located, the source code inspection would take place at a location of Apple's choosing. Similarly, the location of Striva source code would

take place at a location of Koss's choosing. Because all relevant documents can be accessed remotely, this factor is neutral and, ultimately, should not be given significant weight.

### 2. The availability of compulsory process to secure the attendance of witnesses

At least two third party witnesses live in this district, in Austin, Texas. The availability of compulsory process over these witnesses tips this factor against transfer. Mr. Thomas Petrone, the co-owner of Synectics, the company that developed Koss' website and stores Koss documents, lives and works in Austin. Attending trial in California would be too great a burden for Mr. Petrone. (*See* Ex. B, ¶ 16). Mr. Alihassan, an individual who formerly worked at the company that designed firmware for Koss's Striva product, lives and works in Austin, Texas. Coincidentally, Mr. Alihassan is currently employed by another defendant in another case brought by Koss, and as such will very likely be an unwilling witness in either venue. To the extent he is an unwilling participant, Koss would only be able to secure Mr. Alihassan's attendance at trial by way of compulsory process of this court; the same would not be true in the Northern District of California.

Apple points to three potential witnesses that live within the subpoena power of the Northern District of California. (Dkt. 34, p. 9).[1] Michael Sagan, an inventor on three of the four asserted patents, lives in Sacramento, California. And, the seven other inventors of the asserted patents all of whom live in either Wisconsin or Illinois. Mr. Sagan's location in California does not help Apple because, as mentioned above, Koss' counsel is representing Mr. Sagan who has indicated he is willing to travel to Texas at Koss' expense.

Late last Friday, Apple suddenly identified two "important" prior art witnesses who live in in the Northern District of California. (Dkt. 50). These witnesses are former employees of

Plantronics, with knowledge of the development of a Plantronics product. (*Id.*). Even though Apple may have just learned of the existence of these individuals, it is interesting that Plantronics (who clearly had knowledge of these individuals) did not identify these individuals as potential third party witnesses in its motion to transfer. However, Apple's late identification of these witnesses does not impact the transfer analysis. As this Court has stated repeatedly, "prior art witnesses are generally unlikely to testify at trial, and the weight afforded their presence in this transfer analysis is minimal." *Cloud of Change, LLC v. NCR Corp.*, No. 6:19-cv-00513, 2020 WL 6439178, at *4 (W.D. Tex. Mar. 17, 2020) *see also Fintiv, Inc.*, 2019 WL 4743678, at *5; *Parus*, 2020 WL 4905809, at *4.

### 3. The cost of attendance for willing witnesses

Proper analysis of this factor concentrates on the cost of attendance to non-party witnesses, and the cost to party witnesses is given little weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010).

Most importantly, two non-party potential witnesses live in this district, Mr. Alihassan and Mr. Petrone, so the cost to these witnesses is minimal and strongly favors keeping the case in this venue. Seven of the eight inventors of the asserted patents live in either Illinois or Wisconsin, and although these witnesses will have to incur some travel expense, the expense (flight and accommodations) of traveling to Texas is much less than to San Francisco, California. The last inventor is located in the Northern District of California, but Koss is covering the cost of Mr. Sagan's travel expenses. Two purported prior art witnesses are located in the Northern District of California, but prior art witnesses are not likely to attend trial so any cost to them can be reduced or ignored. *See Cloud of Change*, 2020 WL 6439178 at *4.

For Koss witnesses and experts, keeping this case in this District would be less costly than transferring to California. Waco is closer to its Midwestern offices than California, and a less expensive travel destination. Koss has sued five defendants in this district for infringement. Trying multiple cases here, in a single Court, would be far more convenient for Koss witnesses (both fact and expert) than traveling to forums scattered across the country. If these cases are transferred to five different forums, then: (a) Koss witnesses would have to complete logistical planning anew for each case; and (b) the five cases would likely run on different schedules, with greatly separated trial dates, requiring witnesses to repeat planning and preparations over a longer period of time. Separating the cases would also make it difficult to consolidate discovery, likely resulting in additional depositions for each witness.

Apple contends that it has thirteen potential witnesses who live and work in the Bay Area, for whom trial in the Northern District of California would be more convenient. (Dkt. 34, p. 9). First, it is unlikely that Apple will call thirteen fact witnesses at trial. As this Court has stated, convenience determinations should not be made "by mechanically counting witnesses proffered by both sides," as that "could become an invitation for parties in future cases to simply 'game' the system by reciting long lists of potential witnesses—who ultimately may not have any relevant information—in order to support or counter a transfer motion." *Fintiv*, 2019 WL 4743678, at *4. Assuming that Apple does call a few of its California employees for live testimony at trial, Apple exaggerates the inconvenience to these witnesses. Since Apple has extensive facilities in Austin (while Koss has no facilities in California), these employees would not have to sit in hotels waiting to testify. They could instead work at Apple's Austin campus. It is incongruous for Apple to develop an extensive campus in Austin, with attendant tax benefits, but still contend this District is an "inconvenient" forum for its employees. *See STC.UNM v. Apple Inc.*, No. 6:19-cv-00428-

ADA, 2020 WL 4559706, at *6 (W.D. Tex. Apr. 1, 2020) ("Apple's substantial presence in Austin" weakens the strength of its witness convenience assertion).

Moreover, some of Apple's Austin employees may indeed be trial witnesses. ▌

▌

▌ And Apple's job postings demonstrate that work on the accused products, including hardware engineering, is ongoing. (Ex. E). These facts undercut Apple's assertion that all relevant employees are in California. *See SCT.UNM v. Apple, Inc.*, No. 6:19-cv-00428-ADA, 2020 WL 4559706, at *8 (W.D. Tex. Apr. 1, 2020) ("while Apple claims that all its employees with relevant knowledge are in the NDCA, the Austin job-posting requiring that Apple engineers have "strong knowledge" of the 802.11ac standard demonstrates that the employees and business Apple conducts within this District will be affected by the determinations regarding the standard and infringement made in this case.").

Importantly, ▌

▌

▌ These individuals may be important witnesses with knowledge relevant to Koss' willful infringement claims against Apple.

The witness convenience factor, therefore weighs against transfer. Texas is more convenient than California for the majority of the inventor witnesses and two third-party potential witnesses. Texas is more convenient for all of Koss witnesses and experts, and although Apple's California fact witnesses would of course prefer California, any inconvenience to them is reduced by the presence of Apple's Austin campus in this district. Moreover, there may very well be Apple witnesses located in Austin as well, ▌

██████████████████████████████████████████████████ At the least, Apple has failed to demonstrate that there are no relevant Apple witnesses located in Austin. *See Parus*, 2020 WL 4905809, at *2 (Courts may "consider undisputed facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party."). The witness convenience factor, therefore, weighs against transfer because Texas is more convenient and less costly for the majority of non-party and party witnesses.

### 4. All other practical problems that make trial of a case easy, expeditious and inexpensive

This factor strongly favors retaining the case in the Western District of Texas. As discussed above, Koss has sued five separate defendants in this District for infringement of overlapping patents. Four of the five patents asserted against Apple in this case are also asserted against other defendants. Simple efficiency suggests that these cases should be heard by as few judges as possible, to avoid duplication of claim construction, case management, and other time consuming proceedings. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (Volkswagen III) ("Judicial economy is served by having the same district court try the cases involving the same patents."); *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent."); *SCT.UNM*, 2020 WL 4559706, at *7 ("keeping these cases together would promote consistency as the same Court would hold *Markman* hearings and provide claim constructions for the same patent—avoiding the potential of having the same patent claims interpreted to have different meanings by various Courts.").

In its Motion, Apple points out that the other four defendants are also moving to transfer or dismiss, and argues that "the mere fact of co-pending litigation" should not prevent transfer,

citing *In re Google Inc.*, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017). Although a plaintiff cannot inoculate its case against transfer merely by filing co-pending litigation, co-pending litigation may not be ignored merely because the other defendants have also moved to transfer. *See Parus*, 2020 WL 4905809, at *7 ("Each defendant has the burden to show that its chosen venue is more convenient than the WDTX, and the Court will provide an independent evaluation of its motion to transfer on the merits."). This is especially true where the five defendants seek to transfer their cases to four different jurisdictions.

So long as more than one of the co-pending cases can be reasonably retained in this District, Koss submits that the efficiency factor weighs heavily against transfer. *See Solas*, 2020 WL 3440956, at *7 ("With two districts already hearing claims regarding these patents and this district hearing four claims regarding these patents (three of which are on a common schedule), an additional venue would increase the expense and difficulty for parties involved and result in the increased expenditure of judicial resources. *See Volkswagen III*, F.3d at 1351. Therefore, the Court finds that the 'all other practical problems' factor weighs heavily against transfer.").

### B. The Public Factors Weigh Against Transfer

#### 1. The administrative difficulties flowing from court congestion

Apple argues that the Northern District of California and the Western District of Texas have historically disposed of cases in roughly the same amount of time, and that the court congestion factor is therefore neutral. (Dkt. 34, pp. 16-17). Apple ignores the fact that the Northern District of California has not held a patent trial in over a year, and is unlikely to do so anytime soon. On the other hand, it is unquestionable that the Waco division of this district is advancing cases to trial and has equipped its courtroom to effectively handle safety considerations of the COVID pandemic. *In re Apple* states that "[t]o the extent that court congestion matters, what is

important is the speed with which a case can come to trial and be resolved." 979 F.3d 1332, 1343 (Fed. Cir. 2020). Right now, the parties know when the case is likely to reach trial, whereas it is unknowable how long cases will take to reach trial (at least in the near future) if that happens at all. Further, *In re Apple* states "the ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *Id*. at 1344.

Apple's statistics are skewed because they reflect the entire Western District of Texas, and "may overlook a faster time-to-trial within the Waco Division." *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-00108-ADA, 2021 WL 401989, at *7 (W.D. Tex. Jan. 26, 2001). As this Court noted in *ParkerVision*, "the Waco Division has its own patent-specific Order Governing Proceedings ('OGP') that ensures efficient administration of patent cases," and order lacking elsewhere in the district. *Id.* Moreover, as in *ParkerVision*, this Court has already set a trial date for this matter that is only 13 months away. *Id.* It is highly likely, therefore, that this case will be resolved more quickly in Waco than in the Northern District of California. The court congestion factor, therefore, weighs against transfer.

### 2.     The local interest in having localized interests decided at home

Apple emphasizes that the accused products were largely developed in the Northern District of California, giving that forum an interest in the case. Dkt. 34, p. 14-15 (citing *In re Apple Inc.*, 979 F.3d at 1345). The Western District of Texas, however, also has a significant interest in the case. First, Apple has a "significant number of employees" in Austin, giving this district "a significant interest in this case." *ParkerVision*, 2021 WL 401989, at *7 ("Intel has a significant number of employees in both Oregon and the Western District of Texas, so both districts have a significant interest in this case. As such, the Western District of Texas has a localized interest with respect to Intel."). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀ Second, Apple sells the accused products in this District, including through five Apple stores located in Austin, San Antonio, and El Paso. (Dkt. 34-2, ¶ 24). Third, Koss does extensive business in Texas, both through direct sales and through sales to Texas companies, and files Texas state tax returns. (Ex. A, pp. 6-7). Fourth, the third party that manages Koss' website, backup storage, and IT is located here. (*Id.*, p. 7). And finally, and not to be discounted, Apple has availed itself of the talent pool, the tax benefits, the laws and regulations, and the benefits of being in this district. It is only fair that, in return for all of these benefits, that this district has an interest in deciding the merits of this case. Koss therefore submits that this factor is generally neutral.[2]

> **3. The familiarity of the forum with the law that will govern the case; the avoidance of unnecessary problems of conflict of laws of the application of foreign law**

The parties agree that these final two factors are neutral.

**V.  CONCLUSION**

Apple has failed to demonstrate that the Northern District of California would be "clearly more convenient" than this Court. *Volkswagen II*, 545 F.3d at 315. There are witnesses in both forums, and Apple has a substantial presence in both forums. The case will reach trial faster here, and overlapping, co-pending cases against other defendants make litigating here more efficient. The Court should therefore deny Apple's Motion to Transfer.

---

[2] Apple argues that its breach of contract action against Koss, which it filed in the Northern District of California after this litigation began, creates an additional "localized interest" for California. This argument is disingenuous given that Apple claims that the alleged "breach" was the filing of the Complaint *in this district*. However, Apple has chosen to resolve that contract action through binding arbitration, not litigation.

-15-

| | |
|---|---|
| Dated: March 2, 2021 | Respectfully submitted,<br><br> /s/ *Darlene F. Ghavimi*<br>Darlene F. Ghavimi (TX Bar No. 24072114)<br>**K&L GATES LLP**<br>2801 Via Fortuna, Suite #350<br>Austin, TX 78746<br>Tel.: (512) 482-6919<br>Fax: (512) 482-6859<br>darlene.ghavimi@klgates.com<br><br>Benjamin E. Weed (admitted *pro hac vice*)<br>Philip A. Kunz (admitted *pro hac vice*)<br>Erik J. Halverson (admitted *pro hac vice*)<br>Gina A. Johnson (admitted *pro hac vice*)<br>**K&L GATES LLP**<br>Suite 3300<br>70 W. Madison Street<br>Chicago, IL 60602<br>Tel.: (312) 372-1121<br>Fax: (312) 827-8000<br>benjamin.weed@klgates.com<br>philip.kunz@klgates.com<br>erik.halverson@klgates.com<br>gina.johnson@klgates.com<br><br>Peter E. Soskin (admitted *pro hac vice*)<br>**K&L GATES LLP**<br>Suite 1200<br>4 Embarcadero Center<br>San Francisco, CA 94111<br>Tel.: (415) 882-8046<br>Fax: (415) 882-8220<br>peter.soskin@klgates.com<br><br>**ATTORNEYS FOR PLAINTIFF**<br>**KOSS CORPORATION** |

-16-

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on March 2, 2021, via electronic mail to counsel of record for Defendant at the following addresses:

Stephen E. McConnico (State Bar No. 13450300)
Steven J. Wingard (State Bar No. 00788694)
Stephen L. Burbank (State Bar No. 24109672)
**SCOTT DOUGLASS & MCCONNICO**
Colorado Tower
303 Colorado St., Ste. 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 495-6399
smcconnico@scottdoug.com
swingard@scottdoug.com
sburbank@scottdoug.com

Michael T. Pieja
Alan E. Littmann
**GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP**
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com


                                                              */s/ Darlene F. Ghavimi*
                                                              Darlene F. Ghavimi