**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| KOSS CORPORATION,<br><br>             Plaintiff,<br><br>    v.<br><br>APPLE INC.<br><br>             Defendant. | Case No. 6:20-cv-00665-ADA<br><br>**JURY TRIAL DEMANDED** |

<u>**DEFENDANT APPLE INC.'S[1] SURREPLY CLAIM CONSTRUCTION BRIEF**</u>

---

[1] Apple previously submitted a combined responsive *Markman* brief with two other defendants, Skullcandy, Inc., and Plantronics, Inc., which Koss had sued for alleged infringement of some of the same patents, and whose cases were set for a *Markman* hearing at the same time as Apple's. The Court has subsequently dismissed Koss's case against Skullcandy for improper venue and stayed all deadlines in Koss's case against Plantronics. This brief is therefore submitted on behalf of Apple only.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION ................................................................................................... 1

II.    ARGUMENT ........................................................................................................... 1

       A.     "a remote network-connected server that is in wireless communication with
              the mobile, digital audio player" ............................................................... 1

       B.     "the processor is for, upon activation of a user-control of the headphone
              assembly, initiating transmission of a request to the remote, network-
              connected server" ..................................................................................... 4

       C.     "in a second audio play mode, the earphones play audio content streamed
              from the remote, network-connected server" .............................................. 5

       D.     "a signal strength level for the second wireless communication link" ........ 6

       E.     "upon activation of the microphone by the user, data are transmitted about the
              headphone assembly to a remote device" ................................................... 7

              1.     The term "remote" is indefinite because its scope cannot be ascertained
                     with reasonable certainty in view of the intrinsic evidence. ............. 7

              2.     The term "data are transmitted" is indefinite because it is a freestanding
                     method step within an apparatus claim. .......................................... 9

       F.     "the processor circuits of the headphones are configured to receive firmware
              upgrades transmitted from a remote network server" ................................ 10

       G.     "data are transmitted about the headphone assembly to a remote device" ................ 11

       H.     "host servers" ......................................................................................... 11

       I.     "wherein the headphone assembly is configured, with the processor, to
              transition automatically . . ." ..................................................................... 14

       J.     "wherein the docking station comprises a power cable for connecting to an
              external device" ...................................................................................... 14

       K.     "a passive, wireless rechargeable power source" ....................................... 14

III.   CONCLUSION ..................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agilent Techs., Inc. v. Affymetrix, Inc.*,
   567 F.3d 1366 (Fed. Cir. 2009) ...............................................................................................2

*Amgen Inc. v. Sandoz Inc.*,
   923 F.3d 1023 (Fed. Cir. 2019) .........................................................................................8, 14

*AstraZeneca LP v. Apotex, Inc.*,
   633 F.3d 1042 (Fed. Cir. 2010) .............................................................................................12

*Board of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*,
   533 F.3d 1362 (Fed. Cir. 2008) ...............................................................................................6

*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*,
   2019 WL 2745735 (E.D. Va. July 1, 2019)............................................................................9

*CloudofChange, LLC v. NCR Corp.*,
   2020 WL 4004810 (W.D. Tex. Jul. 15, 2020) .......................................................................14

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
   815 F.3d 1314 (Fed. Cir. 2016) ....................................................................................1, 5, 15

*Groove Digital, Inc. v. United Bank*,
   825 F. App'x 852 (Fed. Cir. 2020) ..................................................................................12, 13

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
   527 F.3d 1379 (Fed. Cir. 2008) .............................................................................................15

*Homeland Housewares, LLC v. Whirlpool Corp.*,
   865 F.3d 1372 (Fed. Cir. 2017) .............................................................................................12

*In Re Abbott Diabetes Care Inc.*,
   696 F.3d 1142 (Fed. Cir. 2012) .............................................................................................12

*Indacon, Inc. v. Facebook, Inc.*,
   824 F.3d 1352 (Fed. Cir. 2016) ...........................................................................................5, 6

*Nevro Corp. v. Bos. Sci. Corp.*,
   955 F.3d 35 (Fed. Cir. 2020) ...................................................................................................9

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
   521 F.3d 1351 (Fed. Cir. 2008) ...............................................................................................5

*Poly-America, L.P. v. API Indus., Inc.*,
   839 F.3d 1131 (Fed. Cir. 2016) .............................................................................................13

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
   2018 WL 5603631 (N.D. Cal. Oct. 26, 2018) .......................................................................10

*Rembrandt Data Techs., LP v. AOL, LLC,*
   641 F.3d 1331 (Fed. Cir. 2011) ............................................................................9

*Summit 6 LLC v. Rsch. in Motion Corp.*,
   2012 WL 12885172 (N.D. Tex. May 21, 2012) ....................................................8

*Trustees of Columbia Univ. v. Symantec Corp.*,
   811 F.3d 1359 (Fed. Cir. 2016) ..........................................................................12

*USHIP Intell. Props.*, *LLC v. United States*,
   98 Fed. Cl. 396 (Fed. Cl. 2011) ..........................................................................10

## I.        INTRODUCTION

Koss's reply treats the words "plain and ordinary meaning" like a magic spell that can turn "wireless" into "wired" and "to the server" into "to something other than the server"; shield Koss from revealing what it believes the meaning or scope of any disputed term to be; and imbue its attorneys' *ipse dixit* with the power to overcome contrary intrinsic evidence and expert testimony. But "plain and ordinary meaning" is not magic, nor is it an excuse to rewrite claims and ignore disputes over their scope. It is merely a legal doctrine that gives words the meaning a person of skill would give them in view of the patent. Only Apple applies this doctrine properly. In many of its constructions, Apple's proposal i**s** the plain and ordinary meaning, supported by intrinsic and extrinsic evidence. Where a term lacks such a plain meaning or is defined by the patents, Apple explains why and articulates what meaning, if any, the intrinsic record provides. Koss's proposal to use an undefined "plain and ordinary meaning" not only conceals its intent to rewrite the claims, but also improperly "le[aves] th[e] question of claim scope unanswered, leaving it for the jury to decide." *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1319 (Fed. Cir. 2016). The Court should therefore reject Koss's proposals and adopt Apple's.

## II.        ARGUMENT

### A.        "a remote network-connected server that is in wireless communication with the mobile, digital audio player"

The parties' dispute is whether the plain meaning of wireless is "without wires," as Apple proposes, or whether it can mean "mostly wired," as Koss intends. Because the patents repeatedly and consistently use "wireless" to mean without wires, Apple's proposal is correct.

In its Reply, Koss addresses none of the intrinsic evidence Apple identified. Instead, Koss points to one snippet from the specification where a server communicates over a network. (Reply (Dkt. No. 60) at 4 (citing '025 Pat., 5:54–58).) But the embodiment Koss cites is irrelevant because

the server there is never described as being in "wireless communication" with anything. This is no accident: the patents use different language to describe and claim wireless and non-wireless embodiments. When Koss wanted to claim the embodiment cited in its brief, where the server is not required to communicate wirelessly, it simply claimed a "remote network server . . . ***in communication with*** the mobile, digital audio player via a data communication network." ('982 Pat., cl. 4 (emphasis added).) But when Koss wanted to require the server to communicate wirelessly, as it did in the '025 Patent, it specified that the server's "communication" was "wireless," reciting "a remote, network connected server that is ***in wireless communication with*** the mobile, digital audio player." ('025 Pat., cl. 1 (emphasis added); *see also id.*, 17:18–24 (listing servers that communicate wirelessly, such as a cellular phone).) Apple's construction thus gives meaning to the term "wireless" in claim 1 of the '025 Patent. Koss, on the other hand, improperly reads "wireless" out of the claim by arguing that a "server" can be "in wireless communication" even if it transmits data exclusively with wires. *See Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1377–78 (Fed. Cir. 2009) ("A '*closed* chamber . . . adapted to retain a quantity of fluid' must mean something different than just a 'chamber . . . adapted to retain a quantity of fluid.' Otherwise, the word 'closed' becomes superfluous." (citation omitted)).

The distinction between "wireless communication" and "communication" is reinforced by the specification. When the specification refers to communication without any wires, it uses "wireless communication" or "communicate wirelessly." ('025 Pat., 4:26–28 (Fig. 2A: "[t]he earphone . . . may communicate wirelessly with a data source"); 5:32–34 (Fig. 2B: "The data source 20 and the earphone 10 may both communicate wirelessly with the access point); 5:43–47 ("Fig. 2C: "the data source 20 may communicate wirelessly with one access point 32b and the earphone 10 may communicate wirelessly with another access point 32b"); 4:54–64 (referring to

"wireless communication" protocols, all of which communicate without wires).)[2]

By contrast, when the specification describes communications that need not be wireless, it carefully distinguishes them using the broader phrase "in communication with":

> In other embodiments, the present invention is directed to a system that comprises: (i) a data source 20 for wirelessly transmitting streaming digital audio; and (ii) a wireless earphone 10 that is ***in wireless communication with*** the data source 20. In yet other embodiments, the present invention is directed to a communication system that comprises: (i) a host server 40; (ii) a first streaming digital audio content server 70 that is connected to the host server 40 via a data network 42; and (iii) a wireless earphone 10 that is ***in communication with*** the host server 40 via a wireless network 30.

('025 Pat., 14:58–15:1 (emphasis added).) Thus, both the claims and specification distinguish "in communication with" from "in wireless communication with," using the latter to claim and describe communication without wires. Koss cannot now obliterate this distinction.

Koss apparently regrets its decision to require "wireless communication" in some of its claims, characterizing the consequence of that choice as "extreme." (Reply at 3.) But it is Koss's current position that is truly extreme. As Apple noted, and Koss did not deny, Koss believes that "in wireless communication" includes a device that uses a wired connection to a network, as long as any part of the network—no matter how distant from the device—is wireless. But the patents expressly describe a device with a "wired connection to the network" as a "***non-wireless-capable*** device." ('025 Pat., 6:12–14 (emphasis added).) Construing "wireless" to capture a "non-wireless-capable device" contradicts the intrinsic evidence, extrinsic evidence, and common sense. It cannot represent the plain meaning of "wireless" under any reasonable interpretation.

The parties' dispute is simple: does a server "in wireless communication" communicate

---

[2] Koss mischaracterizes Apple's expert, Dr. Christopher Hansen's opinions as "inconsistent" with Apple's proposal. (Reply at 3.) But Dr. Hansen specifically testified that "communication without wires" was the plain and ordinary meaning; the testimony cited by Koss simply uses technical terms such as a "wireless channel" to explain the reasons for his opinion. (Hansen Decl. (Dkt. No. 57-4) ¶ 20; Hansen Dep. (Dkt. No. 60-1) 100:11–101:1.)

with or without wires? Because the claims, specification, and common use confirm that "wireless" carries its plain meaning of "without wires," the server must communicate without wires.

**B.**   **"the processor is for, upon activation of a user-control of the headphone assembly, initiating transmission of a request to the remote, network-connected server"**

In its reply, Koss fixates on the word "addressed" in Apple's construction. But the word "addressed"—*i.e.*, directed—simply gives meaning to claim language that Koss is trying to redraft. The claim requires "initiating transmission of a request **to the remote, network-connected server**." As Apple noted, and Koss did not dispute, Koss's "plain and ordinary meaning" rewrites this language to include "initiating transmission of a request **to the digital audio player**" or "initiating transmission of a request **to a device other than the remote, network-connected server**." Koss has provided no evidence to support this redrafting of its claims.

Further, Koss misses the mark when it argues that "Defendants identify no definitional language" and cites to *Thorner v. Sony Computer Entertainment*. (Reply at 5 (citing 669 F.3d 1362, 1365 (Fed. Cir. 2012)).) Apple's construction is not based on a definition in Koss's patents—it is the plain and ordinary meaning of the term. (Apple Br. at 7–10.) In support, Apple pointed to specific intrinsic evidence (including the claims and specification) and extrinsic evidence (including Dr. Hansen's description of specific networking issues). ('025 Pat., 14:51–57, FIG. 2D; Hansen Decl. (Dkt. No. 57-4) ¶¶ 24–26.) Koss, however, offers no intrinsic evidence, no expert testimony, and no textbook to support its position. Instead, it relies on unsupported attorney speculation about how cellular telephones might communicate with a network without addressing its communications to anything. (Reply at 5.) But this attorney argument is neither evidence nor supported by any evidence. And while Koss cites Dr. Hansen's deposition testimony, Dr. Hansen testified that he was not familiar with the scenario Koss was describing. (*E.g.*, Hansen Dep. (Dkt. No. 60-1) 66:23–67:8.)

4

Finally, Koss is wrong that the Court should not construe this term because doing so would "adjudicate non-infringement." (Reply at 5.) It is neither surprising nor improper that a party's claim construction relates to an issue of infringement or invalidity. In fact, because the parties dispute the term's scope, it would be error **not** to construe it. "Whe[re] the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). And where, as here, there is a dispute as to what the "plain and ordinary meaning" of a term is, simply reciting "plain and ordinary meaning" as the construction does not satisfy *O2 Micro*. Rather, "[b]y determining only that the terms should be given their plain and ordinary meaning, the court le[aves] th[e] question of claim scope unanswered, leaving it for the jury to decide." *Eon Corp.*, 815 F.3d at 1319. The Court should construe this term as Apple proposes.

### C.    "in a second audio play mode, the earphones play audio content streamed from the remote, network-connected server"

Koss's reply concedes that the term "second audio play mode" does not have a plain meaning by—again—refusing to identify that meaning or produce evidence that it exists. Instead, Koss incorrectly suggests that because the claim does not repeat the entire meaning given to this coined term by the specification, the Court should ignore the specification. In particular, Koss suggests that the "second audio play mode" should be limited only by the claims' requirement that "in a second audio play mode, the earphones play audio content streamed from the remote, network-connected server." (Reply at 6.) The Federal Circuit, however, has made clear that when a patentee uses a term with no common meaning—as Koss does here—the term "ordinarily cannot be construed broader than the disclosure in the **specification**." *Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1357 (Fed. Cir. 2016) (emphasis added). In *Indacon*, the Federal Circuit analyzed a coined term—"custom links." *Id.* at 1354. The claims in *Indacon* provided some information

about the term—a "custom link," in the claim, was "defined between selected terms of selected files of the at least one database." *Id.* But the specification described the term more narrowly. In particular, the specification "repeatedly demonstrated" that the meaning of "custom link" included an additional property not recited in the claim ("allowing each instance of a defined term to be identified and displayed"). *Id.* at 1357. The Federal Circuit construed "custom link" based on the specification's more complete definition rather than the claim's incomplete one. *Id.*

The *Indacon* case is directly on point here. Koss's claims provide some information about the "second audio play mode." But the specification demonstrates that this information is incomplete by repeatedly and exclusively showing that, in this second audio play mode, the data is streamed over an infrastructure network. ('025 Pat., 10:37–45, 11:33–48, 14:46–48; Apple Br. at 12–13.) As a result, the coined term "second audio play mode" must be construed consistent with the specification. *Indacon*, 824 F.3d at 1357. Koss's "plain and ordinary meaning" proposal is simply an improper attempt to read the term more broadly than the specification supports.

Finally, contrary to Koss's argument, it is not "unclear" why, under Koss's construction, the claimed "first audio play mode" swallows the second. Apple explained, and Koss did not dispute, that the claimed "first audio play mode" and Koss's interpretation of the "second audio play mode" both cover a situation where digital audio data is (1) sent from a server to a mobile digital audio player, stored there, and then (2) transmitted to the headphones over an ad hoc communications link. (Apple Br. at 13; '025 Pat., 18:35–39.) Thus, Koss's construction improperly reduces the "second audio play mode" to a part of the "first audio play mode," violating the canon that "[d]ifferent claim terms are presumed to have different meanings." *Board of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008).

**D.    "a signal strength level for the second wireless communication link"**

For the "signal strength" term, Koss misstates Apple's position as "limiting the

construction to the RSSI value." (Reply at 7.) Not so. Apple's construction requires only that the "signal strength level" contain a "measurement of a signal strength." This includes any type of measurement, whether an RSSI, signal-to-noise ratio, or otherwise. (Apple Br. at 14–15.) Moreover, Apple's construction is not an attempt to "limit the claims to a single embodiment." (Reply at 7.) Rather, Apple's construction is itself the plain and ordinary meaning of the term, as shown by common usage, expert evidence, and the patent claims and specification. (Apple Br. at 14–15.) Koss has provided no evidence that the term has a different meaning, much less what that meaning is.

> **E.**    **"upon activation of the microphone by the user, data are transmitted about the headphone assembly to a remote device"**

> **1.**    **The term "remote" is indefinite because its scope cannot be ascertained with reasonable certainty in view of the intrinsic evidence.**

Koss had numerous chances to articulate an alleged plain meaning of the word "remote" that is consistent with the intrinsic evidence. It never did. And the reason it never did is that a person of skill cannot reconcile: (1) the common understanding of the term in the art, (2) the unconventional use of the term in the specification, and (3) the use of both "separate" and "remote" in the claims. Because a person of skill cannot ascertain the meaning of "remote" with reasonable certainty in view of this intrinsic evidence, the term is indefinite.

Koss tries to dodge the conflicting evidence by arguing that remote is a "broad term." (Reply at 8.) But that argument hardly justifies Koss's position. First, Koss has been unable to identify a meaning of "remote"—however broad—that is consistent with the intrinsic evidence. Koss suggests that remote "cover[s] the gamut from 'not co-located' to 'separated by great distance.'" (Reply at 8.) But Koss's "gamut" excludes the "remote device" in the specification. The specification's "remote device" is not only "co-located"—it is **physically connected** to the earphones by a short wire. ('025 Pat., Fig. 11.) The patent says this is "remote," but it does not fall

within Koss's "gamut": it is neither "separated by great distance" nor "not co-located."

Nor would making "remote" even broader than Koss proposes solve the problem. As Apple pointed out, and Koss ignored, the claims use both "separate" and "remote" to convey distance. (Apple Br. at 17.) These "'different claim terms are presumed to have different meanings.'" *Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1031 (Fed. Cir. 2019) (citation omitted). But the intrinsic evidence fails to provide any guidance as to where "separate" ends and "remote" begins. In fact, the patents merely compound the confusion. The plain meaning of "remote" implies more distance than "separate." (Newton's Dictionary (Dkt. No. 57-2) at APL-KOSS_00000798 ("separated by a distance greater than usual")); *Summit 6 LLC v. Rsch. in Motion Corp.*, No. 3:11-CV-00367-RCO, 2012 WL 12885172, at *18 (N.D. Tex. May 21, 2012). But in Koss's patents, "separate" is used with elements that are "not physically connected" ('982 Pat., cl. 1) while "remote" is used with devices that **can** be physically connected ('982 Pat., Fig. 11; 16:3–10.) This suggests that "remote" could require less separation than "separate"—flipping the common meanings of the terms on their heads. Thus, even if a person of skill wanted to give a broader meaning to "remote," they would be unable to determine how to distinguish that meaning from "separate."

Second, saying "remote" has a "broad" plain meaning does not provide meaningful guidance to the jury. As Koss concedes, "remote" could mean "far apart," or "not local," or "external to." These meanings vary significantly in scope, showing that "remote" can be used in different and conflicting ways. Depending on how the term is used, two devices that are local may or may not be "remote." Instructing a jury to use "plain meaning," without more, is no answer when the jury has conflicting alternatives as to what that "plain meaning" is. This is especially so because the intrinsic evidence uses "remote" to refer to devices in close proximity—a substantial

8

departure from the common understanding of the word to both laypersons and persons of skill. (Hansen Decl. ¶¶ 28, 31.)

At bottom, a person of skill is left with two poor choices: (1) give "remote" its common meaning, contradicting the term's only use in the specification; or (2) depart from the common meaning and guess as to whether and how it differs from "separate." Because a person of skill could not discern with reasonable certainty which of these options is correct, "remote" is indefinite.

### 2. The term "data are transmitted" is indefinite because it is a freestanding method step within an apparatus claim.

This claim limitation is also indefinite because it improperly recites a freestanding method step ("data are transmitted") in an apparatus claim. *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011). Koss argues that "data are transmitted" is not a method step because it "explains what functionality the claimed microphone and corresponding headphones are capable of performing." (Reply at 9.) But Koss is wrong, for two reasons.

First, the limitation does not claim a "capability" of any structural element. Unlike the rest of the claim, it does not describe any element as being used "for" or "configured to" transmit the data—the language used to indicate that an action is merely a capability of a structural element. *See Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, No. 1:18-CV-00760-TSE, 2019 WL 2745735, at *9 (E.D. Va. July 1, 2019). This key omission distinguishes the method step "data are transmitted" from the examples Koss cites in its brief. (Reply at 9 (citing "dampeners being **configured to** dampen standing wave resonances") (emphasis added)); *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 40 (Fed. Cir. 2020) (signal generator "configured to" generate a signal).

Second, the limitation is not claimed as "functionality the claimed microphone and corresponding headphones" perform. (Reply at 9.) In fact, Koss itself claims that the "data are transmitted" is performed by the ***entire*** apparatus, *i.e.*, "the headphone assembly." (*Id.*; '934 Pat.,

cl. 1.) But in cases where the Federal Circuit allowed functional claiming in an apparatus claim, it "emphasized the fact that the functional language was not free-floating, but was instead tied to a recited structure." *Power Integrations, Inc. v. ON Semiconductor Corp.*, No. 16-CV-06371-BLF, 2018 WL 5603631, at *17 (N.D. Cal. Oct. 26, 2018). Here, "data are transmitted" is not tied to any recited element, so Koss ties it to the "apparatus as-a-whole"—a red flag that the limitation "run[s] headlong" into the prohibition on mixed-method-and-apparatus claiming. *Id.*

### F. "the processor circuits of the headphones are configured to receive firmware upgrades transmitted from a remote network server"

Koss does not dispute that its "plain and ordinary meaning" proposal interprets "transmits firmware upgrades to the headphone assembly" to mean "transmits firmware upgrades not to the headphone assembly, but to a digital audio player." That alone is reason enough to reject Koss's proposal. But Koss's attacks on Apple's construction also fail.

Koss's patents disclose two distinct embodiments for how "firmware upgrades" are transmitted, but claim just one. (Apple Br. at 22–25.) In a first embodiment, "[t]he host server **40** (or some other server) may also push firmware upgrades and/or data updates to the earphone." ('025 Pat., 9:41–42.) In a second embodiment, "a user could download the firmware upgrades and/or data updates from the host server **40** to the client computing device 202 (*see* FIG. **4**A) via the Internet, and then download the firmware upgrades . . . to the earphone **10**." (*Id.* 9:44–48.) The claims distinguish between these embodiments exactly as the specification does, by requiring that the "server transmits firmware upgrades to the headphone assembly," rather than requiring the upgrades be sent to the client computer. (*E.g.*, '025 Pat., cl. 10.) Thus, the claims are directed to, and must be construed to cover, only the first embodiment. *USHIP Intell. Props., LLC v. United States*, 98 Fed. Cl. 396, 407 (Fed. Cl. 2011) (citation omitted).

10

Koss argues that the embodiments identified by Apple "are not discrete." (Reply at 10.) Koss, however, identifies no evidence that the patents describe overlap between the embodiments. And for good reason: the patents describe firmware upgrades being sent to **either** the headphones **or** the client computer, such as an audio player—but **not** both. Koss points to the word "and/or," but misstates the context. (*Id.*) The "and/or" language only refers to **which data** the server can send—"upgrades and/or data updates." It is never used to describe the different upgrade paths themselves, let alone to suggest both can be used at once.[3] The claims use the language of one embodiment to the exclusion of the other. Koss cannot rewrite its claims to capture a mysterious third embodiment that somehow mashes the two discrete embodiments together.

**G.     "data are transmitted about the headphone assembly to a remote device"**

As in prior briefs, this term's indefiniteness issues are addressed in section E, *supra*.

**H.     "host servers"**

Koss does not dispute that the '451 Patent "repeatedly, consistently, and exclusively" uses "host server," as Apple proposes. Nor does it dispute that this "repeated[], consistent[], and exclusive[]" use is an implicit definition of the term. Instead, Koss argues that "[c]laims are not construed apart from the plain and ordinary meaning based on 'implicit' definitions." (Reply at 12.) The relevant question is, thus, a legal one: can a patent define a term implicitly? The Federal Circuit has answered this question decisively: "An **explicit definition is not required** to inform a claim term's meaning. Rather, **a patent's specification 'may define claim terms by implication** such that the meaning may be found in or ascertained by a reading of the patent documents.'"

---

[3] Koss's suggestion that Apple inappropriately "remov[ed] language from the quotations" is also meritless. The language was removed because it was irrelevant. For instance, Apple omitted the number "10" (identifying the headphones in a figure) and one word ("also") that referred to a previous, unrelated sentence about how a server allows a user to "specify or prioritize from which source . . . to receive content." (Apple Br. at 22, 23.)

*Groove Digital*, *Inc. v. United Bank*, 825 F. App'x 852, 856 (Fed. Cir. 2020) (emphasis added) (citation omitted). The Federal Circuit has repeatedly confirmed this principle in recent years:

- "[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, **he has defined that term 'by implication**.'" *Homeland Housewares*, *LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1377 (Fed. Cir. 2017) (emphasis added) (citation omitted);

- "Abbott's **patents define the [term at issue] by implication,"** and thus it is not correct that "an explicit disclaimer" is required. *In Re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1150 (Fed. Cir. 2012) (emphasis added);

- "The **specification need not reveal [a] definition explicitly** . . . [W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'" *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1051–52 (Fed. Cir. 2010) (emphasis added) (citations and internal quotation marks omitted).

Koss's only legal support for its position is a misreading of *Thorner.* (Reply at 12, citing 669 F.3d 1362.) Koss claims that, under *Thorner*, "to constitute definitional language, the patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent' to redefine the term' in either the specification or during prosecution." (Reply at 12.) But when presented with this precise argument*,* including a citation to *Thorner*, the Federal Circuit explicitly rejected it: "[W]e reject [plaintiff's] argument that the presumption of plain and ordinary meaning 'can be overcome in only two circumstances: [when] the patentee has expressly defined a term or has expressly disavowed the full scope of the claim." *Trustees of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363–64 (Fed. Cir. 2016). Instead, the Federal Circuit reaffirmed that "[o]ur case law **does not require explicit redefinition.**" *Id.* (emphasis added).

Koss also wrongly argues that Apple's "proposal improperly attempts to limit a claim term to a preferred embodiment." (Reply at 12.) But limiting a term consistent with an implicit definition is in no way "improper." For instance, in *Poly-America, L.P. v. API Indus.*, *Inc.*, the Federal Circuit held that a construction "does not involve importing limitations from embodiments

described in the specification" where "[e]very embodiment described in the specification" had the relevant feature, and "the specification indicates [its] importance." 839 F.3d 1131, 1137 (Fed. Cir. 2016); *accord Groove Digital*, 825 F. App'x at 856. Here, the specification exclusively describes the "host server" as hosting a website, as Apple proposes. (Apple Br. at 27; *see* '451 Pat., Abstract, 4:50–58, 6:28–33.) And the patent indicates the importance of this feature by emphasizing it in the Summary of the Invention. (Apple Br. at 26.) Koss's "importation" argument thus fails.

Next, Koss suggests that the "remainder of the claim informs about the scope of the invention" because it explains that the server stores certain data. (Reply at 13.) This is another red herring. The language to which Koss refers—that the host server "receive[s] and store[s] credential data"—is also present in the specification's definitional language for this term. (*E.g.*, '451 Pat., 1:60–63, 6:28–33.) Its presence in the claim is, thus, not at all inconsistent with Apple's construction. Koss points to—and Apple is aware of—no authority that a patent's definition of a term can be **broadened** if only part of it is re-stated in the claim. And if Koss is arguing that the "credential data" portion of Apple's construction is redundant, that does nothing to change the fact that the remainder of the construction—requiring the host server to host a website through which a user inputs data—is required by the specification's implicit definition.

Nor is it relevant that, as Koss observes, the '451 Patent says that some "servers" may be implemented on "a processor, microcomputer, minicomputer, server, mainframe, laptop, personal data assistant (PDA), wireless e-mail device, cellular phone, pager, processor, fax machine, scanner, or any other programmable device." (Reply at 11–12.) The parties' dispute is not about the physical form that a "host server" takes, but about the functionality it has. Further, despite Koss's plea to construe the term as "plain and ordinary meaning," this is precisely the type of term that this Court has found to require construction. *CloudofChange, LLC v. NCR Corp.*, No. 6:19-

CV-00513-ADA, 2020 WL 4004810, at *3 (W.D. Tex. Jul. 15, 2020) (construing "web server").

Finally, Koss's reply fails to address Apple's indefiniteness argument. As Apple pointed out, the claims of the '451 Patent require two **different** servers—a "host server" and a "remote network server." (Apple Br. at 28–29.) These terms presumptively have different scopes, as Koss does not dispute. *Amgen*, 923 F.3d at 1031–32. Under Koss's "plain and ordinary" construction, however, a person of skill would be unable to know whether a server that hosted some functionality was a "host server," a "remote network server" or neither. Koss's suggestion that the claims resolve the issue by requiring the host server to store credential data is wrong. The claims recite this storing as something that the "host server" **does**, not a definition of what it **is**. ('451 Pat., 8:37–40.) Thus, the claims do not provide guidance to a person of skill as to what is, and is not, a "host server."

## I.    "wherein the headphone assembly is configured, with the processor, to transition automatically . . ."

This term appears in a patent—U.S. Patent No. 10,368,155—that was not asserted against Apple. Because Apple is the sole defendant filing this brief, Apple does not address this term.

## J.    "wherein the docking station comprises a power cable for connecting to an external device"

The parties have agreed that this term does not require construction.

## K.    "a passive, wireless rechargeable power source"

Despite insisting that this term be construed as "plain and ordinary meaning," Koss has failed—after two rounds of briefing—to produce any evidence that such a meaning exists, much less what it is. Koss has not been able to find a single reference in any paper, textbook, dictionary, or other source to a "passive power source."[4] In contrast, Apple produced undisputed expert

---

[4] Koss criticized Apple for using quotations when searching for this term. (Reply at 16.) But it provided no evidence that formatting the search differently would return useful results. A "passive power source" has no ordinary meaning, with or without the "wireless rechargeable" modifier.

testimony that the term "passive" is not used to describe "power sources" and, thus, that the term has no "plain" or "ordinary" meaning. (Hansen Decl. ¶ 33.)

Koss's position appears to be that whatever a "passive" power source is, it must include a battery. (Reply at 15–16.) But the only record evidence—Dr. Hansen's uncontradicted testimony—is that a battery is not "passive." (Hansen Decl. ¶ 34.) In response, Koss offers only attorney argument that because both batteries and capacitors store and release energy, they are somehow "passive." (Reply at 16.) But as Dr. Hansen explained, the distinction between a "passive" capacitor and an "active" battery is not whether they store energy; rather, a battery is "active" because it relies on active chemical processes to provide an "external source of energy" that was not previously available to a circuit. (Hansen Decl. ¶¶ 33, 34.) A capacitor, in contrast, is "passive" because it merely holds energy already present in the circuit for later release. (*Id.* ¶ 35.)

In sum, Koss's argument is simply an effort to rewrite the claimed "passive, wireless rechargeable power source" to read "any wireless rechargeable power source." As Koss itself acknowledged, "[c]ourts cannot rewrite claim language." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008). The Court should decline to do so, here, and should adopt Apple's construction for a term that has no plain and ordinary meaning.

## III.   CONCLUSION

Koss's assertion that each disputed term be construed as "plain and ordinary meaning"—regardless of whether such a meaning exists or whether its scope is disputed—is legal error. *Eon Corp.*, 815 F.3d at 1319. Because Apple's proposals address the parties' disputes, and are grounded in the intrinsic and extrinsic evidence, Apple respectfully requests that the Court adopt them.

Date: April 9, 2021                             Respectfully submitted,

                                                By:   */s/ Michael T. Pieja*
                                                Michael T. Pieja (*pro hac vice*)

Alan E. Littmann (*pro hac vice*)
Doug Winnard (*pro hac vice*)
Samuel E. Schoenburg (*pro hac vice*)
Whitney Woodward (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
dwinnard@goldmanismail.com
sschoenburg@goldmanismail.com
wwoodward@goldmanismail.com

Stephen E. McConnico
State Bar No. 13450300
Steven J. Wingard
State Bar No. 00788694
Stephen L. Burbank
State Bar No. 24109672
SCOTT DOUGLASS & MCCONNICO
Colorado Tower
303 Colorado St., Ste. 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 495-6399
smcconnico@scottdoug.com
swingard@scottdoug.com
sburbank@scottdoug.com

*Counsel for Defendant Apple Inc.*

16

## PROOF OF SERVICE

The undersigned hereby certifies that a true and correct copy of **DEFENDANT APPLE INC.'S SURREPLY CLAIM CONSTRUCTION BRIEF** has been served on April 9, 2021, to all counsel of record who are deemed to have consented to electronic service.


 /s/ *Michael T. Pieja*
Michael T. Pieja (*pro hac vice*)