**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **KOSS CORPORATION,** | § | |
| *Plaintiff,* | § | |
| | § | **6-20-CV-00665-ADA** |
| *v.* | § | |
| | § | |
| **APPLE INC,** | § | |
| *Defendant.* | § | |
| | § | |

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER**

Came on for consideration this date is Apple Inc.'s Motion to Transfer to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **DENIES** Defendant Apple's Motion to Transfer.

## I. INTRODUCTION

A party seeking a transfer to an allegedly more convenient forum carries a significant burden. *Babbage Holdings, LLC v. 505 Games (U.S.), Inc.,* No. 2:13-CV-749, 2014 U.S. Dist. LEXIS 139195, at *12–14 (E.D. Tex. Oct. 1, 2014) (stating the movant has the "evidentiary burden" to establish "that the desired forum is *clearly more convenient* than the forum where the case was filed" (emphasis added)). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly more convenient*. *In re Volkswagen, Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) (hereinafter "*Volkswagen II*") (emphasis added). Apple moved to have this case transferred to NDCA. The Court finds that Apple fails to meet the heavy burden of showing that NDCA is a *clearly more convenient* venue.

## II. LEGAL STANDARD

**A. Section 1404 Transfer**

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The party moving for transfer carries the burden of showing good cause. *Volkswagen II*, 545 F.3d at 314 ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If so, in the Fifth Circuit, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from

court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 313 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not *clearly more convenient* than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315; *see also QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden under § 1404(a) as "heavy") (emphasis added).

## III. BACKGROUND

Defendant Apple is a California Corporation with its principal place of business in Cupertino, California. Pl.'s Compl., ECF No. 1 at ¶ 5. Apple's second corporate campus is located in Austin, Texas. *Id.* Apple also has several retail stores within WDTX, notably two in Austin, and three others in San Antonio and El Paso.[1] Apple, among other things, markets audio accessories, including the Apple HomePod, the Apple AirPods and the Apple Beats by Dre. *Id.* at ¶ 8.

Plaintiff Koss Corp. is a Delaware Corporation with its principal place of business in Milwaukee, Wisconsin. *Id*. at ¶ 2. Koss markets headphones and audio accessories that are at

---

[1]Apple Inc., https://www.apple.com/retail/storelist/ (last visited April 21, 2021).

sold at various retail chains throughout the country, including Walmart stores. *Id.* at ¶ 3. Koss specifically markets the Striva line of wireless headphones. *Id.* at 42.

On July 22, 2020, Koss filed this lawsuit alleging patent infringement against Apple for making, having made, using, importing, supplying, distributing, selling, or offering to sell its products and/or systems, including systems in which its AirPods and/or wireless Beats by Dre-branded headphones are incorporated (the "Accused Headphones"). Pl.'s Compl. at ¶¶ 79–82, 107–110, 121–124, 135–138. Koss also claims patent infringement alleging that Apple has made, had made, used, imported, supplied, distributed, sold, or offered for sale products and/ or systems, including systems in which its HomePod and/or Apple Watch products and/or systems are incorporated (the "Accused Networking Devices"). Pl.'s Compl. at ¶¶ 93–96. Specifically, Koss asserts infringement of U.S. Patent Nos. 10,206,025 ("'025 patent"); 10,298,451 ("'451 patent"); 10,469,934 ("'934 patent"); 10,491,982 ("'982 patent"); and 10,506,325 ("'325 patent"). *Id.* Koss asserts that these patents generally relate to "the wireless headphone and wearable technology space." *Id.* at ¶ 69.

On December 21, 2020, Apple filed this Motion to Transfer Venue under 28 U.S.C. § 1404(a). Def.'s Mot. at 1. Specifically, Apple requests that the Court transfer the instant case from the Western District of Texas ("WDTX") to the Northern District of California ("NDCA"). *Id.*

## IV. ANALYSIS

As a preliminary matter, neither party contests the fact that venue is proper in NDCA and that this case could have been filed there.

**A. The Private Interest Factors Weigh In Favor of Transfer.**

***i. The Relative Ease of Access to Sources of Proof***

After carefully reviewing the Parties' arguments, the Court finds that the relative ease of access to sources of proof factor slightly favors of transfer. "In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv*, 2019 WL 4743678, at *2. "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original).

Apple argues that the location of its own sources of proof strongly favor transfer. Def.'s Mot. at 6. Specifically, Apple delineates three categories of documents: confidential source code; technical documents pertaining to the design and engineering of the accused features; and financial, marketing and licensing documents relevant to the accused products. *Id*. at 6–7. Apple asserts that all three of these relevant document categories are located in California or on servers in California. *Id.* Apple further assures this Court that all documents and source code outside California are either located in foreign countries or in U.S. States other than Texas. *Id*. at 7. Additionally, Apple asserts that its employees researched, developed, and tested the accused products and features almost exclusively in California and performed none of these activities in Texas. *Id*. While Apple acknowledged that it has a second campus in Austin, Apple contends that there are no sources of proof within this District. *Id.* at 8.

In response, Koss asserts that the first factor—access to sources of proof—is neutral. Pl.'s Opp. at 5. Regarding Apple's documents, Koss points to statements made by Apple's employee, Mark Rollins, who stated that Apple "does not have any *unique* working files or documents . . . located in the WDTX." *Id.* (citing Rollins Decl., ECF No. 34-2, ¶ 8). Koss asserts that when questioned further, █████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████. Nevertheless, Koss argues that Apple employees in Austin would have access to documents stored on its California servers. *Id.* at 6.

Regarding Koss's documents, Koss notes that while its offices are primarily located in the Midwest, it outsources its IT needs to a Texas company, Synectics. *Id.* Koss asserts that Synectics maintains Koss's website, the servers that backup all of Koss's electronic files, including product development and support files for Koss's Strive line of wireless headphones. *Id.* at 2. Therefore, Koss asserts that all of its own relevant documents are on servers located in Texas. *Id.* at 6.

In its Reply, Apple points out that Koss neither points to any specific documents located on its Texas IT vendor's servers nor states what Apple documents or information are found in the WDTX. *Id.* at 2. Moreover, Apple asserts that Synectics's servers are located in Dallas, outside the Western District of Texas, and, thereby, irrelevant to the instant inquiry. *Id.* (citing *In re Apple*, 979 F.3d 1332, 1346 (Fed. Cir. 2020)). Moreover, Apple claims that Koss's argument— that the location of Apple's documents is irrelevant because of the ease of transferring electronic documents—contradicts Fifth Circuit precedent. *Id.*

The Court agrees with Apple that this factor favors transfer, but only slightly. Generally, in patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. *See In re Genetech, Inc.*, 556 F.3d 1338, 1345 (Fed. Cir. 2009). Apple has specified sources of proof relevant to infringement—Apple source code and technical, marketing, and licensing documentation—that are located in NDCA. Def.'s Reply at 2. However, the Court notes that this is a unique type of patent infringement case involving market competitors. Both Koss and Apple market headphone and audio accessory products, notably competing lines of

wireless headphone products. As such, Koss's documents—especially those involving the competing Striva products—are more heavily implicated by the damages analysis in this case than it would be for one between non-competitors. *See* 35 U.S.C. § 284; *see also WesternGeco LLC v. ION Geophysical Corp.,* 138 S. Ct. 2129, 2139, 201 L. Ed. 2d 584 (2018) (a patent owner's recovery can include lost profits). While noting that Koss's documents carry particular significance here, by Koss's own admission, the servers housing all of Koss's electronic documents are not located in this District, but in the Northern District of Texas. Pl.'s Opp. at 2. The Court acknowledges that this District is nearer to the Northern District of Texas and, therefore, the ease of access to Koss's documents would be greater in this District than NDCA.

However, Koss incorrectly relies on the dicta of this Court's decision in *Fintiv*. *See* Pl.'s Opp. at 5 ("As this Court has noted, in the modern electronic world, the "location" of documents no longer has a meaningful impact on convenience."). Indeed, in *Fintiv*, this Court noted that "this factor is at odds with the realities of modern patent litigation." *Fintiv v. Apple Inc.*, No. 6:18-cv00372-ADA, 2019 WL 4743678, at *4 (W.D. Tex. Sep. 13, 2019). Despite this fact, the Fifth Circuit has not elected to change its test for resolving this factor—which relies on physical location of electronic documents—and this Court is bound by the Fifth Circuit's precedent.

This Court, having made its determination of this factor solely on the basis of binding precedent, wishes to reiterate the concern it outlined in *Fintiv* as to the Fifth Circuit's precedent on this factor. *See Fintiv, Inc. v. Appl Inc.*, 6:18-cv-00372-ADA, 2019 WL 4743678, at *4 (W.D. Tex. Sep. 13, 2019). In this Court's experience, the vast majority of produced documents in patent litigation cases are electronic documents pulled from a party's server. Documents stored on a server in Mountain View, California can be as easily accessed by a court in Alexandria, Virginia as they can be by a Court in San Jose, California. Thus, in this Court's opinion the

physical location of electronic documents bears little weight in the determination of a convenient venue. Consequently, the Fifth Circuit inserts a rigid test into an otherwise flexible analysis.

Retaining the present framework subverts rather than promotes the stated goals of motions to transfer venue. In close cases, the relative ease of access to sources of proof may serve as the deciding factor in a Court's analysis. Thus, a transferee venue that is in fact no more convenient than the transferor venue, nonetheless, may appear on paper to be clearly more convenient. This thumbs the scales in the movant's favor as to a motion that purportedly defers to the plaintiff's choice of venue when the two venues are comparably convenient. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (noting that the plaintiff's choice of venue should be respected when the transferee venue is not clearly more convenient that the transferor venue). Although this Court would not decide this case differently were the standard for this factor changed, this Court restates its hope that the Fifth Circuit will considering revisiting and amending its precedent to explicitly give courts the discretion to take into consideration the ease of accessing electronic documents in modern times.

In weighing Apple's relevant documents located in NDCA against Koss's relevant documents located near WDTX, the Court finds that the relative ease of access to sources of proof factor slightly favors transfer.

*ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses*

After carefully reviewing the Parties' arguments, the Court determines that the availability of compulsory process to secure the attendance of witnesses factor strongly weighs against transfer. "In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d

8

at 316). A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person,"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Moreover, the ability to compel live trial testimony is crucial for evaluating a witnesses' testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

Apple contends that the availability of compulsory process favors transfer because one relevant third-party witness, Michael Sagan, lives near Sacramento, California. Def's Mot. at 9. Mr. Sagan is an inventor of three out of four of the asserted patents. *Id.* Conversely, Apple asserts that there are no known relevant third-party witnesses within the subpoena power of this Court. *Id.*

In response, Koss claims that Mr. Sagan has indicated he is willing to travel to Texas at Koss's expense; therefore, Mr. Sagan is a willing witness and should not be considered under this factor. Pl.'s Opp. at 7. Importantly, Koss identifies two third-party witnesses, Thomas Petrone and Hytham Alihassan, who are unwillingly to appear for trial and are subject to the subpoena power of this Court. *Id.* at 7.  Mr. Petrone is the co-owner of Koss's IT vendor Synectics who lives and works in Austin and declared that he is unwilling to travel to California for trial. *Id.* at 2 ███████████████████████████. Mr. Alihassan is a former Embedded Software and Firmware Engineer at Red Fusion, the company that initially developed the firmware for Koss's Striva line of headphones. *Id.* at 7. Koss argues that Mr. Alihassan lives and works in Austin and is, therefore, subject to this Court's subpoena power. *Id.* Koss also argues that Mr. Alihassan is a current employee of a Koss competitor Plantronics, Inc. and is unlikely to testify willingly. *Id.*

9

In its Reply, Apple largely reiterates its arguments adding that Koss provides no evidence that Mr. Sagan will willingly travel to WDTX to testify. Apple asserts that even if Mr. Sagan is currently willing to travel to WDTX, Koss has submitted no evidence that Mr. Sagan will feel the same way when called upon at trial. *Id.* Apple additionally attacks the relevance of Koss's WDTX witnesses and posits that Koss failed to state what specific information or documents it expects these witnesses to produce. *Id.* Apple claims that Mr. Petrone's support of Koss's litigation team and his unwillingness to travel to NDCA are irrelevant to determining this factor. *Id.* at 4–5. Apple also argues that Mr. Alihassan merely worked for a company that at one point worked on Koss's products; consequently, Apple infers that Mr, Alihassan likely has little to no information relevant to this case. *Id.*  at 4. Additionally, Apple, for the first time in its Reply, identifies two other California-based witnesses, Clause Zellweger and Jay Wilson. *Id.* at 3. Mr. Zellweger and Mr. Wilson are inventors of prior art that Apple plans to present at trial. *Id.*

After careful consideration of the Parties' arguments, this Court determines that this factor strongly weighs against transfer. The Court attaches weight to this factor to the extent that the third-party witnesses are unwillingly to testify. *Turner v. Cincinnati Insurance Co.*, No. 6:19-cv-642-ADA-JCM, 2020 WL 210809, at *3 (W.D. Tex. Jan. 1, 2020) ("[T]he compulsory process factor weighs against transfer when neither side claims a witness would be unwilling to testify.") (citing *Peregrine Myanmar Ltd. V. Segal*, 89 F.3d 41, 47 (2d Cir. 1996)). Importantly, this Court has made clear that the burden is on the movant to prove unwillingness such that the compulsory process of another venue favors transfer. *See Turner v. Cincinnati Insurance Co.*, No. 6:19-cv-642, 2020 WL 210809, at *3 (W.D. Tex. Jan. 14, 2020) (noting that where no party has alleged or shown a witness's unwillingness, this factor weighs against transfer). The Parties

have identified five third-party witnesses relevant to the instant analysis: Mr. Sagan, Mr. Zellweger, Mr. Wilson, Mr. Petrone, and Mr. Alihassan.

*1. Koss's Inventor—Mr. Michael Sagan*

First, Koss has represented to the Court that Mr. Sagan is willing to travel to WDTX and will do so at Koss's expense. Pl.'s Opp. at 3, 7. Apple asserts that this representation "is no substitute for evidence" and, therefore, cannot be relied upon to affect the transfer analysis. Def.'s Reply at 3 (citing *Enzo Biochem, Inc. v. Gen-Probe Inc*., 424 F.3d 1276, 1284 (Fed. Cir. 2005). Apple cites *Enzo Biochem* in support of its statement that "attorney representation 'is no substitute for evidence.'" The Court notes that *Enzo Biochem* does not, in fact, state that attorney representation is no substitute for evidence, but that "attorney *argument* is no substitute for evidence." *Enzo Biochem*, 424 F. 3d at 1284. Additionally, *Enzo Biochem* is inapposite to the instant case. In *Enzo Biochem*, the Court found that, in the summary judgment context, the movant had sufficiently met its initial burden and the nonmovant's arguments alone were insufficient to meet its *burden to produce* some evidence refuting the movant's claim. *Id.* Here, Koss does not present the Court with mere argument or suggestion of Mr. Sagan's willingness to testify. Koss has affirmatively represented to the Court that Mr. Sagan is willing to travel to Texas to testify at Koss's expense. Such representations were certified to the Court and made under Rule 11. Fed. R. Civ. Pro. 11(a)–(b) (noting that by presenting to the court a document signed by an attorney, the person providing the document certifies, to the best of their knowledge, that factual contentions have evidentiary support or denials of factual contentions are warranted on the evidence).

Nevertheless, Apple, as the movant, carries the burden to prove unwillingness to testify. Even if Koss's representations were insufficient, Apple presents no evidence of its own

supporting its assertion that Mr. Sagan is, or will be, unwilling to testify. *See* Def.'s Mot; *see also* Def.'s Reply. In fact, Apple never denies that Mr. Sagan is unwilling to testify but instead attempts to impose an improper burden on Koss to establish that Mr. Sagan will irrevocably testify at trial. *Id.* At the very most, Apple points out that Koss does not offer evidence that Mr. Sagan will not change his mind. *See* Def.'s Reply at 3. Koss does not have the burden to prove that Mr. Sagan will not change his mind. Such a burden would be impractical and likely impossible to satisfy, with its equivalent being every witness pledging under oath to appear at trial regardless of any and all circumstances that occur between briefing on a motion and trial itself.

Apple does not present evidence of or even allege that Mr. Sagan is an unwilling witness while Koss states under threat of sanctions—in a Rule 11 representation to this Court—that Mr. Sagan has represented that he is a willing witness. *See* Fed. R. Civ. P. 11(b). Therefore, Mr. Sagan is not an unwilling witness properly examined under this factor.

*2. Apple's Prior-Art Witnesses—Mr. Zellweger and Mr. Wilson*

Next, this Court examines Apple's two prior art witnesses. In the Court's experience, such witnesses are unlikely to be called upon to testify. *Fintiv*, 2019 WL 4743678, at \*5 (noting that because prior art witnesses are very unlikely to testify, such witnesses do not count for or against transfer) (citing *East Tex. Boot Co., LLC v. Nike, Inc.*, No. 2:16-cv-0290-JRG-RSP, 2017 WL 2859065, at \*4 (E.D. Tex. Feb. 15, 2017)). As witnesses only relevant in the context of prior art, Mr. Zellweger or Mr. Wilson are highly unlikely to testify at trial. Furthermore, Apple, again, fails to carry its burden as the movant to establish Mr. Zellweger or Mr. Wilson as unwilling witnesses nor does Apple even claim that these witnesses would be unwilling to travel to this District.

*3. Koss's Third-Party Witnesses—Mr. Petrone and Mr. Alihassan*

This Court now turns to Koss's witnesses. Koss identifies two third-party witnesses within WDTX: Mr. Petrone and Mr. Alihassan. Pl.'s Opp. at 7. Mr. Petrone is the co-owner of Koss's IT vendor Synectics, who lives and works in Austin and has unequivocally stated that he will not testify in NDCA. *Id.* at 2 (citing Petrone Decl., ECF No. 52-3 at ¶ 16). The Court finds that Koss's IT vendor serves a primarily archival role, it is unlikely that Mr. Petrone will be called to testify at trial. Nevertheless, Mr. Petrone is an established unwilling witness who resides in this District and is, therefore, subject only to this Court's subpoena power and not subject to the subpoena power of the NDCA court.

Mr. Alihassan is a former Embedded Software and Firmware Engineer at Red Fusion, the company that initially developed the firmware for Koss's Striva line of headphones. As a Firmware Engineer who worked at Red Fusion during development of the firmware for Koss's Striva headphones, the Court finds that Mr. Alihassan is a relevant witness regarding the firmware in Koss's Striva headphones in the context of a lost profits damages analysis. Additionally, Mr. Alihassan, as a current employee of a Koss competitor Plantronics, Inc., is unlikely to willingly testify.

Koss has established Mr. Petrone, while unlikely to testify at trial, and Mr. Alihassan as unwilling witnesses who are within this Court's subpoena power but are not subject to NDCA's subpoena power. Apple has failed to sufficiently establish any unwilling witnesses subject to NDCA court's subpoena power. Consequently, this Court determines that the availability of compulsory process factor strongly weighs against transfer.

### iii. The Cost of Attendance for Willing Witnesses

The convenience of witnesses is the single most important factor in the transfer analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). The Court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-00693-JRG-RSP, 2017 WL 4155236, at *5 (E.D. Tex. Sep. 19, 2017). The convenience of party witnesses is given little weight. *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010). The Fifth Circuit's 100-mile rule states that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue § 1404(a) is more than 100 miles, the factor of inconvenience of witnesses increases in direct relationship to the additional distance to be traveled." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (quoting *Volkswagen I*, 371 F.3d at 204–05). "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist*, No. 6:20-cv-00194-ADA at 13; *see Moskowitz Family LLC v. Globus Med., Inc.*, No. 6:19-cv-00672-ADA, 2020 WL 4577710, at *4 (W.D. Tex. Jul. 2, 2020). As a preliminary matter, given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in 1404(a) briefing will testify at trial. *Fintiv*, 2019 WL 4743678, at *6. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial. *Id.* Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor. *Id.*

Apple argues that the convenience and cost of attendance to the relevant witnesses weighs in favor of transfer to NDCA. Def.'s Mot. at 9. Apple claims that all of its employees who worked on the accused features are located in California, naming thirteen of its employees as knowledgeable of the engineering, design, and marketing of the accused products, licensing of

14

relevant patents, and relevant financial records and patents. *Id*. First, Apple states that these witnesses could travel from Apple's headquarters in Cupertino to the NDCA courthouses in Oakland or San Francisco in less than an hour; alternatively, these same employees could travel to the courthouse in San Jose in approximately fifteen minutes. *Id*. at 10. Conversely, Apple maintains that it would take 5.5 hours for these same employees to take a direct flight to Waco, or these employees would have to take a 3.5 hour flight to either Dallas or Austin followed by a one-hour-and-forty-five minute drive to Waco. *Id*. Additionally, Apple argues that NDCA is more convenient for the Plaintiff's third-party witness, Mr. Sagan who resides in Sacramento. Def.'s Mot. at 10. Apple claims that Mr. Sagan can drive from his home to the courthouse in less than two hours. *Id*. at 11. Conversely, Apple claims that it would take Mr. Sagan five hours or more to reach the courthouse in Waco from his home. *Id*.  While Apple concedes that it has offices within WDTX, it maintains that none of the employees responsible for the design engineering, development, or marketing of the accused features work out of such offices. *Id*. at 12.

In response, Koss argues that the convenience to willing witnesses weighs against transfer. First, Koss states that this District is closer to its Midwestern offices than NDCA, and therefore more convenient for its party witnesses. Pl.'s Opp. at 9. However, Koss notes that the convenience of party witnesses is given little weight. *Id.* at 8. Thus, turning to third-party witnesses, Koss notes that two relevant third-party witnesses, Mr. Petrone and Mr. Alihassan live in WDTX. *Id.* Additionally, Koss rebuts Apple's claim that NDCA is a more convenient venue for third-party inventor Mr. Sagan, stating that Koss is covering the cost of Mr. Sagan's travel expenses, therefore, there is negligible convenience to Mr. Sagan if this case were transferred to NDCA. *Id.* Moreover, six of the eight other third-party inventors live in either Wisconsin or

Illinois. *Id*. Koss notes that these witnesses will have to travel to either venue but notes that the cost to travel to WDTX is substantially less than the cost to travel to NDCA, largely because WDTX is closer to these states than NDCA. *Id*.

As to Apple's list of thirteen witnesses, Koss observes that merely presenting a sprawling list of witnesses is not persuasive because it is unlikely that Apple will call each of these thirteen witnesses at trial. *Id*. at 9. Moreover, Koss contends that because Apple has an Austin office, Apple greatly exaggerates the inconvenience to its witnesses of travelling to WDTX. *Id*. Particularly, Koss notes that such witnesses could continue their normal employment in Apple's Austin office. *Id*. Thus, Koss concludes that WDTX is more convenient than NDCA for six third-party inventor witnesses and for the majority of other third-party witnesses and that Apple's contention that NDCA is significantly more convenient is undercut by the availability of its Austin office. *Id*. at 10–11.

In its Reply, Apple points out that Koss does not dispute the time it would take for Apple's employees to travel to the NDCA courthouse or how long it would take for the same witnesses to reach the WDTX courthouse. Pl.'s Reply at 5.

In analyzing the convenience of Apple's party witnesses, Koss's party witnesses, and relevant third-party witnesses, the Court finds that this factor weighs against transfer.

*1. Apple's Party Witnesses*

The convenience of party witnesses is given little weight. *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010). This Court "assumes that no more than a few party witnesses—and even fewer third-party witnesses" will testify and "long lists of potential party and third-party witnesses" do not impact

its analysis. *STC.UNM v. Apple Inc.*, No. 6:19-cv-428-ADA, 2020 WL 4559706, at *6 (W.D. Tex. Apr. 1, 2020). As Koss notes this Court does not determine this factor by mechanically counting the number of witnesses. *See Fintiv*, 2019 WL 4743678, at *4.

As a preliminary matter, the Court finds it highly unlikely that Apple will call the majority of its thirteen employee witnesses at trial. More importantly, the Court disagrees with Apple that  all thirteen of Apple's employee witnesses weigh in favor of transfer. Notably, Mr. Dave Shaw, Mr. Robert Boyd, and Mr. Jeff Bruksch reside in the Southern District of California ("SDCA") not NDCA. Def.'s Mot. at 3–4. Specifically, Mr. Shaw lives in San Diego, California, 500 miles from NDCA's court in San Francisco. Mr. Boyd resides in Los Angeles, California which is approximately 400 miles away from NDCA's courthouse in San Francisco. *See id*. Mr. Bruksch lives in Culver City, California which is also approximately 400 miles from NDCA's court in San Francisco. *See id*. The location of these three witnesses undercuts Apple's argument that NDCA is overwhelmingly more convenient than WDTX, as these witnesses—Mr. Shaw especially—must travel significant distances to reach either WDTX or NDCA.

Instructive to this analysis, the Federal Circuit has concluded that witnesses traveling from Iowa would only be "slightly more inconvenienced by having to travel to California" than to Texas. *In re Genentech, Inc*., 566 F.3d at 1348. Notably, the distance from Iowa to Texas is 550 miles and the distance from Iowa to California is 1,800 miles. Similarly, the distance from San Diego (where Mr. Shaw resides) to San Francisco is 502 miles and the distance from San Diego to Waco is 1,400 miles. Additionally, the Federal Circuit has rejected courts giving more weight to the fact that witnesses "need to travel a greater distance to reach" a venue, noting that non-party witnesses "will likely have to leave home for an extended period" whether or not the case was transferred, and thus such witnesses would only be slightly more inconvenienced by

17

having to travel to an extra distance. *In re Apple Inc.,* 979 F.3d 1332, 1342 (Fed. Cir. 2020). Relying on Federal Circuit precedent, the Court finds that Mr. Dave Shaw, Mr. Robert Boyd, and Mr. Jeff Bruksch are only slightly more inconvenienced by having to travel to this District as opposed to NDCA. ███████████████████████████████████████

████████████████████████████████████████████████████████████████

Therefore, such testimony would be duplicative.

Relevant to all thirteen of Apple's employee witnesses is Apple's Austin corporate campus located in this District. In *In Re TracFone*, the Federal Circuit explained the rationale behind the Fifth Circuit's 100-mile Rule stating that "the ultimate 'task of scheduling fact witnesses' is 'to minimize the time when they are removed from their regular work or home responsibilities.'" *In Re TracFone Wireless, Inc.*, No. 2021-136 at 4 (Fed. Cir. April 20, 2021) (citing *Volkswagen I*, 371 F.3d at 205). The Federal Circuit further explained that "this gets increasingly difficult and complicated . . . when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Id.*

Apple does not contest the convenience of its Austin corporate campus. In fact, Apple boasts that Austin is "home to Apple's largest campus outside of Cupertino, California," similar to a second home.[2] In fact, Apple is currently constructing a new $1 billion, 3-million-square-foot Austin campus (in addition to its existing Austin facilities) which includes two-million-square-feet of office space making it one of the world's largest office buildings.[3] This facility is touted as being capable of housing 15,000 employees.[4] The new Austin facility also includes a

---

[2]*See* Feature, Apple, *A Landmark Year of Giving from Apple,* Apple.com,  https://www.apple.com/newsroom/2020/12/a-landmark-year-of-giving-from-apple/ (last visited April 21, 2021).
[3]Michael Potuck, *Apple plans big upgrade to new $1B Austin campus with 192-room hotel,* 9TO5Mac.com, https://9to5mac.com/2020/05/20/apple-austin-campus-hotel-upgrade/ (last visited April 21, 2021).
[4]*See* Press Release, Apple, *Apple Expands in Austin,* Apple.com, https://apple.com/newsroom/2019/11/apple-expands-in-austin/ (last visited April 21, 2021).

192-room hotel with a six-story design to house Apple employees who presumably travel to Austin for work. *See supra* note 4. Incidentally, Apple's new Austin facility is scheduled to open in 2022, the same year that trial in this case is scheduled. *See* Scheduling Order, ECF No. 30.

The Court strongly believes that the convenience of this new Austin facility, along with its existing Austin facilities, greatly minimizes the time that Apple's employees are removed from their regular work responsibilities. Additionally, travel time from this work site to the Court facility would be comparable, if not less, than the travel time from Apple employees California work sites to a NDCA courthouse. Conversely, Koss has no facilities in California. Pl.'s Opp. at 9.

Additionally, these thirteen witnesses are party witnesses, which are afforded little weight. *See L.P.*, 2010 WL 1170976, at *4. Party witnesses—especially employee witnesses—are afforded little weight because the party can compel their testimony and ensure that they are produced at trial. *Gardipee v. Petroleum Helicopter*, 49 F. Supp. 2d 925, 929 (E.D. Tex. 1999).[5]

2. *Koss's Party Witnesses*

Koss contends that this District would be less costly for its witnesses because it is closer to its Midwestern offices than NDCA and a less expensive travel destination. Pl.'s Opp. at 9. Apple asserts that Koss provides no support for its assertions and that travel time between the Midwestern offices and Waco is the same as the travel time to San Francisco. Def.'s Reply at 6. As such, the Court finds both venues to be equally convenient to Koss's party witnesses.

3. *Third-Party Witnesses*

---

[5]The Parties also address two additional Apple employees, ███████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████.

"Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist*, No. 6:20-cv-00194-ADA at 13; *see Moskowitz Family LLC v. Globus Med., Inc.*, No. 6:19-cv-00672-ADA, 2020 WL 4577710, at *4 (W.D. Tex. Jul. 2, 2020). Because the Parties cannot compel third-party witnesses to testify in the way they can compel their employee witnesses, the convenience of third-party witnesses is given considerable weight. *See Gardipee*, 49 F. Supp. 2d at 929. However, again, the Court does not find long lists of potential third-party witnesses persuasive in and of themselves. *Fintiv*, 2019 WL 4743678, at *6.

The Court finds that this District would be more convenient for the six third-party inventor witnesses. Based on the Court's experience, inventor testimony is one of the most critical witnesses that will testify live at trial. *Uniloc 2017 LLC v. Apple Inc.*, 6-19-CV-00532-ADA, 2020 WL 3415880, at *6 (W.D. Tex. June 22, 2020). As such the inventors being located closer to WDTX is a significant fact that weighs against transfer with respect to the cost of attendance for willing witnesses factor. *Id.* All six of the inventors hail from two midwestern states, Illinois and Wisconsin, and they are each closer to this District than to NDCA.

Mr. Petrone—co-owner of Koss's IT vendor Synectics—has testified that he would be willing to appear for trial in this District alone. Furthermore, Mr. Petrone lives in Austin and thus this venue is highly convenient.

Koss's discusses the convenience of Mr. Alihassan. The Court finds that —regardless of where this case is tried—Mr. Alihassan will be an unwilling, third-party witness. As such, the Court properly addressed Mr. Alihassan under the availability of compulsory process factor, and it would be improper to address him again under the cost of attendance for willing witnesses factor here. As such, Mr. Alihassan's convenience is not germane to the determination of this factor.

20

Next, the Court analyzes the convenience of Mr. Sagan, a willing third-party inventor witness. *In re Apple Inc.*, the Federal Circuit cautioned against attributing too much convenience merely because a witness lives closer to a venue. *In re Apple Inc.*, 979 F.3d at 1342. In that case, the inventor and patent prosecutor lived closer to WDTX than the Southern District of Florida, but the Federal Circuit explained that each "will likely have to leave home for an extended period of time and incur travel, lodging, and related costs" regardless of the venue. *In re Apple Inc.*, 979 F.3d at 1342. Here, Koss has represented to the Court that it will be paying for Mr. Sagan's travel expenses to attend trial. Consequently, while Mr. Sagan's travel time to NDCA may be longer than his travel time to WDTX, he will likely have to leave home for an extended period of time and will not incur any travel, lodging, or related costs regardless of the venue. Thus, Mr. Sagan's convenience weighs only slightly in favor of transfer.

Therefore, the Court must weigh (1) the convenience of Apple's party witnesses: thirteen somewhat-duplicative employees several of whom live outside of NDCA; (2) the negligible convenience of Koss's party witnesses; and (3) the convenience of the third-party witnesses: Mr. Petrone, Mr. Sagan, and the other six inventor witnesses (across five patents). As such, the Court finds that the convenience of willing witnesses factor weighs against transfer.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

This factor considers the practical problems that make a trial easy, expeditious, and inexpensive for the private parties. *In re Genetech, Inc.*, 566 F.3d at 1342. Further, having a single district court try cases involving the same patents promotes judicial economy. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed Cir. 2009). Permitting two cases involving the same issues to be heard by two different courts wastes time, energy, and money; it is this

kind of waste that § 1404 was intended to avoid. *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

Apple argues that there are no other practical problems that would make trial easier, more expeditious, or less expensive in either NDCA or WDTX. Def.'s Mot. at 12. Specifically, Apple asserts that this Court has no prior familiarity with the asserted patents or with Koss in general. *Id*. at 13. Further, as to this case, Apple asserts that this Court has not held any substantive proceedings, but NDCA is currently supervising an arbitration between the Parties over a related confidentiality agreement. *Id*.

Apple argues that Koss's decision to sue multiple co-defendants in this division does not—on its own—weigh against transfer. *Id*. To support this assertion, Apple cites the Federal Circuit's *In re Google* decision noting that allowing a plaintiff's filing of multiple suits in one district to weigh against transfer "would be effectively inoculating a plaintiff against convenience transfer under § 14049(a)." *Id*. (citing *In re Google Inc.*, 2017 WL 977038, at *3 (Fed. Cir. Feb 23, 2017)). Apple further contends that there is a "limited relationship" between the co-pending cases; specifically, there is only one asserted patent that is common to all five cases. *Id*.  Moreover, Apple points out that when considering co-pending litigation—as it is here—the Court must also consider the presence of co-pending motions to transfer. *Id*. at 14. Because defendants in related co-pending litigation have also moved to transfer venue, this should be taken into account insofar as co-pending litigation motivates this court's decision. *Id*.

In response, Koss notes that it has multiple patent infringement cases in WDTX over the same patents asserted against Apple. Pl.'s Opp. at 11. Specifically, four of the five patents asserted against Apple in this case are also asserted against at least one other case before this Court. *Id*. Moreover, Koss notes that "simple efficiency suggests that these cases should be heard

by as few judges as possible, to avoid duplication of claim construction, case management, and other time-consuming proceedings." *Id*. While Koss concedes that it cannot inoculate itself against transfer via the filing of multiple related proceedings in this District, Koss also observes that co-pending litigation cannot be ignored merely because the defendants in these related cases have each filed motions to transfer. *Id*. at 12 (citing *Parus Holdings Inc. v. LG Electronics Inc.*, No. 6:19-cv-00432-ADA, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020)). Koss argues that because the five defendants in these five related cases have filed motions to transfer to four different districts, the argument that retaining the cases in WDTX would promote judicial economy is strengthened. *Id*. Thus, Koss believes that if this Court retains at least one co-pending case, then this factor weighs heavily against transfer.

In reply, Apple reiterates that Koss cannot inoculate itself against transfer by filing separate related motions and that there is no reason to think that any of the cases will be tried in WDTX in light of the outstanding motions for transfer. Def.'s Reply at 6–7. Thus, Apple would have this Court judge this factor as neutral.

This Court determines that this factor weighs slightly against transfer. There is no question that there are co-pending proceedings that involve a majority of the same patents asserted against Apple. Further, there is no question that there are co-pending motions to transfer. Thus, the salient issue is to what extent the Federal Circuit has cautioned against district courts allowing this factor to play a role in their analysis. This Court determines that Apple overstates the Federal Circuit's holding in *In re Google*. There, the Federal Circuit indeed noted that a plaintiff cannot overcome a motion to transfer venue "*simply* because it filed related suits against multiple defendants in the transferor district." *In re Google*, 2017 WL 977038, at *3 (emphasis added). But the Federal Circuit noted that this "is not to say that judicial economy can

never dominate the court's transfer analysis"; in fact, the Federal Circuit has held "it can play a significant role." *Id.* at *2 (citing *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010)).

Thus, the Court interprets the Federal Circuit's holding in *Google* not as impacting a district court's determination of *the factor* but rather the district court's *weighing of the factors against other factors*. Here, the Court does not rely solely on the practical-problems factor to outweigh factors that strongly weigh in Apple's favor; rather the Court notes that this factor is one of many that weighs against transfer.

**B. The Public Interest Factors Weigh Against Transfer.**

*i. Administrative Difficulties Flowing From Court Congestion*

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

Apple argues that the administrative difficulties flowing from court congestion are neutral and entitled to little weight. Def.'s Mot at 16. Apple first asserts that the Fifth Circuit has characterized this factor as speculative and stated that when "several relevant factors weigh in favor of transfer and other are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.* (quoting *In re Genentech*, 566 F.3d at 1347). Further, Apple argues that NDCA and WDTX dispose of cases on a roughly equal timeline. *Id.* Apple downplays that this Court has recently disposed of some cases faster than NDCA and claims that this has not always been the case. *Id.* But Apple maintains that "[t]here is no evidence in the record that [NDCA] and this District meaningfully differ in their abilities to expeditiously process cases." *Id.* Consequently, Apple infers that this factor is neutral. *Id.*

In response, Koss asserts that NDCA has not held a patent trial in over a year. Pl.'s Opp. at 12. Moreover, Koss points out that Apple's statistics relate to WDTX as a whole rather than to

just this division; Koss contends that this overlooks the Waco Division's faster time-to-trial. *Id*. at 13. Specifically, "the Waco Division has its own patent-specific Order Governing Proceedings ('OGP') that ensures efficient administration of patent cases" *Id*. (quoting *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-00108-ADA, 2021 WL 401989, at *7 (W.D. Tex. Jan. 26, 2001)). Finally, Koss observes that this Court has already set a trial date for this case that is just thirteen months away. *Id*. Thus, Koss argues that the congestion factor weighs against transfer.

In its reply, Apple argues that "nothing in a court's ability to set a schedule directly speaks to" this factor. Def.'s Reply at 8 (citing *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020)). Moreover, Apple acknowledges that its prior cited evidence speaks only to WDTX in general and not the Waco Division specifically; however, Apple nonetheless argues that the recent explosion in WDTX's docket is attributable to this Court's growing docket. *Id*. Finally, Apple asserts that this Court's growing docket makes it more likely that this factor will favor transfer; thus, Apple concludes that the congestion factor is at least neutral. *Id*.

This Court—convinced by Koss's assessment of the respective time to trial of WDTX and NDCA—determines that this factor weighs against transfer. When assessing the court congestion factor, a court must make its decision on the basis of past data rather than anticipated schedules. *See Adobe*, 823 F. App'x at 932. While Apple claims historically WDTX and NDCA have disposed of cases at comparable rates, recently this Court has proved more expeditious. In this Court's judgment, recent data is more probative in determining court congestion. Further, this Court affords little weight to Apple's observation that this Court has 400 more intellectual property cases than NDCA. First, Apple provides no indication as to the total number of cases handled by both courts. Second, Apple does not articulate with any specificity how the additional 400 intellectual property law cases will affect WDTX's schedule for bringing this case to trial.

25

When weighing the rate at which WDTX has disposes of patent cases relative to NDCA against the excess of 400 cases that WDTX has over NDCA, this Court gives more weight to the rate of disposal. Thus, this Court finds that this factor weighs against transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

Apple argues that California has a local interest in deciding the instant case. Def.'s Mot. at 14. Apple engineers designed the accused products and coded the accused features in California. *Id*. 14–15. Moreover, Apple states that its Austin office is not relevant to the determination of this factor; this factor does not pertain to a party's significant connections to a venue but rather to the connection between the venue and the events giving rise to the cause of action. *Id*. at 15. But Apple alleges that those activities took place in California not Texas. Moreover, apart from product sales, Apple alleges there are no activities relevant to this proceeding that took place in Texas, let alone WDTX. *Id*.

Koss responds by noting that Apple has "a significant number of employees" in this District. Pl.'s Opp. at 13. In fact, this Court has previously found that Apple has over 6,000 employees at its Austin campus, which is Apple's second largest in the U.S. *Fintiv*, 2019 WL 4743678, at *7. Koss further contends that ███████████████████████████████ ███████████████████████████████████████████████████████████. Moreover, Koss observes that Apple has engaged in allegedly infringing activities in this District. *Id*. at 14. Finally, Koss observes that Apple has benefited from its contacts with WDTX's work force, tax benefits, and laws and regulations; from this, Koss determines that it would be unfair for Apple to reap these benefits and deny that WDTX has a substantial interest in deciding this case. *Id*.

In reply, Apple asserts that "the local-interest factor 'most notably regards not merely the Parties' significant connections to each forum writ large, but rather the significant connections

between a particular venue and the events that gave rise to the suit." Def.'s Reply at 7 (quoting *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020)). Apple argues that Koss ignores this standard when it states Apple's general connections to this District. *Id*. Apple contends that these statements on Koss's part do nothing to support a localized interest in WDTX; rather, Koss's statements would support a finding of a localized interest in virtually any judicial district. *Id*. at 8. Thus, Apple concludes that there are strong local interests in California but none here in Texas; as a result, Apple concludes that the localized-interest factor favors transfer. *Id*.

This Court finds that this factor weighs slightly against transfer. As mentioned above, Apple has a significant number of employees within WDTX. Further, Apple is likely one of the largest employers in both NDCA and WDTX, so both districts have a significant interest in this case. Notably, Apple attempts to minimize its local impact in this District. Apple has published several articles publicizing its impact in Austin, "Apple is a hometown business here in Austin . . . a company that is so deeply woven into our community fabric."[6] Even Apple's CEO Tim Cook states, "With the construction of our new campus in Austin now underway, Apple is deepening our close bond with the city and the talented and diverse workforce that calls it home. Responsible for 2.4 million American jobs and counting, Apple is eager to write our next chapter here and to keep contributing to America's innovation story."[7]

Even though the parties dispute whether the Apple employees located within WDTX are knowledgeable about the relevant information for this case, ███████████████████ ████████████████████████████████████████████████████ ████████████████████████. As such, WDTX has a localized interest with respect to Apple.

---

[6] *See* Feature, Apple, A Landmark Year of Giving From Apple, Apple.com, https://www.apple.com/newsroom/2020/12/a-landmark-year-of-giving-from-apple/ (last visited April 21, 2021).
[7] *See* Press Release, Apple, *Apple Expands in Austin,* Apple.com, https://apple.com/newsroom/2019/11/apple-expands-in-austin/ (last visited April 21, 2021).

Moreover, Koss does "extensive business in Texas, both through direct sales and through sales to Texas companies, and files Texas state tax returns." *Id.* at 14. Additionally, WDTX has a significant localized interest because of the state and local tax benefits received by and pledged to Apple to build a second campus in Austin.

Consequently, given that Apple's presence in both districts is neutral in terms of transfer, but Koss's presence in WDTX weighs against transfer, the Court finds that the local-interest factor slightly weight against transfer.

### iii. Familiarity of the Forum With the Law That will Govern the Case

The Parties and this Court agree that this factor is neutral.

### iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The Parties and this Court agree that this factor is neutral.

## V. CONCLUSION

The public factors weigh against transfer with the Court finding two factors weighing against transfer, and the remaining two factors neutral. Importantly, the private factors weigh decidedly against transfer. The two most important factors—the availability of compulsory process and convenience of willing witnesses—weigh against transfer with the availability of compulsory process factor further weighing strongly against transfer. Whereas only the location of sources of proof factor favors transfer. Even if the practical-problems factor were neutral, this Court would determine that the factors, taken together, weigh against transfer. Consequently, Apple has failed to meet the heavy burden of showing that NDCA is a *clearly more convenient* venue warranting transfer.

It is therefore **ORDERED** that Apple's motion for transfer venue to the Northern District of California is **DENIED**.


SIGNED this 22nd day of April, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE