**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| KOSS CORPORATION,<br><br>               Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>               Defendant. | Case No.      6:20-cv-00665-ADA<br><br><br>**JURY TRIAL DEMANDED**<br><br>**<u>PUBLIC VERSION</u>** |

<u>**DEFENDANT APPLE INC.'S MOTION TO STRIKE**</u>
<u>**PORTIONS OF PLAINTIFF KOSS CORPORATION'S**</u>
<u>**FINAL INFRINGEMENT CONTENTIONS**</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

I.      INTRODUCTION ......................................................................................... 1

II.     BACKGROUND ........................................................................................... 2

        A.    Koss Knew About Apple's Products For Months, But Took No Action ............... 2

        B.    Koss Requested Multiple Extensions Of The Final Contentions Deadline
              In Order To Depose Apple's Engineers And Inspect Apple's Source Code ......... 3

        C.    Koss Served Final Contentions With New Products, No Source Code, And
              No Disclosure Of Its Theories For Numerous Limitations ................................... 3

III.    ARGUMENT ................................................................................................. 4

        A.    Koss Violated The Court's Order Governing Proceedings By Delaying
              The Addition Of New Products It Had Known About For Months ...................... 4

              i)     Koss' Accusations Are Not Based On New Information .......................... 4

              ii)    Koss' Accusations Against The Mini And The Studio Buds Were
                     Not Provided Seasonably, But Were Improperly Held Back Until
                     The Final Contentions ................................................................................. 6

              iii)   Koss' Attempt To Add New Products Into The Case With Less
                     Than Two Months Of Discovery Left Is Unworkable And
                     Prejudicial .................................................................................................. 7

        B.    Koss Violated The Court's Order Governing Proceedings By Failing To
              Articulate Infringement Theories For Each Element Of The Asserted
              Claims ............................................................................................................. 9

              i)     Koss' Blanket Citations To Source Code Do Not Show "Where In
                     The Accused Products" Any Claim Element Is Found, And Do Not
                     Provide Fair Notice To Apple Of Koss' Theories ................................... 10

              ii)    Koss' Repeated References To Irrelevant And Unexplained
                     Screenshots Do Not Show "Where In The Accused Products" Any
                     Element Of An Asserted Claim Is Found, And Thus Provide No
                     Notice To Apple of Koss' Theories ........................................................ 11

                     (1)    Koss Provides No Infringement Theory For Its "Signal
                            Strength" Claims .......................................................................... 12

(2)     Koss Provides No Infringement Theory For The "Data Are
        Transmitted About The Headphone Assembly" Claims............... 14

(3)     Koss Provides No Infringement Theory For The
        "Encryption Type Data" Claim...................................................... 17

(4)     Koss Provides No Infringement Theory For The
        "Website . . . Through Which A User" Specifies Credential
        Data Claim .................................................................................... 18

IV.     CONCLUSION............................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Connectel, LLC v. Cisco Sys., Inc.*,
  391 F. Supp. 2d 526 (E.D. Tex. 2005) ...................................................................................... 11

*Diagnostic Sys. Corp. v. Symantec Corp.*,
  2009 WL 1607717 (C.D. Cal. June 5, 2009) ........................................................................... 11

*Pisony v. Commando Constrs, Inc.*,
  2020 WL 4934463 (W.D. Tex. Aug. 24, 2020) .................................................................... 9, 17

*Rapid Completions LLC v. Baker Hughes Inc.*,
  2016 WL 3407688 (E.D. Tex. June 21, 2016) .................................................................... 11, 18

*Realtime Data, LLC v. Packeteer, Inc.*,
  2009 WL 2590101 (E.D. Tex. Aug. 18, 2009) .......................................................................... 7

*Revolaze LLC v. J.C. Penney Corp.*,
  2020 WL 2220158 (E.D. Tex. May 6, 2020) ............................................................................. 7

**Other Authorities**

Order Governing Proceedings – Patent Case, Ver. 3.4 (W.D. Tex. June 24, 2021) .............. passim

## I.      INTRODUCTION

Koss' final infringement contentions violate this Court's rules by reaching too far and providing too little. As an initial matter, Koss belatedly tries to add products that have been public knowledge for as long as ten months. But the Court's Order Governing Proceedings ("OGP") prohibits this. That Order requires that additions to contentions be "based on material identified after . . . preliminary contentions were served," and be made "seasonably upon identifying any such material." Koss' final contentions fail on both counts. Koss attempts to add the HomePod Mini—which was announced ten months ago, before Koss' preliminary contention deadline. It also attempts to add the Beats Studio Buds, launched over two months ago. ████████

████████████████████████████████████████████████████████

████████████████████████████████ Injecting these products into the case now, with fact discovery set to close in under two months, is unseasonable and violates the OGP.

Further, for many claims, Koss' final contentions do not identify what in the accused products supposedly infringes. This, too, violates the Court's OGP, which requires a plaintiff to identify "where in the accused product(s) each element of the asserted claim(s) are found." Koss violates the OGP in two main ways. First, Koss attempts to rely on a long list of source code files. But it never identifies the patent—much less the claim or element—to which any of these files supposedly relate. Second, Koss repeatedly pastes screenshots into its charts. But these screenshots do not obviously relate to the elements they appear next to—and Koss makes no attempt to explain. This leaves four claim limitations, repeated across fifty-five claims, without any disclosed infringement theory.

Koss' violations of the Court's OGP deprive Apple of the time it needs to defend against Koss' last-minute additions, and of fair notice of the claims it must defend against. The Court

should strike Koss' untimely accusations and the deficient portions of Koss' final infringement contentions, as set forth below.

## II.    BACKGROUND

### A.    Koss Knew About Apple's Products For Months, But Took No Action

Koss filed its Complaint on July 22, 2020. (Dkt. No. 1.) The Complaint accuses Apple of infringing five patents. Four are related to wireless headphones, and the remaining one (the '451 Patent) is related to sharing wireless credentials.

Koss' preliminary infringement contentions were due on November 6, 2020. (Dkt. No. 30 at 2.) On October 13, weeks before that deadline, Apple publicly announced the HomePod Mini. (Ex. A, 10/13/20 Apple HomePod Mini Press Release.) When Koss served its preliminary contentions on November 6, Koss chose not to accuse the Mini of infringement. (Ex. B, 11/6/20 Koss Prelim. Infringement Contentions Cover Pleading at 2–3.) Since that time, the Mini has remained on sale publicly. (Ex. C, Apple.com Buy HomePod Mini.) And technical information about the Mini was featured on Apple's public website. (Ex. D, WayBack Machine, 10/13/20 HomePod Mini Tech. Specs.) But Koss still made no effort to add the Mini to this case. Even when Apple repeatedly alerted Koss that the scope of accused products included the HomePod only, Koss did nothing. (Ex. E, 5/27/21 Apple Resps. to Koss First Set of Interrogs. at 5; Ex. F, 6/29/21 Apple Objs. to Koss 30(b)(6) Notice at 4.)

On June 14, 2021, Apple publicly announced another product, Beats Studio Buds. (Ex. G, 6/14/21 Beats Studio Buds US Press Release.) This information was reported on Apple's website and in various technology publications. (*Id.*; Ex. H, 6/14/21 CNET, Beats Studio Buds Review.). Again, for two months after this announcement, Koss did nothing.

**B.      Koss Requested Multiple Extensions Of The Final Contentions Deadline In Order To Depose Apple's Engineers And Inspect Apple's Source Code**

Although Koss never attempted to add the Mini or Studio Buds before August 13, 2021, Koss did request (and Apple agreed to) two extensions of its contentions deadline, totaling over two months. (Dkt. Nos. 85, 88.) According to Koss, it needed this time to take written discovery and depositions about Apple's products. (*Id.*; Ex. I, Email between Counsel, 7/15/21 Halverson to Pieja at 1–2; Ex. J, Email between Counsel, 6/7/21 Halverson to Pieja at 1.) Apple produced detailed information about its products well in advance of Koss' final deadline. For instance, by January 15, Apple had provided core technical documents. (Ex. K, Apple 1/15/21 Prelim. Invalidity Contentions Cover Pleading at 41.) It followed that production up with tens of thousands of pages of relevant technical materials. In addition, on June 11, Apple provided its source code for Koss to inspect. (Ex. L, 6/11/21 Pieja Email to KOSS_LIT.) Koss' technical expert spent six days reviewing that code. (Ex. M, Source Code Review Log.) And Koss deposed four Apple engineers regarding the accused features before serving its final contentions. (Ex. N, Kumar 6/29/21 Dep.; Ex. O, Paquier 7/1/21 Dep.; Ex. P, Shaw 7/22/21 Dep.; Ex. Q, Bradley 8/6/21 Dep.)

**C.      Koss Served Final Contentions With New Products, No Source Code, And No Disclosure Of Its Theories For Numerous Limitations**

On August 13, 2021, Koss served its final infringement contentions. (Ex. R, 8/13/21 Koss Final Infringement Contentions.[1]) In these contentions, Koss attempted to accuse the Mini and Studio Buds for the first time. For the products Koss had previously accused, despite three months of discovery, four technical depositions, and six days of code inspection, Koss' final contentions provide virtually no detail about its theories. They do not cite a single file, module, or line of source

---

[1] For ease of the Court's reference, Apple has applied page numbers to Koss' Final Infringement Contentions. References to page numbers for Exhibit R are to the page numbers applied by Apple.

code with respect to any patent, claim, or claim element. And, for four key claim elements spanning

over fifty claims, Koss relied solely on unexplained screenshots with no obvious relevance.

## III.   ARGUMENT

Koss' contentions violate the Court's OGP. Its new accusations of products that have been

public knowledge for as long as ten months are untimely. And its failure to map features of Apple's

products to claim elements leaves Apple without notice of Koss' infringement theories. There are

now less than two months left in fact discovery. Koss' failure to follow the OGP, if permitted,

would inject multiple new issues (and at least one third party) into the case and force Apple to

finalize discovery and prepare expert reports without fair knowledge of Koss' theories.

### A.   Koss Violated The Court's Order Governing Proceedings By Delaying The Addition Of New Products It Had Known About For Months

Koss' attempt to add products to this case at the eleventh hour violates the Court's rules

regarding timely amendments to contentions. Under the OGP, an amendment must be "based on

material identified after . . . preliminary contentions were served." OGP – Patent Case, Ver. 3.4

(W.D. Tex. June 24, 2021) at 8. Further, the OGP does not permit a party to hold back all

amendments until it serves its final infringement contentions. Rather, parties have an "obligation

to *seasonably* amend if new information is identified after initial contentions." *Id.* at 9–10

(emphasis added). Koss' accusations regarding the Mini and Studio Buds violate the OGP because

they are not based on new information, are not seasonable, and create unworkable discovery

burdens.

#### i)   Koss' Accusations Are Not Based On New Information

As an initial matter, Koss' attempt to add the Mini does not satisfy the OGP's threshold

requirement that amendments be based on new information. Apple announced the Mini on October

13, 2020, over three weeks before the preliminary contentions deadline. (Ex. A; Dkt. No. 30 at 2.)

And Koss and its counsel *knew* about the Mini before its preliminary infringement contentions were due. For example, one of the screenshots included in Koss' November 2020 preliminary contentions (for a different product) specifically references the Mini:



(Ex. S, 11/6/20 Koss Prelim. Infringement Contentions, Chart "B-1" at 16, 35.[2])

And Koss' contentions include nothing that could constitute "material [about the Mini] identified after [Koss'] preliminary contentions were served." OGP at 8. In fact, the websites and screenshots Koss cites are the same ones it previously cited in its preliminary contentions for the HomePod.[3] Koss cites no newly available information regarding the Mini that prompted it to add the Mini now—it simply chose not to do so before and wants a do-over. The OGP forbids this.

---

[2] For ease of the Court's reference, Apple has applied page numbers to Koss' Preliminary Infringement Contentions, Chart "B-1." References to page numbers for Exhibit S are to the page numbers applied by Apple.

[3] Koss does cite to a handful of pages from a document production from January 2021. (*Compare* Ex. S at 2–3, *with* Ex. R, Chart "C-1" at 606–10; *see also* Ex. K at 41.) But even these pages make no mention of the Mini.

ii)     <u>Koss' Accusations Against The Mini And The Studio Buds Were Not Provided Seasonably, But Were Improperly Held Back Until The Final Contentions</u>

Koss further violated the OGP by sitting on its accusations against the Mini and Studio Buds for months and then springing them on Apple in its final contentions. The OGP specifically contemplates—and prohibits—such a scenario. The OGP states that the "[final contention] deadline ***does not*** relieve the Parties of their obligation to seasonably amend if new information is identified after initial contentions." OGP at 9–10 (emphasis added). Here, information about the Mini was widely available for ten months preceding Koss' final contentions. Technical information about the Mini was posted on Apple's website starting in October 2020. (Ex. D.) The Mini was also the subject of numerous public reviews, evaluations, commercials, and even holiday gift guides. (Ex. T, 12/10/20 T3, Gift Guide; Ex. U, 1/22/21 9To5Mac, Gift Guide; Ex. V, 11/16/20 CNET, Apple HomePod Mini Review; Ex. W, 11/13/20 The Verge, Apple HomePod Mini Review; Ex. X, 11/25/20 Apple Insider, HomePod Mini Release.) Further, the Mini was and is available for purchase in Apple's retail stores in the United States. (Ex. D; Ex. C.)[4]

Like the Mini, the Studio Buds also were widely available and advertised long before Koss added them to its contentions. Apple publicly announced the Studio Buds on June 14, 2021. (Ex. G.) The Studio Buds were in the headlines at that time when LeBron James was spotted wearing them. (Ex. Y, 5/26/21 The Verge, Article; Ex. Z, 5/27/21 Tech Radar, Article; Ex. AA, 5/27/21 Endgadget, Article.) And Apple has been selling the Studio Buds since they were announced in June of this year. (Ex. BB, Studio Buds - Add To Cart.) Despite this, and although Koss knew discovery was set to close soon, Koss said nothing. Instead, it let two months—half the remaining

---

[4] Koss cannot claim that it thought the Mini was already part of this case. On two occasions, Apple clarified the scope of accused products for the '451 Patent—and the Mini was not within that scope. (Ex. E at 5; Ex. F at 4.) Each time, Koss received Apple's communication but said nothing.

discovery period—pass before notifying Apple that it wanted to accuse the Studio Buds. (Ex. R at 2–3.)

Given these facts, Koss' delay in accusing the Mini and Studio Buds is not seasonable. Even in cases where a plaintiff seeks leave to amend—which Koss did not do—this type of delay is unacceptable. *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-CV-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009). "Waiting nine months after serving the Original Infringement Contentions to seek leave to amend is not a reasonable period of time, especially taking into account that this case is set for trial less than two years after filing." *Id.* Trial is now less than eight months away. And discovery closes in less than two months. Koss' opportunity to add these products has long passed.

iii)    <u>Koss' Attempt To Add New Products Into The Case With Less Than Two Months Of Discovery Left Is Unworkable And Prejudicial</u>

Koss' untimely accusations are especially disruptive because they complicate the case by requiring new discovery from at least one third party. When a plaintiff "wait[s] until the end of discovery to amend its infringement theories," this "threatens the clear, focused path that both parties were following." *Revolaze LLC v. J.C. Penney Corp.*, No. 2:19-CV-43-JRG, 2020 WL 2220158, at *5 (E.D. Tex. May 6, 2020). Courts have prevented such amendments when the defendant "would likely need to conduct additional discovery into [third-party] manufacturers" of a new product. *Id.* Here, as in *Revolaze,* Koss' new accusations would require significant third-party discovery in an unworkably short time.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████ Discovery into this third-party information

is complex and likely to be time-consuming. Koss' attempt to force Apple and the third party to

try to complete this discovery in two months is impractical and burdensome. The Court's schedule

typically allows around seven months for a party to provide written and deposition discovery on

an accused product. OGP at 10. But fact discovery here closes in under two months. (Dkt. No. 30

at 3.) Koss' last-minute addition of the Mini and Studio Buds would thus force Apple to provide

discovery in less than a third of that time. This accelerated timeline also would prejudice Apple's

ability to fully prepare its defense while meeting the other upcoming fact and expert discovery

deadlines.

Similarly, adding the Mini to the case also would require additional discovery. Among

other things, documents regarding the Mini—including technical, sales, and marketing

documents—have not yet been collected, reviewed, or produced. And Koss has suggested that it

may demand additional deposition discovery if this product is added.

Koss' insistence in proceeding with highly accelerated discovery for its newly added

products is especially unreasonable given Koss' own behavior. Koss requested multiple extensions

of time to prepare its contentions—totaling two months—and Apple agreed. (Dkt. Nos. 85, 88;

Exs. I, J.) After receiving those contentions, Apple offered to allow both new products into the

case if Koss would grant a two-month extension of its own to allow Apple, and the relevant third

party, to complete discovery on the new products. (Ex. CC, Email between Counsel, 9/13/21 and

9/16/21 Pieja Emails to KOSS_LIT at 1–2.) Apple's offer would have simply given Apple the

same time to complete discovery that it would have had if Koss had timely accused the Studio

Buds when they launched. But Koss refused. (*Id.*, 9/20/21 Johnson Email to Pieja at 1.) Koss

cannot have it both ways. If Koss insists on maintaining the current schedule, its late accusations of the Mini and Studio Buds are not seasonable, do not fit within that schedule, and should be stricken. If the products are added to the case at this late juncture, the Court should grant Apple a two-month extension of the remaining deadlines. This would allow Apple to provide discovery and prepare its defenses for these products.

**B.     Koss Violated The Court's Order Governing Proceedings By Failing To Articulate Infringement Theories For Each Element Of The Asserted Claims**

In addition to its untimely accusations of two new products, Koss also failed to comply with the Court's OGP with respect to its previously accused products. The OGP requires that a plaintiff's contentions "set[] forth where in the accused product(s) each element of the asserted claim(s) are found." OGP at 1. The purpose of these contentions is notice. Infringement theories should "become more concrete as the litigation progresses" so that defendants can gather evidence and prepare defenses accordingly. *Pisony v. Commando Constrs, Inc.*, No. 6:17-CV-00055-ADA, 2020 WL 4934463, at *1 (W.D. Tex. Aug. 24, 2020) (internal citation omitted) (equating the objectives of infringement and invalidity contentions).

Koss' final contentions violate this requirement in two ways. First, Koss tries to rely on generic, unexplained citations to dozens of source code files. Second, for many claims, Koss' final contentions rely exclusively on unexplained screenshots of Apple products. These screenshots provide no information about "where in the accused product(s) [Koss believes] each element of the asserted claims(s) [is] found." OGP at 1. Koss is thus improperly asserting claims without providing Apple with the notice required by the OGP.

i)      Koss' Blanket Citations To Source Code Do Not Show "Where In The
        Accused Products" Any Claim Element Is Found, And Do Not Provide Fair
        Notice To Apple Of Koss' Theories

As an initial matter, Koss attempts to rely on source code while refusing to disclose even

the most basic information about how that code supposedly corresponds to the asserted claims.

The cover to Koss' contentions lists dozens of code file names without explanation, commentary,

or any context as to why it believes they are relevant. (Ex. R at 4–6.). In fact, Koss' boilerplate

language does not even identify which *patents* these files supposedly relate to, much less which

claims or claim elements. Nor does Koss identify any purportedly infringing lines or modules of

code within the files. The most Koss says is that its two-page list of blanket citations "is relevant

to *several claims* in the asserted patents as to *certain accused products*." (*Id.* at 4 (emphasis

added).) But the OGP bars Koss from arguing that "several" elements of its claims are found in

Apple's source code while refusing to identify "where" in the code those elements are found. OGP

at 1. Koss is waving its hands, pointing to everything yet saying nothing at all.

Koss' failure to provide meaningful code contentions is particularly inexcusable given how

much time Koss had to inspect Apple's code. Apple made its code available to Koss on June 11,

2021. (Ex. L.) Koss' expert has since spent six days reviewing the code and Apple agreed to extend

the contentions deadline to permit this review to complete. (Ex. M; Dkt. Nos. 85, 88; Exs. I, J.)

Nor do Koss' complaints about the sufficiency of Apple's production help it. (Ex. R at 4.)

Apple made a complete production of relevant code months ago. (Ex. L.) Koss' contentions point

to nothing that was allegedly missing. Further, even if Koss could identify some missing code,

Koss has no excuse for not identifying the supposed relevance of the long list of files that it *did*

identify.

Koss' failure to articulate a specific theory of infringement dooms its reliance on source

code. As one court explained, "after a plaintiff-patentee has had a reasonable opportunity to review

the source code for the defendant's accused software product, the patentee's time for trolling the proverbial waters for a theory of infringement comes to an end, and the patentee must fish or cut bait with respect to its specific theory of infringement." *Diagnostic Sys. Corp. v. Symantec Corp.*, No. SACV 061211DOCANX, 2009 WL 1607717, at *5 (C.D. Cal. June 5, 2009); *see also Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 529 (E.D. Tex. 2005) (requiring contentions to contain "even greater specificity" after source code was made available). If Koss had a theory as to how its claims are found in Apple's code, it was required to disclose it in its final contentions. Koss' refusal to do so undermines the purpose of infringement contentions—fair notice. Accordingly, the Court should strike Koss' blanket citations to source code.

ii)    Koss' Repeated References To Irrelevant And Unexplained Screenshots Do Not Show "Where In The Accused Products" Any Element Of An Asserted Claim Is Found, And Thus Provide No Notice To Apple of Koss' Theories

In addition to refusing to substantiate its reliance on source code, Koss further violates the Court's OGP by relying, for numerous claims, only on unexplained and irrelevant screenshots of Apple products. These screenshots do not show "where in the accused product(s) each element of the asserted claim(s) are found." OGP at 1. Vague citations to "screenshots of block quotes" or "diagrams from [d]efendants' documents" are insufficient to meet a plaintiff's burden at the final-contention stage. *Rapid Completions LLC v. Baker Hughes Inc.*, No. 6:15-CV-724, 2016 WL 3407688, at *6 (E.D. Tex. June 21, 2016). "It is not a defendant's job to assume how a plaintiff believes each claim element is met or to assume how a plaintiff alleges the Accused Instrumentality infringes"; the plaintiff must lay that mapping out in its contentions. *Id.*

In particular, as set forth below, Koss has not articulated any infringement theories for the fifty-five claims that include the following four claim limitations:

- transitioning between audio sources based on "signal strength,"

- transmitting "data about the headphone assembly" upon a user activating a microphone,

- having credential data that includes "encryption type data," and

- hosting a "website" through which a user inputs credential data.

Koss' failure is particularly telling because Apple has been seeking additional clarity on Koss' theories for each of these limitations since December 2020. (Ex. DD, 12/1/20 Pieja Letter to Shimota.) Koss assured Apple that it merely needed discovery to allow it to provide further "revision [to its charts] as fact discovery progresses." (Ex. EE, 12/9/20 Halverson Letter to Pieja at 3–4.) But Koss has now conducted multiple depositions and reviewed extensive document and source code productions from Apple. Koss has thus received the "detailed discovery" and "core technical documents" that it claimed to need. (*Id.*) Because—despite all of that—Koss' *final* contentions contain the same the glaring deficiencies as its preliminary contentions, it is now time for the Court to strike them.

         (1)    <u>Koss Provides No Infringement Theory For Its "Signal Strength" Claims</u>

As an initial matter, Koss provides no explanation as to how it believes Apple's products satisfy forty-three claims that require a headphone to transition between audio sources based on a "signal strength level."[5] Claim 4 of the '025 Patent is representative of these signal-strength claims. That claim requires that "the headphone assembly transitions to play digital audio content received wirelessly from the second digital audio source via a second wireless communication link *based on, at least, a signal strength level* for the second wireless communication link." In Koss'

---

[5] The "signal strength" claims are: U.S. Patent No. 10,206,025 (the "'025 Patent"), claims 4, 5, 7, 9, 14, 15, 17, 19, 23, 24, 26, 28, 32, 33, 35, 37, 44, 45, 47, 49, and 50; U.S. Patent No. 10,506,325 (the "'325 Patent"), claims 5 and 11; U.S. Patent No. 10,469,934 (the "'934 Patent"), claims 4, 6, 8, 12, 13, 17, 18, 20, 22, 26, 27, 29, 31, 38, 40, 41, 44, and 58; and U.S. Patent No. 10,491,982 (the "'982 Patent"), claims 6 and 11.

charts for this claim, Koss repeats language from claim 4 and pastes Apple screenshots into the chart. As shown below, Koss provides no explanation or context for any of the screenshots:





(Ex. R, Chart "A-3" at 222–26.)

Koss' reliance on its screenshots is deficient for several reasons. To begin, these screenshots do not even show the Powerbeats, the supposedly infringing product. Beyond that, these screenshots say nothing about where or how Koss believes any Apple product "transitions . . . based on, at least, a signal strength level for the second wireless communication link." None

of the screenshots mention signal strength or any property related to it. Some screenshots do mention "[a]utomatic switching," accomplished through Apple's "Smart Routing" feature. (*Id.*) But these screenshots explain that Smart Routing ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ Koss does not articulate which of these factors, if any, it contends maps to the "signal strength level" recited in the claim. Apple is left entirely in the dark.

Koss' failure to provide notice is especially inexcusable because Apple has been seeking clarification on what Koss contended satisfied the "signal strength" claims for months. (Ex. DD at 4.) Koss claimed it would supplement its contentions once discovery progressed. (Ex. EE at 1, 4). Koss has since had document discovery, source code inspection, and a deposition of the Apple engineer responsible for the accused feature. (Ex. K at 41; Ex. M; Ex. N at 18:7–19:4, 25:12–14.) Despite this, Koss still has provided literally no explanation of how it believes Apple's products practice the "signal strength level" limitation. Indeed, even Koss appears to concede it has no explanation: when it deposed the engineer responsible for the accused feature, it did not ask a single question about "signal strength." (Ex. N.) Koss had ample opportunity to comply with the Court's OGP for the "signal strength level" claims, and it failed. The Court should strike Koss' contentions for those claims.

   (2) <u>Koss Provides No Infringement Theory For The "Data Are Transmitted About The Headphone Assembly" Claims</u>

Koss' contentions also fail to satisfy the OGP with respect to ten claims that require transmitting "data . . . about the headphone assembly" "upon activation of the microphone by the

user."[6] To take one example, Claim 8 of the '025 Patent requires that "upon activation of the microphone by the user, data are transmitted about the headphone assembly to a remote device." In its final contentions, Koss does nothing more than regurgitate the claim language and include three unexplained screenshots. (Ex. R, Chart "A-1" at 67–69.) The first screenshot appears to refer to "Hey Siri," while the second two screenshots seem to depict various notifications:



[6] The "about the headphone assembly" claims are: '025 Patent, claims 8, 18, 27, 36, and 48; and '934 Patent, claims 7, 21, 30, 45, and 61.



(*Id.*)[7]

Koss' contentions provide no context, and do not link any part of any screenshot to the claim language. As a result, Apple has no way to know what Koss believes is the "data . . . about the headphone[s]," what "remote device" that data is supposedly transmitted to, or how "activation of the microphone by the user" is allegedly involved. For instance, Koss' screenshots depict a laundry list of features, including playing audio, connecting to headphones and speakers, ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Koss does not disclose whether "data . . . about the headphone[s]" corresponds to one, some, all, or none of these features. Nor does Koss even attempt to address whether or how any such data is transmitted "upon activation of the microphone."

Koss already has deposed Apple engineers responsible for the accused functionalities for these claims and reviewed relevant documents and source code. (Exs. N–P; Ex. K at 41; Ex. M.)

---

[7] For certain "about the headphone assembly" claims, Koss uses a different first screenshot, still referring to "Hey Siri." (*See, e.g.*, Ex. R, Chart "A-3" at 236.)

Yet its final contentions lack the disclosures required by the OGP. Rather than helping "legal theories become more concrete as the litigation progresses," Koss' contentions for the claims at issue remain bare and uninformative. *Pisony*, 2020 WL 4934463, at *1. The Court should therefore strike them.

        (3)    <u>Koss Provides No Infringement Theory For The "Encryption Type Data" Claim</u>

For claim 14 of the '451 Patent, Koss continues its pattern of citing screenshots without any explanation. Claim 14 requires that the "credential data for [a] infrastructure Wi-Fi network additionally comprises encryption type data for the infrastructure Wi-Fi network." In its final contentions, Koss pastes a series of dense screenshots describing how to set up a HomePod:



(Ex. R, Chart "C-1" at 643–47.)

This jumble includes references to ████████████████████████████████
███████████████████████████ (*Id.*) There is no indication from these crowded

screenshots as to what part of the HomePod Koss believes matches "encryption type data." Further,

Koss does not explain if or how any such data is "for the infrastructure Wi-Fi network." In fact,

Koss uses the identical group of screenshots for claim 14 as it does for other claims with very

different limitations, including:

- "an identifier for the infrastructure Wi-Fi network" (claim 12);

- "a password for the infrastructure Wi-Fi network" (claim 13);

- "an ad hoc WiFi wireless network" (claim 16); and

- "one or more host servers host a website through which . . . a user of the electronic
  device specifies the credential data . . . " (claim 17).

(*See* Ex. R, Chart "C-1" at 634–43, 647–56.) Nowhere does Koss parse out the substance of these

screenshots, distinguish between claim elements, point to relevant code, or refer to deposition

testimony.

As a result, Koss' so-called "infringement" contentions for claim 14 of the '451 Patent do

nothing more than tell Apple how to use its own products. *Rapid Completions*, 2016 WL 3407688,

at *5. Koss' screenshots do not "put [Apple] on notice of where the plaintiff believes the asserted

elements are found in an instrumentality, which is the exact information that plaintiff is supposed

to be revealing in its infringement contentions." *Id.* at 6. The Court should strike Koss' contentions

for claim 14 of the '451 Patent.

        (4)    <u>Koss Provides No Infringement Theory For The "Website . . .
Through Which A User" Specifies Credential Data Claim</u>

Claim 17 of the '451 Patent requires that the "one or more host servers ***host a website***

through which, via the mobile computer device, ***a user of the electronic device specifies the***

***credential data*** for the infrastructure wireless network . . . ." Koss' final contentions for claim 17

share the same screenshots as those in claim 14, above. Again, Koss provides no context. There is

no disclosure as to what Koss thinks is the "website" that "one or more host servers host." There

also is no disclosure as to how Koss thinks a user specifies credential data through that website.

Koss has provided no notice, leaving Apple entirely uncertain of what Koss' theory of

infringement might be. The Court should strike Koss' contentions for claim 17 as well.

## IV.    CONCLUSION

Koss' final infringement contentions violate the Court's OGP because they are both

untimely and fail to provide the notice the OGP required. Apple therefore respectfully requests

that the Court:

- Strike Koss' contentions regarding the HomePod Mini and the Beats Studio Buds or, in the alternative, extend the remaining deadlines by a period of two months to accommodate the additional discovery needed;

- Strike Koss' boilerplate citation to source code; and

- Strike Koss' infringement contentions for all claims where no theory of infringement is supplied: '025 Patent, claims 4, 5, 7–9, 14, 15, 17–19, 23, 24, 26–28, 32, 33, 35–37, 44, 45, 47, 49, and 50;'325 Patent, claims 5 and 11; the '934 Patent, claims 4, 6–8, 12, 13, 17, 18, 20–22, 26, 27, 29–31, 38, 40, 41, 44, 45, 58, and 61; '982 Patent, claims 6 and 11; and '451 Patent, claims 14 and 17.

Date: September 20, 2021                   Respectfully submitted,

By:  */s/ Michael T. Pieja*
Michael T. Pieja (*pro hac vice*)
Alan E. Littmann (*pro hac vice*)
Doug Winnard (*pro hac vice*)
Samuel E. Schoenburg (*pro hac vice*)
Whitney Woodward (*pro hac vice*)
Jennifer M. Hartjes (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606

Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
dwinnard@goldmanismail.com
sschoenburg@goldmanismail.com
wwoodward@goldmanismail.com
jhartjes@goldmansimail.com

Stephen E. McConnico
State Bar No. 13450300
Steven J. Wingard
State Bar No. 00788694
Stephen L. Burbank
State Bar No. 24109672
SCOTT DOUGLASS & MCCONNICO
Colorado Tower
303 Colorado St., Ste. 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 495-6399
smcconnico@scottdoug.com
swingard@scottdoug.com
sburbank@scottdoug.com

*Counsel for Defendant/Counterclaimant Apple Inc.*

## **PROOF OF SERVICE**

The undersigned hereby certifies that a true and correct copy of **DEFENDANT APPLE INC.'S MOTION TO STRIKE PORTIONS OF PLAINTIFF KOSS CORPORATION'S FINAL INFRINGEMENT CONTENTIONS** has been served on September 20, 2021, to all counsel of record who are deemed to have consented to electronic service.


  /s/ *Michael T. Pieja*
Michael T. Pieja