## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

KOSS CORPORATION,

    Plaintiff,

    v.

APPLE INC.,

    Defendant.

Case No. 6:20-cv-00665-ADA

## PLAINTIFF KOSS CORPORATION'S MOTION TO DISMISS DEFENDANT APPLE INC.'S COUNTERCLAIM FOR BREACH OF CONTRACT PURSUANT TO RULE 12(b)(6) AND MOTION TO STRIKE APPLE'S AFFIRMATIVE DEFENSE FOR PROSECUTION LACHES PURSUANT TO RULE 12(f)

Pursuant to Rule 12(b)(6) and Rule 12(f) of the Federal Rules of Civil Procedure, Plaintiff Koss Corporation ("Koss") moves this Court for an order dismissing Defendant Apple, Inc.'s ("Apple") counterclaim alleging breach of contract (Dkt. 91, ¶¶ 77-94), and for an order striking Apple's seventh affirmative defense alleging prosecution laches.

## I.   APPLE'S COUNTERCLAIM FOR BREACH OF CONTRACT SHOULD BE DIS-MISSED PURSUANT TO FEDERAL RULE 12(b)(6)

### A.   Introduction

Despite this Court's express finding that "Koss's Complaint does not violate the Agreement between the Parties," (Dkt. 61), Apple has filed a Counterclaim asserting that "Koss has breached Section 5 of the Confidentiality Agreement through its filing of the Complaint." Dkt. 91, ¶ 85.  Apple's breach of contract claim goes beyond the mere allegations in its Motion to Strike (Dkt. 12) and into the underlying reason for Koss' inclusion of those allegations in its Complaint—so that Koss may lay the foundation for its eventual presentation of evidence that Apple knew that it was infringing the asserted patents in order to prove Koss' willful, induced, and contributory infringement claims.  *See id.*, Counterclaims, ¶ 92 ("Koss's use of the Communications referenced above in this litigation, including such use after the filing of the Complaint, in an effort to prove its allegations of willful and indirect infringement against Apple are not permitted by Section 8 of the Confidentiality Agreement.").  Apple thus takes the position that by virtue of entering into a run-of-the-mill *Confidentiality Agreement*, which essentially served as a standstill agreement while the parties purportedly negotiated a license agreement, Koss waived considerable rights relating to its patents, even going so far as to allege that the Confidentiality Agreement gave Apple a *license* to certain aspects of Koss' patent infringement claims.

This Court has already recognized the absurdity of Apple's position.  (Dkt. 61).  But not only is Apple's theory absurd on its face, it contradicts the express terms of the Confidentiality Agreement—terms that Apple omits from its Counterclaim.  Apple's counterclaim for breach of contract should be dismissed with prejudice.

### B. Argument

#### 1. Legal Standards

A court may grant a motion to dismiss for failure to state a claim upon which relief may be granted if it appears beyond doubt that the complaining party cannot produce a set of facts that would entitle it to relief. *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558, 565–66 (5th Cir. 2002). In evaluating a motion to dismiss under Federal Rule 12(b)(6), a court must "accept[] the facts alleged . . . as true and constru[e] their allegations in the light most favorable to them." *Goldstein v. MCI Worldcom*, 340 F.3d 238, 244 (5th Cir. 2003). However, a court must not "strain to find [favorable] inferences" and a party "must plead specific facts, not mere conclusory allegations, to avoid dismissal." *Id.*; *see also Sadlowski v. King*, No. 3:02-CV-0597-K, 2003 WL 23119142, at *1 (N.D. Tex. Sept. 19, 2003). A motion to dismiss under Rule 12(b)(6) applies to counterclaims as well as complaints. *See e.g. Kaiser Aluminum, Etc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th. Cir. 1982).

To avoid dismissal under Rule 12(b)(6), a pleading "must contain either direct allegations on every *material point necessary* to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (emphasis added). While well-pleaded allegations of fact must be taken as true, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

#### 2. Interpretation of the Confidentiality Agreement

Because contract interpretation is generally a matter of law for a court (*see, e.g., New Orleans City v. Ambac Assurance Corp.*, 815 F.3d 196, 200 (5th Cir. 2016)), this Court may dismiss

Apple's counterclaim for breach of contract both on the basis of its prior denial of Apple's Motion to Strike (Dkt. 61) and because *material* terms of the contract omitted by Apple in its allegations establish that Apple's position is contrary to the terms and intent of the parties.  Apple has already taken the position in this litigation that the plain language of the Confidentiality Agreement is all that is necessary for this Court to decide whether a breach occurred.  *See* Dkt. 12 (Apple's Motion to Strike Koss' Complaint).  This Court has interpreted the Confidentiality Agreement pursuant to that plain language and confirmed that the allegations in Koss' complaint are not a breach of contract.  (Dkt. 61).  Thus, this Court can (and should again) that the conduct alleged to be breaching by Apple in its counterclaim does not qualify as a breach of the Confidentiality Agreement. Upon so doing, this Court will finally put to bed this frolic and detour that demonstrates Apple's intent to bluntly steal Koss' patents by attempting to surreptitiously cause a party to grant a license to its patents **whenever the patentee enters an NDA** with Apple intended to *facilitate* license *negotiations*.

The material terms of the agreement ███████████████████████████████████████

██ "It is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract."  *Myers v. Myers,* 408 A.2d 279 (Del. 1979).

The terms of the Confidentiality Agreement articulate the relevant intent of the parties as it relates to Apple's Counterclaim. ████████████████████████████████

████████████████████████████████████████████████████

███████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

██████████    Apple contends that Koss both granted a license to its patents and waived claims and rights relating to its patents, ████████████████████████████████████████  This position contradicts an explicit reference to the intent of the parties, and it is not supported by the express terms of the Confidentiality Agreement.

### 3.    Apple's Counterclaim for Breach of Contract Relies Exclusively on Conduct that Is Outside the Scope of the Confidentiality Agreement

Apple's Counterclaim is legally erroneous because it rests *exclusively* on the theory that by virtue of entering into the Confidentiality Agreement with Apple, Koss "grant[ed] a license or waive[d] . . . claims [or] rights relating to" its "patents."[1]  Apple alleges that by entering into a Confidentiality Agreement with Apple, Koss gave up the right to use all evidence relevant to claims of willful, induced, and contributory infringement and that Apple received a license to engage in such conduct for at least the duration of the term of the Confidentiality Agreement.  *See* Dkt. 91, Counterclaims, ¶¶ 21–24, 39–94.  Examples of such allegations include:

- "Under the Confidentiality Agreement, Koss was not permitted to later use the fact that Apple had agreed to a discussion with Koss, or the contents of any such discussion, against Apple in litigation."  Dkt. 91, at 24, ¶ 22.

- "Koss's Complaint alleges that Apple induced infringement of each of the Patents-in-Suit.  This claim requires, as Koss acknowledges, that Apple had knowledge of the Patents-in-Suit prior to the filing of the Complaint and that Apple acted with knowledge that it was inducing infringement."  *Id.* at 33, ¶ 71.

- "Koss's only bases for its allegations of induced infringement in its Complaint are purported communications whose use in litigation is barred under the Confidentiality Agreement."  *Id.* ¶ 72.

- "Koss's Complaint alleges that Apple is liable for contributory infringement of each of the Patents-in-Suit.  This claim requires, as Koss acknowledges, that Apple had knowledge of the Patents-in-Suit prior to the filing of the Complaint and that Apple acted with

---

[1] These arguments apply equally to Apple's fourth Affirmative Defense, as well as paragraphs 3–4, 8 of its sixth Affirmative Defense.  Striking of these allegations should follow from dismissal of Apple's breach of contract counterclaim.

knowledge that its products were especially made for use in an infringement of the relevant patents." *Id.* ¶ 73.

- "Koss's only bases for its allegations of contributory infringement in its Complaint are purported communications whose use in litigation is barred under the Confidentiality Agreement." *Id.* ¶ 74.

- "Koss's Complaint alleges that Apple willfully and indirectly infringed each of the Patents-in-Suit.  This claim requires, as Koss acknowledges, that Apple had knowledge of the Patents-in-Suit prior to the filing of the Complaint." *Id.* ¶ 75.

- "Koss's only bases for the allegations of willful and indirect infringement in its Complaint are purported communications whose use in litigation is barred under the Confidentiality Agreement." *Id.* at 34, ¶ 76.

- "Separate and apart from its filing of the Complaint, Koss has breached Section 5 of the Confidentiality Agreement by using Communications that were subject to the Confidentiality Agreement, including Communications that Koss explicitly or implicitly represented were made for the "Purpose" stated in the Confidentiality Agreement, such as for evaluating licenses or transactions, in an effort to prove its allegations of willful and indirect infringement against Apple." *Id.* at 36, ¶ 91.

- "Koss's use of the Communications referenced above in this litigation, including such use after the filing of the Complaint, in an effort to prove its allegations of willful and indirect infringement against Apple are not permitted by Section 8 of the Confidentiality Agreement." *Id.* ¶ 92.

Apple further alleges that by entering into the Confidentiality Agreement, Koss has given up the right to pursue the full scope of its invention:

> Further, Koss continues to prosecute patent applications related directly to the Patents-in-Suit.  Unless enjoined by this Court, there is a substantial likelihood that Koss will again violate the Confidentiality Agreement, for instance by using protected Communications to assert additional issued patents against Apple, or by using protected Communications in the course of prosecuting patents related to the Patents-in-Suit, in an effort to obtain additional patents that can be asserted against Apple.

*Id.* ¶ 93.

In its Request for Relief, Apple seeks "A permanent injunction preventing Koss from using the substance or existence of any Communications subject to Section 5 of the Confidentiality

Agreement in any litigation, patent office proceeding, or any other court or administrative pro-

ceeding, for any purpose." *Id.* at 64, ¶ 3.  Apple confirms that it is asking this Court to issue an

order enjoining Koss "obtain[ing] additional patents" that can be asserted against Apple. *Id.* at 36,

¶ 93.

There is, however, no provision in the Confidentiality Agreement related to continuing

prosecution.  Throughout the term of the Confidentiality Agreement, Koss was prosecuting the

very patents, asserted in this Action, and Apple aware of those patents as discussed in Koss' com-

plaint as is evident from Apple's failure to deny such notice in its Answer to Koss' Complaint see

Dkt. 91, at ¶¶ 70-72, 85, 99, 113, 127, 141.   Moreover, such prosecution was a matter of public

record. *See e.g.* Dkt. 1-2 (U.S. Pat. No. 10,206,025) at 1 (showing publication date of August 30,

2018); Dkt. 1-3 (U.S. Pat. No. 10, 1,298,451 issued May 21, 2019) Dkt. 1-4 (U.S. Pat. No.  10,

469,934) at 1 (showing publication date of August 1, 2019); Dkt. 1-5 (U.S. Pat. No. 10,491,982,

issued Nov. 26, 2019); Dkt. 1-6 (U.S. Pat. No. 10,506,325, issued Dec. 10, 2019).

Apple's position is thus that the Confidentiality Agreement precluded Koss from submit-

ting any prior art to the USPTO if "Communications" were the only way in which Koss were to

have learned of such prior art.  Indeed, Apple will not point to any provision in the Confidentiality

Agreement that it contends refutes this natural reading of Apple's position.  Instead, Koss expects

that Apple may argue that Apple is not alleging breach based on these facts.  Whether or not Apple

alleges this type of breach, however, is irrelevant to the underlying interpretation of the Confiden-

tiality Agreement.  Apple not only interprets the Confidentiality Agreement as a license, but as a

contract that forces Koss to choose between (1) pursuing patent protection for its inventions and

violating the Confidentiality Agreement, and (2) foregoing any future patents to which it is enti-

tled.  In either case, Apple receives rights to practice Koss' inventions without providing any consideration to Koss.  And in the latter case, Apple *and any other potential infringer* receives rights to practice claim scope Koss could otherwise permissibly secure.  As such, it is ridiculous to assert that a standard pre-litigation NDA would deprive a patentee of its ability to fully secure the property to which it is entitled at the USPTO.

### C.      Conclusion

Apple's allegations and request for relief amount to an assertion that Koss *waived* its right to use all relevant and available evidence in order to prove that Apple has engaged in willful, induced, and contributory infringement of Koss' patents.  Moreover, Apple contends that Koss has *waived* its right to pursue *other* patents in the future.  Apple asserts that the Confidentiality Agreement resulted in Koss being precluded from fully exercising its right to pursue the full scope of its invention and effectively granting Apple a *license* to practice Koss' current and future patents.

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████.  Apple's position is unsupportable by the plain language of the Confidentiality Agreement.  Apple's Counterclaim for breach of contract must be dismissed once and for all.

## II.     APPLE'S PROSECUTION LACHES AFFIRMATIVE DEFENSE SHOULD BE STRICKEN PURSUANT TO FEDERAL RULE 12(f)

### A.      Introduction

Apple Inc.'s ("Apple") affirmative defense for prosecution laches is deficient as a matter of law.  Apple fails to articulate any facts that demonstrate that Koss's commonplace patent prosecution strategy qualifies as an egregious misuse of the patent statutory system.  Indeed, apparently hoping to seize on a recent case that the press has speculated will give rise to new defenses (but whose facts are *drastically* different than the facts here), Apple attempts to pervert the reasoning

of Judge Rodney Gilstrap and to instead create an entirely new standard for prosecution laches by suggesting that continuation applications in 20-year-term patents that read on newly developed products are impermissible. Such a position is contrary to the current statutory scheme and authorities. Because Apple has not put Koss on notice of any egregious conduct, Apple's affirmative defense for prosecution laches should be stricken.

## B. Argument

"[A] Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum, Etc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1058 (Fed. Cir. 1982). "The decision to grant a motion to strike is within the court's discretion." *SEC v. Cuban*, 798 F. Supp. 2d 783, 787 (N.D. Tex., 2011). The Fifth Circuit has concluded that "[a]n affirmative defense is subject to the same pleading requirements as is the complaint." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). This opinion predated *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and as such, the *Woodfield* court applied the "fair notice" standard, which "is met if the defendant 'sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise.'" *Woodfield*, 193 F.3d at 362 (citing *Home Ins. Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir.1993)). The Fifth Circuit has not opined as to whether the heightened *Twombly* and *Iqbal* pleading standards are equally applicable to affirmative defenses. *See J.A. Masters Invs. v. Beltramini*, CIV.A. No. H-20-4367, 2021 WL 1929838, at *1 (S.D. Tex. May 13, 2021). Certain courts in the Fifth Circuit, however, have concluded that the heightened pleading standard applies. *See, e.g., Vargas v. HWC Gen. Maint.*, CIV.A. No. H-11-875, 2012 WL 948892, at *2 (S.D. Tex. Mar. 20, 2012) ("This court also agrees that the plausibility standard articulated in *Twombly* and *Iqbal* applies to the sufficiency of affirmative defenses. The Court therefore assesses Vargas' motion to dismiss through the framework of a 12(b)(6) motion to dismiss."). The "plausibility standard articulated in *Twombly* and *Iqbal*"

provides that a complaint must contain "enough facts to state acclaim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### 1.      Legal Standard for Prosecution Laches

Prosecution laches is an equitable affirmative defense to patent infringement. *Hyatt v. Hirshfield*, 998 F.3d 1347, 1362 (Fed. Cir. 2021) (citing *Cancer Rsch. Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 729 (Fed. Cir. 2010)). Prosecution laches "should be applied only in egregious cases of misuse of the statutory patent system." *Symbol Techs., Inc. v. Lemelson Med., Educ. & Rsch. Found., LP*, 422 F.3d 1378, 1385 (Fed. Cir. 2005) (emphasis added). In the context of such "egregious" "misuse," "prosecution laches requires proving two elements (a) that the patentee's delay in prosecution was unreasonable and inexcusable under the totality of circumstances, and (b) that the accused infringer suffered prejudice attributable to the delay." *Hyatt*, 998 F.3d at 1362 (citing *Cancer Rsch. Tech.*, 625 F.3d at 729).

Prosecution laches emerged from two 1920s Supreme Court cases. First, in *Woodbridge v. United States*, the Supreme Court evaluated a patentee's request to continue prosecuting a patent application with an amended specification (amended to best capture the scope of innovation that developed during the delay) eight years after requesting a one-year delay from the U.S. Patent and Trademark Office. 263 U.S. 50, 53 (1923). The Supreme Court concluded that this delay was in order to maximize his commercial profit, and Woodbridge "forfeit[ed] the right to a patent by designed delay." *Id.* at 56. Key to the Supreme Court's conclusion was the delay's impact on the length of the patentee's monopoly caused by the delay:

> Any practice by the inventor and applicant for a patent through
> which he deliberately and without excuse postpones beyond the date
> of the actual invention, the beginning of the term of his monopoly,
> and thus puts off the free public enjoyment of the useful invention,
> is an evasion of the statute and defeats its benevolent aim.

*Id.* (emphasis added). The very next year, the Supreme Court decided *Webster Co. v. Splitdorf Co.*, 264 U.S. 463 (1924). In *Webster*, the Supreme Court noted that "it is no less important that the law shall not be so loosely construed and enforced as to subvert its limitations, and bring about an undue extension of the patent monopoly against private and public rights." *Id.* at 466. Indeed, it is the delay of the monopoly that is the most relevant to a prosecution laches claim. *See In re Bogese*, 303 F.3d 1362, 1363 (Fed. Cir. 2002) (citing *In re Bogese*, 818 F.2d 877 (Fed.Cir.1987)) ("[D]elay in prosecution is not only in delay in disclosure of the invention to the public but also the 'deliberate delay of the term of any monopoly granted by a patent . . . when the industry has developed and matured to such a point as to be more financially beneficial to the applicant and hence more harmful or prejudicial to the public.'") (emphasis added); *Crown Cork & Seal v. Ferdinand Gutmann Co.*, 304 U.S. 159, 168 (1938) ("Where there is no abandonment, mere delay in filing a divisional application for not more than two years after an intervening patent or publication, does not operate to enlarge the patent monopoly beyond that contemplated by the statute") (emphasis added).

### 2.    Patentees May No Longer Extend the Patent Monopoly

Unlike the cases from which the prosecution laches developed, it was not even possible for Koss to enlarge the term of its patent monopoly. From 1861, over fifty years before *Woodbridge* and *Webster*, until 1994, the term of a patent was 17 years *from the date the patent issued*. This enabled patentees to file continuation applications and extend the term of a patent. 5 CHISUM ON PATENTS § 16.04 ("Temporal Scope; Period of Monopoly"), Subsection [1]("Historical Development") at pp. 16-519 - 16-523 (2019) (discussing the Patent Act of 1861 changing the

term of a patent from 14 years to 17 years, and the Uruguay Rounds Agreement Act of 1994 establishing a 20-year patent term, effective from the date of the patent's application). In 1994, Congress amended 35 U.S.C. § 154 and changed a patent's term from 17 years after issuance to 20 years from the earliest date of application for the patent. *Hyatt*, 998 F.3d at 1351. Additionally, 35 U.S.C. § 154 now provides that a continuation application is subject to the 20-year term <u>dating</u> back to the date of the <u>initial</u> application. 35 U.S.C. § 154(a)(2).[2]

Because the amendment of § 154 has both eliminated the opportunity for an applicant to extend the patent term indefinitely *and* effectively provides for continuation patents receiving a *shorter* term—20 years from the application date of the original application—it is not clear how a patent challenger can allege, let alone establish, that a patentee has engaged in an unreasonable and/or inexcusable delay in prosecuting *any* patent with an application dated after the amendment to § 154. Indeed, the most recent Eastern District of Texas decision relating to patents claiming priority to applications <u>dating back to the 1980s</u> (and thus not subject to § 154 as amended). Judge Gilstrap noted that that the patentee engaged in a prosecution strategy, "in the hopes of extending the temporal scope of protection far beyond the statutory term of seventeen years. PMC hoped to obtain protection for at least *30 to 50 years*." *Personalized Media Communications, LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG, Dkt. No. 646 at FF-8 (emphasis added). The facts of the instant case are very different, and the Federal Circuit has suggested that prosecution laches may no longer be available for patent applications filed after the amendment of 35 U.S.C. 154(c). Specifically, it acknowledged that "the facts of this case are <u>not</u> likely to be frequently repeated, as <u>patent terms</u>

---

[2] Section 154 "grandfather[ed] in pending applications . . . [by] provid[ing] that all patents that issue based on applications filed before June 8, 1995 will last until either twenty years from the date the application was filed *or* seventeen years from the date the patent issues, whichever is later." *Biogen Idec MA Inc. v. Trs. of Columbia Univ.*, 332 F. Supp. 286, 292 (D. Mass. 2004) (citing 35 U.S.C. § 154(c)(1)(A) (emphasis in original)). Thus, the prosecution of "submarine patents" has continued well into the 2000s. *See Hyatt*, 998 F.3d at 1353–54.

are now measured from effective filing date, [35 U.S.C.] § 154(c)(1), subject to only limited extensions provided by statute, not by delaying issuance by refiling." *See Cancer Rsch. Tech.*, 625 F.3d at 732 (emphasis added).

### 3. Apple Alleges No Unreasonable and Inexcusable Delay in Prosecution

To the extent a viable prosecution laches defense even exists for patents prosecuted under the post-1994 version of 35 U.S.C. 154, Apple has not alleged any egregious abuse of the statutory patent system as is required for a laches defense. *Symbol Techs.*, 422 F.3d at 1385; Dkt. 91, at ¶ 20 (p. 23), referring to ¶¶ 9–19. Thus, regardless of whether this Court applies the *Twombly/Iqbal* standard or the "notice" standard to Apple's affirmative defense, Apple's allegations, as presented, fail to show that Koss' conduct constitutes an "egregious misuse of the statutory patent system."

Apple's delay allegations are essentially as follows[3]:

- Koss filed as many as 11 applications that claim priority to the same patent Application, but it waited until the continuation application was about to issue before filing a subsequent application. Dkt. No. 90, at p. 21, ¶ 11.

- Koss' patent strategy had the effect of and was intentionally designed to "maximize [and artificially extend] the time during which its patent applications were pending before the [USPTO]." *Id.* at p. 21, ¶¶ 12–13.

- The applications claiming priority to the provisional or subsequent application would have closed "but for Koss's tactics to artificially extend its prosecution . . . through its serial filings." *Id.* at p. 22, ¶ 16.

- There is "no reason Koss could not have claimed any and all inventions it believed it had conceived in the six patent applications in this family that were fully prosecuted in the eight years of prosecution leading up to September 2016." *Id.* at p. 22, ¶ 18.

Apple includes absolutely no support to suggest that Apple has any foundation for Apple's "intentionally designed" allegations. Moreover, Apple includes no allegation that supports the underlying reason for the ultimately development of the doctrine of prosecution laches; that is,

---

[3] Apple's allegations regarding delay are found in paragraphs 11–18 of its defenses (pp. 21–23); however, many of these allegations go to prejudice and are discussed below.

Apple does not allege that Koss' prosecution of the asserted patents impacted their expiration date. *Contrast with Woodbridge*, 263 U.S. at 52–53 ("Thus [the patentee] would have deprived the public of a decade of free use of the patent which the law intended."); *Webster*, 264 U.S. at 465 ("[T]he law shall not be so loosely construed and enforced as to subvert its limitations, and bring about an <u>undue extension of the patent monopoly</u> against private and public rights.") (emphasis added); *Symbol Techs.*, 422 F.3d. at 1385 (prosecution for "the business <u>purpose of delaying their issuance</u> can be considered an abuse of the patent system.") (emphasis added); *Digit. Control Inc. v. McLaughlin Mfg. Co., Inc.*, 248 F. Supp. 2d 1015, 1018 (W.D. Wash. 2003); *In re Bogese*, 303 F.3d at 1363 ("[D]elay in prosecution is not only in delay in disclosure of the invention to the public but also the <u>deliberate delay of the term of any monopoly granted by a patent</u>. . . .") (emphasis added) (internal quotations omitted).

The patents at issue here (along with the rest in the family) claim priority, at the earliest, to a provisional application filed in 2008. *See* Dkt. 91, at p. 21, ¶ 10. The amendments to 35 U.S.C. § 154 place a firm expiration date for patents such as those at issue here—20 years after the filing of the earliest application to which the patent claims priority. 35 U.S.C. § 154(a)(2). Thus, there is no question that the term of these patents is no greater than 20 years after either the provisional application or the original non-provisional application filed in 2009 (subject to potential patent term adjustment due to the *patent office's, not Koss'*, delay). *Id.*

Koss was fully within its rights to file continuation applications while other applications were pending. *See id.* § 120. Indeed, "[t]here are legitimate grounds for refiling a patent application which should not normally be grounds for a holding of laches, and the doctrine should be used sparingly lest statutory provisions be unjustifiably vitiated." *Symbol Techs.*, 422 F.3d at 1385. Presumably aware of this deficiency, Apple suggests, without merit, that extending the life of an

*application*, pursuant to 35 U.S.C. § 120, amounts to an as "*artificial[]* exten[sion of] the time during which its applications would remain pending[,]" Dkt. 90, p. 21, ¶ 13 (emphasis added), notwithstanding such extension being statutorily prescribed, *and* explicitly anticipated when the patent laws were amended in 1995. *See* 35 U.S.C. § 154(a)(2) (providing for a patent term of 20 years after the application filed or the filing date of earliest application to which the patent claims priority). In other words, *nothing* was "artificially" extended.

Apple includes no allegations supporting its position that the timing of Koss' ordinary amendments—amendments made *pursuant to* the statutory scheme—are somehow an egregious violation thereof. Indeed, but for Koss' "serial applications," Apple alleges no facts that the process by which Koss applied for patents caused or constituted a delay in prosecution. Such allegations alone are insufficient. *See Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-cv-02621-WHO, 2019 WL 330912, at *3 (N.D. Cal. Jan. 25, 2019) ("Check Point's mere recitation of the number of years between Finjan's filing of its application for the parent patent and the applications for the five patents at issue here and the conclusory allegation that Finjan adopted a repetitious continuation strategy and limited the universe of prior art by claiming priority to early-filed applications, without more, fails to raise an inference that the delay was unreasonable or unexplained."). Moreover, there is no patent term adjustment for any of the patents at issue. *See* Dkt. 1-2, 1-4, 1-5, 1-6. Thus, the term of the patents has not even been extended because of a delay at the patent office.

Even Apple's allegation that Koss' "delay[ed] over nine years in the prosecution of these patents" is not supported by the law. Judge Gilstrap noted that the delay presumption of delay discussed in *Hyatt* was "clearly limited to 'the context of a § 145 action.'" *Personalized Media Communications, LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG, Dkt. No. 646 at CL-9 (Citing *Hyatt*,

998 F.3d at 1370.)  Moreover, Judge Gilstrap highlighted that "[t]he case cited by the Federal Circuit in *Hyatt* for the presumption of prejudice also arose in the context of an unreasonable delay in *filing suit*—a charge that does not impugn the patentee's *prosecution* conduct. *Id.* (emphasis in original).  Without any allegations that support a view that the ongoing continued of patents in the same family was somehow unreasonable, Apple has neither alleged a plausible affirmative defense of prosecution laches, nor put Koss on notice of any unreasonable delay in its patent prosecution.

### 4.    Apple's Prejudice Allegations Are Insufficient.

Apple's prejudice allegations are effectively that it has been prejudiced by Koss' decision to continue filing patent applications that claim priority to the same patent application because Koss was able to watch the industry develop and then draft claims on a continuation application that read on newly released technology.  *See* Dkt. 91, at pp. 21–23, ¶¶ 13–19.  In other words, Apple is seeking to have this Court apply a doctrine reserved for the *most egregious* patent prosecution practices simply because Koss engaged in "classic commercial gamesmanship under the patent system[,]" including drafting new claims in an open application to cover a competitor's products.  *State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235–36 (Fed. Cir. 1985) *see also Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) ("[N]or is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application.  Any such amendment or insertion must comply with all statutes and regulations, of course, but, if it does, its genesis in the marketplace is simply irrelevant."); *PIN/NIP, Ind. v. Platte Chem. Co.*, 304 F.3d 1235, 1247 (Fed. Cir. 2002) ("[I]t is legitimate to amend claims or add claims to a patent application purposefully to encompass devices or processes of others . . .").

Apple's arguments here harken back to the arguments above that pre-litigation activity by Koss somehow should have foreclosed the ability to continue to prosecute patents in a patent family supported by robust patent specifications. Apple, again, seeks to foreclose the fundamental right conveyed by modern-day continuation practice because its products fall squarely within Koss's patent claims. But Apple's tantrum should be paid no heed.

Koss's conduct is not an abuse of the patent laws, and the Federal Circuit noted that "[a]n applicant's attempt to obtain new claims directed to inventions that he or she believes are fully disclosed and supported in an earlier application, however, is easily distinguishable from appellant's failure to further the prosecution of his application toward the issuance of any claims." *In Re Bogese*, 303 F.3d at 1369. In other words, even if Apple has been prejudiced, such prejudice is not the result of any egregious conduct, but instead the result of ordinary and allowable conduct that is contemplated by the patent prosecution process.

In *Personalized Media Communications*, Judge Gilstrap addressed the prejudice from the patentee's conduct as well. He noted that "PMC would keep its patent portfolio hidden until after the claimed subject matter became widely adopted in the industry, and only then—after infringement was engrained and widespread—engage in licensing or enforcement efforts." *Personalized Media Communications, LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG, Dkt. No. 646 at FF-8. This is vastly different than the current allegations, wherein Apple alleges that Koss sought to engage with Apple about this very patented technology *before* Koss filed the continuation applications in question and after several patents in the same family had issued. *See* Dkt. 91, at p. 21 ¶ 15 ("Six patents in the '488 Application's family had either issued or been allowed with claims in final form"); *see also, e.g.* Dkt. 1-2 (U.S. Pat. No. 10,206,025) at 1-2 (application filed in August 2018 and patent showing related U.S. Application Data identifying numerous issued patents from applications filed in 2008, 2009, 2012, 2015, 2016, and 2017). Furthermore, a simple review of the prosecution history

for each of the patents claiming priority to the provisional application will show that Koss filed <u>petitions to make special (expedite)</u> or <u>track one requests</u> for thirteen of the 20 patent applications that claim priority to the 2008 Application[4] cited by Apple in its counterclaims.  (*See* Dkt. 91, p. 21, ¶ 11).  Koss' conduct evidences an intent to *make public*, and not hide, its prosecution.

Apple's prejudice argument fails because Apple confirms that Koss not only never hid its intentions, but that Koss *made its intentions known*.  Apple alleges that Koss approached Apple to discuss a license to patents, *before these continuation applications were ever filed.  See* Dkt. 91, at p. 24. ¶ 21 (discussing the parties beginning negotiations in 2017).  Apple alleges that it engaged in "good faith participation in negotiating" with Koss."  Dkt. 91, at p. 91, ¶ 4.  Given that Apple alleges that the Confidentiality Agreement was in effect from at least the date it was signed in April, 2018 (if not the effective date of August 7, 2017) (Dkt. 20, at 1, 7), and, as Apple alleges, was terminated on July 22, 2020 (Dkt. 91, at 30, ¶ 53), Apple's allegations of "good faith negotiations" are questionable at best, given Apple's allegation that, "[a]s of September 2016 [none of the issued patents] . . . claimed subject matter that the AirPods could plausibly have infringed." *Id.* at p. 22, ¶ 15.  If as Apple alleges, it were truly negotiating in good faith with Koss during the period of the Confidentiality Agreement, then Apple took the position, **and Koss relied on the position** that Apple was not prejudiced by Koss' continued prosecution of patents in the same family.  Apple's post-hoc laches position thus contradicts Apple's breach of contract theory.

Each of the patents at issue expires on the same day because they each claim priority to the same parent application.  Thus, the patent laws now provide for an appropriate result in the event of a subsequently filed continuation application—a shorter period of monopoly over the newly

---

[4] Pursuant to Fed. R. Evid. 201(b)(2), Koss Respectfully requests that this Court take judicial notice of the sections of the prosecution history of the following petitions to make special and track one requests attached hereto as Exhibits A-M.

prosecuted claims. *See, e.g.*, *Cancer Rsch. Tech.*, 625 F.3d at 731–32 ("Moreover, a consequence of Cancer Research's delay in prosecuting its patent is that it did not get the full patent term extension allowed . . . . Thus rather than having consequences for Barr and the public by its delay, Cancer Research incurred a cost to its own patent term."). To the extent there is any prejudice arising from the timing of Koss' patent applications, it is borne by Koss and not by Apple.

## C.    Conclusion

For the foregoing reasons, the allegations in Apple's affirmative defense for patent prosecution laches is insufficient as a matter of law. Apple fails to include allegations sufficient to put Koss on notice of the basis for its contention that the process by which Koss prosecuted its patents is an egregious misuse of the patent statutory scheme. Koss therefore respectfully requests that Apple's affirmative defense for prosecution laches be dismissed with prejudice.

Dated: September 16, 2021

Respectfully submitted,

*/s/ Darlene F. Ghavimi*
Darlene F. Ghavimi (TX Bar No. 24072114)
**K&L GATES LLP**
2801 Via Fortuna, Suite #350
Austin, TX 78746
Tel.: (512) 482-6919
Fax: (512) 482-6859
darlene.ghavimi@klgates.com

Benjamin E. Weed (admitted *pro hac vice*)
Philip A. Kunz (admitted *pro hac vice*)
Erik J. Halverson (admitted *pro hac vice*)
Gina A. Johnson (admitted *pro hac vice*)
Amanda C. Maxfield (admitted *pro hac vice*)
**K&L GATES LLP**
Suite 3300
70 W. Madison Street
Chicago, IL 60602
Tel.: (312) 372-1121
Fax: (312) 827-8000
benjamin.weed@klgates.com
philip.kunz@klgates.com

erik.halverson@klgates.com
gina.johnson@klgates.com
amanda.maxfield@klgates.com

Peter E. Soskin (admitted *pro hac vice*)
**K&L GATES LLP**
Suite 1200
4 Embarcadero Center
San Francisco, CA 94111
Tel.: (415) 882-8046
Fax: (415) 882-8220
peter.soskin@klgates.com

**ATTORNEYS FOR KOSS
CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record are registered CM/ECF registered parties on this case and that service on all parties will be accomplished through notice of electronic filing (NEF) via the Court's CM/ECF.


*/s/ Darlene F. Ghavimi*
Darlene F. Ghavimi