**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

KOSS CORPORATION,

     Plaintiff,

     v.

APPLE INC.,

     Defendant.

Case No. 6:20-cv-00665

**FILED UNDER SEAL**

**MOTION TO STRIKE EXPERT OPINIONS OF DR. CHRISTOPHER
JULES WHITE, MR. DANIEL C. WIGGINS, MR. THOMAS BRITVEN, AND DR.
ITAMAR SIMONSON AS BASED ON UNTIMELY DISCOVERY DISCLOSURES**

## TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1

II. Factual Background ..................................................................................................... 2

    A. Relevant Timeline .................................................................................................. 2

    B. Detailed Facts Related to the Exclusion of Dr. White's Invalidity Opinions ................... 3

    C. Detailed Facts Related to the Exclusion of Mr. Wiggins' Invalidity Opinions ................ 4

    D. Detailed Facts Related to Exclusion of Opinions Based On Untimely Purported
       Non-Infringing Alternatives and Non-Infringing Uses ............................................. 5

          1. Untimely Headphone Patent Non-Infringing Alternatives ....................... 5

          2. Untimely Non-Infringing Use Evidence ................................................ 6

          3. Alternatives to '451 Patent ................................................................... 8

III. Argument ................................................................................................................... 8

    A. A Continuance Is Not Appropriate ......................................................................... 9

    B. The Remaining Factors Support A Rule 37 Sanction ................................................ 9

          1. Koss' Motion to Strike Certain Invalidity Opinions of Mr. Wiggins ........ 9

        a. Apple Cannot Justify its Failure to Timely Disclose the Fact Evidence it
           Introduced Through Mr. Wiggins. .................................................................... 9

        b. The Withheld Wiggins Evidence Is Not Important to Apple ............................ 10

        c. Prejudice Caused by the Withheld Factual Information ..................................... 11

          2. Koss' Motion to Strike Certain Invalidity Opinions of Dr. White .......... 12

        a. Apple Cannot Justify its Failure to Timely Disclose the Fact Evidence
           Introduced Through Dr. White ..................................................................... 12

        b. The Nexus and MacBook Invalidity Opinions Are Not Important .................... 13

        c. Prejudice Caused by Withheld Products ........................................................ 14

          3. Koss' Motion to Strike Untimely Non-Infringing Alterative
            Opinions ............................................................................................. 15

        a. Apple Cannot Justify its Untimely Disclosure ............................................... 15

        b. The Importance of the Evidence ................................................................... 17

        c. The Prejudice to Koss Is High ..................................................................... 17

        (1) Prejudice Related to Non-Infringing Alternatives ......................................... 18

        (2) Prejudice Relating to Non-Infringing Uses .................................................. 19

        (3) Prejudice Related to the '451 Patent ........................................................... 20

    IV. CONCLUSION ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bitterroot Holdings, L.L.C. v. MTGLQ Inv'rs, L.P.*,
    648 F. App'x 414 (5th Cir. 2016) ............................................................................8

*Carter Tool Co. v. United Fire & Cas. Co.*,
    No. MO:18-CV-0163-DC-RCG, 2019 WL 7759500 (W.D. Tex. Aug. 19,
    2019) ..........................................................................................................................8

*CQ, Inc. v. TXU Min. Co., L.P.*,
    565 F.3d 268 (5th Cir. 2009) ....................................................................................8

*Georgia Pacific Corp. v. U.S. Plywood Corp.*
    318 F. Supp. 1116 (S.D.N.Y. 1970).........................................................................17

*Joe Hand Promotions, Inc. v. Chios, Inc.*,
    544 F. App'x 444 (5th Cir. 2013) ............................................................................8

*Novozymes A/S v. Genencor Int'l, Inc.*,
    474 F. Supp. 2d 592 (D. Del. 2007).........................................................................17

*Schenck v. Nortron Corp.*,
    713 F.2d 782 .............................................................................................................11

**Statutes**

35 U.S.C. § 112....................................................................................................................10

35 U.S.C. § 271....................................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 26 ........................................................................................................ *passim*

Fed. R. Civ. P. 34 ...................................................................................................... 2, 13

Fed. R. Civ. P. 37 ........................................................................................................ *passim*

I.      **INTRODUCTION**

Pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, Koss Corporation ("Koss") moves to strike portions of the expert reports (and related opinions) of Dr. Christopher Jules White, Mr. Daniel Wiggins, Mr. Thomas Britven, and Dr. Itamar Simonson. All four experts for Apple, Inc. ("Apple") rely on evidence Apple, incredibly, adduced after the close of original fact discovery, after the close of the limited extended fact discovery period, and after opening expert reports were served. Apple continues to believe it can play by its own discovery rules, and Koss requests relief in the form of striking Apple's experts' reliance on this late discovery.

First, Apple relies on purported evidence of "non-infringing uses" that Apple not only failed to disclose during discovery, but that contradicts Apple corporate testimony. Second, Apple's experts form opinions based on non-infringing alternatives that contradict those that Apple's corporate witness identified at deposition. Third, Mr. Wiggins and Dr. White base some of their invalidity opinions on products that Apple withheld during fact discovery and/or prohibited Koss from inspecting during discovery, and on post-discovery testimony by a former Motorola employee (the testimonial issue is fully briefed in Dkt. Nos. 141, 152, and 156). Finally, Mr. Wiggins wears dual hats, devoting vast swaths of his expert reports not to opinions, but to factual testimony about work he did in the mid-2010s, even though Apple never designated him as a witness with potentially relevant factual information.

Apple cannot justify its failure to timely provide this discovery. Apple's latest failings create severe, irreparable prejudice to Koss because Koss' experts have already provided their opinions, given depositions, and are preparing for trial. Because this Court confirmed as recently as the discovery hearing on April 29, 2022 that this case will proceed as scheduled, a continuance is not available. The evidence (and the experts' reliance thereon) should be stricken.

## II.    **FACTUAL BACKGROUND**

### A.    **Relevant Timeline**

Fact discovery ended on November 4, 2021. Dkt. 30. On November 5, 2021, this Court heard arguments regarding Apple's motion to strike Koss' infringement contentions and Apple's motion to compel certain responses to its interrogatories. Pursuant to the Court's Order at that hearing, discovery was extended for a limited purpose: for Koss to gather information about certain products that were newly brought into the case, and for Apple to conduct discovery into issues related to defenses specific to *those products*. Dkt. 145 at 5. Pursuant to the Parties' agreement, that limited discovery period ended on February 22, 2022. Dkt. 137.

On February 22, 2022, after the close of business on the last day of the extended, limited discovery period, Apple informed Koss "Pursuant to Fed. R. Civ. P[.] 34, . . . that Apple is making available inspection samples of certain publicly available products." Appx003-6. Apple identified several Apple products that are neither accused of infringement, nor form the basis for Apple's experts' opinions about invalidity. Appx007-759 (Wiggins Invalidity Report); Appx760-1098 (White Invalidity Report). Apple also identified the Motorola Razr phone and the Motorola HT-820 headphones with Stereo PC Adapter as available for inspection.  Appx003-6. Mr. Wiggins cites the Motorola HT-820 as invalidating prior art in his report. *See e.g.*, Appx335-57, ¶¶ 991–1065. While he cites to certain websites addressing the Razr in his report, he does not refer to the exemplar Apple made available for inspection; it was not even one of the products he examined in this case. *See* Appx1103-06, 385:10–388:10.

Given that there was still time before expert reports were to be exchanged, Koss representatives (including the undersigned) visited the offices of Apple's counsel on March 2, 2022 to inspect these products. When undersigned counsel asked Apple's counsel if he could remove the Motorola HT-820 from its packaging for further inspection, Apple's counsel refused.

The parties exchanged opening expert reports nine days later, on March 11, 2022.

The parties exchanged rebuttal expert reports on April 1, 2022. Koss' experts observed, in their rebuttal expert reports, that even more relied-on prior art had not been produced for inspection. *See, e.g.*, Appx1112-14, ¶¶ 111, 144.

On April 14, 2022, weeks after Koss' rebuttal reports identified Apple's failing, Apple's counsel emailed saying the products were available for inspection. Appx1119-22. Given that the parties were embroiled in expert depositions, neither Koss nor its experts could inspect the products during expert discovery, nor could they have likewise supplemented their opinions.

### B.      Detailed Facts Related to the Exclusion of Dr. White's Invalidity Opinions

Dr. White's opening expert report includes opinions based on his putative analysis and evaluation of "Nexus 4G devices" loaded with the "WiFi Joiner." Appx760-1106, ¶¶ 46, 125–28, 139–141, 147–151, 163, 168–171, 197–306, 376, 381, 405, 411–16, 426, 428, 455, 457, 459, 462, 465, 467, 478, 492, 499–504, 512, 514, 534, 537, 540, 542.[1] During fact discovery, however, Apple never produced a Nexus 4G device. *See* Appx1119-22. Dr. White evaluated and relies on "MacBooks" and "MacBooks" loaded with "MacOS X Lion" to support his obviousness opinions. Appx832-1018, ¶¶ 125, 129–131, 138, 142–44, 147, 164, 304–410, 418–422, 427, 436, 440, 444, 448, 456, 459–461, 466, 478, 493–98, 513, 535–36, 541. During fact discovery, Apple never produced a MacBook device. Koss' expert, Joseph McAlexander, noted that these products were not available for evaluation. Appx1112-18, ¶¶ 111–112 (Nexus); ¶¶ 144–156 (MacBook and OS X 10.7 Lion).

After about two weeks, Apple contacted Koss not to deny that it failed to make the prior art Nexus phone or the MacBook products available during fact discovery, but to vaguely state

---

[1] Koss has endeavored to identify paragraphs that would be affected by granting of the instant Motion, but submits that further diligence would be required at trial (akin to a granted Motion *in Limine*) to ensure Apple's trial testimony does not venture into impermissible areas.

that the products were "*disclosed* in fact discovery and further configured by Apple's expert as part of expert discovery." Appx1120. Apple's counsel's admission confirms that the products were not available to Koss during fact discovery *and* that Apple withheld the products as configured and evaluated by Apple's experts until after the close of fact discovery.

###    C.    Detailed Facts Related to the Exclusion of Mr. Wiggins' Invalidity Opinions

Mr. Wiggins' expert report on invalidity contains numerous citations to evidence that Apple either withheld or failed to timely disclose in discovery. Specifically, (1) he includes dozens of paragraphs of what amounts to fact testimony (in a sworn expert report) regarding his own wireless headphone design work and dozens more opinions based on those facts, (2) he evaluates products Apple prevented Koss from evaluating, and (3) he cites untimely Motorola discovery to provide structural details and technical features of prior art Motorola headphones.

For instance, Mr. Wiggins presents significant lay-witness fact testimony based on his own personal experience at a company called Doppler Labs developing true wireless headphones. Appx015, ¶ 12, Appx693-95, ¶¶ 2135–38, Appx709-14, ¶¶ 2174–93. Apple never disclosed Mr. Wiggins as a fact witness in its initial disclosures pursuant to Fed. R. Civ. P. 26. Appx1133-43. This failure is especially glaring given that Apple identified Mr. Wiggins as an expert in July 2021. Appx1144-45.

Mr. Wiggins further bases his opinion on teardowns of certain products that Apple withheld or did not have in its possession during the fact discovery period. Appx025-30, ¶ 48 (photographs of Plantronics Calisto Pro, Motorola S9, Plantronics 645, and Plantronics 855 products). Apple never made any of these products available for inspection.

Additionally, Mr. Wiggins cites to the deposition of former Motorola employee Edward Brann, whose testimony is the subject of Koss' pending motion to exclude based on the lateness of Apple's issuance of a deposition subpoena to Motorola and ultimately to Mr. Brann. Dkt. 141.

Despite this motion, Mr. Wiggins provided expert opinions explicitly referring to and incorporating Mr. Brann's testimony ████████████████████████████████████████████ ████████████████████████████████████. Appx007-759, ¶¶ 176, 179, 181, 183, 188, 190, 193, 209, 211, 216, 233, 227, 229, 231, 233, 243, 100, 1008, 1786, 2056–57, 2083, 2161. He also opines about the Motorola HT-820, which Apple's counsel prohibited Koss from actually inspecting. *Id.*, ¶¶ 171-228, 621, 749, 835, 843, 861, 989, 991-1065, 1156, 1166, 1261, 1286, 1413, 1603, 1608, 1616, 1647, 1648, 1725, 1757–1804, 1834, 1872, 1926, 1949, 1952, 1955, 1970, 2056, 2059, 2062, 2082–84, 2088, 2098, 2101, 2150.

### D.    Detailed Facts Related to Exclusion of Opinions Based On Untimely Purported Non-Infringing Alternatives and Non-Infringing Uses

#### 1.    Untimely Headphone Patent Non-Infringing Alternatives

Mr. Wiggins' rebuttal report contains a section titled "Substantial Non-Infringing Uses of Siri," with putative opinions based on facts not disclosed prior to service of the report.  Appx1149-1156, ¶¶ 364–382.  Absent from that section of his report is reference to removing "double-tap" capabilities.  Apple's damages experts rely on and offer similar (sometimes conflicting) opinions. *See e.g.*, Appx1162-1164, ¶¶ 167–168, Appx1320-1322, ¶¶ 15–16, 34.

During discovery, Apple only identified one of the proposed alternatives upon which its experts now rely. Sriram Hariharan, Apple's corporate designee on non-infringing alternatives, testified ████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████. Indeed he testified that ████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

Koss and its technical expert, Dr. Paul Clark, relied on Apple's "double tap" position in forming the technical opinions contained (as required) in Dr. Clark's opening infringement report.

Dr. Clark opined, responsive to Mr. Hariharan, that the removal of the physical "double tap" does not eliminate the on-headphone invocation of Siri using the verbal "Hey Siri" command, and therefore is "not a non-infringing alternative to any claim . . . address[ed] . . . as including the spoken trigger of 'Hey Siri.'" Appx1191, ¶ 894. Koss' damages expert, Mr. David Kennedy, relied on this opinion in forming his own opinions. Appx1198-1199, ¶ 272.

It was only after Koss' experts noted the limited scope of Apple's non-infringing alternatives to which Mr. Hariharan testified, and the insufficiency thereof, that Apple introduced new facts in its *rebuttal reports* that drastically altered Apple's damages defenses in this case.

2.     Untimely Non-Infringing Use Evidence

Apple's damages expert, Mr. Britven, cites several examples of alleged non-infringing *uses* identified by Apple's technical expert, Mr. Wiggins. Appx1163-64, ¶ 168 ("I understand that [Apple's failure to identify non-infringing alternatives that would implement the removal of the alleged patented technology] is due in part to the plethora of existing *non-infringing uses of the asserted patented technology*.") (emphasis added). Mr. Britven relies on Mr. Wiggins' identification of several allegedly non-infringing alternatives that Apple never disclosed during discovery. *Id.* Dr. Simonson, Apple's expert who opines about Koss' damages survey, relies on Mr. Britven's discussion of these non-infringing alternatives and uses (based on Mr. Wiggins' discussion of the same). Appx1322-24, ¶¶ 34–36.

Notably, neither Mr. Wiggins' nor Mr. Britven's commentary about "local" Siri operation cite to documents or discovery responses from Apple. Amazingly, some of these purportedly non-infringing uses only came to pass with the public release of iOS 15 late in the fact discovery period. Appx1163-64, ¶ 168; Appx1150-51, ¶¶ 367–69. Neither Mr. Wiggins nor Mr. Britven say anything about the fact that this feature was not available on previous iOS versions, including that it is absent from the iOS version available as of the date of the hypothetical negotiation and that was

the current iOS version throughout the majority of fact discovery. Neither Mr. Wiggins nor Mr. Britven say anything about the rate of adoption of iOS 15 as compared to the previous versions (that do not have the "local" Siri use), or any other information that would enable the jury to evaluate these alleged non-infringing uses as factual underpinnings to damages opinions.

Koss' discovery requests in this case plainly required Apple to present evidence of these facts. For example, Interrogatory No. 3, served on the first day of fact discovery, requests this very information. Appx1217, Interrogatory No. 3. The failure to identify design around/non-infringing uses in the expert reports in response to this interrogatory is egregious and warrants striking opinions that rely on information that should have (but were not) provided in response.

Even if Apple underhandedly tries to draw a distinction between "non-infringing alternatives" (the facial subject of Interrogatory No. 3) and "non-infringing uses" (which given Apple's conduct, Koss expects Apple to do), documents containing factual support for these features and their availability would have been responsive to Koss' Request for Production No. 7 which requests documents and things related to Apple's position regarding any limitation of Koss' damages. Appx1255-56. Likewise, Interrogatory No. 18 requests information about Apple's belief that "Koss' claims for relief or prayer for relief are barred, in whole or in part, by damages limitations…" Appx1282-83, Interrogatory No. 18.

Moreover, Mr. Wiggins' opinions are contrary to the factual evidence presented by Apple's corporate designee on this issue in July 2021, <u>after the beta release of iOS 15</u>. Specifically, Apple's corporate witness on issues relating to Siri testified that



██████████████████████████

████████████████████████

Not only did Apple fail to seasonably update its discovery responses, and not only did Apple's experts fail to rely on *any* Apple documents, but Apple's positions on "non-infringing uses" are contrary to Baptiste Paquier's corporate deposition testimony.

3.   Alternatives to '451 Patent

Dr. White also offered opinions about non-infringing alternatives that were not disclosed during the fact discovery period. Appx1129-32, ¶¶ 195–98. Mr. Britven specifically relies on Dr. White when he refers to the use of Wireless Priority Service ("WPS") to exchange credential data, with the user being able to set up the HomePod by tapping the WPS button on their router. Appx1166-67, ¶¶ 172–74 (citing Appx1131-32). Apple never identified this alternative in its interrogatory responses or anywhere else during fact discovery.

## III.   **ARGUMENT**

A party who fails to disclose evidence in compliance with Fed. R. Civ. P. 26 may not use this information unless "the failure was substantially justified or is harmless." *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. App'x 444, 446 (5th Cir. 2013). This means a party failing to comply with Rule 26 is "not allowed to use . . . [that] information . . . on a motion, at a hearing, or at a trial." *Bitterroot Holdings, L.L.C. v. MTGLQ Inv'rs, L.P.*, 648 F. App'x 414, 419 (5th Cir. 2016). "It is the non-disclosing party's burden to prove that any failure to disclose was harmless." *Carter Tool Co. v. United Fire & Gas. Co.*, No. MO:18-CV-0163-DC-RCG, 2019 WL 7759500, at *1 (W.D. Tex. Aug. 19, 2019).  When evaluating whether a violation of Rule 26 is harmless, the Court looks to four factors: "(1) [the untimely party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the objecting party] in allowing the evidence, and (4) the availability of a continuance."  *CQ, Inc. v. TXU Min. Co.,*

*L.P.*, 565 F.3d 268, 280 (5th Cir. 2009).

### A.   A Continuance Is Not Appropriate

Koss addresses the continuance factor first both because it is indisputably not available, and because it is relevant to all the issues below.  In the instant case, this Court has very recently advised the parties and the public that a continuance is not available.  Appx1325-30, 13:22–14:7; 15:18–20. This factor counsels granting this Motion.

### B.   The Remaining Factors Support A Rule 37 Sanction

#### 1.   Koss' Motion to Strike Certain Invalidity Opinions of Mr. Wiggins

##### a.   Apple Cannot Justify its Failure to Timely Disclose the Fact Evidence it Introduced Through Mr. Wiggins.

Apple did not disclose Mr. Wiggins as a witness having relevant factual knowledge, or the subject matter thereof, prior to its disclosure of Mr. Wiggins' opening expert report more than four months after the close of fact discovery. Koss is left to guess at Apple's explanation, but asserts that there is no justification to tilt the first of the applicable factors in Apple's favor.

Koss suspects that Apple's Opposition to Koss' Motion to exclude the testimony of Mr. Brann (an ex-Motorolan) may embed Apple's ultimate justification of its failure to disclose (*i.e.*, *gather*) evidence ultimately used by its expert. Specifically, Apple's opposition regarding Mr. Brann misleadingly suggests that the extension of discovery relating to new Apple products was somehow related to Apple's position on the invalidity of the same patents that have been at issue since Koss began discussing a license with Apple in 2017. Dkt. 152 at 4–5. If this is Apple's explanation, it would be Apple disingenuously conflating new infringement "claims" with new issues in this case. *Id.* Furthermore, the potential argument that third party fact discovery (such as the facts in Mr. Wiggins' unique possession regarding his company's attempts to build a true wireless Bluetooth headphone product) relied upon by an expert is not within the scope of the type of discovery that may be subject to a Rule 37(c)(1) sanction (*See* Dkt. 152 at 6) leads to an absurd

result and renders the discovery rules essentially meaningless.

Regarding Apple's refusal to permit Koss to inspect the products Mr. Wiggins tore down, or to open the box for the Motorola HT-820 headphones, Koss submits that there is no permissible justification. This factor favors a Rule 37 sanction.

b.    The Withheld Wiggins Evidence Is Not Important to Apple

If Apple contends that its improper discovery conduct is not blatant gamesmanship, then it must be that Apple does not view the evidence Koss seeks to exclude as very important to its defenses. Indeed, Apple was aware of Mr. Wiggins' knowledge about Doppler Labs' efforts as of July, 2021 when it disclosed Mr. Wiggins as an expert. Apple's failure to mention that evidence indicates Apple must not have thought it important. If Mr. Wiggins' fact testimony were important, Apple would have disclosed him as a fact witness *during the fact discovery period*.

In addition, Apple waited until the end of the *second* (limited) discovery period to inform Koss that certain products were available for inspection, and even then Apple prevented Koss from actually analyzing those products by refusing to permit Koss to remove one product from its box. Worse, Apple *never* made available the various products Mr. Wiggins tore down and used to support his opinions of invalidity. Apple must not have viewed this product information as particularly important, or it would have made it available. Indeed, Apple recently indicated to the Court that it is maintaining dozens of prior art theories in this case (Dkt. 180), so the conclusion that its theories based on physical products that were not available for inspection is reasonable.

Further demonstrating that the untimely evidence is unimportant to Apple, Mr. Wiggins proffers myriad invalidity opinions that do not implicate the fact evidence Koss seeks to exclude. Indeed, he identifies several patents and prior art products (as well as other arguments under 35 U.S.C. § 112) that he contends invalidate the various patents, and even if granting this motion to strike results in Apple being unable to present an invalidity theory on the Motorola products, Mr.

Wiggins will still be able to present invalidity opinions for each asserted patent. This is also against the backdrop of Apple's numerous inter partes review ("IPR") petitions and its unwillingness to indicate which prior art references are actually important by meaningfully narrowing asserted prior art. Dkt. 180.

c.      Prejudice Caused by the Withheld Factual Information

The evidence withheld and/or untimely gathered during the fact discovery period goes to Apple's invalidity position and the prejudice to Koss by virtue of Apple's conduct is significant. Apple, through its invalidity defense, seeks to overturn a property right afforded to Koss by the United States government. *Schenck v. Nortron Corp.*, 713 F.2d 782, 784 (Fed. Cir. 1983). Indeed, if successful, Koss would be precluded from pursuing that right against *any party*, including other defendants against whom Koss has pending patent infringement lawsuits. It is difficult to imagine prejudice that would be more significant in a patent litigation.

Furthermore, it is not possible to timely cure the prejudice to Koss in light of the current schedule. Both parties have already provided their expert reports and both parties' experts have given depositions; indeed, the instant Motion is timed with the case dispositive and *Daubert* motion practice. With a trial set for July 25, 2022, the pre-trial deadlines (including dispositive motions and pretrial disclosures) are rapidly approaching. Dkt. 171.

Apple's decision to make Mr. Wiggins a fact witness means that Koss was not able to timely take discovery into Mr. Wiggins' personal experience developing "True Wireless" headphones. For example, Koss was unable to depose other members of Doppler Labs, try to obtain samples of the true wireless headphones Mr. Wiggins purportedly developed, or otherwise explore the veracity of his factual statements. By the time Koss received Mr. Wiggins' report (March 11, 2022, more than four months after the close of fact discovery), fact discovery had closed, and Koss was unable to pursue timely subpoenas of documents from Mr. Wiggins or his former colleagues

11

at Doppler Labs, or to pursue depositions of individuals other than Mr. Wiggins. In other words, Apple's delayed production has prevented Koss from meaningfully challenging any of the factual assertions Mr. Wiggins makes related to his personal experience. Apple essentially has created a situation where its facts are unrebutted (because they are unrebuttable due to the timing) and is using those facts to support an argument to take a property right from Koss. The prejudice is clear, and a Rule 37 sanction is appropriate.

2.   Koss' Motion to Strike Certain Invalidity Opinions of Dr. White

a.   Apple Cannot Justify its Failure to Timely Disclose the Fact Evidence Introduced Through Dr. White

It is undisputed Apple violated Rule 26. Apple confirmed to Koss that the products as configured and analyzed by Apple's experts were not available to Koss during the fact discovery period (including the additional period ending February 22, 2022). On April 14, 2022, Apple provided the following "justification" for its conduct:

1. "Apple's Rule 26 disclosures . . . identified the prior art as a category of 'documents, data compilations, and tangible things' on which Apple may rely to support its claims or defenses. Despite this, *Koss never served a request for inspection of any prior art device at any point during fact discovery*." *Id.* (emphasis added).

2. "Koss could and should have requested to inspect these devices [as] a part of the *expert discovery period*."

Appx1121 (emphasis added). On April 18, 2022, Apple confirmed the products had not been made available, and that products with the relevant configurations *could not* have been available until after Apple's experts configured them "as part of expert discovery." Appx1120.

Apple's "justifications" are without merit. Apple's Rule 26 disclosures which generally informed Koss about its potential prior art products are not a production of the actual trial evidence. Moreover, Apple's suggestion that Koss did not serve a discovery request for these products is demonstrably false. Koss' Request for Production No. 5 seeks all "things" and "all evidence" relating to Apple's "invalidity" position. Appx1255, Request No. 5. Koss specifically included a

12

definition for "things" and instructions for the production of things. Appx1251-53. Apple did not object to the definition of "thing" or instructions related to their production. Appx1304-08. Instead, in response to Request for Production Number 5, Apple explicitly confirmed that it "has previously produced and is producing herewith prior art to the Asserted Patents, and will produce any additional non-privileged responsive documents relating to the invalidity or alleged validity of the Asserted Patents within Apple's possession, custody, or control, if they exist." Appx1312. Apple's February 22, 2022 email confirms that Apple produced *prior art* products pursuant to Fed. R. Civ. P. 34 – *pursuant to requests for production*. Appx006.

Apple's argument that Koss should have requested to review these products <u>during expert discovery</u> is likewise without merit. By the time Apple had made this offer, all expert reports had been served and depositions were imminent. The experts' opinions were "baked," so to speak. The suggestion that Koss should have inspected these products at that time is nonsensical, particularly in view of the fact that Mr. Wiggins' report relies on *dozens of references*. Extrapolated, Apple's position is that a party may withhold any facts, documents, or products that may be evaluated by an expert during the entirety of the (several month) fact discovery period, and wait to disclose them until *after the close of fact discovery*, during the month or so while experts are finalizing reports, evaluating reports, and preparing for depositions. A decidedly Apple-beneficial impact of this protocol is that even had Koss been able to inspect these products under the Court's schedule (it was not), Koss could not have served more discovery on either Apple or, more critically, third parties to contradict the materials Apple hand-picked to produce late.

        b.      The Nexus and MacBook Invalidity Opinions Are Not Important

Dr. White includes a variety of obviousness combinations for his opinion—indeed, he is the one Apple expert who actually does a real combination analysis. The exclusion of the untimely Nexus phone and MacBook leaves Apple with numerous invalidity theories, in addition to the

13

multiple IPR petitions Apple filed with regard to the '451 Patent. For example, Dr. White cites the Nexus and/or MacBook in obviousness combinations with U.S. Patent Publication No. US2013/0115915 ("Tipton"); U.S. Patent Publication No. 2010/0082784 ("Rosenblatt"); and U.S. Patent Publication No. 2012/0054493 ("Bradley"). Dr. White contends that each of these publications anticipates and/or renders obvious the '451 Patent in combination with references other than the Nexus phone and/or Macbook. Even without the Nexus and MacBook, Dr. White still opines that Tipton anticipates the '451 Patent, and that five combinations including Tipton render the '451 Patent obvious. Appx792, ¶ 57. Additionally, Dr. White still opines that both Rosenblatt and Bradley each render the '451 Patent obvious. Appx955-996, ¶¶ 381, 478, respectively. Dr. White opines that the '451 Patent is obvious over Apple's HomePod product (Appx1043, ¶¶ 597–98), and is invalid based on enablement and patent ineligible subject matter (Appx1045-55, ¶¶ 606–32).

It appears the reason the Nexus and MacBook were not disclosed is that they were an afterthought. In other words, not even Apple considered them important in the first place.

### c. Prejudice Caused by Withheld Products

The prejudice to Koss by Apple withholding prior art products is the same as that described above. The withheld prior art products relate to Apple's invalidity position as described above, and Apple's withholding of those products, thus presents significant prejudice to Koss' ability to protect its property rights. Moreover, in order for Koss' experts to cure the prejudice caused by Apple's withholding of the Nexus and MacBook prior art products, they would have to analyze not only those unproduced products, but also those products in the context of and in relation to the prior art with which those products are combined by Apple's expert. Such additional analysis will require a significant amount of time and resources to develop a response, and presumably additional deposition testimony which would be taking place at the same time the Parties are

preparing their dispositive and *Daubert* motions, as well as pre-trial filings.

### 3.    Koss' Motion to Strike Untimely Non-Infringing Alterative Opinions

Koss requests that the Court strike expert opinions of Dr. White, Mr. Wiggins, Mr. Britven, and Dr. Simonson based on untimely-disclosed non-infringing alternatives/uses.

#### a.    Apple Cannot Justify its Untimely Disclosure

There is no justification for Apple's failure to identify non-infringing alternatives in response to timely discovery. Apple has known of Koss' belief that it infringes Koss' patents since August, 2017. Apple's approach here is gamesmanship and ball-hiding, plain and simple.

Koss expects Apple to argue that its interrogatory responses as supplemented on the last day of fact discovery (and after the deposition of Apple's corporate representative on the topic) cover the removal of Siri activation from the headphones because it ████████████████████ ████████████████████████████████████████████████████, Second Supplemental Response to Interrogatory No. 4. However, Apple's interrogatory response specifically refers to the deposition testimony of its corporate representative, Mr. Hariharan, ███████ ████████████████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████ ████████████████ ███████████████████████████████████████ ████████████████ ███████████████████████████████████████ ████████████████ █████████. In fact, the Apple corporate representative explicitly testified that ████████████████████████████████████████ ████████████████████████.



Apple's corporate deposition testimony thus forecloses it from relying on any approach involving removing the "Hey Siri" voice trigger. Further confirming that Apple never indicated it would be a reasonable non-infringing alternative to remove "Hey Siri" activation altogether is that Apple knew Koss contended that "Hey Siri" functionality infringed as of January 2021. *See* Appx1316 (referring to summoning Siri with Digital Crown and with "Hey Siri."). Apple could have, but did not, disclose a theory during discovery that it might consider removal of the "Hey Siri" voice activation user control as a reasonable non-infringing alternative.

Koss does not know what other kinds of hand-waving Apple will do to justify its failure to provide truthful and accurate corporate testimony on the Siri technical features. At the time Apple presented corporate testimony on Siri's relationship with Apple's servers (in July, 2021, through Baptiste Paquier), Apple *had already released iOS 15* in beta, and Apple presumably knew of the functionality of its own product. Despite this, Apple provided fact testimony that contradicts the very features that Apple now contends evidence a non-infringing use of the asserted patent. Furthermore, this feature was publicly available several months before Mr. Britven served his expert report, as compared to the 19 months of the damages period that previous iOS versions were in use, and the iOS version (15) that offered this feature was not yet publicly available. Mr. Wiggins acknowledges that iOS 15 was available for beta testing beginning in June of 2021, which means that Apple had five months *from announcing* iOS 15 until the close of fact discovery to provide documents that demonstrate this new feature.

Regarding the '451 Patent, Apple's interrogatory responses are devoid of any information

regarding non-infringing alternatives. In light of the apparently basic alternative identified by Apple's technical expert (Appx1131-1132) it is difficult to fathom any justification for withholding this position beyond Apple's repeated gamesmanship throughout this litigation.

        b.      The Importance of the Evidence

The availability of reasonable non-infringing alternatives is but one (non-mandatory) factor relevant to a reasonable royalty analysis. *See Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 607 (D. Del. 2007). This factor, while not explicitly recited within the 15 *Georgia-Pacific* factors, is generally linked to factor 9: "utility and advantages over old modes or devices, if any that had been used for working out similar results." *Georgia Pacific Corp. v. U.S. Plywood Corp.* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Similarly, the alleged non-infringing "uses" (such as the "local" Siri use), are generally linked to factor 11: "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use." *Id.*[2] This single factor, discussing a technical feature that did not exist at the time of the hypothetical negotiation, and which was not even available for the first 19 months of the damages period, is not important to Apple's overall damages theory.

Excluding evidence of these alternatives and alternative uses leaves Apple with nearly the full scope of factors to evaluate in order to determine a reasonable royalty.

        c.      The Prejudice to Koss Is High

Koss has been and will continue to be severely prejudiced by virtue of Apple withholding its true non-infringing alternatives positions. Koss and its experts relied on Apple's corporate testimony and discovery responses when crafting their technical and damages opinions in this case. Apple's rebuttal reports, from which Koss first learned of this particular failure by Apple in

---

[2] Koss contends that the sale of various Accused Products is the infringing act under 35 U.S.C. § 271, and as a result, any usage a customer might hypothetically make (as a paperweight?) does not change the fact that Apple's sale is an act of infringement for which Koss is entitled to damages.

discovery, were far too late in the process for Koss to respond to those positions. Apple's conduct has prevented Koss from determining whether the alleged non-infringing alternatives were either reasonable or truly non-infringing, and as a result Koss could not have issued technical or damages opinions on the topic. In order for Koss' experts to begin to opine on Apple's new non-infringing alternatives, Koss would need to conduct discovery into these alleged alternatives, including taking additional depositions of Apple's representatives to investigate these alternatives.

Apple decided yet again to play by its own rules, and in so doing, severely prejudiced Koss, whose experts are limited to the opinions in their reports.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i).

(1)    <u>Prejudice Related to Non-Infringing Alternatives</u>

By withholding alleged non-infringing alternatives, Koss was unable to investigate the technical implications of this non-infringing use such as how an accessory's microphone would become enabled in order to receive and process the "Hey Siri" activation in place of the current default microphone status of both the headphones and the paired accessory device, or how the pair of devices, each with a microphone, would discern whether they had heard a "Hey Siri" command directed to one, both, or neither of the devices in the pair.

In addition to the technical investigation in to the undisclosed non-infringing alternatives that would necessarily involve using a separate device (such as an iPhone or iPad) to initiate Siri, Apple's untimely disclosure prevented Koss from investigating the reasonableness of such non-infringing use. For example, Koss was unable to seek discovery into the real world use cases for invocation of Siri in other accessory devices as compared to through the headphones and the impact on the removal of headphone-initiated Siri invocation on the use of Siri by Apple's customers. Koss was unable to investigate the value Apple attributes to the ability to activate Siri from headphones. Indeed, distracted driving and walking are common concerns, and the ability to invoke Siri, ask a question, or send a text message without physically manipulating a phone (i.e.,

18

without diverting a wearer's eyes) would seem crucial in evaluating Siri's value and the reasonableness of removing it from the headphones. So too would it be crucial to evaluate the irritation of consumers with microphones in their ears who were required to pull another device out of a bag or pocket to invoke Siri. Apple foreclosed this ability from Koss either because it was not doing its job, or because of an explicit desire to hide the ball on yet another issue.

These are but examples of the additional discovery that would have been necessary, at a minimum, for Koss to determine the viability of these alleged non-infringing alternatives identified by Apple after the close of discovery. Koss' experts are not able to simply read Apple's experts' opinions on these alternatives and respond because they do not have the underlying information from Apple necessary to develop these original opinions. Apple, however, has been sitting on the knowledge of these alleged non-infringing alternatives (or at least the ability to generate these alleged non-infringing alternatives) since at least January 2021. The prejudice is high with regard to withheld non-infringing alternatives.

(2)    Prejudice Relating to Non-Infringing Uses

Apple's presentation of false testimony regarding the Siri server (i.e., the removal of certain functionality in iOS 15) has caused significant prejudice to Koss. Indeed, when Mr. Paquier sat for a deposition as a corporate representative, iOS 15 (per Apple's experts' observations) was either launched or was about to be launched in Beta form. Yet, Mr. Paquier did not testify ███████ ██████████████████████████ And despite Koss serving requests for production that should have elicited this information, Apple did not provide an indication of its relevance until it served rebuttal expert reports in March, 2022. Had Apple been forthright in its corporate testimony in July 2021 and throughout discovery, Koss would have conducted additional discovery into the viability and value of this alleged non-infringing use. For example, Koss would have investigated the technical accuracy of whether these uses truly were non-infringing. Moreover, Koss would have investigated

the importance of the change from all Siri requests involving Apple's servers to splitting such uses to include "local" (or "non-Apple" as in the case of a request to play media from a non-Apple streaming service) versus "Siri server-based" Siri features and their value to customers and the product offering. Apple hid this fact (and, more critically, its apparent relevance to Apple's damages case) until it submitted its rebuttal reports, prejudicing Koss.

(3)   <u>Prejudice Related to the '451 Patent</u>

Apple's failure to disclose non-infringing alternatives to the '451 Patent has similarly caused significant prejudice to Koss. Apple's interrogatory responses said <u>absolutely nothing</u> about alternatives to the '451 Patent, as if Apple ignored that this patent was involved in this case. Mr. Britven's position is that the '451 Patent provides no advantage over the user tapping the WPS button (Appx1167, ¶ 174 (citing interview with Dr. White)), thus necessarily impacting his underlying damages value of the '451 Patent.

Apple's withholding prevented Koss from conducting discovery into the value that Apple, or the market, places on a product that permits seamless WiFi credentialing as compared to one requiring a user to tap the WPS button on their router. This is particularly egregious because Apple's experts apparently ignore that this activity requires physical access to a router, a device which in modern times is often mounted in a ceiling and hidden from view (and thus from physical access). Koss is prejudiced because it lacks the ability to present to the jury a meaningful response to Apple's position regarding this alternative's impact on the value of the '451 Patent.

## IV.   <u>CONCLUSION</u>

For the reasons above, Koss requests that this Court strike the offending opinions of Apple's experts.

Dated: May 13, 2022                         Respectfully submitted,

                                                          */s/ Benjamin E. Weed*
                                                          K&L GATES LLP

20

70 W. Madison Street, Suite 3100
Chicago, IL 60602
Tel: (312) 372-1121
Fax: (312) 827-8000
benjamin.weed@klgates.com


Jim Shimota (admitted pro hac vice)
Benjamin E. Weed (admitted pro hac vice)
Philip A. Kunz (admitted pro hac vice)
Gina A. Johnson (admitted pro hac vice)
K&L GATES LLP
70 W. Madison Street, Suite 3100
Chicago, IL 60602
Tel: (312) 372-1121
Fax: (312) 827-8000
jim.shimota@klgates.com
benjamin.weed@klgates.com
philip.kunz@klgates.com
gina.johnson@klgates.com

Darlene F. Ghavimi
Texas Bar No. 24072114
K&L GATES LLP
2801 Via Fortuna, Suite #650
Austin, TX 78746
Tel: (512) 482-6800
Fax: (512) 482-6859
darlene.ghavimi@klgates.com

Peter E. Soskin (admitted pro hac vice)
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8200
Fax: (415) 882-8220
peter.soskin@klgates.com

**ATTORNEYS FOR PLAINTIFF
KOSS CORPORATION**

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2022, a true and correct copy of the foregoing document was served on all counsel of record by email.

*/s/ Darlene F. Ghavimi*
Darlene F. Ghavimi