**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| KOSS CORPORATION,<br><br>     Plaintiff,<br><br> v.<br><br>APPLE INC.,<br><br>     Defendant. | Case No.  6:20-cv-00665-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>**<u>PUBLIC VERSION</u>** |

**DEFENDANT APPLE INC.'S OPPOSITION TO KOSS CORPORATION'S**
**MOTION TO STRIKE EXPERT OPINIONS AS**
**BASED ON UNTIMELY DISCOVERY DISCLOSURES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

I.      INTRODUCTION ........................................................................................................... 1

II.     LEGAL STANDARD ...................................................................................................... 2

III.    KOSS MOTION TO STRIKE TESTIMONY AND OPINIONS ABOUT "NON-
        INFRINGING USES" REGARDING "LOCAL SIRI" SHOULD BE DENIED ............... 2

        A.      Apple Fully Satisfied Its Discovery Obligations ................................................. 2

        B.      Sanctions Are Not Warranted ........................................................................... 6

IV.     KOSS' MOTION TO STRIKE TESTIMONY RELATED TO NON-
        INFRINGING INVOCATIONS OF SIRI IS BASED ON A
        MISREPRENSETATION OF APPLE'S POSITION AND SHOULD BE
        DENIED ........................................................................................................................... 7

        A.      Apple Satisfied Its Discovery Obligations ......................................................... 7

        B.      Sanctions Are Not Warranted ........................................................................... 9

V.      KOSS' MOTION TO STRIKE MR. WIGGINS' OPINIONS ON PRIOR ART
        PRODUCTS SHOULD BE DENIED .............................................................................. 9

        A.      Apple Satisfied Its Discovery Obligations with Respect to the HT820
                Headphones and Other Products Admittedly Disclosed During Fact
                Discovery ....................................................................................................... 10

        B.      Apple Satisfied Its Discovery Obligations with Respect to the Other
                Physical Headphone Products ........................................................................ 10

        C.      Sanctions Are Not Warranted ......................................................................... 11

VI.     KOSS' MOTION TO STRIKE MR. WIGGINS' EXPERIENCE AT DOPPLER
        LABS SHOULD BE DENIED ....................................................................................... 11

        A.      Apple Satisfied Its Disclosure Obligations ...................................................... 12

        B.      Sanctions Are Not Warranted ......................................................................... 13

VII.    KOSS' MOTION TO STRIKE DR. WHITE'S OPINIONS ON WI-FI
        PROTECTED SETUP (WPS) SHOULD BE DENIED .................................................. 14

        A.      Dr. White's Opinions Were Adequately Disclosed in Fact Discovery ............... 14

B.     Dr. White's Opinions on WPS as a Non-Infringing Alternative Should Not Be Excluded Because They Rebut Koss' Own Undisclosed Damages Theories ................................................................................................................. 15

C.     Dr. White's Opinions on WPS Should Be Permitted in the Context of the Hypothetical Negotiation ........................................................................................ 16

VIII.    KOSS' MOTION TO STRIKE DR. WHITE'S OPINIONS ON PRIOR ART PRODUCTS should BE DENIED ........................................................................ 17

A.     Apple Satisfied its Rule 26 Obligations with Respect to Nexus Phones with WiFi Joiner and MacBook Prior Art ............................................................. 17

B.     Dr. White's Opinions on Prior Art Products Is Important to Apple and Not Prejudicial to Koss ...................................................................................... 19

C.     Dr. White Should Be Permitted to Opine on the Prior Art Regardless of Koss' Motion ......................................................................................................... 20

IX.    KOSS' MOTION TO STRIKE MR. WIGGINS' CITATIONS TO MR. BRANN'S TESTIMONY WILL BE RENDERED MOOT ............................................... 20

X.    CONCLUSION ............................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*,
    2021 WL 8441761 (E.D. Tex. Dec. 10, 2021) ................................................................. 7, 9, 16

*Downey v. Bob's Disc. Furniture Holdings, Inc.*,
    633 F.3d 1 (1st Cir. 2011) ......................................................................................... 13

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
    879 F.3d 1332 (Fed. Cir. 2018) ................................................................................. 16

*Genband US LLC v. Metaswitch Networks Corp.*,
    2016 WL 122969 (E.D. Tex. Jan. 9, 2016) ................................................................. 15

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970) .................................................................... 16, 17

*Texas A&M Rsch. Found. v. Magna Transp.,*
    *Inc.*, 338 F.3d 394 (5th Cir. 2003) .............................................................................. 2

*U.S. v. Donovan*,
    2020 WL 5767996 (E.D. Tex. Sept. 28, 2020) ........................................................ 12

**Rules & Regulations**

Fed. R. Civ. P. 26 ............................................................................................................ 2

## I.      INTRODUCTION

In its motion to strike (Dkt. No. 189), Koss attempts to blame its own discovery failures on Apple and to bar Apple's experts from responding to arguments Koss revealed for the first time in its expert reports. For instance, Koss knew for months that it intended to stake its entire damages case on a theory about the value of using Siri on Apple's accused headphones that required commands to be processed on Apple servers. During that time, Koss apparently never reviewed the technical documents Apple produced, studied Apple's public statements about that feature, tested Siri, or asked any Apple witness whether it was true that the Siri commands all did, in fact, get sent to a server. Had it done any of that, Koss would have realized that the technology did not work the way it thought. Instead, Koss first revealed its theory to Apple in its expert reports on March 15. When Apple's experts responded by pointing out that Koss was wrong and that many Siri commands require no interaction with a server, Koss—rather than responding on the merits— filed this motion to strike, blaming ***Apple*** for not preemptively explaining Koss' error to it.

Koss' other complaints fare no better. It complains that Apple's experts should not be able to testify about their own work experience and credentials, should not be allowed to test prior art that had been fully disclosed to Koss, and should not be allowed to rebut opinions offered by Koss' experts in their reports. Koss suggests that this information was not timely disclosed under Fed. R. Civ. P. 26. But Koss is wrong: Apple produced detailed information about how its products work, the prior art on which it relies, and the experience of its experts.

Koss' motion seeks to exclude expert opinions on seven categories of information: (1) the fact that Apple's "local Siri" feature does not infringe; (2) non-infringing ways to invoke Siri, such as by a button on an iPhone; (3) physical samples of Motorola headphones; (4) Mr. Daniel Wiggins' work history at Doppler Labs; (5) non-infringing ways to set up a HomePod; (6) physical prior art related to the '451 patent; and (7) testimony from a Motorola engineer. None of Koss'

complaints amount to a Rule 26 violation or warrant sanctions under Rule 37.

## II.     LEGAL STANDARD

Rule 26 sets forth each party's discovery obligations and the permissible scope of discovery. Fed. R. Civ. P. 26. A request to exclude evidence for violating this rule fails if a party properly disclosed the evidence, or if any failure to disclose was harmless. *Id.* "In evaluating whether a violation of Rule 26 is harmless . . . we look to four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

## III.    KOSS MOTION TO STRIKE TESTIMONY AND OPINIONS ABOUT "NON-INFRINGING USES" REGARDING "LOCAL SIRI" SHOULD BE DENIED

Koss first seeks to strike opinions from Apple's technical expert (Mr. Wiggins) and damages experts (Mr. Thomas Britven and Dr. Itamar Simonson) related to a technical feature of the accused Apple headphones called "local Siri." As Apple learned for the first time during expert discovery, Koss is resting its ***entire*** damages theory on an effort to value the ability to use Apple's headphones to start Siri sessions that result in an interaction with Siri servers.  Koss began this theory from the factually incorrect premise that all Siri requests are sent to a server. (*E.g.*, Ex. 1, Clark 3/11/22 Opening Rpt. ¶ 173.) As Apple's experts clarified in rebuttal, however, certain requests—referred to as "local Siri" requests—never reach a server and thus do not infringe. (Appx1150–52 ¶¶ 367–72.) Koss does not dispute this. Rather, it now tries to blame ***Apple*** for supposedly not producing discovery regarding these "non-infringing uses" of Siri. In reality, that information was right under Koss' nose all along, and there has been no discovery violation.

### A.     Apple Fully Satisfied Its Discovery Obligations

Apple fully complied with Rule 26 because it produced information during fact discovery

regarding the "non-infringing" use of local Siri, and because Koss otherwise possessed such information. For example, on July 2, 2021—four months before the original fact discovery cutoff—Apple produced documents describing ████████████████████████████

████████████████████████████████████████████

████████████ (Ex. 2, APL-KOSS_00012635–37 at 36; *see also* Ex. 3, APL-KOSS_00012690–714 at 703.) In total, Apple produced over 80 documents that referred to "Local Siri." (Declaration of Michael T. Pieja ("Pieja Decl."), ¶ 3.)[1]

Indeed, Koss' expert reports confirm that it had access to information about local Siri and that, in fact, such information was publicly available. On March 15, 2022, Koss served a report from its damages expert, Mr. David Kennedy. That report cites to an article about local Siri and concluded that, as of June 2021, "analysts believe that Apple stopped sending users' conversations with Siri directly to Apple servers." (Ex. 4, Kennedy 3/15/22 Opening Rpt. ¶ 178.) The cited article explicitly discussed requests that can "be processed without an internet connection, such as launching apps, setting timers and alarms, changing settings or controlling music." (Ex. 5, Guardian Article.) Thus, Koss possessed the very information that it now asserts it did not have.

Moreover, the existence of local Siri, which Koss claims Apple hid from it, was discernible to anyone who purchased an iPhone. Koss concedes that local Siri was released to the public in iOS 15, starting in July 2021—eight months before Koss' experts prepared their infringement reports. (Dkt. No. 189 at 7.) As Apple's experts showed, the existence of Siri requests that were processed locally (i.e., not sent to a server) was apparent from simple tests of Siri on an iPhone in

---

[1] Tellingly, Koss' motion avoids forthrightly addressing the contents of Apple's document production, suggesting that Koss knew that documents relating to "local Siri" had been produced. Koss instead complains that Apple's experts did not cite these documents in their rebuttal reports. (Dkt. No. 189 at 6.) That, of course, does not change the fact that Apple timely produced them.

airplane mode. (*E.g.*, Appx1150–52 ¶¶ 367–72.)

Despite having access to information about local Siri, Koss argues that Apple should have more explicitly identified it in its discovery responses. But Koss cannot point to a single request that called for such a disclosure. Koss first relies on an interrogatory relating to "all design-arounds, noninfringing alternatives, or substitutes." (Dkt. No. 189 at 7; Appx1217, Koss Interrog. No. 3.) But local Siri is not a "design-around"—it is how Apple's products operate.[2] Koss appears to acknowledge this, resorting next to interrogatories and requests for production concerning "damages limitations." (Dkt. No. 189 at 7.) But these requests seek Apple's "assertion that Koss' claims for relief or prayer for relief are barred, in whole or in part, by damages limitations, ***including 35 U.S.C. § 287*** . . . ." (Appx1282, Koss Interrog. No. 18 (emphasis added).) They are thus directed to statutory bases that "bar[]" Koss from recovering damages, like the patent marking statute or the statute of limitations. They do not call for Apple's non-infringement positions, much less rebuttals to a damages theory that Koss did not reveal until after fact discovery closed.

Finally, Koss' argument that the testimony of an Apple witness—Mr. Baptiste Paquier—supposedly contradicted Apple's experts on local Siri is wrong. As an initial matter, Koss did not seek corporate testimony from Apple on whether or when Siri uses any servers. Rather, it sought testimony on "[t]he process by which each Accused Headphone receives and processes audio information, including spoken voice commands from a user of the Accused Headphones (including "Siri functionality") and audio content (including Apple Content) transmitted to the Accused

---

[2] Koss suggests that because local Siri was released in 2021, after the date of the "hypothetical negotiation," it should be treated as a non-infringing "alternative." (Dkt. No. 189 at 6–7.) That is wrong. Koss chose to offer opinions that a survey conducted in 2021 are relevant to the hypothetical negotiation. Local Siri was not an "alternative" to the accused products covered by the survey—it was part of their actual operation. Further, Apple is not asserting that local Siri is a non-infringing alternative, but rather a current, non-infringing use of Apple's products. Apple had no obligation to disclose a damages theory on which it was not relying.

Headphones from an Accused Networking Device [an iPhone or iPad]." (Ex. 6, 5/13/21 Koss Rule 30(b)(6) Notice at Topic 4.)

Further, Mr. Paquier neither suggested that all Siri commands involve an interaction with a server, nor testified that the one command Koss identified—"to raise or lower the volume"—did so. (Dkt. No. 189 at 7–8.) The excerpt Koss identifies from Mr. Paquier's testimony is in response to the following hypothetical from Koss' counsel:

> [I]f the AirPods are connected and are being used to do something, be it make a phone call or watch a television show, listen to music, and a user uses the HS trigger command and then states a command that can be used associated with control of the AirPods, for example, turn up the volume or, you know, transition to transparency mode, or something like that, *is that a control operation that the user can do completely by voice*?

(Ex. 7, Paquier 7/1/21 Dep. at 109:20–110:3 (emphasis added).) This question related to how the user could control Siri, rather than where Siri requests went. Consistent with this, after clarifying that ███████████████████████████████████████████████████████████████ ███████████████████████, Mr. Paquier explained how the user could control Siri:



(*Id.* at 110:8–18 (emphasis added).)

Mr. Paquier's testimony simply acknowledges that, in some circumstances, a user can make certain requests "completely by voice." (*Id.* at 110:3.) His stray reference to ████████ ███████████████████████████████████████████ is not testimony about what, if anything, is sent to the Siri servers, much less the unequivocal representation that Siri commands required server access that Koss claimed. (*Id.* at 110:12–13.) Tellingly, Koss' counsel asked no follow-up questions related to local Siri, even though Koss now admits that local Siri had been publicly

launched before Mr. Paquier's deposition. (Dkt. No. 189 at 7.) He did not ask Mr. Paquier whether connection to a Siri server was necessary for the volume command—or any other command—to work. Instead, he asked questions about audio being "ducked during the playback" of a Siri command—an entirely unrelated technology. (Ex. 7 at 111:22–112:6.) Even so, Mr. Paquier confirmed that ███████████████████████████████████████████████████████████ ████████████████████████████. (*Id.* at 112:13–18 emphasis added).) Mr. Paquier's testimony is consistent with how local Siri operates.

## B.    Sanctions Are Not Warranted

Even if Koss could identify information Apple did not disclose about non-infringing "local Siri" uses for its accused headphones, any purported failure does not warrant exclusion. ***First***, Koss itself refused to disclose its damages theories, including the fact that it intended to rely on a valuation of Siri in its damages case, in response to Apple's discovery requests. When fact discovery opened, Apple asked Koss to identify "for each type of damages sought or theory identified, [] all facts in support of such a contention." (Ex. 8, 4/26/21 Apple Amended 1st Interrogs., No. 15.) Koss refused to answer. (Ex. 9, 5/27/21 Koss Resp. to Apple Amended 1st Interrogs, No. 15.)

Indeed, Apple only learned of Koss' damages theory and its inaccurate view of how Siri worked when Koss' experts submitted their reports on March 11 and March 15, 2022. (Ex. 1, Clark Rpt. ¶ 173; Ex. 4, Kennedy Rpt. ¶ 259; Ex. 10, Reed-Arthurs Rpt. ¶ 44.) Apple's technical expert, Mr. Wiggins, timely responded to Koss' mistaken view of Siri, explaining in his own report why not all uses of Siri, such as local Siri, involve a server. (Appx1150–52 ¶¶ 367–72.) And Apple's damages expert explained why non-infringing uses like local Siri require apportionment in the damages analysis. (Ex. 11, Britven Rpt. at ¶¶ 301–04.) Koss tries to blame Apple for failing to present evidence relating to the "rate of adoption" of local Siri in its ***Apple's*** rebuttal reports. (Dkt.

No. 189 at 6–7.) But it is not Apple's burden to conduct an apportionment of infringing and non-infringing uses. Rather, it is Koss' burden to prove its entitlement to damages, including any necessary apportionment. Apple's experts simply pointed out (correctly) that Koss never attempted to do so. This is fair rebuttal.

**Second**, the evidence Koss seeks to exclude is important: "it is important for a defendant to have the ability to . . . discuss the value of the patented features in the accused device." *Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*, No. 2:21-CV-00034-JRG-RSP, 2021 WL 8441761, at *6 (E.D. Tex. Dec. 10, 2021). Koss has chosen to place the value of "Hey Siri" at the center of this case and has incorrectly advanced a flawed theory of how Siri operates. It is important for Apple to be able to rebut this with expert testimony about which aspects of Siri do not infringe (even under Koss' broad view), like local Siri.

**Third**, Koss suffered no prejudice. Koss had numerous documents, produced in fact discovery, describing local Siri. It had ample opportunity during fact and expert discovery to ask about Siri's operation. And its expert acquired and tested products with local Siri capabilities. That Koss did not investigate a basic operation of the key feature it accuses is not Apple's fault. When, as here, "an expert's statements in a rebuttal report are directly in response to an expert's statements in an opening report," the "prejudice is minimal." *Barkan*, 2021 WL 8441761, at *6.

## IV.   KOSS' MOTION TO STRIKE TESTIMONY RELATED TO NON-INFRINGING INVOCATIONS OF SIRI IS BASED ON A MISREPRENSETATION OF APPLE'S POSITION AND SHOULD BE DENIED

Koss next seeks to strike testimony about ways to invoke Siri other than a double-tap or voice trigger on a headphone. Again, there is no discovery violation and no prejudice to Koss.

### A.   Apple Satisfied Its Discovery Obligations

Koss' motion is premised on the mistaken belief that Apple is advancing a "non-infringing alternative" to its existing products that consists of "removing the voice activation functionality"

on its headphones. (Dkt. No. 189 at 15.) But neither Apple nor its experts are relying on that theory.

The section of Mr. Wiggins' report that Koss challenges is called "Substantial Non-Infringing *Uses* of Siri." (Appx1149 (emphasis added).) There, Mr. Wiggins discusses multiple non-infringing ways a user can invoke Siri—for example, by pressing a button on an iPhone. Mr. Wiggins is ***not*** describing a "non-infringing alternative"—that is, an "alternative" way a product could be designed to avoid infringement. Rather, he is describing how Apple's accused products, as-is, can be used without infringing—a "non-infringing use." Koss' motion relies entirely on an attempt to conflate these concepts. For instance, Koss relies on an interrogatory seeking disclosure of Apple's "non-infringing alternatives." (Dkt. No. 189 at 7; Appx1217, Koss Interrog. No. 3.) But, again, local Siri is not a non-infringing alternative. Instead, it is evidence that not all ***existing*** Siri uses are infringing—and thus that Koss' damages valuations, which include such uses—are overblown. Apple had no obligation to disclose a design-around position it has never taken.[3] Koss' only response to Apple's explanation as to why non-infringing alternatives ***to*** Apple's products differ from non-infringing uses ***of*** Apple's actual products is to call it "underhand[ed]." (Dkt. No. 189 at 7.) The fact that Koss' only argument is an unfounded personal attack underscores the weakness of its position.

Although Koss claims that "factual support for these [local Siri] features and their availability would have been responsive to Koss' [RFP] No. 7," and Interrogatory No. 18, that is false. Those requests, as explained *supra* at 4, relate to statutory "damages limitations" that "bar[]" Koss from recovering damages, such as the marking statute. (Dkt. No. 189 at 7; Appx 1282, Koss Interrog. No. 18; Appx1254, Req. for Prod. No. 4.) They do not seek technical information about

---

[3] Koss' extended discussion about what "non-infringing alternatives" Mr. Sriram Hariharan may or may not have identified is thus irrelevant. (Dkt. No. 189 at 5–6.)

Apple's products. In any case, that information was produced to or available to Koss. Koss' expert inspected Apple's source code, tested Apple's products, and reviewed Apple's website. (Ex. 1 ¶¶ 35–36, 130.) Koss thus had the exact same discovery available to it that Apple's expert used for his analysis. (Appx153 ¶¶ 373–75.) Apple did not violate Rule 26.

### B.     Sanctions Are Not Warranted

Finally, any alleged shortcoming in Apple's discovery responses does not warrant exclusion. *First*, Mr. Wiggins' challenged testimony was simply responding to Dr. Clark, Mr. Kennedy, and Dr. Reed-Arthurs' inaccurate assumptions that ***all*** instances of activating Siri would infringe. Apple had no reason to know until it read Koss' expert reports that its experts would make technically inaccurate statements regarding Siri that would require correction.

*Second*, testimony about the non-infringing uses of Apple's products is important. Koss' damages theory hinges on the value of a user being able to invoke Siri. Apple's experts should have the ability to "discuss the value of the patent[] features in the accused device," including which ways of invoking Siri are undisputedly ***non***-infringing. *Barkan*, 2021 WL 8441761, at *6.

*Third*, there is no prejudice to Koss. Being able to invoke Siri by pressing a button on a companion device is a public-facing feature that Koss can plainly observe itself. Koss chose to make certain specific Siri usages the lynchpin of its case and to wait until the last minute to disclose this theory. That Koss has pinned all its hopes on an incorrect theory is a problem of its own making.

## V.     KOSS' MOTION TO STRIKE MR. WIGGINS' OPINIONS ON PRIOR ART PRODUCTS SHOULD BE DENIED

Koss identifies two categories of physical products that it accuses Apple of withholding: two prior art devices that Koss inspected (the HT820 and the Mororola Razr) and four devices that Mr. Wiggins included teardown photographs of in his expert report. Apple complied with its

discovery obligations in both cases, and any supposed nondisclosure was harmless.

A.  **Apple Satisfied Its Discovery Obligations with Respect to the HT820 Headphones and Other Products Admittedly Disclosed During Fact Discovery**

Koss first seeks to exclude opinions regarding the "Motorola Razr phone and the Motorola HT820 headphones with Stereo PC Adapter." (Dkt. No. 189 at 2.)[4] Koss ***admits*** these products were made available for inspection during fact discovery and that its counsel did, in fact, inspect them. (*Id.* at 2.) Koss' sole complaint is that it did not have the opportunity to remove the Motorola HT820, which were produced in their original packaging, from the box. (*Id.* at 2.) However, as Koss knows, Mr. Wiggins also did not open the Motorola HT820 headphones or physically test them. (Ex. 12, Wiggins 4/21/22 Dep. at 27:20–22.) Instead, along with his visual inspection of the product in its package, Mr. Wiggins relied on (and Apple timely disclosed) product manuals, technical specifications, and websites. (*See, e.g.*, Appx080–123 ¶¶ 171–288.) Mr. Wiggins thus did not offer any opinions based on the information Koss claims to have been denied.

B.  **Apple Satisfied Its Discovery Obligations with Respect to the Other Physical Headphone Products**

The second category of headphone products targeted by Koss' motion include Plantronics Calisto Pro, Motorola S9, Plantronics 645, and Plantronics 855. (Dkt. No. 189 at 4.) The only place these pictures of physical products appear in Mr. Wiggins' 750-page Opening Report is in a short introductory section with photographs of them. (Appx025–30, ¶ 48.) These were simply demonstratives and Apple is only using them as such. There are no "opinions" based on them that

---

[4] Koss also refers to "several Apple products that are neither accused of infringement, nor form the basis for Apple's experts' opinions about invalidity." (Dkt. No. 189 at 2.) It is impossible to discern from Koss' motion what these products are, what Koss believes Apple did not disclose about them, what opinions Koss believes are based on them, or why Koss believes it has suffered any prejudice in regard to them. It has therefore not established any entitlement to relief. If Koss attempts to provide additional information in its reply, Apple reserves the right to respond.

Koss could reasonably seek to exclude. Mr. Wiggins' actual invalidity opinions regarding the Motorola S9 headphones, for example, cite a variety of material—product manuals, press releases, websites, specifications, and engineer testimony—all of which was produced to Koss. (*See, e.g.*, Appx080–123, ¶¶ 171–288.) There is no discovery violation here.

### C.    Sanctions Are Not Warranted

Even if a technical violation had occurred, this is no grounds for sanctions. First, Apple's substantive invalidity theories are based on numerous documents that were undisputedly timely disclosed, not physical samples or pictures used as demonstratives. Second, Koss' request for exclusion is grossly disproportionate: Koss seeks to exclude ***all*** testimony about anticipatory Motorola prior art because Koss could not test samples used as demonstratives or for the packaging itself—which Koss did inspect. This is an extreme request, given that the Motorola headphones are important prior art, potentially invalidating three of Koss' four headphone patents.[5] (*See* Appx080 ¶ 171, Appx335 ¶ 991, Appx552 ¶ 1757.) The most Koss can conceivably seek is for a few pictures to be excluded. Third, Koss does not articulate any prejudice tied to these products. (Dkt. No. 189 at 11.) Nor could it: Apple's expert relies on the same evidence Koss had.

## VI.   KOSS' MOTION TO STRIKE MR. WIGGINS' EXPERIENCE AT DOPPLER LABS SHOULD BE DENIED

Next, Koss asks this Court to strike Mr. Wiggins' testimony about his own background experience, claiming that it is somehow "amounts to fact testimony." (Dkt. No. 189 at 4.) As relevant to Koss' motion, Mr. Wiggins co-founded a company called Doppler Labs in 2013. (Appx014 ¶ 10.) While at Doppler Labs, he helped create true wireless earbuds, marketed as

---

[5] Koss incorrectly suggests that this prior art is not important because Apple has not "meaningfully narrow[ed] asserted prior art." (Dkt. No. 189 at 11.) But it is Koss who has insisted on maintaining 18 claims across 5 patents. (Ex. 25, Notice of Narrowing.) Apple's defense is driven by what claims it must defend ***against***.

"Here." (Appx014–15 ¶ 11.) This product is not asserted as prior art in this matter, nor is Doppler Labs involved in this matter. Rather, Mr. Wiggins relied on the experience he gained at Doppler Labs as the basis for certain expert opinions about the technology used in true-wireless earphones and the state of the relevant art at the time of the purported invention. This is standard fare for an expert and does not convert Mr. Wiggins into a "fact witness." (Dkt. No. 189 at 11.)

### A.   Apple Satisfied Its Disclosure Obligations

To begin, even assuming that information about Mr. Wiggins' background was somehow fact, and not expert, discovery, Koss has had the relevant information for eight months. Koss misleadingly represents to this Court that "[b]y the time Koss received Mr. Wiggins' report (March 11, 2022 . . .) fact discovery had closed, and Koss was unable to pursue timely subpoenas of documents from Mr. Wiggins or his former colleagues at Doppler Labs." (Dkt. No. 189 at 11–12.) In reality, as Koss admits, Apple disclosed Mr. Wiggins as an expert in July 2021. (*Id.* at 4.) On July 23, 2021, Apple produced to Koss Mr. Wiggins' CV. The first page of his CV lists "Co-Founder and Chief Technology Officer, Doppler Labs" as one of his "Key Positions." (Ex. 13, 7/23/21 Hartjes Email to Counsel for Koss attaching Wiggins CV at 2.) A description of his involvement at Doppler Labs appears on the second page. (*Id.* at 3.) Koss had every opportunity to seek discovery into his work at Doppler Labs had that been a genuine concern.

Koss complains that Mr. Wiggins "presents significant lay-witness fact testimony based on his own personal experience at" Doppler Labs. (Dkt. No. 189. at 4) But no Doppler Labs product or technology is asserted as prior art. Nor is Mr. Wiggins being offered as a fact or percipient witness to testify as to his first-hand knowledge of any invalidating prior art. *See U.S. v. Donovan*, No. 4:19-CV-000761, 2020 WL 5767996, at *3 (E.D. Tex. Sept. 28, 2020) (distinguishing percipient witness with first-hand knowledge from "expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony" (quoting *Downey v.*

*Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011))). Rather, Mr. Wiggins applied his "knowledge, skill, experience, training, [and] education" to reach his conclusions, as any expert ought to do. Fed. R. Evid. 703. Specifically, Mr. Wiggins applied his experiences in trying to develop true wireless headphones at Doppler Labs in 2015 to inform his opinions about how difficult it would have been to develop such a product, and the degree of experimentation that would have been required to do so, in 2008. (Appx639–95 ¶¶ 2135–38.) Experts routinely rely on their experience as the basis for opinions they express—indeed, it is that experience that ***qualifies*** them as experts. Fed. R. Evid. 702. Apple thus had no obligation to disclose him as a fact witness.

## B.    Sanctions Are Not Warranted

Even if Mr. Wiggins had provided fact testimony, Koss' request that the Court strike all of his testimony about his experience is unjustified. ***First***, as explained above, Apple provided Koss information about Mr. Wiggins' work history at Doppler Labs—exactly what Koss claims it wanted—in July 2021. ***Second***, Mr. Wiggins' testimony about his qualifications and experience is important. Mr. Wiggins will need to explain to the jury why his opinions are credible and to rely on his "knowledge, skill, experience, training, [and] education" when explaining his opinions about the state of the art. His experience with developing true wireless products from 2013 to 2015 informs his understanding of the challenges a person of skill would face in such an endeavor.

***Third***, there is no prejudice to Koss. Koss knew about Mr. Wiggins' experience at Doppler Labs since the day he was disclosed as an expert. And Koss had the opportunity to "meaningfully challeng[e]" his experience at Doppler Labs during his deposition: it asked extensive questions about the subject, even down to the type of funding Doppler received. (Dkt. No. 189 at 1, 12; Ex. 12 at 80:3–83:20.) Koss' claim that it would have subpoenaed Mr. Wiggins' coworkers from nearly a decade ago about a product and a company that are not at issue here is specious. And, again, Koss knew about Mr. Wiggins' experience at Doppler Labs during the early stages of fact

discovery.

## VII.   KOSS' MOTION TO STRIKE DR. WHITE'S OPINIONS ON WI-FI PROTECTED SETUP (WPS) SHOULD BE DENIED

Koss seeks to exclude Dr. White's opinions regarding prior art technology known as Wi-Fi Protected Setup (WPS) based on a purported lack of disclosure.[6] (Dkt. No. 189 at 8, 20.) But Apple disclosed the prior art WPS technology as a non-infringing alternative in discovery. Further, Apple's expert opinion on WPS is a proper rebuttal to Koss' own belated expert testimony. Finally, expert testimony on the WPS prior art is relevant to the *Georgia-Pacific* factors and should be permitted no matter what Koss argues about Apple's disclosure of it as a "design-around."

### A.   Dr. White's Opinions Were Adequately Disclosed in Fact Discovery

Over nine months ago—three months before the original close of fact discovery and six months before the extended cutoff—Apple disclosed Wi-Fi Protected Setup (WPS) as a prior art method for sharing WiFi network credential data wirelessly. (Ex. 14, 8/13/21 Apple Obviousness App'x B § 6.) In response to Koss' Interrogatory No. 3, Apple stated that "the prior art described [in Apple's Invalidity Contentions] . . . comprises a non-infringing substitute for the Asserted Patents," which include the '451 Patent. (Appx1217–19, Apple Resp. to Koss Interrog. No. 3 at Appx1219.) Apple's contentions, in turn, specifically disclosed WPS and linked it to the feature Dr. White cited in his challenged opinion, i.e., wireless exchange of credential data for joining a WiFi network. (Ex. 14, § 6; Ex. 15, White Rebuttal ¶ 198.)

Further, Apple's response to Interrogatory 3 stated that it would "timely supplement this response and provide additional information through the reports to be submitted by one or more expert witnesses" and incorporated those reports. (Appx1219.) This supplementation is

---

[6] Koss' motion refers to "Wireless Priority Service" as "WPS." (Dkt. No. 189 at 8.) This is an error. WPS stands for "Wi-Fi Protected Setup." (Appx773 ¶¶ 25–26.)

permissible: "[Koss] was not entitled to the detailed analyses of [Apple's] experts prior to the expert disclosure deadline." *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 122969, at *3 (E.D. Tex. Jan. 9, 2016) (denying motion to strike expert opinion on non-infringing alternatives). Koss is simply wrong to assert that Apple said "absolutely nothing about alternatives to the '451 Patent." (Dkt. No. 189 at 20.) Apple's disclosures put Koss on notice that the use of prior art techniques for wireless transmission of credentials, such as WPS, was a non-infringing alternative to the '451 Patent. No Rule 26 violation occurred.

### B.   Dr. White's Opinions on WPS as a Non-Infringing Alternative Should Not Be Excluded Because They Rebut Koss' Own Undisclosed Damages Theories

Even if Apple had not adequately disclosed WPS, Dr. White's opinions should not be excluded. ***First***, Apple has a reasonable explanation for not disclosing further details of WPS as a non-infringing alternative until its responsive expert report. At the outset of discovery, Apple served an interrogatory asking Koss to identify "for each type of damages sought or theory identified, [] all facts in support of such a contention." (Ex. 8, Apple Amended Interrog. No. 15.) At no point did Koss' response disclose any facts to related to the value of the '451 Patent over prior art alternatives. (Ex. 9, Koss Resp. to Apple Amended Interrog. No. 15.) Only in the March 11, 2022, expert report of Mr. Joseph McAlexander III, did Koss first disclose its theory that "the most reasonable work around" to the '451 Patent was to replace the wireless transfer of credential data with a wired one. (Ex. 16, McAlexander 3/11/22 Rpt. ¶ 120.) Koss' damages expert, Mr. Kennedy, relied on this testimony to opine that Apple could not transfer credential data wirelessly without using the '451 Patent. (Ex. 4 ¶¶ 286–91.) Koss used these new disclosures to support its theory that the parties to the hypothetical negotiation would believe the '451 Patent to be a valuable improvement over the prior art.

As Dr. White's report shows, his WPS analysis is a direct response to Mr. Kennedy's

opinion. (Appx1129–32 ¶¶ 194–199.) As Dr. White explains, WPS could be used to transfer Wi-Fi credential data wirelessly without using the claimed invention of the '451 Patent. (*Id.* ¶ 199.) This rebuttal became necessary only because of the opinions Koss' own experts offered.

**Second**, Dr. White's opinions are important. Koss' damages expert relies on the flawed opinion of Mr. McAlexander to opine that Apple had no alternative technology available to wirelessly transfer credential data. (Ex. 4, Kennedy Rpt. ¶¶ 286–91.) If Apple is precluded from rebutting this analysis with expert testimony, its ability to address Koss' damages case will be impaired. *See Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1351 (Fed. Cir. 2018) (court erred by excluding "evidence of conventional modes" to rebut patentee's argument that the invention "was a big advancement over the prior art.").

**Third**, Koss suffered no prejudice: Dr. White's opinion is rebuttal to Koss' experts, and "the prejudice is minimal when an expert's statements in a rebuttal report are directly in response to [its] expert's statements in an opening report." *Barkan*, 2021 WL 8441761, at *6. Koss claims that it could not have taken discovery on the value of "seamless WiFi credentialing as compared to one requiring a user to tap the WPS button on their router." (Dkt. No. 189 at 20.) But Apple disclosed WPS as prior art nine months ago. Preparing a damages case based on a hypothetical negotiation (as Koss did), required Koss to consider the "utility and advantages" of its '451 Patent "over the old modes or devices, if any, that had been used for working out similar results," such as WPS. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (factor 9). Its choice not to pursue discovery on this point is not a basis to claim prejudice.

### C.   Dr. White's Opinions on WPS Should Be Permitted in the Context of the Hypothetical Negotiation

Even if there were merit to Koss' complaints about Dr. White's WPS "design-around" disclosure, Koss' motion seeks relief that its motion does not justify. Koss seeks to exclude ***any***

opinions from Dr. White regarding WPS technology. (Dkt. No. 189 at 20.) But Dr. White's opinions on WPS are not limited to design-arounds. He separately analyzed WPS to assess whether there were any advantages to the '451 Patent over "old modes or devices . . . that had been used for working out similar results." *Georgia-Pacific*, 318 F. Supp. at 1120. Apple's damages expert, Mr. Thomas Britven, relied on Dr. White's analysis of the WPS functionality—a standard incorporated in countless consumer products before the filings of the '451 Patent—to conclude that the '451 Patent "does not provide any advantages over the use of WPS technology" in the context of *Georgia-Pacific* factors 9 and 10. (Ex. 11 ¶ 244.) The lack of advantages of the '451 Patent over prior art WPS is relevant to the *Georgia-Pacific* analysis—independent of any "design around" analysis—and the jury should be permitted to hear this evidence.

## VIII.   KOSS' MOTION TO STRIKE DR. WHITE'S OPINIONS ON PRIOR ART PRODUCTS SHOULD BE DENIED

Koss seeks to exclude Dr. White's opinions regarding two prior art products—(1) Google Nexus Phones with the "WiFi Joiner" app, and (2) MacBooks running OS X Lion—due to a purported failure to produce physical samples of these products during discovery. (Dkt. No. 189 at 3–4, 12–15.) But Apple disclosed this prior art at least nine months ago, produced information about it, and made the prior art available as soon as Apple's experts configured it to be operable.

### A.   Apple Satisfied its Rule 26 Obligations with Respect to Nexus Phones with WiFi Joiner and MacBook Prior Art

A year ago, Apple disclosed Nexus Phones with WiFi Joiner as anticipatory prior art to the '451 Patent. (Ex. 17, Exhibit B8 – Invalidity of '451 Patent in view of Android Nexus Phones.) As part of its contentions, Apple identified user manuals and several websites relating to this system. (*Id*.) Over the course of fact discovery, Apple (or Google) produced:

- ████████████████████████████████████████████████████████████████

- User manuals for Nexus Phones (Ex. 18, DEF-KOSS-PA_00011425–532);

- ███████████████████████████████████████████ (Ex. 19, GOOG-APPLE-00000001–11);

- Publicly available websites regarding WiFi Joiner and Nexus Phones, such as wifijoiner.appspot.com;

- The prior art inventor of WiFi Joiner, Vashishtha Jogi, for deposition; and

- Exhibits to the deposition of Vashishtha Jogi.

Nine months ago, Apple disclosed MacBooks running OS Lion as anticipatory prior art. (Ex. 20, Exhibit B11 – Invalidity of '451 Patent in view of MacOS X Lion.) As part of its invalidity contentions, Apple identified and produced relevant user manuals, publications, and websites: (*id.*)

- User Guides on MobileMe and MacBook OS X 10.7 Lion (e.g., Mac Security Bible, Joe Kissell (2010) (Ex. 21, DEF-KOSS-PA_00011724–2663); "Take Control of Passwords in Mac OS X v2.1," Joe Kissell (2010) (Ex. 22, DEF-KOSS-PA_00012664–784); and

- Publicly available websites regarding the features of MacOS X 10.7 Lion, such as https://osxdaily.com/2012/07/05/copy-keychain-login-passwords-between-macs/ (produced at DEF-KOSS-PA_00012905–07 (Ex. 23)).

Apple's timely production of this material is more than sufficient to satisfy its Rule 26 obligations.

Although Koss complains that Apple did not produce physical samples of the Nexus phones and MacBooks, that lacks merit. Apple could not provide Nexus Phones with WiFi Joiner installed for inspection during fact discovery because it did not have any such phones then. The software on these older devices could no longer be installed by conventional means (e.g., downloaded from the Google Play Store). Apple thus had to rely on its expert to install the software when he needed it, which he did after fact discovery closed, in preparing his invalidity report.[7]

---

[7] Nexus Phones were equally available to Koss as they were to Apple. At any time since August 2021, Koss could have done what Apple did: purchased old Nexus devices and have its expert configure them with the software that Apple produced. Likewise, Koss's expert could have

(Appx889 ¶ 248.) Apple made Nexus Phones with WiFi Joiner available for inspection soon after it had them itself. (Ex. 24, Winnard 4/14 Email to Counsel.) Koss' complaints are thus baseless.

### B.    Dr. White's Opinions on Prior Art Products Is Important to Apple and Not Prejudicial to Koss

Assuming *arguendo* that Apple did not comply with Rule 26, Dr. White's opinions should not be excluded under Rule 37. Apple's prior art defenses based on the MacBook and Nexus Phones are important. Koss argues that Apple has other prior art, but it is all printed art. (Dkt. No. 189 at 13–14.) The MacBook and Nexus products, in contrast, are tangible devices that will give the jury a clear and accessible visual of how the prior art accomplished what Koss now claims. Further, these prior art products are either Apple's own technology (MacBooks) or that of its engineers (WiFi Joiner). Thus, they are important for Apple to tell its own innovation story.

Further, Koss has no cognizable claim of prejudice. Apple produced a trove of evidence about Nexus Phones with WiFi Joiner during fact discovery. Most critically, Apple produced the WiFi Joiner software itself, which Koss could have had an expert install on a Nexus phone just as Apple ultimately did. Apple also produced a fact witness for deposition, user manuals, websites, and screenshots (authenticated by the fact witness). Dr. White relied on this evidence—the same evidence available to Koss—to form his opinions. (Appx862–909 ¶¶ 197–229, 231–42, 244, 246–47, 249, 251, 285–88.) After Dr. White configured the Nexus Phones with the as-produced WiFi Joiner software to verify that evidence, Apple made the phones available for inspection. (*Id.* ¶¶ 230, 243, 245, 248, 250; Ex. 24.) Koss refused to inspect them so that it could cry prejudice, but that manufactured claim is not cognizable.

With respect to MacBooks running MacOS X Lion, *none* of Dr. White's opinions are based

---

purchased old MacBooks and installed MacBook OS X 10.7 Lion on them, as this software is publicly available for free download: https://support.apple.com/kb/DL2077?locale=en_US.

on analysis or testing of MacBooks. Rather, all of these opinions were based on documents and websites that were either produced to Koss or publicly available, (Appx917–55 ¶¶ 306–310; 314–380), and his own prior experience using the relevant functionality. (*Id.* ¶¶ 311–313). His only reference to physical products was a note that he could demonstrate certain of their features at trial. (*Id.*) Koss had an opportunity to inspect devices to confirm this, but refused.

    **C.**    **Dr. White Should Be Permitted to Opine on the Prior Art Regardless of Koss' Motion**

Koss' motion should also be denied because, once again, Koss requests far more relief than its motion can justify. Koss complains that Apple did not make certain devices available for inspection by a certain date (though it admittedly did so during expert discovery). As a result, it demands that Apple's expert not opine on the prior art embodied in those devices ***at all***, even though he relied on exclusively or nearly exclusively on documents and testimony that was undisputedly timely disclosed. (Dkt. No. 189 at 14–15.) Koss does not and cannot justify excluding Dr. White's opinions to the extent they are based on this timely-produced information.

**IX.**    **KOSS' MOTION TO STRIKE MR. WIGGINS' CITATIONS TO MR. BRANN'S TESTIMONY WILL BE RENDERED MOOT**

Finally, Koss faults Mr. Wiggins for citing to the deposition testimony of Motorola employee Edward Brann, a lead developer of the Motorola HT820 and S9 headphones. (Dkt. No. 189 at 4.) As Koss acknowledges, the parties have already briefed the propriety of Mr. Brann's deposition, which occurred within the extended fact discovery period. (*Id.*; Dkt. Nos. 141, 152, 156.) Apple acknowledges that the Court's ruling on that briefing will likely resolve this dispute, and will proceed pursuant to the Court's ruling.

**X.**    **CONCLUSION**

For all of these reasons, Koss' motions to strike various testimony from Dr. White, Mr. Wiggins, Mr. Britven, and Dr. Simonson should be denied.

Date: May 27, 2022                          Respectfully submitted,

                                            By:   */s/ Michael T. Pieja*
                                            Michael T. Pieja (*pro hac vice*)
                                            Alan E. Littmann (*pro hac vice*)
                                            Doug Winnard (*pro hac vice*)
                                            Samuel E. Schoenburg (*pro hac vice*)
                                            Whitney Woodward (*pro hac vice*)
                                            Jennifer M. Hartjes (*pro hac vice*)
                                            GOLDMAN ISMAIL TOMASELLI
                                               BRENNAN & BAUM LLP
                                            200 South Wacker Dr., 22nd Floor
                                            Chicago, IL 60606
                                            Tel: (312) 681-6000
                                            Fax: (312) 881-5191
                                            mpieja@goldmanismail.com
                                            alittmann@goldmanismail.com
                                            dwinnard@goldmanismail.com
                                            sschoenburg@goldmanismail.com
                                            wwoodward@goldmanismail.com
                                            jhartjes@goldmansimail.com

                                            Stephen E. McConnico
                                            State Bar No. 13450300
                                            Steven J. Wingard
                                            State Bar No. 00788694
                                            Stephen L. Burbank
                                            State Bar No. 24109672
                                            Paige Arnette Amstutz
                                            State Bar No. 00796136
                                            Scott Douglass & McConnico
                                            Colorado Tower
                                            303 Colorado St., Ste. 2400
                                            Austin, TX 78701
                                            Tel: (512) 495-6300
                                            Fax: (512) 495-6399
                                            smcconnico@scottdoug.com
                                            swingard@scottdoug.com
                                            sburbank@scottdoug.com
                                            pamstutz@scottdoug.com

                                            *Counsel for Defendant Apple Inc.*

**<u>PROOF OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of **DEFENDANT APPLE INC.'S OPPOSITION TO KOSS CORPORATION'S MOTION TO STRIKE EXPERT OPINIONS AS BASED ON UNTIMELY DISCOVERY DISCLOSURES** has been served on May 27, 2022, to all counsel of record who are deemed to have consented to electronic service.

*/s/ Michael T. Pieja*
Michael T. Pieja
