IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| KOSS CORPORATION, | |
| Plaintiff, | Case No. 6:20-cv-00665 |
| v. | **JURY TRIAL DEMANDED** |
| APPLE INC., | |
| Defendant. | **FILED UNDER SEAL** |

**KOSS'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE EXPERT OPINIONS OF
DR. CHRISTOPHER JULES WHITE, MR. DANIEL C. WIGGINS, MR. THOMAS
BRITVEN, AND DR. ITAMAR SIMONSON
BASED ON UNTIMELY DISCOVERY DISCLOSURES**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  UNDISCLOSED FACTS REGARDING PURPORTED NON-INFRINGING
     USE ................................................................................................................... 1

     A.  Apple Withheld Evidence of "Local Siri" .................................................. 1

         1.   Apple's Corporate Witness Testified ████████████
              ██████████ ........................................................................ 1

         2.   Apple's Corporate Witness Testified that ██████████████
              ██████ ........................................................................................ 1

     B.  The Beta Test Version of iOS 15 and "Local Siri" Is By Definition Not a
         Reasonable, Acceptable Alternative ........................................................ 3

     C.  The Evidence Is Not Important .................................................................. 4

III. UNDISCLOSED FACTS REGARDING SIRI ACTIVATION ............................. 5

IV.  MR. WIGGINS' FACT TESTIMONY ABOUT DOPPLER LABS ................... 7

V.   RELIANCE ON UNDISCLOSED FACTS RELATED TO PRIOR ART ......... 9

     A.  HT820 Headphones ................................................................................... 9

     B.  Other Physical Headphone Products .......................................................... 9

     C.  Late Testimony of Edward Brann ............................................................ 10

VI.  CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*U.S. v. Donovan*
  2020 WL 5767996 (E.D. Tex. Sept 28, 2020) ............................................................................7

**Statutes**

35 U.S.C. § 112 ....................................................................................................................................7

**Other Authorities**

Fed. R. Evid. 702 ...............................................................................................................................9

## I.    INTRODUCTION

Apple's opposition to Koss' Motion to Strike (Dkt. 216) only confirms what Koss argues in its opening brief: that Apple improperly withheld evidence from Koss and is attempting to introduce such evidence, to its advantage, long after the date by which Apple had to disclose that evidence. Apple's history of discovery abuses is no secret, and as Koss further explains below, Apple should not be rewarded for its improper gamesmanship.[1]

## II.    UNDISCLOSED FACTS REGARDING PURPORTED NON-INFRINGING USE

### A.    Apple Withheld Evidence of "Local Siri"

#### 1.    Apple's Corporate Witness Testified Apple Abandoned Mini/Local Siri

Apple disingenuously claims that because Apple produced documents referring to "███ ██" Koss was sufficiently on notice that Apple had released an allegedly non-infringing alternative use of "Siri." Dkt. 216 at 3. This feature is referred to in Apple's documents as "███ ███████. *See, e.g.*, Ex. A–D. "████████" is also identified in Apple documents without the "███████" reference. *See, e.g.*, Ex. E (███████████ ███████████). The existence of these documents is not the issue, however. The issue is that, despite producing these documents, Apple offered evidence through the mouth of its corporate designee on topics related to Siri that Apple shelved ███████. Baptiste Paquier, Apple's corporate representative on Siri-related issues, testified that "████████████. Dkt.214-14 (Paquier Dep. Tr.) at 154:21–155:1. Apple's document production and deposition testimony does not confirm that Koss should have known that ████████" was available; it confirms that Koss reasonably relied on Apple's testimony that it was not.

#### 2.    Apple's Corporate Witness Testified that ██████████████

---

[1] In light of recent PTAB decisions, Koss does not reply in support of its motion to strike on to issues relating to the '451 Patent. Koss reserves its right to raise issues related to the '451 Patent in the event the PTAB decision is overturned on appeal.

Beyond simply indicating that Apple had abandoned ' ███████████████ Apple's corporate witness' testimony further confirms that Apple unquestionably withheld evidence related to ' █████ .

In particular, Apple's experts expressly refer to raising and lowering volume as one of the ██████ uses of Siri. *See* Dkt. 216-8 (Britven Rebuttal Rpt.) ¶168. Apple's corporate representative to testify about Siri and AirPods was prepared to testify about "the mechanism and/process by which each Accused Headphone wirelessly connects and communicates with Accused Networking Device." Dkt. 214-14 (Paquier Dep. Tr.) at 9:12–18; Dkt. 217-2 (Koss 30(b)(6) Deposition notice to Apple, Topic 2, with "Accused Networking Device" defined as incorporating a system that transmits network information to electronic devices). Mr. Paquier testified *after* the iOS 15 beta was released (per Mr. Wiggins), and his testimony confirmed the use of a " ████████ " even for features that Apple's experts now contend ████████████████ . Had Mr. Paquier testified that certain features, such as the very feature he was discussing (volume up and down), could be activated ███████████████████ , then Koss would have had reason to conduct additional discovery into changes in Apple's Siri system. It appears, however, that Apple intentionally deceived Koss. Indeed, Mr. Wiggins tested the <u>beta</u> "local Siri" functionality in <u>June</u>, *before* Mr. Paquier's deposition. *See* Dkt. 192-8 (Wiggins Rpt.) ¶ 369. Mr. Paquier's testimony as a corporate representative reasonably caused Koss to believe that he was telling the truth of the then current and foreseeable future Siri functionality, *even though it operated differently as of before the date of his testimony*.

Koss cited *several* excerpts of the testimony of Apple's corporate witness on the use of Siri in which he explicitly testified that the Siri servers were used when a request relating to raising and lowering volume was initiated through the headphones:

***

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

Dkt. 189-2 Appx1298, 159:5–17 (emphasis added). Koss' other cited testimony of Mr. Paquier likewise confirms that he presented testimony that <mark>Si</mark>ri commands of a type that Apple now contends is local, went to the Siri servers:

- ████████████████████████████████████
  █████████████████████████ " *Id.*, Appx1292, 111:4–7
  (emphasis added);

- ████████████████████████████████████
  █████████████████████████ *Id.*, Appx 8–15, 113:10–15
  (emphasis added);

- ████████████████████████████████████
  █████████████████████████ *Id.*, Appx1296, 118:3–9
  (emphasis added);

- ████████████████████████████████████
  █████████████████ *id.* at Appx1297, 123:10–18 (emphasis
  added).

Apple's discounting of Mr. Paquier's testimony about ████████████████████ as "stray" testimony is disingenuous if not an outright fabrication. *See* Dkt. 216 at 5. That Apple even needs to characterize it as "stray" is concerning, but at the very least indicates that Apple could have, should, but did not, clarify the functionality of the at-issue products, particularly as that functionality pertained to its experts' damages opinions in this case. Based on the testimony cited above, it is without question that Mr. Paquier testified that, in the ordinary operation of ████

█████████████████████████

**B.    The Beta Test Version of iOS 15 and "Local Siri" Is By Definition Not a Reasonable, Acceptable Alternative**

3

Apple suggests that the fact that the non-official, *beta* (i.e., public test version) iOS 15 was available to customers before the official release date of September 20, 2021 (*see* Dkt. 192-8 (Wiggins Rpt.) ¶ 369), somehow supports its view that Apple had come up with a reasonable non-infringing alternative to a subset of uses of Siri, though the bulk of Siri ████████████████ ████████████████. First, the release of a feature in a public beta testing program does not confirm that the feature will actually be available within the official release of the iOS operating system that would be used by users of Apple products when it is officially released.[2] Indeed, the public testing of features suggests that there remains a question of whether a given feature is "acceptable" at all, let alone whether it may be an acceptable non-infringing alternative or use.

To the extent "local Siri" is an alternative use of some Siri features, its final release to the public just six weeks before the close of expert discovery, after a damages period of a year and a half, necessarily prevents the ability of any party to truly evaluate whether such alternative is actually reasonable, and whether it has any impact on damages. There are questions of adoption of the feature, for example. Indeed, it is apparent that ███████████ are still used to ████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████, then it is not necessarily relevant that a Siri command can be processed locally while a companion device is on "airplane mode."

C.      **The Evidence Is Not Important**

Because the official iOS 15 release did not take place until September 2021, several years after the hypothetical negotiation and a month and a half before the close of fact discovery, it is virtually impossible to know the value of this feature to Apple's products and the impact it would have, if any, on the value of the asserted patents. For example, Apple has presented no evidence

---

[2] *See, e.g.*, https://www.macworld.com/article/353957/ios-15-features-missing-at-launch.html ("Legacy Contacts" feature was "part of iOS 15 beta releases until beta 5, when it went away.").

as to the adoption rate of iOS 15 such that there is no evidence as to how many users could have even used "local Siri" by the close of discovery. Furthermore, Apple has presented no testimony of evidence as to the use rate of "local Siri" as compared to the continued "nonlocal" Siri functionality. Without such evidence, any testimony about the "local Siri" feature and its impact on the damages in this case is completely speculative. Indeed, despite identifying the existence of "local Siri" Apple makes no effort to explain its importance. Apple did not prepare its corporate witnesses and did not identify "local Siri" in its discovery responses.

Furthermore, despite Koss producing documents relating to its own survey methodology during discovery, Apple made no effort to conduct a survey of its own with references to "local Siri" to rebut Koss' survey. This was so despite Apple repeatedly and incorrectly contending that the fact discovery period in fact remained open until the end of February, 2022.

In particular, Apple has done nothing to compare the value of iOS 15 with its "local Siri"-lacking predecessor operating systems. Through its experts, Apple merely provides a baseless conclusion that this alleged non-infringing use case somehow devalues its infringement of the asserted patents. Apple provides no evidence that the mere fact that "local Siri" means that the use of these specific "local Siri"-enabled features ███████████████████, or if this is only the case while "airplane mode" is activated. Apple's failure to provide any evidence about this feature as implemented and used by Apple customers, other than its mere existence, demonstrates that this evidence is not important to Apple.

Lacking foundation for such evidence or conclusions, this evidence is plainly unimportant, and irrelevant to this case.  Koss' Motion to Strike should be granted.

## III.   UNDISCLOSED FACTS REGARDING SIRI ACTIVATION

Apple intentionally conflates the patented technology to justify its failure to provide information regarding alleged noninfringing "uses" during discovery.  Apple argues that Koss' interrogatory regarding damages does not sufficiently request information relating to non-

infringing "uses" of Siri that Apple contends should drive down the value of the reasonably royalty. Apple misstates Koss' position by representing, without so much as a citation to any statement from Koss or Koss' experts, that Koss' damages theory depends on an assumption that "***all*** instances of activating Siri would infringe." These are not Koss' or its experts' assumptions; only Apple and Mr. Wiggins have made these assumptions, and only by ignoring the nature of the claims at issue. *See* Dkt. 192-8, ¶¶ 365–366; *see also*  Dkt. 216 at 9.

Contrary to these unsupported assertions, the asserted claims are all *apparatus claims*, so the act of infringement at issue is the *sale* of the device and/or *assembly of the system* (not the invocation of "Siri"). By mischaracterizing the Asserted Patents, Apple seeks to create new, but irrelevant, non-infringing "uses" that were not within the scope of the underlying technical issues relating to infringement or damages, during discovery. They <u>are</u>, however, within the scope of Apple's contentions as they relate to the bases for a reduction in the value of the reasonable royalty for Koss' patents. It is undisputed that Apple never disclosed these facts prior to its expert reports.

Apple's conduct (or lack thereof) related to this evidence demonstrates its unimportance to Apple. If it truly were important, Apple would have conducted its own survey to determine the actual value to a customer of not having to reach into his or her pocket, and activate Siri by phone, or without having to make sure they also own a several hundred dollar watch or thousand dollar computer to activate Siri so that they can then speak a command to Siri through their headphones.

This previously unproduced (and incomplete) evidence is not important. This evidence does not suggest that Koss' survey is incorrect, and Koss' survey reliably tests the value of the patented features. Even if there were *some* relevancy of the fact that Siri may be activated on a phone or other peripheral device, Apple's lack of any supporting evidence, demonstrates that such relevancy is *de minmis* as compared to Koss' survey.

Furthermore, the prejudice to Koss is significant. These are apparatus claims, and the *use* of any specific feature is not relevant to the infringing act at issue. Apple's reference to other Siri

activation is not only based on a patently faulty premise, the discussion of other activations of Siri will confuse the jury because there is no underlying explanation for the reason these other activations impact the value of the asserted patents, let alone the extent of such impact.

## IV.   MR. WIGGINS' FACT TESTIMONY ABOUT DOPPLER LABS

Koss does not argue that Mr. Wiggins cannot testify about his general experience as Apple suggests. Dkt. 216 at 11–12. Indeed, Apple disingenuously misinterprets Koss' request by making the *non sequitur* argument that the Doppler Labs work is not "asserted as prior art in this matter." *Id.* Of course it is not; it is an example (like Apple itself) of a company following in Koss' true wireless stereo footsteps after the industry innovator had already innovated.

Nevertheless, Apple has made invalidity arguments here under 35 U.S.C. § 112 that make the facts around Doppler Labs facts putatively supportive of invalidity even though they occurred after the filing of the asserted patents. In that vein, Koss objects to Mr. Wiggins acting as a fact witness, providing post hoc factual testimony as the key evidence regarding what Apple contends is *actual experimentation* required to make a particular headphone product with unspecified requirements and functionality. While not dated before the patents in suit, the factual evidence is nevertheless akin to evidence about what actually constitutes potentially invalidating prior art.

In that vein, Apple misrepresents an irrelevant point in *U.S. v. Donovan* 2020 WL 5767996, at *3 (E.D. Tex. Sept 28, 2020). Specifically, the district court there noted that in determining whether an expert is "retained" or "specially employed," "there is a 'difference between a percipient witness *who happens to be an expert* and an expert who without prior knowledge of the facts giving rise to the litigation is recruited to provide expert opinion testimony.'" *Id.* (emphasis on language omitted by Apple). It is undisputed that Mr. Wiggins is a percipient witness as it relates to actual efforts to develop true wireless headphones; his Doppler Labs experience is fact testimony supporting an opinion of invalidity for lack of enablement. He also may happen to be an expert (whose other foibles in terms of comporting with the Court's claim construction orders

and the law on obviousness are detailed elsewhere). For purposes of this Motion, Koss takes issue

only with his non-expert testimony that forms the entire basis for his enablement opinions:

> *Based on my own experience in 2013-2015* working with a team of 15 highly
> experienced engineers, including ones with advanced degrees, it is very difficult to
> implement an audio system that transmits audio to two independently wireless
> earphones using Bluetooth links with a source. *Thus, it is my opinion* that it would
> be extraordinarily difficult for a person of skill to have done so on their own using
> the technology that existed in 2008.

Dkt. 189-2, Appx2193 (emphasis added); *see* Appx693–95, ¶¶ 2135–38; Appx709-14, ¶¶ 2174–

93.

Apple argues that the details of Mr. Wiggins' work at Doppler Labs was disclosed with his

curriculum vitae in July, 2021. Dkt. 216 at 12. Apple cannot dispute that he was never added as a

witness to Apple's initial disclosures. And by confirming that Apple itself knew of the Doppler

Labs work (and by suggesting that Koss should have known of the importance of the same), Apple

just shifts its discovery violation to a violation in the form of its invalidity contentions, served most

recently on August 13, 2021. In the cover portion of that document, the word "Doppler" does not

appear, and the sum-total of Apple's arguments for lack of enablement include the following

excerpt, followed by a listing of dozens of claim elements across the various asserted patents:

> Apple contends that the asserted claims of the '025, '451, '934, '982, and '325 Patents that
> are set forth below are invalid under 35 U.S.C. § 112 ¶ 1 because the specifications do not enable
> a person of ordinary skill in the art to practice the claims without undue experimentation. In
> particular, the specifications of the '025, '451, '934, '982, and '325 Patents do not enable the full
> scope that Koss has asserted those claims to have in its Infringement Contentions.
>
> The asserted claims of the '025 Patent are invalid for lack of enablement because they
> contain at least the following limitations:

Ex. F at p. 38–41. If Apple contends that Mr. Wiggins' CV contained evidence it would later use

to support an argument of no enablement, Apple not only failed to disclose it, but *affirmatively hid*

*its relevance* from Koss by serving contentions Apple knew to be incomplete and misleading.

The specific testimony Koss seeks to strike was plainly not important to Apple. Had it been

important, Apple would have bothered to make Mr. Wiggins available to testify during the fact

discovery period. It would have at least cited some of that evidence in support of its contention

that the claims are invalid for lack of enablement. *Id.* Instead, Apple hid the ball in its invalidity

contentions and now mischaracterizes Koss' request as seeking to exclude the fact that Mr.

Wiggins worked at Doppler Labs. Koss does not seek to strike the fact that Mr. Wiggins worked

at Doppler Labs, or even that that work causes his opinions to be admissible under Rule 702. It

only seeks to strike his percipient witness testimony about his personal work experience.

## V.   RELIANCE ON UNDISCLOSED FACTS RELATED TO PRIOR ART

### A.   HT820 Headphones

Given Apple's handling of the HT820 headphones, Koss cannot understand why Apple is

opposing Koss' motion in that regard. Apple does not dispute that Koss was prevented from

actually inspecting the HT820. Apple even admits that Mr. Wiggins did not physically inspect the

HT820. Dkt. 216 at 10. The fact that the unpackaged Motorola HT820 headphones are in Apple's

possession but not actually inspected by either party should be sufficient to strike any reference to

a physical exemplar at trial, and neither Mr. Wiggins nor Apple certainly may not permissibly rely

on anything that can be gleaned from inspection of the products that is not apparent from the

"product manuals, technical specifications, and websites" Apple contends it timely produced. As

a result, Koss can see no reason other than "trial by surprise," or to confuse the jury, in Apple

being permitted to use the physical HT820 headphones, in or out of the package, at trial.

### B.   Other Physical Headphone Products

Mr. Wiggins had possession and inspected four headphones that Koss was not permitted

to inspect and test. Specifically, Mr. Wiggins purports to have evaluated three Plantronics

headphones (the Calisto Pro, 645, and 855) and the Motorola S9 headphones. Photos of those

products appear in his report in various states of disassembly. *See* Dkt. 189-1, Appx025–030.

By suggesting, only after Koss alerted the Court to Apple's discovery misconduct, that

these images are merely demonstratives, Apple is admitting that it did not comply with its discovery obligations. These are not marketing or sales images of commercial product. They were taken by Mr. Wiggins during disassembly and in support of theories of invalidity that carry with them a clear and convincing evidentiary burden. *See* Dkt. 189-2, Appx1103–1106, at 385:1–388:22. Because they show the product in various states of disassembly, these photos convey *to the jury* that Mr. Wiggins actually handled and inspected these products, despite Apple suggesting that they will not be used for that purpose. Koss submits that allowing these images to be shown to the jury, whether as "demonstratives" or otherwise, will lend undue credence to the actual evidence supporting the invalidity issues on which Mr. Wiggins opines. And if, as Apple admits, these images are merely demonstratives (intentionally or to cover up for yet another discovery failing), they are not important to Apple. To permit Apple to show these images, which were part of its expert's work on the issue of invalidity, under the guise of "demonstratives" would be absolving Apple of wrongdoing for yet another discovery violation. There is no basis whatsoever to permit the jury to see these images, or to permit Mr. Wiggins to testify about the images (or his disassembly of any of the prior art not likewise made available to Koss for inspection).

### C.    Late Testimony of Edward Brann

Apple concedes that if this Court strikes Mr. Brann's testimony based on the already-filed briefs, Mr. Wiggins will not be permitted to testify about statements from Mr. Brann. Koss notes, however, that Apple continues to try to twist this Court's prior words, referring to an "extended fact discovery period" that ignores this Court's prior chiding of Apple's view of the "limited scope of the November 5, 2021 discovery extension." Dkt. 145 at 5. Koss reiterates that Mr. Brann's deposition was untimely and Apple should not be permitted to use it just because it is Apple.

## VI.    CONCLUSION

Koss requests that the Court strike the offending opinions (and undisclosed facts) from Apple's experts' reports and depositions.

10

Dated: June 6, 2022

Respectfully submitted,

*/s/ Darlene F. Ghavimi*

Peter E. Soskin (*pro hac vice*)
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8200
Fax: (415) 882-8220
peter.soskin@klgates.com

Darlene F. Ghavimi
Texas Bar No. 24072114
K&L GATES LLP
2801 Via Fortuna, Suite #650
Austin, TX 78746
Tel: (512) 482-6800
Fax: (512) 482-6859
darlene.ghavimi@klgates.com

Christopher J. Valente (*pro hac vice*)
K&L GATES LLP
One Lincoln Street
Boston, MA 02111
Tel: (617) 951-9071
Fax: (617) 261-3175
christopher.valente@klgates.com

Jim Shimota (*pro hac vice*)
Benjamin E. Weed (*pro hac vice*)
Philip A. Kunz (*pro hac vice*)
Gina A. Johnson (*pro hac vice*)
Melissa M. Haulcomb (*pro hac vice*)
Amanda C. Maxfield (*pro hac vice*)
K&L GATES LLP
70 W. Madison Street, Suite 3100
Chicago, IL 60602
Tel: (312) 372-1121
Fax: (312) 827-8000
jim.shimota@klgates.com
benjamin.weed@klgates.com
philip.kunz@klgates.com
gina.johnson@klgates.com
melissa.haulcomb@klgates.com
amanda.maxfield@klgates.com

David R. Fine (*pro hac vice*)
K&L GATES LLP
Market Square Plaza
17 North Second St., 18th Fl.
Harrisburg, PA 17101
Tel: (717) 231-5820
Fax: (717) 231-4501
david.fine@klgates.com

David N. Deaconson
Texas Bar No. 05673400
PAKIS, GIOTES, PAGE
& BURLESON, P.C.
400 Austin Ave, Suite 400
Waco, Texas 76701
Tel: (254) 297-7300
deaconson@pakislaw.com

**ATTORNEYS FOR
KOSS CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2022, a true and correct copy of the foregoing document was served on all counsel of record by email.

*/s/ Darlene F. Ghavimi*
Darlene F. Ghavimi