# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| KOSS CORPORATION,<br><br>       Plaintiff,<br><br>  v.<br><br>APPLE INC.,<br><br>       Defendant. | Case No.    6:20-cv-00665-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>**PUBLIC VERSION** |

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT ON APPLE'S BREACH-OF-CONTRACT
COUNTERCLAIM AND AFFIRMATIVE DEFENSE**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................ 1

II.   ARGUMENT .................................................................................................................... 1

    A.    The Arbitration, and the Agreement, Covered the Patents-In-Suit ........................ 1

    B.    Koss and Apple Fully and Fairly Litigated Koss' Breach in Arbitration ................ 2

        1.    Koss Agreed to the Arbitration's Rules After First Raising Extrinsic Evidence, and Proceeded in Full Knowledge of Apple's Arguments ................................................................................................... 3

        2.    The Tribunal, Not "Apple's Conduct," Found Section 5 Ambiguous ................................................................................................ 4

    C.    Koss' Second-Guessing of the Tribunal's Reasoning or Conclusions Is Improper and Incorrect ............................................................................................ 5

        1.    Apple's Requested Relief Is Irrelevant to Koss' Liability or Preclusion ............................................................................................... 6

        2.    The Tribunal's Ruling, on Two Separate Claims, Is Internally Consistent, Understandable, and Applicable Here ....................................... 7

    D.    Public Policy Supports Applying Collateral Estoppel Here ................................... 8

    E.    Koss, Not Apple, Is "Wasting Judicial and Party Resources" ................................ 8

    F.    Koss' Baseless Discovery Accusations Are Irrelevant ........................................... 9

    G.    Apple Has Neither Ratified nor Acquiesced to Koss' Breach ................................ 9

    H.    Apple's Motion for Partial Summary Judgment Seeks Appropriate Relief ........... 10

III.  CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*BioLife Sols., Inc. v. Endocare, Inc.*,
   838 A.2d 268 (Del. Ch. 2003), as revised (Oct. 6, 2003) ............................................................. 10

*Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*,
   402 U.S. 313 (1971) ........................................................................................................................ 8

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
   702 A.2d 1228 (Del. 1997) ............................................................................................................. 5

*In re Khaligh*,
   338 B.R. 817 (B.A.P. 9th Cir. 2006),
   *aff'd,* 506 F.3d 956 (9th Cir. 2007) ................................................................................................. 2

*In re Lopez*,
   2008 WL 8462956 (B.A.P. 9th Cir. Dec. 31, 2008),
   *aff'd*, 378 F. App'x 610 (9th Cir. 2010) ......................................................................................... 6

*In re Lopez*,
   367 B.R. 99 (9th Cir. BAP 2007) ................................................................................................... 6

*Lucido v. Superior Ct.*,
   795 P.2d 1223 (Cal. 1990) .............................................................................................................. 5

*Morgan v. Sundance, Inc.*,
   2022 WL 1611788 (U.S. May 23, 2022) ........................................................................................ 8

*Murphy v. Murphy*,
   164 Cal. App. 4th 376 (2008), as modified (July 22, 2008) ........................................................... 6

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979) .................................................................................................................. 4, 9

*Petro–Hunt, L.L.C. v. United States*,
   365 F.3d 385 (5th Cir. 2004) .......................................................................................................... 5

*Universal Am. Barge v. J-Chem, Inc.*,
   946 F.2d 1131 (5th Cir. 1991) ................................................................................................ 2, 4, 5

**I.     INTRODUCTION**

Koss' breach of the parties' Confidentiality Agreement has been conclusively established in arbitration. That proceeding followed fair rules that Koss itself agreed to and complied with, and fully considered the parties' arguments and evidence. Koss should therefore be estopped from denying liability for its breach and barred from introducing evidence in this litigation that the Agreement prohibits. The grab-bag of arguments Koss now advances in a last effort to avoid the consequences of its breach, and of the arbitral Tribunal's decision, all fail. Accordingly, the Court should grant Apple's motion for partial summary judgment of breach of the parties' contract.

**II.    ARGUMENT**

**A.    The Arbitration, and the Agreement, Covered the Patents-In-Suit**

Despite Koss' argument, the Patents-in-Suit, and the applicability of the Agreement to them, were squarely at issue in the arbitration. (Dkt. No. 206 at 1–2.) The arbitral Tribunal held that "Koss specifically agreed and understood" that Section 5 of the parties' Confidentiality Agreement prohibited using the parties' pre-suit communications in litigation "to show notice, knowledge, induced infringement or willful infringement *of any patent*." (Dkt. No. 185-1 ¶ 150 (emphasis added).) The Tribunal further held that Koss breached Section 5 by referring in its Complaint to pre-suit communications in connection with the Patents-in-Suit. (*Id.* ¶ 163.) Any argument that the arbitration somehow did not cover the Patents-in-Suit is simply incorrect.

Koss is also wrong that Apple has ever agreed that the Patents-in-Suit "were outside the scope of the 'Patents' as [that term is] defined by the Confidentiality Agreement." (Dkt. No. 206 at 2.) Koss bases this assertion on an excerpt of an unrelated Apple interrogatory response that has nothing to do with the definition of "Patents" in the Confidentiality Agreement. (*See* Dkt. No. 206-

4 at 25–26.)[1] The cited response merely reflects the unremarkable proposition that Koss had no right to sue Apple for infringing the Patents-in-Suit when the Agreement was signed, because they had not issued yet. (*Id.*) Further, the Agreement defines "Patents" as "patents that [Koss] represents it owns or controls," including all the Patents-in-Suit. (Confidentiality Agreement ("NDA"), Dkt. No. 20, 1st Recital.) Apple has fully addressed, in its opposition to Koss' cross-motion, Koss' other incorrect arguments that the Patents-in-Suit fall outside the term "Patents" in the Agreement. (Dkt. No. 207 at 9–13.) The Court should disregard Koss' additional unfounded argument here.

### B.   Koss and Apple Fully and Fairly Litigated Koss' Breach in Arbitration

Despite Koss' charge of unfairness, the arbitration between Koss and Apple proceeded under the rules of the International Chamber of Commerce and additional procedures the parties largely agreed to in advance. (*See* Dkt. No. 185-1 ¶¶ 24A, 24.) As Apple explained in its opening brief (Dkt. No. 207 at 7–8), the arbitration thus "afforded [both] litigants the basic elements of adjudicatory procedure" required to give preclusive affect to the Tribunal's award. *Universal Am. Barge v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991) (quotation marks and citation omitted); *see In re Khaligh*, 338 B.R. 817, 828 (B.A.P. 9th Cir. 2006), *aff'd,* 506 F.3d 956 (9th Cir. 2007).

Koss' complaint about the arbitration proceedings boils down to disappointment that the Tribunal (properly) consulted extrinsic evidence about the Confidentiality Agreement's drafting history. (Dkt. No. 206 at 2–5.) And its assertions that Apple "flip-flop[ped] at the [arbitration]

---

[1] Koss supports its assertion by referencing a separate, 22-page appendix titled "Statement of Undisputed Material Facts." (Dkt. No. 206-2.) Apple objects to Koss' submission of this appendix, which Koss uses to triple its allotted page limit without seeking the Court's leave. Contrary to Koss' assertion, this document does not contain undisputed facts, and Apple disputes numerous facts and arguments contained therein. Apple has addressed the most pertinent issues in its reply. However, Apple's silence with respect to any issue contained in the appendix should not be presumed to be an admission that Koss' assertions are valid. To the extent the Court is interested in any of the issues that Koss raised in its appendix that Apple has not addressed in its reply, Apple respectfully seeks leave of Court to address those issues in a supplemental brief or statement.

2

hearing with respect to whether the Confidentiality Agreement was ambiguous" and that "Apple's conduct caused the arbitrator to improperly use parol evidence" are incorrect. (*Id.* at 2, 4.)

### 1. Koss Agreed to the Arbitration's Rules After First Raising Extrinsic Evidence, and Proceeded in Full Knowledge of Apple's Arguments

Despite Koss' complaint that it was somehow prejudiced by the Tribunal's consideration of the Agreement's drafting history, both parties were well aware that the Tribunal might consider this evidence. Indeed, it was ***Koss***, not Apple, that first raised extrinsic evidence before the Tribunal. On February 8, 2021, Koss answered Apple's request for arbitration with argument, in part, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. (Ex. 6, 2/8/21 Koss Answer to Req. for Arb. at 25.) Nearly two months later, on March 29, ▉▉▉▉▉▉▉▉▉▉ the Tribunal instituted, the very procedures that Koss now attacks, including ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ by each party. (Dkt. No. 185-2 at 3.) Apple submitted its merits brief on May 5, 2021, arguing that the Confidentiality Agreement was unambiguous, but alternatively, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Dkt. No. 206-11 at 48; *id.* at 48–52.) Alongside its brief, Apple submitted a witness statement from Jeffrey Lasker, who negotiated the Agreement and led Apple's discussions with Koss, plus exhibits constituting the relevant extrinsic evidence. (*See* Dkt. No. 185-1 ¶¶ 29, 31; Ex. 7, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉).) Koss responded two months later, on July 1, with its own brief, 83 additional exhibits, and a witness statement. (*See* Dkt. No. 185-1 ¶¶ 30–31; Ex. 7 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉).)

With this context, Koss' procedural complaints fall away. Koss expressly agreed that each party be allowed only one fact witness after Koss itself argued extrinsic evidence might be relevant.

3

(Ex. 6 at 25; Dkt. No. 185-2 at 3.) Koss had full possession of Apple's claims, written brief, witness statement, and evidence two months before it submitted its own brief and witness. (Dkt. No. 206-11; Dkt. No. 185-1 ¶ 31.) Koss never sought leave to include an additional witness statement, even though the Tribunal is empowered to hear additional evidence at any time. (*See* Dkt. No. 186-1, art. 25(5).) If Koss regrets its choice to submit fact testimony that did not address the Agreement's drafting history, then Koss, not the arbitration's procedures, is to blame.

Koss also asserts that Apple "refused to respond" to Koss' document request. (Dkt. No. 206 at 2.) But as the Tribunal recognized, "Koss originally sought a ruling from the Tribunal on this lack of production, [but] *it withdrew that request* without a ruling from the Tribunal." (Dkt. No. 185-1 ¶ 161 (emphasis added).) Further, Koss' request was patently overbroad, seeking ███████████████████████████████████████████████████████████████████████. (Dkt. No. 206-7 at 2.) Apple rightly refused to respond to this request (Dkt. No. 206-8 at 2–3), and to an almost identical one in this litigation. (Ex. 8, 11/1/21 Apple Resps. to Koss 4th RFPs, No. 61.) As such, this Court would not, as Koss claims, present any "procedural opportunities available to [Koss] in th[is] subsequent action [that] 'might be likely to cause a different result.'" *Universal Am. Barge*, 946 F.2d at 1137–38 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 (1979)); (Dkt. No. 206 at 2–3).

### 2. The Tribunal, Not "Apple's Conduct," Found Section 5 Ambiguous

Koss is also wrong to suggest that "Apple's conduct caused the arbitrator" to consult parol evidence. (Dkt. No. 206 at 4.) Apple always argued that the plain language of the Agreement supported Apple's position, but also presented parol evidence if the Tribunal found it relevant. (*See* Dkt. No. 206-11 at 48–52.) The Tribunal did, and ruled in Apple's favor. (Dkt. No. 185-1 ¶ 163.) Further, it does not matter that both parties initially argued Section 5 to be unambiguous. (*See* Dkt. No. 206 at 3.) Under Delaware law, the adjudicator alone determines whether a contract

4

provision is ambiguous, and is "not bound[] by the parties' present claim that the provision is unambiguous." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1231 (Del. 1997).

The Tribunal also did not, as Koss suggests, "merely rel[y] on the fact that the parties disagreed over the meaning of the Confidentiality Agreement" to find Section 5 ambiguous. (Dkt. No. 206 at 4.) As Koss previously argued to this Court (Dkt. No. 107 at 7–8; Dkt. No. 174 at 10), it claimed in arbitration that Section 5, if given full effect as written, would prevent Koss from fulfilling its duty of candor to disclose prior art to the USPTO that arose in protected discussions with Apple. (Dkt. No. 185-1 ¶ 79.) Apple countered that Section 5 would allow Koss to disclose public prior art to the PTO, without revealing how it learned of such information. (*Id.* ¶ 81.) Facing these competing interpretations, the Tribunal found that, under Section 5, "it is ambiguous as to what specific type of information could be used. Is it any information, or only non-public information?" (*Id.*) This question, among other reasons (*see id.* ¶ 82), led the Tribunal to conclude that Section 5 was ambiguous. Only then did it turn to the extrinsic evidence.

In sum, the arbitration's procedures, which Koss agreed to and complied with in full knowledge of the scope of Apple's arguments, allowed the parties to fairly litigate Koss' breach with all "the basic elements of adjudicatory procedure." *Universal Am. Barge*, 946 F.2d at 1137–38 (quotation marks and citation omitted). As such, the award is deserving of preclusive effect.

### C. Koss' Second-Guessing of the Tribunal's Reasoning or Conclusions Is Improper and Incorrect

Koss spends pages relitigating the legal reasoning and conclusions reached by the Tribunal. (Dkt. No. 206 at 5–8.) This analysis runs contrary to the law of collateral estoppel, which asks only whether an issue was previously litigated and decided on the merits. *Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004); *Lucido v. Superior Ct.*, 795 P.2d 1223, 1225 (Cal. 1990). Koss further misapplies its own cited authority to suggest that a court can decline to apply collateral

estoppel where there exist "[r]easonable doubts about what was decided in a prior judgment." (Dkt. No. 206 at 5 (quoting *In re Lopez*, 367 B.R. 99, 108 (9th Cir. BAP 2007)).) As a later decision from *that same case* clarified, "the Panel was referring to *reasonable doubt as to a fact*," about whether an issue had been actually litigated previously, "and not to reasonable doubt as to the bankruptcy court's reasoning or conclusions in applying issue preclusion." *In re Lopez*, 2008 WL 8462956, at *11 (B.A.P. 9th Cir. Dec. 31, 2008), *aff'd*, 378 F. App'x 610 (9th Cir. 2010) (emphasis in original). Koss identifies no doubt as to any fact regarding what was or was not litigated before the Tribunal. Moreover, as explained below, Koss' arguments are wrong on the substance.

### 1. Apple's Requested Relief Is Irrelevant to Koss' Liability or Preclusion

Koss' argument that the Tribunal might have ruled differently if Apple had requested forward-looking relief, rather than just damages and declaratory relief, makes no sense. (Dkt. No. 206 at 5–6.) Regardless of the relief requested, the Tribunal was asked to, and did, decide that Koss was liable for breaching Section 5. (Dkt. No. 185-1 ¶ 179(B).) Further, "[t]he fact that different forms of relief are sought in the two lawsuits is irrelevant [to the application of collateral estoppel], for if the rule were otherwise, litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background." *Murphy v. Murphy*, 164 Cal. App. 4th 376, 401 (2008), as modified (July 22, 2008) (quotation marks and citation omitted).

Nor did the arbitrator—the former head of patent litigation for a major international law firm—"fail[] to appreciate the patent-law ramifications of his decision." (Dkt. No. 206 at 7; *see* Dkt. No. 186-2 at 1–2.) Rather, the Tribunal knew full-well that Apple had asserted the counterclaim for which it now seeks summary judgment. (Dkt. No. 185-1 ¶¶ 45–47, 83.) It also understood that Apple would seek to bar Koss from using the parties' pre-suit communications in this case to prove pre-suit knowledge of Koss' patents. (*Id.* ¶ 146.) But regardless of any

contemplated, future effect of the Tribunal's award, the fact that Apple seeks a different remedy here does not change the Tribunal's unequivocal holding that Koss "breached Section 5 of the Confidentiality Agreement by filing of its Complaint" in this Court. (*Id.* ¶ 179(B).)

### 2. The Tribunal's Ruling, on Two Separate Claims, Is Internally Consistent, Understandable, and Applicable Here

Koss conflates two different issues to suggest that the Tribunal "came up with two different interpretations for the same contractual provision." (Dkt. No. 206 at 6.) The Tribunal did nothing of the sort. Rather, the Tribunal adjudicated two separate claims brought by Apple: one that Koss breached Section 5 in this case by filing its Complaint, and another that Koss breached Section 5 by using information from Apple in its patent prosecutions. (*See* Dkt. No. 185-1 ¶ 4.) After ruling that Section 5 was ambiguous, the Tribunal appealed to extrinsic evidence to find that Koss *had* breached in its *litigation* conduct, but had *not* breached in its *patent prosecution* conduct. (*See id.* ¶¶ 114–16, 163.) Koss claims the Tribunal inconsistently applied its ratification and acquiescence analysis. (Dkt. No. 206 at 6.) But the Tribunal's only finding of acquiescence related to Koss' use of information obtained from Apple in *patent prosecution*. (Dkt. No. 185-1 ¶¶ 115–16.) In analyzing Apple's separate, litigation-based claim, the Tribunal rightly found that Apple did not— and indeed could not—acquiesce to Koss' use of protected pre-suit communications in litigation before any lawsuit had been filed. (*Id.* ¶¶ 147–51.)

Further, the Tribunal did not rule, and Apple has never sought, that Koss be prevented from using all evidence to prove pre-suit notice of Koss' patents—if it had any that did not violate the Agreement. (*See* Dkt. No. 206 at 6–7.) The Tribunal acknowledged, consistent with Apple's position, "that in pressing its infringement and willful infringement claims, Koss may not rely on Communications, or the existence thereof, as proof. *If Koss has other proof, it may use it.*" (Dkt. No. 185-1 ¶ 146 (internal citation omitted) (emphasis added).) However, as the Tribunal also

7

recognized, Koss "specifically agreed and understood" that use of communications between the parties about the Patents-in-Suit during the term of the Agreement "was prohibited by Section 5 to show notice, knowledge, induced infringement or willful infringement of any patent." (*Id.* ¶ 150.)

Koss' other attempts to relitigate how the Tribunal applied the law also fail. (Dkt. No. 206 at 7.) The Tribunal considered and rejected Koss' arguments regarding Sections 8(b) and 11 of the Agreement. (Dkt. No. 185-1 ¶ 140.) Apple has separately explained why Koss' positions on these provisions are wrong. (Dkt. No. 207 at 6–9; Dkt. No. 182 at 7–8.) But that is beside the point: Koss should not be permitted "more than one full and fair opportunity for judicial resolution of the same issue." *Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328 (1971). Collateral estoppel is appropriate to prevent Koss from rehashing issues it has already litigated and lost.

### D. Public Policy Supports Applying Collateral Estoppel Here

Koss attempts to turn a private contractual dispute arbitrated pursuant to the parties' agreement into an argument about public policy. (Dkt. No. 206 at 8.) But if anything, the Supreme Court has articulated a strong policy in favor of "hold[ing] a party to its arbitration contract just as the court would to any other kind [of contract]." *Morgan v. Sundance, Inc.*, 2022 WL 1611788, at *4 (U.S. May 23, 2022). Here, Koss seeks to evade **both** its agreement to arbitrate **and** its underlying contractual obligations under Section 5. The Court should not allow it.

Apple has frequently rebutted Koss' false, oft-repeated claim that Apple seeks to "eliminate certain of Koss' patent rights" (Dkt. No. 206 at 8), most recently in this very brief. (*Supra* § II.C.2; *see* Dkt. Nos. 182 at 7–8; 133 at 3–4; 105 at 7–9.) Apple seeks only to hold Koss to the contract it signed. This position squarely aligns with, and certainly is not contrary to, sound public policy.

### E. Koss, Not Apple, Is "Wasting Judicial and Party Resources"

Koss' supposition that anyone's time would be saved by having this Court decide Koss' breach anew is illogical. (Dkt. No. 206 at 8.) Apple agrees that this contractual dispute should take

8

no more of the Court's or the parties' time than it already has. That is precisely why Apple seeks to apply collateral estoppel, the "dual purpose" of which is to "protect[] litigants from the burden of relitigating an identical issue" and to "promot[e] judicial economy by preventing needless litigation." *Parklane*, 439 U.S. at 326. Koss' suggestion that doing the opposite would conserve resources is wrong and should be rejected.

### F.   Koss' Baseless Discovery Accusations Are Irrelevant

One paragraph of Koss' response vaguely alleges all manner of supposed misconduct, refers to its improper statement of (actually-contested) "undisputed" facts, then distorts those "facts" by misrepresenting what happened. (Dkt. No. 206 at 9.) To take just one example, Koss asserts that "Apple refused to permit the deposition of a fact witness, in-house counsel ███████ ███████████████████████████████████████." (*Id.*) Koss omits that ***this Court issued a protective order against that deposition*** after the parties raised their respective arguments per the Court's discovery dispute procedures. (Ex. 9, 2/4/22 Grewal Dispute Chart and 2/5/22 Order.) Koss provides no reason, and certainly no authority, for why any of its unsupported accusations relate to whether to apply preclusive effect to an issue that has already been fully litigated.

### G.   Apple Has Neither Ratified nor Acquiesced to Koss' Breach

Koss' assertion to the contrary (Dkt. No. 206 at 10 & n.5), there is a very simple reason "why Apple, but not Koss is entitled to use Communications in [this] litigation": the Confidentiality Agreement expressly allows it. Section 8(d) ███████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████ (NDA § 8(d).) Section 20 █████████████████ ████████████████████████████████████████████████████████████████ (*Id.* § 20.) ***All*** the Apple filings listed by Koss were and are designed ██████████████████

9

████████████████████████████████████████████. (Dkt. No. 206 at 10.) None of Apple's expressly authorized activity constitutes ratification or acquiescence of Koss' breach. And even if Apple had not complied fully with the Agreement—which it has—Apple "is excused from performance under [the] contract [because] the other party is in material breach thereof." *BioLife Sols., Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003), as revised (Oct. 6, 2003).

### H.     Apple's Motion for Partial Summary Judgment Seeks Appropriate Relief

Apple moved for *partial* summary judgment (*see* Dkt. No. 185) because part of its counterclaim and affirmative defense have been conclusively established. First, Koss breached Section 5 of the Confidentiality Agreement by using pre-suit communications in its Complaint. (Dkt. No. 185-1 ¶¶ 119, 163.) Second, Koss' use of those communications in this litigation in support of its willful, contributory, and induced infringement allegations violates Section 5. (*Id.* ¶¶ 149–50.) Accordingly, Apple requested partial summary judgment of liability for breach, and enforcement of Apple's contractual defense that Koss be barred from using the parties' pre-suit communications *in this litigation* to show pre-suit notice or knowledge of the Patents-in-Suit. Apple intends to pursue permanent injunctive relief in due course. But at this juncture, Apple seeks to give effect to what has been established to date. The Court should thus, consistent with the Tribunal's award, find that Koss has breached the Agreement through its Complaint, and bar Koss from using evidence at trial that it contracted not to use in litigation.

### III.    CONCLUSION

Koss is collaterally estopped from denying it breached Section 5 of the parties' Confidentiality Agreement. The Court should therefore grant summary judgment on the breach element of Apple's contract counterclaim, and should enforce Apple's affirmative defense to bar Koss from using or relying on the parties' pre-suit communications in this litigation.

Date: June 6, 2022                                   Respectfully submitted,

                                                    By:   */s/ Michael T. Pieja*
                                                    Michael T. Pieja (*pro hac vice*)
                                                    Alan E. Littmann (*pro hac vice*)
                                                    Doug Winnard (*pro hac vice*)
                                                    Samuel E. Schoenburg (*pro hac vice*)
                                                    Whitney Woodward (*pro hac vice*)
                                                    Jennifer M. Hartjes (*pro hac vice*)
                                                    GOLDMAN ISMAIL TOMASELLI
                                                      BRENNAN & BAUM LLP
                                                    200 South Wacker Dr., 22nd Floor
                                                    Chicago, IL 60606
                                                    Tel: (312) 681-6000
                                                    Fax: (312) 881-5191
                                                    mpieja@goldmanismail.com
                                                    alittmann@goldmanismail.com
                                                    dwinnard@goldmanismail.com
                                                    sschoenburg@goldmanismail.com
                                                    wwoodward@goldmanismail.com
                                                    jhartjes@goldmansimail.com

                                                    Stephen E. McConnico
                                                    State Bar No. 13450300
                                                    Steven J. Wingard
                                                    State Bar No. 00788694
                                                    Stephen L. Burbank
                                                    State Bar No. 24109672
                                                    Paige Arnette Amstutz
                                                    State Bar No. 0079613
                                                    SCOTT DOUGLASS & MCCONNICO
                                                    Colorado Tower
                                                    303 Colorado St., Ste. 2400
                                                    Austin, TX 78701
                                                    Tel: (512) 495-6300
                                                    Fax: (512) 495-6399
                                                    smcconnico@scottdoug.com
                                                    swingard@scottdoug.com
                                                    sburbank@scottdoug.com
                                                    pamstutz@scottdoug.com

                                                    *Counsel for Defendant/Counterclaimant Apple Inc.*

## PROOF OF SERVICE

The undersigned hereby certifies that a true and correct copy of **DEFENDANT APPLE INC.'S REPLY ON ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON APPLE'S BREACH-OF-CONTRACT COUNTERCLAIM AND AFFIRMATIVE DEFENSE** has been served on June 6, 2022, to all counsel of record who are deemed to have consented to electronic service.

 */s/ Michael T. Pieja*
Michael T. Pieja