**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| KOSS CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>APPLE INC.,<br><br>　　　　　Defendant. | Case No.　　6:20-cv-00665-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>**PUBLIC VERSION** |

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY UNDER § 112**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

I.   APPLE DOES NOT INFRINGE THE CLAIMS REQUIRING "THE" SERVER ................................................................................................................................ 1

II.  THE ASSERTED CLAIMS ARE INVALID FOR LACK OF ENABLEMENT ........................................................................................................................ 4

    A.   There Is No Genuine Dispute that True Wireless Bluetooth Was Nascent Technology That Was Neither Well-Known Nor Routine ....................................... 5

    B.   There Is No Genuine Dispute of Material Fact that Koss' Specification Contains No Specific and Useful Teaching for True Wireless Bluetooth ............... 6

    C.   None of Koss' Arguments Create a Triable Issue of Fact ......................................... 7

III. SUMMARY JUDGMENT ON WRITTEN DESCRIPTION IS PROPER .......................... 8

    A.   Earbuds with Microphone Activation Are Not Described ....................................... 9

    B.   True Wireless Bluetooth Using Signal Strength Is Not Described .......................... 9

    C.   The Scope of "User Control" Claimed Is Not Described ....................................... 10

IV.  CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*,
    2021 WL 4891379 (E.D. Tex. Oct. 19, 2021) .......................................................................1, 2

*ALZA Corp. v. Andrx Pharms., LLC*,
    603 F.3d 935 (Fed. Cir. 2010) ..................................................................................................7

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
    501 F.3d 1274 (Fed. Cir. 2007) .............................................................................................6, 7

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
    512 F.3d 1338 (Fed. Cir. 2008) ................................................................................................2

*Chiron Corp. v. Genentech, Inc.*,
    363 F.3d 1247 (Fed. Cir. 2004) ................................................................................................6

*D Three Enters., LLC v. SunModo Corp.*,
    890 F.3d 1042 (Fed. Cir. 2018) ................................................................................................9

*LBS Innovations, LLC v. BP America Inc.*,
    2014 WL 61050 (E.D. Tex. Jan. 7, 2014) ..........................................................................1, 2, 3

*Trustees of Bos. Univ. v. Everlight Elecs. Co.*,
    896 F.3d 1357 (Fed. Cir. 2018) ................................................................................................7

Summary judgment is appropriate on infringement, enablement, and written description because there is no triable issue of fact. On infringement, Koss does not and cannot identify any server or servers that perform all the claimed limitations. On enablement, Koss cannot dispute that the true wireless Bluetooth technology it claims as its invention was nascent in 2008 and that its specification fails to contain the required specific and useful teaching for that technology. And on written description, Apple has unrebutted expert testimony that the asserted claims recite both a combination and scope of elements that the specification does not support.

## I.  APPLE DOES NOT INFRINGE THE CLAIMS REQUIRING "THE" SERVER

Koss does not dispute that, under the antecedent-basis rule and the plain meaning of the claims, "the items that satisfy the subsequent limitation ['the remote network-connected server'] must be drawn from the collection that satisfies the initial limitation ['a remote, network-connected server']." (Dkt. No. 215 at 8 (citing Dkt. No. 192 at 9).) This should end the inquiry. The servers that Koss identifies for the subsequent limitations—the Apple Music and firmware servers—are not drawn from the collection that satisfies the initial limitation—the Siri servers.[1]

Nonetheless, Koss argues that because "a" can mean "one or more," the claims are satisfied if there are one or more servers that, collectively, satisfy all of the claims' requirements, even if no individual servers do so. That argument has been squarely rejected. In *LBS Innovations, LLC v. BP America Inc.*, 2014 WL 61050, at *2 (E.D. Tex. Jan. 7, 2014), a patent claim required "a data field" to contain different types of data. No single field contained all of the required data. *Id.* Instead, the plaintiff argued that because "a" could mean "one or more," if they could "***combin[e] the contents of multiple fields***, [such that] all of the information required by the data field

---

[1] This Court's ruling of "plain and ordinary meaning" carries with it well-settled claim construction rules, including the antecedent basis rule. *See Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 2021 WL 4891379, at *7 (E.D. Tex. Oct. 19, 2021). Koss' suggestion that Apple forfeited this antecedent basis construction fails. (Dkt. No. 215 at 11.)

1

limitation is met, then the limitation as a whole is met." *Id.* (emphasis added) (citing *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008)). The court rejected the plaintiff's argument. Even though "a data field" can mean "one or more data fields," the court found, it is "***not*** the case that the data field limitation should be read as a requirement that one or more fields, combined, may" collectively satisfy the claim. *LBS*, 2014 WL 61050 at *2 (emphasis in original). Rather, that "a" could mean "one or more" meant that there could be "one or more fields, each of which contains all information necessary." *Id.* Here, although "a remote, network connected server" can refer to "one or more" servers, they must be "one or more [servers], each of which contains all [functionality] necessary." *Id.*

Similarly, in *Ahern*, the claims recited "a processor" and, later, "the processor." 2021 WL 4891379, at *7. The plaintiff argued that the use of "a" meant that "this term should not be limited to require the same number and identity of processors to perform each step." *Id.* (citation omitted). The court rejected that argument, concluding that the plain and ordinary meaning requires that "[e]ach reference to 'the processor' refers to the same processor as the antecedent 'a processor.'" *Id.* (citation omitted). The *Ahern* Court correctly noted that the "a is one or more" rule means only that the presence of more than one element having all the claimed features does not defeat infringement. *Id.*

Here, as in *LBS* and *Ahern*, Koss improperly tries to combine different servers to satisfy the claimed functions: some that receive a request, others that stream audio content, and yet others that transmit firmware updates. But even in view of the "one or more" rule, "the" server must be the "same [server(s)] as the antecedent 'a [server(s)].'" *See Id*. Here, the claims require that the antecedent, "a" server(s), receives requests. The ***only*** server Koss identifies for this function is one or more Siri servers. (Dkt. No. 192-3 ¶¶ 172–74; Dkt. No. 192-4 at 122:20–123:7; *id.* at 141:9–

2

13.) Thus, later references to "the" server must refer to those one or more Siri servers. But Koss never alleges that those servers satisfy the claims' later limitations. And it cannot establish infringement "by combining the contents of multiple [servers]" to cobble together "all of the information required by the [server] limitation." *LBS*, 2014 WL 61050 at *2.

Koss also suggests that the claims must allow for different servers to satisfy different claim elements because it "contends that there is ***no embodiment*** described in which a single server (*e.g.*, 'host server 40') provides all the functionality described in the claims." (Dkt. No. 215 at 9 (citation omitted, emphasis in original).) Koss is wrong. The described "host server 40" can provide all the claimed functionality. When a user control of the earphone is activated, the earphone "transmit[s] an electronic request . . . to the host server 40." (Dkt. No. 193-1 at 14:51–56.) Then, "the host server 40 is to stream audio to the earphone 10 itself." (*Id.* at 11:45–53.) And that same "host server 40 (or some other server) may also push firmware upgrades and/or data updates to the earphone." (*Id.* at 9:41–44.) Reading the claims as written does not exclude all embodiments.

Koss' arguments about prosecution history disclaimer are irrelevant. (Dkt. No. 215 at 5.) Apple is not arguing for disclaimer; it is giving "the" server its proper meaning. Apple's citation to the IPR proceedings simply illustrates Koss' contradictory positions. When defending its claims at the Patent Office, Koss insisted that "***the*** remote, network-connected server" must be the same server identified earlier in the claims. (Dkt. No. 192 at 5 (citation omitted, emphasis in original).) Koss should not be permitted to run from that argument now. (Dkt. No. 215 at 2.)

Nor can Koss run from its expert's opinions in this case. Mr. McAlexander, Koss' validity expert, repeatedly insisted that Koss' claims "require[] that the streamed audio content be from ***the*** server previously identified." (Dkt. No. 192-1 ¶¶ 164, 203, 251, 292, 368, 411, 460 (emphasis in original); Dkt. No. 192-2 at 227:11–18.) Koss complains that Mr. McAlexander was responding

3

to Apple's expert. (Dkt. No. 215 at 7.) This only proves that, when it suited Koss, it and its experts invoked the antecedent-basis rule that they now ask the Court to ignore. Koss' argument that Mr. McAlexander was referring to "servers or server farms" (*id.* at 7–8) is irrelevant because Koss has not alleged that any "server farm" satisfies all the required elements (and no such farm exists).

Next, Koss suggests, without evidence, that because Apple's technical expert is "a first-time expert witness," counsel must have written his report and, apparently, it should be ignored. (*Id.* at 9.) This allegation is false and unprofessional. Further, Koss is wrong that Mr. Wiggins contradicted his own report by acknowledging that servers can be defined by function rather than form. (*Id.* at 10.) Neither Apple nor its experts have ever taken the position that servers must be identified purely as hardware. Apple's experts opined that the three servers Koss identifies—Siri, Apple Music, and firmware—are distinct both physically and functionally. (Dkt. No. 192 at 6–8.)

Finally, the foundation on which Koss rests its entire argument—that "the servers Koss identifies are all *Apple* servers providing *Apple* functionality to *Apple* customers"—is facially wrong. (Dkt. No. 215 at 9 (emphasis in original).) As Apple's expert, Mr. Wiggins, explained—without contradiction— ████████████████████████████████████████████ ████████████████████████████████████ (Dkt. No. 215-4 at 287:5–7.) Thus, even Koss' legally incorrect argument—that it can lump together all of "Apple's server offering[s]" to satisfy infringement—fails on the facts. It is undisputed that combining all "Apple" servers still would not capture the servers needed for the firmware-related limitations.

In sum, there is no genuine issue of material fact that no server or servers satisfy each of the requirements of Koss' claims. Summary judgment of non-infringement of claims 3 and 44 of the '025 Patent and claims 1, 3, 4, 35, 37, 39 and 62 of the '934 Patent is appropriate.

## II.   THE ASSERTED CLAIMS ARE INVALID FOR LACK OF ENABLEMENT

Whether Koss' asserted patents are invalid for lack of enablement is a question of law that

turns on two underlying questions of fact: (1) was true wireless Bluetooth technology novel or nascent as of April 2008; and (2) if so, did Koss' specification provide a "specific and useful teaching" on how to make and use that technology? Even viewed in the light most favorable to Koss, true wireless Bluetooth was at best newly emerging in the art, and the specification lacks the teaching required for such technology. Summary judgment for lack of enablement is thus proper.

### A. There Is No Genuine Dispute that True Wireless Bluetooth Was Nascent Technology That Was Neither Well-Known Nor Routine

All evidence of record shows that true wireless Bluetooth technology was novel or nascent:

- Koss' expert testified that true wireless was "pioneering," novel, and neither well-known nor routine. (Dkt. No. 192-1 ¶ 893; Dkt. No. 192-11 at 336:17–339:6);

- ███████████████████████████████████████████████████

- The parties' experts agree that, although Bluetooth existed in April 2008, no one had made or used true wireless Bluetooth headphones before that time. (Dkt. No. 192-10 ¶¶ 2149–56; Ex. 26, McAlexander 4/29/22 Dep. 388:23–390:10); and

- The parties' experts agree that the Bluetooth standard did not support true wireless technology as of April 2008 and would require modification that had not been done before. (Dkt. No. 192-10 ¶¶ 2115–19; Ex. 26 at 373:16–22; 374:4–375:12).

Thus Koss, ███████, and the experts all stated that true wireless Bluetooth was not routine or well-known to a person of skill. After Apple filed for summary judgment, however, Koss reversed course. Now, Koss argues, true wireless Bluetooth technology was not actually novel because Kleer, a proprietary protocol in development in 2008, provided this capability. (Dkt. No. 215 at 14.) Koss' last-minute change of heart does not give rise to a triable issue of fact.

Koss admits that, as of April 2008, Kleer was a proprietary technology that was still being developed and "not commercially available." (*Id.* at 12, 13.) Indeed, Koss' expert did not mention Kleer a single time in his report, much less opine that it was relevant to true wireless Bluetooth. Instead, Mr. McAlexander testified that true wireless Bluetooth had never been implemented as of

5

the April 2008 filing date. (Dkt. No. 192-1 ¶ 893; *see also* Ex. 26 at 388:23–390:10). Viewing the facts in the light most favorable to Koss, the most Koss can therefore show is that Kleer was a newly emerging protocol in development. That is the literal definition of nascent. (Ex. 27, https://www.dictionary.com/browse/nascent) ("beginning to exist or develop").)

Nor does Koss' assertion that Visualize engineers "favored" Bluetooth or Kleer create a genuine dispute of fact. (Dkt. No. 215 at 12–14.) Whether they favored Kleer or not, Kleer was nascent technology in April 2008. Whether they favored Bluetooth or not, true wireless Bluetooth was novel technology in April 2008. The most Koss can show is that the inventors favored nascent technology (Kleer) or technology that would require novel modifications (Bluetooth). There is no genuine dispute of fact that true wireless Bluetooth technology was novel or nascent in April 2008.

**B.   There Is No Genuine Dispute of Material Fact that Koss' Specification Contains No Specific and Useful Teaching for True Wireless Bluetooth**

Because there is no genuine dispute of fact that true wireless Bluetooth was novel or nascent rather than well-known or routine, the specification must contain a "specific and useful teaching" to enable the claims. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1254 (Fed. Cir. 2004) (quotation marks and citation omitted); *see also Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1283 (Fed. Cir. 2007). Koss does not even try to identify such a teaching. Its Opposition spends eight pages discussing enablement, but does not cite or quote the specification even a single time. (Dkt. No. 215 at 11–19.) Thus, there is no genuine dispute that the specification lacks any teaching to enable true wireless Bluetooth. (Dkt. No. 192 at 13–15.) In fact, Bluetooth is mentioned just once, in a laundry list of protocols. (*Id.* at 13–14, citing Ex. 1, '025 Pat. 4:54–59.) The person of skill is never told what modifications would be needed to Bluetooth, how to make those modifications, or even where to begin. Koss does not contest this. Thus, it fails to distinguish the binding Federal Circuit precedent, *Auto. Techs.*, cited in Apple's motion. This

precedent confirms: "to fulfill the enablement requirement, the specification must enable the full scope of the claims that includes [true wireless Bluetooth], which the specification fails to do," 501 F.3d at 1285.

Rather than identify *any* useful teaching in its specification, Koss argues about what its inventors or experts might say at trial. Koss points to "Mr. McAlexander's potential solution" for implementing true wireless Bluetooth. (Dkt. No. 215 at 16.) But Koss' expert's "potential solution" is allegedly based "on the knowledge of a person of ordinary skill" and thus cannot "serve as a substitute for the missing information in the specification." *ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 941 (Fed. Cir. 2010); (*See* Dkt. No. 192 at 14–15.) Likewise, Koss contends its inventors may testify about what they knew could be done with Bluetooth in 2008. (Dkt. No. 215 at 14.) But nothing the inventors may say now can compensate for their failure to provide a specific and useful teaching *in the specification* they filed in 2008. Thus, none of the "disputes" Koss identifies are material to the enablement inquiry, which must focus on the specification.

### C. None of Koss' Arguments Create a Triable Issue of Fact

The remainder of Koss' arguments are a grab-bag of erroneous or irrelevant complaints. Koss is simply wrong that Apple conceded that some protocols were enabled. (*Id.* at 12.) Apple does not concede that Koss' specification enables true wireless technology for any protocol, including Wi-Fi. Apple focused its motion on lack of enablement for Bluetooth because that alone is sufficient to find all asserted claims invalid. *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 896 F.3d 1357, 1362 (Fed. Cir. 2018) (claims invalid even if five of six claimed embodiments enabled).

Koss further complains that Mr. Wiggins' opinions based on his personal experience were improper. (Dkt. No. 215 at 16–17.) As explained in Apple's opposition to Koss' motion to exclude, Koss is wrong. (Dkt. No. 210.) Regardless, Koss' complaint is irrelevant because its motion does not impact Mr. Wiggins' opinions based on the (lack of) disclosure in the specification, which is

7

the dispositive issue here. (Dkt. No. 192-10 ¶¶ 2141–48). Koss also argues that summary judgment should be denied because Apple's experts provided obviousness opinions. (Dkt. No. 215 at 12–13.) That is a red herring: Mr. Wiggins' obviousness opinions on this issue are expressed in the alternative to his enablement opinions. (Dkt. No. 192-10 ¶ 1984) (opining "to the extent Koss' patents are found to disclose enough information . . . ."). Similarly, Apple's arguments in IPR are consistent with those it makes here: Koss' specification had an "extremely thin disclosure" on how to implement the invention. (*See, e.g.*, Ex. 28, IPR2021-00381 4/5/22 Oral Argument at 61–62.) Because Apple cannot challenge enablement in an IPR, it used that argument to rebut Koss' arguments about what a person of skill could do. (*Id.*) There is no "contradiction" here.

Even if every issue Koss raises in its opposition were decided in Koss' favor, true wireless Bluetooth would still be nascent technology and the specification would still lack the enabling disclosure that the law requires for such technology. Summary judgment is warranted.

## III. SUMMARY JUDGMENT ON WRITTEN DESCRIPTION IS PROPER

Summary judgment of invalidity for lack of written description is proper because: (1) a person of skill would not have understood the inventors to possess an invention combining elements plucked from disparate embodiments (Dkt. No. 192 at 18–26); and (2) Koss asserts claim scope that far exceeds what the specification describes (Dkt. No. 192 at 26–29). Apple presented testimony from Dan Wiggins on both of these issues. (Dkt. No. 192-10 ¶¶ 2255–96; *id.* ¶¶ 2233–54.) Koss presented no testimony, but now argues that Mr. McAlexander's chart of citations creates a triable issue. (Dkt. No. 215 at 23, 24, 26, 29.) It does not. The most this chart can show is that, for each limitation standing alone, different fragments of the specification may correspond to it. But the issue is whether a person of skill would have understood the specification to disclose the ***combination*** and ***scope*** of elements claimed. On this point, Koss has only attorney argument, which cannot create a triable issue given Apple's unrebutted expert testimony.

8

### A. Earbuds with Microphone Activation Are Not Described

Apple moved for summary judgment for no written description of claim 44 of the '025 Patent and claims 37 and 39 of the '934 Patent because they combine elements plucked from distinct embodiments: the earphone designs of Figs. 1A and 1B with the microphone boom/button of Fig. 9. (Dkt. No. 192 at 19–23.) Koss responds that a person of skill would view these different embodiments as "linked" because each includes hardware elements that are also, and separately, shown schematically in Figure 3. (Dkt. No. 215 at 22.) This is both unsupported attorney argument and irrelevant. At most, Koss can show that the earphones in Fig. 1A and Fig. 9 may share some *internal* components. But what is missing from the earphones of Figs. 1A and 1B—and what is shown nowhere in Figure 3—is any *external* means for activating a microphone. (*See* Dkt. No. 192 at 20–21.) This is because the earphones of Figs. 1A and 1B have only one button and one knob, neither of which activates a microphone. (*Id.*) That the different designs might share similar internal components does not convey possession of the claimed combination of the microphone boom/button of Fig. 9 and the designs of Figs. 1A and 1B. No triable issue exists here.

Koss also argues that the specification "*never* limit[s]" functionality to a specific form factor. (Dkt. No. 215 at 22 (emphasis in original).) This is not the law: "adequate written description does not ask what is permissible, rather, it asks what is disclosed." *D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1052 (Fed. Cir. 2018). Here, what is disclosed—separate embodiments with distinct form factors to perform different functions—does not match what is claimed. Whether it is possible to combine those separate embodiments is irrelevant. *Id.*

### B. True Wireless Bluetooth Using Signal Strength Is Not Described

For claims 8 and 10 of the '982 Patent, Koss argues that because the specification mentions Bluetooth once, a person of skill would have understood that the recited combination of Bluetooth, true wireless, and transitioning based on signal strength was disclosed. (Dkt. No. 215 at 25–26.)

9

But it is undisputed that Bluetooth technology barred transitioning between sources based on signal strength as of 2008. (Dkt. No. 192-10 ¶¶ 2208–11, Dkt. No. 192-1 ¶ 995.) And Apple's expert provided unrebutted testimony that because Bluetooth forbade such transitioning, the specification's disclosure of transitioning in Wi-Fi embodiments cannot convey possession of transitioning in Bluetooth. Koss' attorney argument cannot create a triable issue of fact in view of Apple's unrebutted expert testimony.

### C.  The Scope of "User Control" Claimed Is Not Described

Apple moved for summary judgment that the claimed "user control" lacks written description support because the term's claimed scope far exceeds what the specification describes. In its desperation to avoid summary judgment, Koss takes contradictory positions: voice activation as a user control in a headphone was both already known in the art (Dkt. No. 192 at 28) and a later-arising development (*id.* at 27). The truth, as Mr. Wiggins explained without rebuttal from Koss' experts, falls in the middle: voice activation was known, but the details of implementing it in a headphone were not conventional given the state of the art in 2008. (Dkt. No. 192-10 ¶ 2246.) Thus, a person of skill in 2008 reading the specification would have understood the inventors to possess only the known class of user controls that they described—physical controls like buttons and switches—and not the far more complex class that they never mentioned—non-physical controls like voice triggers. (*Id.* ¶¶ 2243–48.) Koss has no expert testimony to rebut this, as neither of its experts opined on whether the specification disclosed voice activation technology. (Dkt. No. 192-11 at 436:10–13; Dkt. No. 192-4 at 157:2–8.) Because unrebutted expert testimony shows that the claimed "user control" is not adequately described, summary judgment is proper.

### IV.  CONCLUSION

Apple's motion for summary judgment should be granted.

10

Date: June 6, 2022                                   Respectfully submitted,

By: _/s/ Michael T. Pieja_
Michael T. Pieja (*pro hac vice*)
Alan E. Littmann (*pro hac vice*)
Doug Winnard (*pro hac vice*)
Samuel E. Schoenburg (*pro hac vice*)
Whitney Woodward (*pro hac vice*)
Jennifer M. Hartjes (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
   BRENNAN & BAUM LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
dwinnard@goldmanismail.com
sschoenburg@goldmanismail.com
wwoodward@goldmanismail.com
jhartjes@goldmansimail.com

Stephen E. McConnico
State Bar No. 13450300
Steven J. Wingard
State Bar No. 00788694
Stephen L. Burbank
State Bar No. 24109672
Paige Arnette Amstutz
State Bar No. 0079613
SCOTT DOUGLASS & MCCONNICO
Colorado Tower
303 Colorado St., Ste. 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 495-6399
smcconnico@scottdoug.com
swingard@scottdoug.com
sburbank@scottdoug.com
pamstutz@scottdoug.com

*Counsel for Defendant/Counterclaimant Apple Inc.*

11

**PROOF OF SERVICE**

The undersigned hereby certifies that a true and correct copy of **DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY UNDER § 112** has been served on June 6, 2022, to all counsel of record who are deemed to have consented to electronic service.

 /s/ Michael T. Pieja
Michael T. Pieja
